**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARENDI S.A.R.L., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 13-919-JLH |
| | ) |
| GOOGLE LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**FINAL JURY INSTRUCTIONS**

**TABLE OF CONTENTS**

1.   GENERAL INSTRUCTIONS                                                          1
   1.1   INTRODUCTION                                                          1
   1.2   JURORS' DUTIES                                                        2
   1.3   EVIDENCE DEFINED                                                      3
   1.4   DIRECT AND CIRCUMSTANTIAL EVIDENCE                                    4
   1.5   CONSIDERATION OF EVIDENCE                                             5
   1.6   STATEMENTS OF COUNSEL                                                 6
   1.7   CREDIBILITY OF WITNESSES                                              7
   1.8   EXPERT WITNESSES                                                      8
   1.9   DEPOSITION TESTIMONY                                                  9
   1.10  DEMONSTRATIVE EXHIBITS                                               10
   1.11  USE OF NOTES                                                         11
   1.12  BURDENS OF PROOF                                                     12
2.   THE PARTIES AND THEIR CONTENTIONS                                            14
   2.1   THE PARTIES                                                         14
   2.2   SUMMARY OF THE ISSUES                                               15
3.   THE PATENT LAWS                                                             17
   3.1   THE PATENT LAWS                                                     17
   3.2   CLAIM CONSTRUCTION                                                  18
   3.3   INFRINGEMENT—INFRINGEMENT GENERALLY                                 21
   3.4   INFRINGEMENT—DIRECT INFRINGEMENT GENERALLY                          21
   3.5   DIRECT INFRINGEMENT                                                 23
   3.5   DIRECT INFRINGEMENT OF A METHOD CLAIM                               23
   3.6   INDUCED INFRINGEMENT                                                25
   3.7   CONTRIBUTORY INFRINGEMENT                                           28
   3.8.  WILLFULNESS                                                         31
4.    INVALIDITY                                                                 34
   4.1   INVALIDITY—BURDEN OF PROOF                                          34
   4.2   INVALIDITY—PERSON OF ORDINARY SKILL IN THE ART                      36
   4.3   PRIOR ART                                                           37
   4.4   INVALIDITY—ANTICIPATION                                             38
   4.5   INVALIDITY—OBVIOUSNESS                                              40

i

4.6   INVALIDITY—WRITTEN DESCRIPTION                                    44

4.7   INVALIDITY—ENABLEMENT                                             47

5.   DAMAGES                                                           49

5.1   DAMAGES GENERALLY                                                 49

5.2   REASONABLE ROYALTY—THE "HYPOTHETICAL NEGOTIATION"
METHOD                                                                 51

5.3   REASONABLE ROYALTY—RELEVANT FACTORS TO THE HYPOTHETICAL
NEGOTIATION METHOD                                                     54

5.4   DAMAGES—AVAILABILITY OF NON-INFRINGING ALTERNATIVES              57

5.5   DAMAGES—APPORTIONMENT                                             58

5.6   DAMAGES LIMITATION – EXTRATERRITORIAL ACTS                        60

6   DELIBERATION AND VERDICT                                           61

6.1   INTRODUCTION                                                      61

6.2   UNANIMOUS VERDICT                                                 62

6.3   DUTY TO DELIBERATE                                                63

6.4   SOCIAL MEDIA                                                      64

6.5   COURT HAS NO OPINION                                              65

# 1.    GENERAL INSTRUCTIONS

## 1.1    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

**1.2     JURORS' DUTIES**

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

**1.3    EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition transcript testimony that has been played by video or read to you, the exhibits that I allowed into evidence, matters I have instructed you to take judicial notice of, and the stipulations to which the lawyers agreed.

Certain models, reproductions, charts, summaries, and graphics have been used to illustrate certain evidence and testimony from witnesses. Unless I have specifically admitted them into evidence, these models, reproductions, charts, summaries, and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.4     DIRECT AND CIRCUMSTANTIAL EVIDENCE

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**1.5     CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**1.6     STATEMENTS OF COUNSEL**

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

## 1.7     CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you. You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

**1.8     EXPERT WITNESSES**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

**1.9     DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you by the playing of video excerpts from a deposition. The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

Deposition testimony is out-of-court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

### 1.10    DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of the exhibits (including charts, models, reproductions, PowerPoint presentations, and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**1.11     USE OF NOTES**

You may have taken notes during trial to assist your memory. As I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency I think to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**1.12     BURDENS OF PROOF**

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean. [**Arendi's Proposal**: Plaintiff Arendi asserts that Defendant Google infringes the '843 patent.]

[**Arendi's Proposal:** Plaintiff Arendi contends it does so in several distinct ways—that is, Google infringes directly, Google actively induces infringement by others, and Google contributes to infringement by others.]

[**Google's Proposal:** Plaintiff Arendi asserts that Defendant Google directly infringes the '843 Patent.]

Plaintiff Arendi has the burden of proving its infringement claims by a "preponderance of the evidence." That means Plaintiff Arendi has to prove to you, in light of all the evidence, that what it claims is more likely true than not. To say it differently, if you were to put the evidence of Plaintiff Arendi and the evidence of Defendant on opposite sides of a scale, the evidence supporting Plaintiff Arendi's claims would have to make the scales tip slightly on its side in each instance. If the scale should remain equal or tip in favor of Defendant, you must find in favor of Defendant.

In addition to denying Plaintiff Arendi's claims that it infringes, Google asserts that the asserted claims of the '843 Patent are invalid. A party challenging the validity of a patent—in this instance, Defendant Google—has the burden to prove that the asserted claims are invalid by clear and convincing evidence. Clear and convincing evidence means evidence that it is highly probable

that a fact is true. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases. That requirement is the highest burden of proof. It does not apply to civil cases and, therefore, you should put it out of your mind.

2.      **THE PARTIES AND THEIR CONTENTIONS**

2.1      **THE PARTIES**

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

As I have previously told you, the plaintiff in this case is Arendi S.A.R.L. We have referred to the plaintiff as Arendi. The defendant in this case is Google LLC. We have referred to it as Google.

Plaintiff Arendi is the owner of U.S. Patent Number 7,917,843. During this case, we have referred to the patent by its last three digits, the '843 Patent, or as the patent-in-suit or the Asserted Patent.

14

## 2.2     SUMMARY OF THE ISSUES

You must decide the following issues in this case according to the instructions that I give you:

**[Arendi's Proposal:**

1.     Whether Plaintiff Arendi has proven by a preponderance of the evidence that Google directly infringes one or more of claims 1, 8, 23 and 30 of the '843 Patent;

2.     Whether Plaintiff Arendi has proven by a preponderance of the evidence that Google's infringement of one or more claims of the '843 Patent was willful;

3.     Whether Plaintiff Arendi has proven by a preponderance of the evidence that third parties directly infringed one or more of claims 1, 8, 23 and 30 of the '843 Patent. With respect to Google, a third-party is a person or entity other than Google.

4.     Whether Plaintiff Arendi has proven by a preponderance of the evidence that Google induced a third-party to infringe one or more of claims 1, 8, 23 and 30 of the '843 Patent;

5.     Whether Plaintiff Arendi has proven by a preponderance of the evidence that Google contributed to a third-party's infringement of one or more of claims 1, 8, 23 and 30 of the '843 Patent;

6.     Whether Plaintiff Arendi has proven by a preponderance of the evidence the amount of money damages adequate to compensate it for Defendant Google's infringement.

7.     Whether Defendant Google has proven by clear and convincing evidence that one or more of the asserted claims of the '843 Patent is invalid.**]**

**[Google's Proposal:**

1.     Whether Plaintiff Arendi has proven by a preponderance of the evidence that Google directly infringes one or more of claims 1, 8, 23 and 30 of the '843 Patent;

2.      Whether Defendant Google has proven by clear and convincing evidence that one or more of the asserted claims of the '843 Patent is invalid.

3.      If you decide that any claim of the '843 Patent has been infringed by Google and is not invalid, you will then need to decide whether Arendi has proven by a preponderance of the evidence that Google's infringement was willful;

4.      If you decide that any claim of the '843 Patent has been infringed by Google and is not invalid, you will also need to decide what, if any, money damages Arendi has proven by a preponderance of the evidence are to be awarded to compensate it for Google's infringement.]

3.      **THE PATENT LAWS**

   3.1      **THE PATENT LAWS**

   At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, you will have your copy available to you in the jury room.

### 3.2     CLAIM CONSTRUCTION

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of a patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim.

When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process. [**Google's proposal**: If a product or process is missing even one limitation or element of a claim, the product or process is not covered by that claim.]

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. For example, claims 1 and 23 of the '843 Patent are independent claims.

In contrast, claims 8 and 30 of the '843 Patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers. For example, claim 8 of the '843 Patent is a dependent claim that depends from claim 1. Claim 30 of the '843 Patent is a dependent claim that depends from claim 23. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

It is my job as a judge to define the terms of the claims and to instruct you about the meaning. It is your role to apply my definitions to the issues that you are asked to decide.

In this case, I have determined the meaning of the following terms of the asserted claims of the '843 Patent:

| Claim Term | Court's Construction |
|---|---|
| "document" | "a word processing, spreadsheet, or similar file into which text can be entered" |
| "first information" | "text in a document that can be used as input for a search operation in a source external to the document" |
| "computer program" | "a self-contained set of instructions, as opposed to a routine or library, intended to be executed on a computer so as to perform some task" |
| "to determine if the first information is at least one of a plurality of types of information that can be searched for" | "to determine if the first information belongs to one or more of several predefined categories of identifying information (e.g., a name) or contact information (e.g., a phone number, a fax number, or an email address) that can be searched for in an information source external to the document" |
| "that allows a user to enter a user command to initiate an operation" | "that allows a user to enter an input or series of inputs to initiate an operation" |

| "providing an input device configured by the first computer program" | "providing an input device set up by the first computer program for use by the user" |
|---|---|

You must accept my definition of these words as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

The beginning portion of a claim, also known as the preamble, often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

[**Arendi's proposal:** For any words in the claim for which I have not provided you with a definition, you should apply their ordinary meaning in the field of the '843 Patent.] [1]

[**Google's proposal:** For any words in the claim for which I have not provided you with a definition, you should apply their plain and ordinary meaning as understood by one of ordinary skill in the field of technology of the '843 Patent at the time of the alleged invention. The meanings of the words of the patent claims must be the same when deciding both the issues of infringement and validity.]

You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

---

[1] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 12, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions.

[**Arendi's proposal:**

### 3.3    INFRINGEMENT—INFRINGEMENT GENERALLY

I will now instruct you as to the rules you must follow when deciding whether Plaintiff Arendi has proven that Google has infringed the '843 Patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement of one claim but no infringement of another.

In this case, there are three possible ways that a claim may be infringed. The three types of infringement are called: (1) direct infringement; (2) active inducement; and (3) contributory infringement. Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement.  In this case, Arendi has alleged that Google directly infringes the '843 Patent. In addition, Arendi has alleged that third parties directly infringe the '843 Patent, and Google is liable for actively inducing and contributing to that direct infringement.

In order to prove infringement, Arendi must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.][2]

[**Google's proposal:**

### 3.4    INFRINGEMENT—DIRECT INFRINGEMENT GENERALLY

A person or business entity that makes, uses, sells, or offers for sale within the United States or imports into the United States an invention claimed in a patent infringes that patent. Infringement is assessed on a claim-by-claim basis by comparing Google's accused product or

---

[2] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 17, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions.

method to the elements of each claim. There may be infringement of one claim but no infringement of another. To prove infringement of a claim, Arendi must prove that the requirements for infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of infringement have been proven.

There is one exception. If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that depends from that claim. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the accused products meet the additional requirements of any dependent claim to determine whether that dependent claim has also been infringed.]

**[Arendi's proposal:**

### 3.5    DIRECT INFRINGEMENT

To prove direct infringement, Arendi must prove by a preponderance of the evidence, i.e. that it is more likely than not, that Google made, used, sold, offered for sale within, or imported into the United States a product that meets the requirements of a claim and did so without Arendi's permission during the time the '843 Patent was in force. You must compare the accused Google products with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met. You must determine, separately for each asserted claim, whether or not there is infringement.]<sup>3</sup>

**[Google's proposal:**

### 3.5    DIRECT INFRINGEMENT OF A METHOD CLAIM

Claims 1 and 8 cover a method. Direct infringement of a method claim occurs when a party performs each and every step of the claimed method. Where no one party performs all of the steps of a claimed method, but multiple parties combine to perform every step of the method, that claim can be directly infringed only if all of the actions constituting infringement are attributable to a single party.[4] Here, the actions constituting infringement are attributable to a single party only if that party directs or controls another party's performance of the claimed steps.[5]

---

[3] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 18, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions.

[4] **Google**: *See Akamai Techs. Inc v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022–23 (Fed. Cir. 2015) (en banc).

[5] **Google**: *See id.*

Arendi alleges that all of the actions constituting infringement of claims 1 and 8 of the '843 Patent are performed by Google itself or are attributable to Google because Google directs or controls product users' performance of the claim steps. Arendi bears the burden of showing that Google itself has performed each and every step of the claimed methods and, for any step not performed by Google, that product users' performance of those steps is attributable to Google.[6]

You may find that Google directed or controlled another party's performance of a step of a claimed method (1) if the parties have a principal and agent relationship; (2) if Google contracted with another party to perform a step of the claimed method; or (3) if Google established how or when the claim step would be performed and conditioned receipt of a benefit or participation in an activity on another party's performance of the step in the established manner. Mere guidance or instruction as to how or when the claim step will be performed is insufficient to show that Google required another party to perform the step to receive a benefit or participate in an activity.[7] If you find that one or more steps of claims 1 or 8 are not performed by Google and cannot be attributed to Google, then you must find that there is no direct infringement.]

---

[6] **Google**: *See id.*

[7] **Google**: *See id.*; *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1379 (Fed. Cir. 2017) (discussing *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1366 (Fed. Cir. 2017)); *Move, Inc. v. Real Estate Alliance Ltd.*, 709 F.3d 1117, 1122 (Fed. Cir. 2013).

### 3.6     INDUCED INFRINGEMENT

**[Arendi's proposal:**

In addition to determining whether Google directly infringed one or more claims of the '843 Patent, you must also determine whether Google actively induced infringement of those claims.

Arendi alleges that Google is liable for infringement by actively inducing someone else to direct infringe the '843 Patent. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Google is liable for active inducement of a claim if Arendi proves by a preponderance of the evidence:

(1) that acts actually carried out by a third party directly infringed that claim;

(2) that Google took action during the time the '843 Patent was in force that was intended to cause and led to the infringing acts by the third party; and

(3) *either* that Google was aware of the '843 Patent and knew that the acts, if taken, would constitute infringement of that patent, *or* that Google believed there was a high probability that the acts by the third party would infringe the '843 Patent and Google took deliberate steps to avoid learning of that infringement.

If you find that Google was aware of the patent, but believed that the acts it encouraged did not infringe that patent, Google cannot be liable for inducement.

A Defendant's belief regarding the validity of the '843 Patent is not relevant to your determination of inducement. A Defendant can induce infringement, even if the Defendant

believed the '843 Patent was invalid. In other words, a Defendant's belief in invalidity is no defense to a claim of induced infringement.][8]

**[Google's proposal:**

Arendi also argues that Google induced infringement by another. A party induces patent infringement if it actively and purposefully causes or encourages another to infringe a patent. If nobody has directly infringed the patent, there can be no induced infringement. That means that Arendi must either prove that the accused products necessarily infringe the '843 Patent or prove specific acts of direct infringement by others that were induced by Google. Inducing infringement cannot occur unintentionally.

To prove that Google induced patent infringement, Arendi must prove that it is more probable than not that:

1. Google acted affirmatively and communicated with another person to actively encourage or instruct that person to use a product or perform a process in a way that infringed at least one claim of the '843 Patent;[9]

2. the affirmative inducing acts by Google caused actual infringement by the other person;[10]

3. Google knew of the '843 Patent at that time; and

4. Google both knew of the other person's actions, and either (a) intended that those actions would infringe at least one valid claim of the '843 Patent or (b) subjectively

---

[8] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 24, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions.
[9] **Google**: *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016).
[10] **Google**: *See id.* at 1332 (rejecting jury instruction that direct infringement "need not have been actually caused by" the defendant's actions).

believed that there was a high probability that those actions infringed at least one valid claim of the '843 Patent and took deliberate actions to avoid learning of that fact.

Arendi must prove that Google knew and intended that the induced act would occur and would infringe, not merely that the induced act would occur.[11] There can be no induced infringement if Google merely had knowledge of the '843 Patent. Google also must have had knowledge that the actions of others constituted direct infringement of the '843 Patent. If Google believed that the acts it encouraged did not infringe the '843 Patent, then Google cannot be liable for induced infringement.[12]]

---

[11] **Google**: *See* The National Jury Instruction Project, Model Patent Jury Instruction § 3.11; Northern District of California Model Patent Jury Instructions § 3.7 (Oct. 2019); 35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 641–42 (2015); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011); *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407 (Fed. Cir. 2019); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).
[12] **Google**: *See Commil*, 135 S. Ct. at 1928; *see TecSec, Inc. v. Adobe Systems Inc.*, 978 F.3d 1278, 1286–88 (Fed. Cir. 2020).

### 3.7    CONTRIBUTORY INFRINGEMENT

**[Arendi's Proposal:**

In addition to determining whether Google induced a third party to infringe one or more claims of the '843 Patent, you must also determine whether Google contributed to the direct infringement of the '843 Patent by a third party.

Arendi alleges that Google is liable for contributory infringement by contributing to the direct infringement of the '843 Patent by third parties. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Defendant Google is liable for contributory infringement of a claim if Arendi proves by a preponderance of the evidence:

(1) that Google sold, offered to sell within, or imported into the United States a component of a product, material, or apparatus for use in a process, during the time the '843 Patent was in force;

(2) the component, material, or apparatus is not a staple article or commodity of commerce suitable for substantial non-infringing use;

(3)  the component, material, or apparatus constitutes a material part of the invention;

(4) Google was aware of the '843 Patent and knew that the component, material, or apparatus was especially made or adapted for use as an infringement of the claim; and

(5) the third-party used the component, material, or apparatus to directly infringe a claim.][13]


**[Google's Proposal:**

Arendi also argues that Google is liable for contributory infringement of the '843 Patent.

---

[13] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 26, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions.

Contributory infringement occurs only if someone sells or offers to sell something that is used by another to infringe a patent claim.  A party cannot commit contributory infringement by merely making or distributing a product that is used to infringe a patent claim.

Google can be liable for contributory infringement only if Arendi establishes that it is more likely than not that someone other than Google directly infringed a claim of the '843 Patent.  If there is no direct infringement by anyone, there can be no contributory infringement.

If you find that someone directly infringed the '843 Patent, contributory infringement can exist only if Arendi additionally proves that all of the following apply:

1. Google sold or offered for sale a product that is important to the infringing device or method;

2. the product sold or offered for sale by Google is not suitable for non-infringing use;

3. Google knew of the patent when it sold or offered the product for sale; and

4. Google knew that the product was especially made or adapted for use in a way that would infringe the '843 Patent.[14]

For each of the above requirements, Arendi must prove that it is more likely than not that the requirement is met.

There can be no contributory infringement if Google merely had knowledge of the '843 Patent. Google must also have had knowledge that the actions of its product users constitute infringement of the '843 Patent. If Google reasonably believed that others' actions did not constitute infringement, then Google cannot be liable for contributory infringement.[15] Nor can

---

[14] **Google**: *See Commil USA, LLC v. Cisco Sys., Inc.,* 575 U.S. 632, 639 (2015) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).
[15] **Google**: *See Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 523 (Fed. Cir. 2016) (citing *Commil*, 135 S. Ct. at 1928)).

Google commit contributory infringement by merely making or distributing a product that is used to infringe a patent claim. In addition, you may not find Google liable for providing a service[16] or for merely transferring or supplying a component. Rather, you must find that Google sold the product or offered it for sale. A sale requires transfer of the product for a price.[17]]

---

[16] **Google**: *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1363 (Fed. Cir. 2017).

[17] **Google**: *See* Northern District of California Model Patent Jury Instructions § 3.6 (Oct. 2019). *See also* 35 U.S.C. § 271(c); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 763–64 (2011); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964); *Enercon GmbH v. ITC*, 151 F.3d 1376, 1381–82 (Fed. Cir. 1998).

### 3.8.   WILLFULNESS

Arendi asserts that Google infringed the '843 Patent, and further, that Google infringed willfully. If you find that Google infringed one or more claims of the '843 Patent, then you must also determine whether or not such infringement was willful.

[**Arendi's Proposal:** To show that infringement by Defendant was willful, Plaintiff Arendi must establish that it is more likely than not that Google knew of the '843 Patent at the time of the alleged infringement and that the infringement was intentional.

To decide whether Google acted willfully, you should consider all of the facts and assess Google's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited to:

1. Whether or not Google acted consistently with the standards of behavior for its industry;

2. Whether or not Google intentionally copied a product of Arendi that is covered by the '843 Patent;

3. Whether or not Google reasonably believed it did not infringe or that the patent was invalid;

4. Whether or not Google made a good-faith effort to avoid infringing the '843 Patent by, for example, attempting to design around the '843 Patent; and

5. Whether or not Google tried to cover up its infringement.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement. I will take willfulness into account later.][18]

---

[18] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 35, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions.

[**Google's Proposal:** To show that infringement by Defendant was willful, Plaintiff Arendi must establish that it is more likely than not that Google actually knew of the '843 Patent at the time of the alleged infringement and intentionally infringed at least one valid asserted claim of the patent.[19]

If you find that Google knew of the '843 Patent at the time of infringement, that alone is not sufficient to show willfulness. Arendi must also prove that it is more likely than not that Google deliberately and intentionally infringed the patent.[20]

To decide whether Google acted willfully, you should consider all of the facts and circumstances relating to the infringement, including:

6.  Whether Google acted consistently with the standards of behavior for its industry;

7.  Whether Google intentionally copied a product of Arendi that is covered by the '843 Patent;

8.  Whether Google reasonably believed it did not infringe;

9.  Whether Google reasonably believed that the '843 Patent was invalid;

10. Whether Google made a good-faith effort to avoid infringing the '843 Patent during the patent term by, for example, attempting to design around the '843 Patent; and

11. Whether Google tried to cover up any infringement.

---

[19] **Google**: *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). *See also Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987–88, (Fed. Cir. 2021) ("To establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct."), and *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*, 28 F.4th 1247, 1274 (Fed. Cir. 2022).

[20] **Google**: *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016) (describing subjective willfulness as "intentional or knowing"); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309–10 (Fed. Cir. 2019) (holding that designing products later determined to be infringing, without more, is insufficient to support a finding of willful infringement).

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement. I will take willfulness into account later.]

4.      **INVALIDITY**

4.1      **INVALIDITY—BURDEN OF PROOF**

**[Arendi's Proposal:**

I will now instruct you on the rules you must follow in deciding whether or not Google has proven that the Asserted Claims are invalid.

A party challenging the validity of a patent—in this instance, Google—has the burden to prove that the asserted claims are invalid by clear and convincing evidence. Clear and convincing evidence means evidence that it is highly probable that a fact is true. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Like infringement, you must determine whether each asserted claim is invalid on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, this does not mean that any other claim is necessarily invalid.

Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity.][21]

**[Google's Proposal:**

Patent invalidity is a defense to patent infringement. The issuance of a patent by the Patent Office provides a presumption that the patent is valid.

But the Patent Office sometimes issues invalid patent claims, and issued claims can be found invalid in court. In this case, you have the ultimate responsibility for deciding whether the

---

[21] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 37, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions; *Board of Regents, The University of Texas System et al v. Boston Scientific Corporation*, C.A. No. 1:18-cv-00392-GBW, D.I. 326 at 25 (Jan. 31, 2023).

claims of the patent are valid or invalid. In making your determination, you must consider the claims individually, as you did when you considered whether each claim was infringed or not. If clear and convincing evidence demonstrates that a claim of the '843 Patent fails to meet any requirement of the patent laws, then that claim is invalid.

During the course of this trial, Google has presented you with several prior art references. In general, prior art includes patents, publications, or items that were publicly used, offered for sale, or publicly known, that disclosed the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been offered, made, known, used, published, patented, or described in a patent application before the invention was made, or in public use or on sale in the United States before November 10, 1997.

The fact that any particular reference was or was not considered by the Patent Office does not change Google's burden of proof.

I will now instruct you on the invalidity issues you should consider.]

## 4.2    INVALIDITY—PERSON OF ORDINARY SKILL IN THE ART

[Arendi's Proposal:

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the time of invention. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field;

(3) prior art solutions to those problems;

(4) rapidity with which innovations are made; and

(5) the sophistication of the technology.][22]


[Google's Proposal:

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the claimed invention as of the time of the invention. Thus, prior art must be evaluated from the perspective of one of ordinary skill in the field of the invention as of the time of the invention.]

---

[22] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 52, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions; *Board of Regents, The University of Texas System et al v. Boston Scientific Corporation*, C.A. No. 1:18-cv-00392-GBW, D.I. 326 at 26 (Jan. 31, 2023).

## 4.3    PRIOR ART

**[Arendi's Proposal:**

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether the Asserted Claims of the '843 Patent are anticipated or obvious.

Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. In order to qualify as prior art, the item must pre-date the earliest priority date of asserted claims of the '843 patent. I will explain the concept of earliest priority date in the subsequent section.

You must determine whether the references and items that Google argues are prior art are, in fact, prior art. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Google contends that the asserted art is prior art because it was published or made available to the public before the earliest priority date of the '843 Patent.

Google must prove by clear and convincing evidence that each piece of asserted art is prior art. This includes proving by clear and convincing evidence (1) that any "publication" prior art was actually available to the public before the earliest priority date of the claims at issue, and (2) that any "system" prior art was publicly known to or used by others in the United States before the earliest priority date of the claims at issue. ][23]

---

[23] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 47, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions.

## 4.4    INVALIDITY—ANTICIPATION

**[Arendi's Proposal:**

In order for someone to be entitled to a patent, the invention must actually be "new." If an invention is not new, it is said to be "anticipated." Google contends that the asserted claims of the '843 Patent are invalid because the claimed inventions are anticipated. Google must convince you of this by clear and convincing evidence.

Specifically, Google contends that only the alleged CyberDesk System anticipates the Asserted Claims of the '843 Patent. Google does not contend that any other alleged prior art discussed in this case anticipates the Asserted Claims of the '843 Patent.

Anticipation must be determined on a claim-by-claim basis. Google must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied— but must be disclosed in sufficient detail that a person having ordinary skill in the art of the invention, looking at that one reference, could make and use the claimed invention.

To the extent you should find that Google is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.][24]

---

[24] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 48, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions; *Board of Regents, The University of Texas System et al v. Boston Scientific Corporation*, C.A. No. 1:18-cv-00392-GBW, D.I. 326 at 28 (Jan. 31, 2023).

**[Google's Proposal:**

Google contends that the asserted claims of the '843 Patent are invalid for being anticipated by prior art.

A patent claim is invalid if the claimed invention is not new. For a claim to be invalid on the basis of anticipation because it is not new, all of its requirements must be met in a single prior art reference.

For the prior art to anticipate a claim of a patent, the disclosure in the prior art reference does not have use to the same words as the claim, but all the elements of the claim must be there, either stated or necessarily implied so that someone of ordinary skill in the field of the invention, looking at the one prior art reference, would be able to make and use at least one embodiment of the claimed invention.]**

## 4.5    INVALIDITY—OBVIOUSNESS

**[Arendi's Proposal:**

Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the invention.

Google may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art in the field of the invention at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the mere existence of each element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in the way that the claimed invention does, taking into account such factors as: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining

40

elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; and (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

Finally, in determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention was obvious, such as:

a.  Whether the claimed invention satisfied a long-felt need;

b.  Whether others in the field praised the claimed invention; and

c.  Whether others sought or obtained rights to the patent from the patent holder.

In determining whether the claimed invention was obvious, you must consider each claim separately.][25]

**[Google's Proposal:**

Even if an invention was not previously disclosed or described in prior art in full, a patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the patent's field of technology at the time of the invention. To decide whether the invention would have been obvious, you must consider (1) the level of ordinary skill that someone would have had in the field of the '843 Patent at the time of the invention; (2) the scope and content of the prior

---

[25] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 50-51, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions.

art; (3) any differences between the prior art and the claimed invention; and (4) objective evidence, if any, indicating that the invention would not have been obvious at the time it was made.

An invention is not necessarily obvious even if all of its elements appeared in the prior art. Many inventions are made of building blocks that were already known beforehand. You should consider, without hindsight, whether there was a reason for someone of ordinary skill in the art at the time of the invention to combine known elements in a way that the claimed invention did and whether the person of ordinary skill would have reasonably expected to succeed in doing so. Finding any of the following facts suggests the claimed invention would have been obvious:

1. the claimed invention was the predictable result of using prior art elements according to their known functions;

2. the claimed invention provides an obvious solution to a known problem;

3. the prior art showed or suggested that it was desirable to combine the elements claimed in the invention;

4. it would have been obvious to try to create the invention—for example, if there were reasons to solve a problem and there were a finite number of identified and predictable solutions; or

5. the claimed combination would have happened anyway due to design incentives or other market forces.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a. Whether products covered by the claim were commercially successful, and whether any commercial success was due to the merits of the claimed invention rather than due to

advertising, promotion, salesmanship, or features of the product other than those found in the claim;

b.  Whether the claimed invention satisfied a long-felt need; and

c.  Whether others sought or obtained rights to the patent from the patent holder because of the merits of the claimed invention.

Answering some or all of these questions 'yes' may suggest that the claimed invention would not have been obvious. Answering some or all of them 'no' may suggest that the claimed invention would have been obvious. Either way, though, these factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claim.

You should consider these factors along with all the other evidence in the case in deciding whether Google has shown that the claims would have been obvious.

Google bears the burden to prove facts relevant to obviousness by clear and convincing evidence. The ultimate question of whether a claim is invalid as obvious based on those facts is a question of law, however. Accordingly, you should apply the clear-and-convincing standard when resolving the parties' factual disputes, but not when deciding whether the facts as you find them show that the claims would have been obvious.[26]]

---

[26] **Google**: *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 114–15 (2011) (Breyer, J., concurring); *Addington v. Texas*, 441 U.S. 418, 423 (1979); *SSIH Equip. S.A. v. ITC*, 718 F.2d 365, 375 (Fed. Cir. 1983); *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 767 (Fed. Cir. 1989).

## 4.6    INVALIDITY—WRITTEN DESCRIPTION

[Arendi's Proposal:

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor invented the claimed subject matter and was in possession of the full scope of claimed invention as of the patent's effective filing date. Google contends that the Asserted Claims of the '843 Patent are invalid because the specification of the '843 Patent does not contain an adequate written description of the invention.

To succeed, Google must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the effective filing date of the '843 Patent would not have recognized that it describes the full scope of the invention as it is finally claimed in the Asserted Claims of the '843 Patent. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require

either examples or an actual reduction to practice of the claimed invention(s). However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.][27]

**[Google's Proposal:**

Google contends that the asserted claims are invalid for failure of the patent to provide an adequate written description of the claimed invention.

A patent's specification must describe in full, clear, and exact terms the nature and extent of the claimed invention. In the patent application process, the applicant may keep the originally filed claims, amend the claims, or add new claims. These changes may narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims are not broader than the written description that was provided in the original application.

The written description requirement is designed to ensure that the inventor invented the claimed subject matter and was in possession of the full scope of the claimed invention as of the patent's effective filing date.

In the patent application process, the applicant may keep the originally filed claims, amend the claims, or add new claims. These changes may narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims are not broader than the written description that was provided in the original application. The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed,

---

[27] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 38-39, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions.

would have recognized that the inventor had invented each and every limitation of what is now claimed by the time of filing, even though the description might not use the exact words found in the claim.

But merely showing invention is not sufficient; the ultimate question is whether the specification describes in full, clear, and exact terms the nature and extent of the claimed invention.

If you find by clear and convincing evidence that one or more of the claims challenged by Google lacked an adequate written description, you must find each such claim invalid.

## 4.7    INVALIDITY—ENABLEMENT

**[Arendi's Proposal:**

The patent law contains certain requirements for the part of the patent called the specification. One of those requirements is called the enablement requirement.  Google contends that the asserted claims of Arendi's '843 Patent are invalid because the specification does not "enable" the full scope of the claimed invention.  To succeed, Google must show by clear and convincing evidence that the '843 Patent specification does not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention as of the effective filing date, without undue experimentation.  If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive."  Some amount of experimentation to make and use the invention is allowable.  In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field;

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

(5) the nature and predictability of the field;

(6) the level of ordinary skill in the field; and

(7) the nature and scope of the claimed invention.

No one or more of these factors is alone dispositive.  Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the

evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the effective filing date, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.][28]

 

      **[Google's Proposal:**

A patent's specification must have been sufficient at the time of filing to enable a person of ordinary skill in the field of the patent to make and use the claimed invention by following the specification's teachings. In addition, the specification must have taught that person how to make and use the full scope of the claimed invention, including the purportedly novel aspects of the claimed invention.[29]

The specification must describe the invention itself, and the manner and process of making and using the claimed invention. It must do so in full, clear, and exact terms so that a person with ordinary skill in the field at the time of filing could have made and used the claimed invention without first making experiments of his or her own.[30]

If you find by clear and convincing evidence that one or more of the claims challenged by Google is not enabled by the specification, you must find each such claim invalid.]

---

[28] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 40, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions.

[29] **Google**: *See McRo, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1102 (Fed. Cir. 2020); *Trs. of Bos. Univ. v. Everlight Elecs. Co.*, 896 F.3d 1357, 1363–64 (Fed. Cir. 2018); *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997).

[30] **Google**: *See* 35 U.S.C. § 112, para. 1 (pre-AIA); 35 U.S.C. § 112(a) (post-AIA); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008); *Wood v. Underhill*, 46 U.S. 1, 4 (1847).

5.      **DAMAGES**

**5.1      DAMAGES GENERALLY**

**[Arendi's Proposal:**

If you find that Google has infringed a valid claim of the '843 Patent, you must consider what amount of damages to award Arendi for its infringement. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

Arendi has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Arendi establishes that it more likely than not has suffered. While Arendi is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

The damages you award must be adequate to compensate Arendi for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Arendi in approximately the same financial position that it would have been in had the infringement not occurred.][31]

**[Google's Proposal:**

If you find that Google infringed an asserted claim of the '843 Patent, and that the claim is not invalid, you must consider what amount of damages, if any, to award Arendi for infringement. On the other hand, if you find that each and every asserted patent claim is invalid, not infringed, or both, then you should stop and not reach any damages issues. By instructing you on damages, I

---

[31] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 55, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions.

am not suggesting which party should win this case, on any issue. If you find that Google has not

infringed any valid claim of the patent, then Arendi is not entitled to any damages.[32]

Arendi has the burden to establish the amount of its damages by a preponderance of the

evidence. In other words, you should award only those damages that Arendi establishes that it

more likely than not has suffered. While Arendi is not required to prove the amount of its damages

with mathematical precision, it must prove them with reasonable certainty, and its evidence must

be reliable and tangible: it cannot be speculative. You may not award damages that are speculative,

damages that are only possible, or damages that are based on guesswork.[33]

If you award damages, the amount should be adequate to compensate Arendi for the

infringement. Damages are not meant to punish an infringer. Your damages award, if you reach

this issue, should put Arendi in approximately the same financial position that it would have been

in had the infringement not occurred.]

---

[32] **Google**: *See* Federal Circuit Bar Association Model Patent Jury Instructions § 5.1, available at
https://fedcirbar.org/IntegralSource/Model-Patent-Jury-Instructions.
[33] **Google**: *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964);
*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324, 1335 (Fed. Cir. 2009); AIPLA Model
Patent Jury Instructions § 10.0 (2019).

## 5.2    REASONABLE ROYALTY—THE "HYPOTHETICAL NEGOTIATION" METHOD

**[Arendi's Proposal:**

Plaintiff Arendi alleges that it is owed a reasonable royalty as compensation for Google's infringement. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires you to determine the value added only by the patented features, because the royalty you award should be only for the incremental value added by the patented features.

One way to calculate a reasonable royalty is through the hypothetical negotiation approach. Under this approach, the reasonable royalty is the amount of royalty payment that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the

evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.][34]

**[Google's Proposal:**

The type of damages that Plaintiff Arendi seeks to recover as compensation for Google's infringement is in the form of a reasonable royalty. A reasonable royalty is the amount of royalty payment that the patent owner and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.[35] Arendi bears the burden of proving the appropriate amount of a reasonable royalty by a preponderance of the evidence.

In considering this hypothetical negotiation to determine a reasonable royalty in this case, you should focus on what the expectations of Arendi and Google would have been had they acted reasonably in their negotiations and had they entered into an agreement just before any infringement began. In determining this, you must assume that both parties believed the '843 Patent was valid and would be infringed and that Arendi and Google were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty

---

[34] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 64, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions; *Board of Regents, The University of Texas System et al v. Boston Scientific Corporation*, C.A. No. 1:18-cv-00392-GBW, D.I. 329 at 8-9 (Feb. 1, 2023).
[35] **Google**: *See* Federal Circuit Bar Association Model Patent Jury Instructions § 5.6, available at https://fedcirbar.org/IntegralSource/Model-Patent-Jury-Instructions.

would have resulted from a hypothetical negotiation just prior to the first infringement. Although evidence of the actual profits an alleged infringer made on any infringing features of the accused products may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.[36]

The parties agree that a reasonable royalty in this case would have taken the form of a lump-sum royalty. A lump-sum royalty is a one-time payment to cover all use of the patented invention.[37]]

---

[36] **Google**: *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984); Federal Circuit Bar Association Model Patent Jury Instructions § B.5.8 (May 2020).
[37] **Google**: *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009).

[**Arendi's Proposal:**

### 5.3   REASONABLE ROYALTY—RELEVANT FACTORS TO THE HYPOTHETICAL NEGOTIATION METHOD

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent(s):

1.      The royalties received by Arendi for the licensing of the patent-in-suit, to the extent those royalties prove or tend to prove an established royalty.

2.      The rates paid by each Defendant to license other patents comparable to the '843 Patent.

3.      The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.      Arendi's established policy and marketing program (if any) to maintain its right to exclude others from using the patented inventions by not licensing others to use the inventions, or by granting licenses under special conditions designed to preserve that exclusivity.

5.      The commercial relationship between Arendi and each Defendant (if any), such as whether or not they are competitors in the same territory in the same line of business.

6.      The effect of selling the patented product in promoting other sales of Google products, the existing value of the inventions to Arendi as a generator of sales of its non-patented items; and the extent of such derivative or collateral sales.

7.      The duration of the '843 Patent and the term of the license.

8.      The established profitability of the accused products; their commercial success; and their popularity.

9.      The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

10.     The nature of the patented inventions; the character of the commercial embodiments of it as owned and produced by or for the licensor; and the benefits to those who have used the inventions.

11.     The extent to which the infringer (Google) has made use of the inventions; and any evidence that shows the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

13.     The portion of the profit that arises from the patented inventions themselves as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor (such as Arendi) and a licensee (such as Google) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article or process embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.][38]

---

[38] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 66-68, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions; *Board of Regents, The University of Texas System et al v. Boston Scientific Corporation*, C.A. No. 1:18-cv-00392-GBW, D.I. 329 at 12-14 (Feb. 1, 2023).

### 5.4 DAMAGES—AVAILABILITY OF NON-INFRINGING ALTERNATIVES

In determining a reasonable royalty, you may also consider whether or not Google had acceptable non-infringing alternatives to the patented technology that were available [**Arendi's Proposal**: to it, the cost of such alternatives], and whether that would have affected the reasonable royalty the parties would have agreed upon. A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or a comparable result that does not infringe the patent. [**Google's Proposal**: A non-infringing alternative need not have been actually used to be relevant to the hypothetical negotiation. You may also consider the utility and advantages of the patented technology over any non-infringing alternatives that could be used for achieving similar results.[39]]

---

[39] **Google**: *See Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017).

**5.5 DAMAGES—APPORTIONMENT**

**[Arendi's Proposal:**

For any damages you award, the amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Google's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.][40]

**[Google's Proposal:**

Upon a finding of infringement, a plaintiff is entitled to compensation only for the infringer's use of the patented technology. As a result, a plaintiff cannot obtain compensation based on the whole infringing product when the patented technology makes up only a part of that product. In other words, any damages award must apportion (separate out) the value of the accused infringing products that is attributable to the patented technology.

In this case, that rule means that when you determine a reasonable royalty, you may not award damages based on Google's entire revenue from the accused infringing products. Instead, you may award damages based only on the revenue that is attributable to the use of the patented technology in the allegedly infringing features of the accused infringing products, and you must

---

[40] **Arendi:** *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 74, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions; *Board of Regents, The University of Texas System et al v. Boston Scientific Corporation*, C.A. No. 1:18-cv-00392-GBW, D.I. 329 at 15 (Feb. 1, 2023).

separate and exclude value attributable to non-infringing components and non-infringing features of those products. In other words, the royalty must be closely tied to the invention. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.[41] In addition, you may not award damages based on Google's revenue from products that you do not find to have infringed.[42]

Arendi bears the burden to establish the amounts attributable to the patented feature and not to other technologies, features, or aspects of the accused products.[43] Arendi's evidence must be reliable and tangible: it cannot be speculative. Any evidence of a reasonable royalty must carefully tie proof of damages to the claimed invention's role in the marketplace.[44]]

---

[41] **Google**: *See Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310–11 (Fed. Cir. 2018).
[42] **Google**: *See Enplas Display Dev. Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 411–12 (Fed. Cir. 2018).
[43] **Google**: *See Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 646–47 (1915); *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337–38 (Fed. Cir. 2009).
[44] **Google**: *See Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349–50 (Fed. Cir. 2018); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326–28 (Fed. Cir. 2014).

## 5.6 DAMAGES LIMITATION – EXTRATERRITORIAL ACTS

Activity performed outside the country is not infringement under United States patent laws. You may not find Google liable for, or award damages based on, any making, using, selling, or offering to sell the accused product in other countries.

## 6   DELIBERATION AND VERDICT

### 6.1 INTRODUCTION

Now let me finish up by explaining some things about your deliberation in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

**6.2 UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict. Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

**6.3 DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that, your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

### 6.4 SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, WeChat, WhatsApp, SnapChat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

Of course, you may examine the various devices entered into evidence in this case—just as you may examine other evidence from this case. But you should not use those devices to perform Internet research about this case or to communicate with anyone outside the jury room.

### 6.5    COURT HAS NO OPINION

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.