1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF DELAWARE

3    ARENDI S.A.R.L.,,              )
                                    )
4              Plaintiff,           )
                                    )   C.A. No. 12-1601-JLH
5     v.                            )
                                    )
6    MOTOROLA MOBILITY LLC          )
     (f/k/a MOTOROLA MOBILITY,)
7    INC.),                         )
                                    )
8              Defendant.           )
                                    )
9    ARENDI S.A.R.L.,               )
                                    )
10             Plaintiff,           )
                                    )   C.A. No. 13-919-JLH
11    v.                            )
                                    )
12   GOOGLE LLC,                    )
                                    )
13             Defendant.           )

14

15

16                    Thursday, April 6, 2023
                           3:00 p.m.
17                     Pretrial Conference

18

19                      844 King Street
                     Wilmington, Delaware
20

21   BEFORE: THE HONORABLE JENNIFER L. HALL
        United States Magistrate Judge
22

23

24   APPEARANCES:

25
                  SMITH, KATZENSTEIN & JENKINS LLP

```
 1                    BY:  NEAL C. BELGAM, ESQ.

 2                    BY:  DANIEL TAYLOR, ESQ.

 3                    -and-

 4

 5             SUSMAN GODFREY, LLP
               BY:  JOHN LAHAD, ESQ.
               BY:  KEMPER DIEHL, ESQ,
 6             BY:  MAX STRAUS, ESQ.
               BY:  SETH ARD, ESQ.
 7             BY:  KALPANA SRINIVASAN, ESQ.

 8                        Counsel for the Plaintiff

 9

10      APPEARANCES CONTINUED:

11

12             POTTER ANDERSON & CORROON
               BY:  DAVID ELLIS MOORE, ESQ.
13
               -and-
14
               PAUL HASTINGS
15             BY: ROBERT W. UNIKEL, ESQ.
               BY:  CHAD J. PETERMAN, ESQ.
16             BY:  MATTHIAS A. KAMBER, ESQ.
               BY:  ANDREA ROBERTS, ESQ.
17                        Counsel for the Defendants

18

19

20

21

22

23                    _ _ _ _ _ _ _ _ _

24

25                 P R O C E E D I N G S
```

1

2        (Proceedings commenced in the courtroom beginning at

3   3:00 p.m.)

4

5            **THE COURT:**  Please have a seat.  Let's get

6   situated.  I have this paper here.  They are still

7   building my courtroom, so I rotate around the building to

8   different places.

9            Good to see everybody.  Let's have appearances

10   please.

11            **MR. TAYLOR:**  Good afternoon, Your Honor.

12   Daniel Taylor, Smith Katzenstein & Jenkins for Arendi.

13   With me are cocounsel from Susman Godfrey, John Lahad,

14   Kemper Diehl, Seth Ard, and Max Straus.

15            **THE COURT:**  Good afternoon, everyone.

16            **MR. TAYLOR:**  On the phone we have Kalpana

17   Srinivasan, also from Susman Godfrey, and my colleague

18   Neal Belgam from Smith Katzenstein is here in the back.

19            **THE COURT:**  Great.  Good afternoon, everybody.

20            **MR. MOORE:**  Good afternoon, Your Honor.

21            **THE COURT:**  Hi.

22            **MR. MOORE:**  David Moore from Potter Anderson on

23   behalf of Google.  I'm joined by Rob Unikel, Chad

24   Peterman, and also Andrea Roberts is on the phone.

25   They're all from Paul Hastings.  We are also joined by

1    Vinny Ling, from Munger, Tolles, and Marisa Williams from

2    Google.

3            **THE COURT:**  Fantastic.  Good to see everybody.

4    Please have a seat.

5            All right.  So we're here for the pretrial

6    conference today.  This case, when it was filed, predates

7    my time on the court.  It's been going on for a while.  I

8    know there's a lot of history here, and we tried our best

9    to get up to speed in terms of how we got to where we are

10   sitting today, but I may have some questions as we go

11   through some of the disputes today about what exactly

12   we're talking about.  Clearly, you all know this case

13   better than we do.

14           So let me first, if we could, talk about the

15   outstanding motions.  One of them I'm ready to rule on.  I

16   don't need to hear argument.  The other, I have some

17   questions about.  So let's start with Google's Motion to

18   Strike Portions of Mr. Weinstein's supplemental expert

19   report regarding damages.

20           I reviewed the parties' submissions on that.

21   The Court's ruling is that Google's motion is going to be

22   denied.  I disagree with Google that the dispute was

23   properly brought as a motion to strike.

24           I agree with Arendi that what Google

25   essentially seeks is a pretrial ruling that infringement

1    is licensed when the accused apps are on Samsung devices

2    and that's an issue that, in my view, should have been

3    appropriately raised as a motion for partial summary

4    judgment.  And, of course, the deadline for filing those

5    motions has long passed.

6           And on the record that's before the Court,

7    there is no reason to think that that motion couldn't have

8    been filed before that deadline.

9           Arendi contends that Google didn't dispute in

10   its papers that Google had that Samsung agreement on which

11   it basis its license in its possession since July 2019.

12   That's two years before the summary judgment motion

13   deadline in March 2021, and the record establishes that

14   Mr. Weinstein offered a total damages calculation in his

15   reply report three months before the dispositive motions

16   deadline that included Google apps on Samsung devices and

17   a different figure that didn't, just as he did in his

18   supplemental report.

19          So I'm not persuaded that it expected -- that

20   Google expected Mr. Weinstein and Arendi would withdraw

21   damages calculations for accused apps on Samsung devices.

22   So I guess one question I have, which we can discuss maybe

23   later on in the case, do we need some sort of a -- to the

24   extent that Google wants to raise that issue in post-trial

25   briefing, do we need to have a special verdict form where

1    we get damages with or without Samsung devices or anything

2    like that?  Or is that what you essentially proposed?

3         **MR. UNIKEL:**  Well, Your Honor, I guess it begs

4    the question, given that you are not granting the motion,

5    now, we're going to be able to present that to the jury as

6    part of the trial, I assume, correct?  Whether or not the

7    license covers the accused devices or not.

8         **THE COURT:**  Let's hear from the other side.

9         **MR. DIEHL:**  Well, Your Honor, we don't think it

10   should be presented to the jury, both because the contract

11   is clear that there's no license to Google and because

12   they haven't raised an affirmative defense in their

13   pleadings.  It's too late to do that.

14        **MR. UNIKEL:**  We have raised it as part of our

15   pleadings.  And if it's, in fact, true that the agreement

16   is clear on its face one way or the other, then that would

17   be an issue for the Court to decide.  If it's not, the

18   mere fact that we didn't bring it as a summary judgment

19   doesn't mean that we somehow forfeited it for trial.

20        **THE COURT:**  Well, I agree that it hasn't been

21   forfeited as an issue.  I guess my inclination on it is

22   this:  If there is a dispute about contract interpretation

23   that one or the other of you feels that is an issue that

24   the Court needs to resolve, that's something that maybe

25   should go into the jury instructions.

1          So why don't you work together and decide what

2     your competing proposals are on that if there needs to be

3     a jury instruction on that.  The Court is not going to

4     decide as a matter of law whether or not the product is or

5     isn't licensed before the trial.  That's something that

6     can be raised after the trial, to the extent -- to the

7     extent that it was properly raised in the pleadings.  And,

8     of course, your objection on that basis is preserved.  We

9     will deal with all of that later.

10          If there's a reason to think that the jury

11     should be interpreting contracts, that's fine, then we

12     will have a jury instruction on that.  So talk to each

13     other and raise it.

14               **MR. DIEHL:**  That's fine with me.

15               **MR. UNIKEL:**  Thank you, Your Honor.

16               **THE COURT:**  Very good.  All right.

17          So Defendant's Motion for Clarification of

18     Claim Construction.  I have some thoughts on this.  Let's

19     hear from Google on this one, if you are ready to discuss

20     it.  It's okay if you want to rely on the papers, too.

21               **MR. UNIKEL:**  Oh, that's okay.  I'm ready to

22     discuss it, Your Honor.

23          Briefly, I assume that you don't want me to

24     just recover what's in the papers.

25               **THE COURT:**  No.  I understand.  Yeah.  I guess

1    my question is, the Court, in my view, when the case was

2    assigned to Judge Stark, very clearly ruled that there

3    doesn't have to be a determination of searchability as

4    part of performance of the claimed method.  That's what I

5    think he said.

6            Your motion says that there does have to be

7    determination at some point in time.  I am not really sure

8    what you mean by that.  Do you mean as part of performance

9    of the claim method or do you mean there has to be

10   something built into the software, and it says that a

11   predefined category has to be searchable?

12           **MR. UNIKEL:**  Well, part of the difficulty comes

13   with the language that you just quoted from Judge Stark,

14   which is that we're dealing with two types of claims here.

15   We have method claims, and we have computer readable

16   medium claims; 1 and 8 are method claims; 23 and 30 are

17   computer readable medium claims.

18           Part of the difficulty here is that the

19   claim -- first of all, the claim terms themselves provide

20   that a determination has to be made.  And the only

21   criteria in the claim language itself -- if you'd like me

22   to put it up, I can -- is that the information can be

23   searched for.

24           Judge Stark issued a construction that expanded

25   on the types of information and said predefined categories

1    of information.  But his construction also includes the

2    criteria that can be searched for in an information source

3    external to the document.

4              On summary judgment, we had raised the point

5    that at the time of analyzing the text, that the Google

6    products don't do that.  So on summary judgment, we were

7    seeking summary judgment that we did not infringe that, at

8    that element of the method claims or the computer readable

9    medium claims.

10             **THE COURT:**  Because there wasn't a

11   searchability determination as part of the performance of

12   the method, right?

13             **MR. UNIKEL:**  No.  When the text was being

14   analyzed.  What was not an issue at that point, because it

15   appeared from Judge Stark's actual construction, and it

16   still appears from Judge Stark's actual construction that

17   a determination must be made about whether the information

18   can be searched for while the document is being

19   displayed -- may I just put the claim for one moment, Your

20   Honor?

21             **THE COURT:**  Yeah.  That's a great idea.

22             **MR. UNIKEL:**  It's hard to look at it in the

23   abstract.

24             So here's Claim 1.  You can see this element

25   right here, the second element -- are you able to see

 1    that, Your Honor?

 2          **THE COURT:**  Yeah.  And I've got a copy myself

 3    that has that part highlighted.  Yep.

 4          **MR. UNIKEL:**  I made it a little bigger, if

 5    that's helpful.

 6          **THE COURT:**  Sure.

 7          **MR. UNIKEL:**  So this is one of the method

 8    claims, Claim 1.  And the second element is while the

 9    document is being displayed, analyzing a computer process

10    first information from the document to determine if the

11    first information is at least one of a plurality of types

12    of information that can be searched for.

13          So there has to be a determination, according

14    to this element, and the only criteria is whether it

15    belongs to a type of information that can be searched for.

16          Now, when we presented this on summary

17    judgment, we were focused on the -- during the analyzing.

18    Because this claim talks about analyzing.  Judge Stark, we

19    understood his ruling to say at the time of analyzing, the

20    determination does not need to be made.

21          The part that we think was not dealt with and

22    is unclear now from both the construction and the rulings

23    is:  But there still has to be a determination that this

24    information can be searched for at some point, otherwise

25    the only criteria is now gone.

1            And our understanding was so that determination

2     would be made at the time you're predefining the

3     categories.  If it is not happening during the analyzing,

4     then it would be happening when you said:  What kinds of

5     information should we be looking for?

6            **THE COURT:**  But let me ask you, though, so what

7     do you mean by "at the time of predefining the category"?

8     So the method doesn't have a step of predefining

9     categories; right?

10           **MR. UNIKEL:**  Only the construction does, Your

11    Honor.  So all of this is only made confusing by the

12    construction itself.  If you actually just look at the

13    language of the claim, it's clear that the determination

14    has to be made while the document is being displayed as

15    part of the analyzing step.  And the only criteria for it

16    is that can be searched for.

17           The confusion came up because of the

18    construction.  In the construction, Judge Stark added this

19    notion of predefined categories that can be searched for.

20    So if we're sicking with the construction, then the

21    question becomes:  When you're predefining the categories,

22    presumably you can decide what categories are you

23    choosing.  And the criteria is:  That can be searched for.

24           So you might say I can pick place names.  I can

25    pick phone numbers.  I can pick e-mail addresses.  But if

1    the criteria you are applying to predefine them is "pick

2    categories that can be searched for," then that might work

3    with the construction.

4         But if you don't have -- ever have a

5    determination that this type of information can be

6    searched for, then this part of the determination that's

7    expressly in the claims means nothing.  It would just be

8    determine if the first information is at least one of a

9    plurality of types of information, period.

10        **THE COURT:**  As a matter of fact, the

11   software -- and this is going to start to demonstrate that

12   I have less knowledge about what the evidence is going to

13   be in this case than you all do, but is there -- you keep

14   saying there has to be this determination.

15        Couldn't that be built into the architecture of

16   the software?  I mean, isn't that sort of -- you are free

17   to argue:  It's not built into our software that our

18   predefined categories are categories that can be searched

19   for.  You want to be able to argue that; right?

20        **MR. UNIKEL:**  Correct.  We want to be able to

21   argue that we don't make such a determination at any

22   point, from the predetermination to the architecture to

23   the analyzing.  It's never made, period, in our products.

24        **THE COURT:**  Right.  Well, Judge Stark has said

25   you don't get to say you don't infringe because we don't

1    make that -- because we don't make that determination as

2    part of our performance of this outline.  You can't say

3    that.  But you can still say:  I don't infringe because

4    our predefined categories are not, as a matter of fact,

5    categories that can be searched for.

6           **MR. UNIKEL:**  Your Honor, I think we can still

7    make that argument, yes, but that's a different argument.

8    Because there's a separate requirement that you perform a

9    search.  So if you couldn't perform the search, you

10   wouldn't need that separate element of this claim.  But in

11   this element of the claim -- and, frankly, Your Honor,

12   part of the difficulty is the existing construction that

13   we're working with from Judge Stark -- still contains this

14   language about determine that it can be searched for.

15          One of our concerns, and the reason for the

16   motion, is with this language, the actual claim language,

17   the construction, the jury is going to be left with a

18   question:  Well, how do I know if it's determined that it

19   can be searched for or not.  And what we were asking for

20   as part of the clarification is the existing construction

21   leaves open that question that's going to be unanswered by

22   anybody to the jury at the trial.  We believe the current

23   construction is, thus, confusing.

24          If the ruling is that the determination does

25   not ever have to include whether the information can be

1    searched for or not, then I think the construction would

2    have to be altered in some way so that it's not confusing.

3         That was our concern, Your Honor, because,

4    honestly, we thought that what was being dealt with in

5    summary judgment was only the question of when you are

6    doing the analyzing, are you determining at that moment in

7    time that the information can be searched for or not.

8         **THE COURT:**  What element, in your view,

9    requires a determination that it can be searched for?  The

10   same element is what you are saying?

11        **MR. UNIKEL:**  Yes.  But at a different time,

12   given the Court's construction.  The Court added

13   predefined categories does not exist in the claim

14   language.

15        **THE COURT:**  Right.

16        **MR. UNIKEL:**  Predefined categories was added as

17   construction by Judge Stark.  So then the question is that

18   under the assumption that the information is not being

19   determined to be searchable at the time of analyzing,

20   because now you have these predefined categories, now

21   there's a next question of:  Well, then, did you make the

22   determination to predefine the categories so that they can

23   be searched for.

24        In other words, you might be able to search for

25   a telephone number and so you might say:  I'm going to

1    choose telephone numbers because I've determined I can

2    search for those in a contact database.  And you might not

3    include URLs, for example, because you say:  I don't want

4    those to be searched for in a contact database or my

5    contact data doesn't support that.

6          So the point is, what has made it confusing is

7    two things:  The Court's addition of predefined categories

8    on the construction and then the ruling itself, which, as

9    we understood it, focused on when you're doing the

10   analyzing, do you need to make the determination at that

11   point in time.  And if there are predefined categories

12   where you've already made the determination, then that

13   would make sense that it wouldn't have to be at the time

14   of the analyzing.

15         **THE COURT:**  Right.

16         **MR. UNIKEL:**  But if it's never, not even at the

17   predefinition standpoint, then that would no meaning at

18   all.

19         **THE COURT:**  All right.  Thanks very much.  Let

20   me hear from the other side on this.

21         **MR. LAHAD:**  Good afternoon, Your Honor.  John

22   Lahad for plaintiff, Arendi.

23         The motion should be denied.  In our briefing,

24   we lodged several procedural grounds.  I think those

25   procedural grounds undermine Google's substantive

1    arguments.

2              Your Honor, claim construction was done in

3    2019.  That's when Judge Stark included this predefined

4    categories language in his construction.  There was no

5    confusion then.  There was no motion for reconsideration.

6    We litigated for three years plus based on that

7    construction.

8              Judge Stark issued his summary judgment ruling

9    a year ago.  Google said nothing for eight months until

10   this -- until we were before this Court.

11             So, bottom line is that the claim language

12   controls.  Judge Stark recognized that.  There is nothing

13   in the claim language that requires an actual

14   determination to be made as to whether or not the

15   information can be searched for.  It's not in the claims.

16   It's not in his construction.  He didn't add that to

17   anything.  And he rejected all of Google's arguments on

18   this point a year ago.  And Google is -- sorry, Your

19   Honor.

20             **THE COURT:**  Let me just -- yeah.  No, and I get

21   that.

22             **MR. LAHAD:**  Yeah.

23             **THE COURT:**  Putting that aside.  Say I agree

24   with you that I'm not going to revisit whether or not they

25   can say that the claim limitation isn't met because there

1    doesn't have to be a searchability determination as part

2    of that step of the claim method.  Assume I agree with you

3    we're not going to revisit that.  They are still free to

4    argue, aren't they, that they don't infringe because as a

5    matter of fact, they don't have predefined categories

6    because they don't have software that's built to have --

7    into the architecture that predefined categories can be

8    searched for.

9            **MR. LAHAD:**  I think that's fair game, Your

10    Honor.  That's the claim language -- that's the Court's

11    construction.  So they can argue we don't have predefined

12    categories, and so we don't infringe.  What they can't

13    argue --

14            **THE COURT:**  Predefined categories that can be

15    searched for, they can argue.  They don't have predefined

16    categories that can be searched for.

17            **MR. LAHAD:**  Correct.  They can't argue -- and

18    then Judge Stark said this, that we don't infringe because

19    there isn't an actual determination as to whether the

20    information can be searched for.

21            **THE COURT:**  As part of the claimed method --

22            **MR. LAHAD:**  Correct.

23            **THE COURT:**  -- performance of the claimed

24    method.

25            **MR. LAHAD:**  It's not the claim, and it's not in

 1    the Court's construction.

 2             **THE COURT:**  He mentioned, opposing counsel,

 3    that there's a difference between the method claims and

 4    the apparatus claims.  I actually looked at apparatus

 5    claims.  It looks like sort of a weird amalgamation of an

 6    apparatus claim and a method claim.

 7             I didn't see that as a distinction in terms of

 8    arguing this motion, did you?

 9             **MR. LAHAD:**  I did not either.  I think they're

10    essentially similar, similar for this purpose.

11             **THE COURT:**  Okay.  Anything else you wanted to

12    say?

13             **MR. LAHAD:**  Unless the Court has questions.

14    I've got, you know, as much argument as the Court wants,

15    but I'm happy --

16             **THE COURT:**  All right.  Go ahead and have a

17    seat.  We have a lot to get through.

18             So here's what my thinking is on this.  I

19    understand that defendants want to add or clarify the

20    Court's construction to add a requirement or a

21    clarification that there has to be a determination about

22    searchability at some point in time.

23             So just for the record, Judge Stark provided a

24    claim construction of this element back in August of 2019.

25    When I say "element," I mean this step of the claimed

1    method in Claim 1.  That is Docket Number 143 and 144.

2              Then in March 2022 in his opinions, ruling on

3    *Daubert* and summary judgment -- and that's at Docket 393,

4    he said the following, and I will just put it on the

5    record, so we're all clear.  At page 6 and 7, in part, he

6    says:

7              "Arendi seeks to exclude portions of

8    Dr. Shamos's expert report that are purportedly

9    inconsistent with the Court's claim construction.  The

10   portions at issue relate to the claim term 'to determine

11   if the first information is at least one plurality of text

12   or information that can be searched for.  The Court has

13   construed this claim term as to determine if the first

14   information belongs to one or more of several predefined

15   categories of identifying information; e.g., a name,

16   contact information, e.g., a phone number, a fax number,

17   or an e-mail address that can be searched for in an

18   information source external to the document.

19             "In his report, Dr. Shamos opines that the

20   claim term is not met because the accused devices do not

21   perform any analysis to determine whether the first

22   information can be searched for.

23             "The Court agrees with Arendi, will grant its

24   *Daubert* motion under the Court's construction an

25   infringing product must analyze to determine while a

1    document is being displayed whether the first information

2    belongs to one or more of several predefined categories of

3    identifying information or contact information.

4         "While the eligible predefined categories of

5    information must be categories that can be searched for in

6    an information source external to the document, the

7    Court's construction does not require that the

8    searchability determination of the first information must

9    be made by the accused infringing products while

10   performing this step of the claimed process.

11        "The counter interpretation of the term would

12   effectively leave the word "predefined" out on the Court's

13   construction.  In other words, the phrase 'that can be

14   searched for' modifies the allowable predefined categories

15   and does not specify a distinct determination to be made."

16        And then similarly, at Page 15, Judge Stark

17   points out that Google argued that the Court's

18   construction on the claim term does not require the

19   accused -- sorry -- "Arendi argues that the Court's

20   construction of this claim term does not require the

21   accused products to perform an additional analyzing step

22   to determine the searchability of the first information

23   for the reasons explained in connection with the Court's

24   grant of Arendi's *Daubert* motion, the Court finds the

25   asserted claim does not require that the searchability of

1    determination of the first information be made by the

2    accused products while performing this step of the claimed

3    process."

4            So in other words, I understood Judge Stark's

5    ruling to say that the step requires a determination as to

6    whether the information is part of the predefined

7    category.  There's no requirement that the step of the

8    claimed method also requires a determination that that

9    category is searchable, but it does have to be searchable

10   as a matter of fact.

11           So to the extent that Google's motion is taking

12   issue with Judge Stark's ruling, I agree with Arendi that

13   its motion is essentially a motion for reargument and is

14   procedurally inappropriate, especially coming eight months

15   after Judge Stark's motion on summary judgment and

16   *Daubert*.

17           And I agree with Arendi that *02 Micro* doesn't

18   stand for the proposition that you can reargue a claim

19   construction dispute that's already been settled.

20           So to that extent, I deny the motion.

21           So just to be clear for the record, Google's

22   motion requested that the Court order that it may argue at

23   trial that the accused products don't infringe because

24   they do not make searchability determination.

25           Judge Stark has ruled that Google may not argue

1    that, that there is no requirement for searchability

2    determination at that step of the claimed method.

3              If there's some other dispute about what some

4    other claim language means, we'll take that up at the jury

5    charge conference.  And we're not going to let the jury

6    construe any terms.  We will get it resolved at that point

7    in time.

8              So we can reraise an issue on claim

9    construction at the jury charge conference, if there is

10   one, but we're not going to revisit old arguments.

11             MR. UNIKEL:  May I just ask, Your Honor --

12             THE COURT:  Yes.

13             MR. UNIKEL:  You said there is something that

14   we can argue.  I just wanted to make sure -- I don't want

15   to violate any court order.

16             THE COURT:  At this point in time, I think we

17   are going to go just based on what the transcript said

18   rather than further confuse things.  Because I think we

19   heard some concessions from the other side about what they

20   don't oppose you arguing as well.  So we'll go with that.

21             MR. UNIKEL:  Understand.  Thank you, Your

22   Honor.

23             THE COURT:  All right.  Let's talk about the

24   motions in limine.

25             Let's hear Plaintiff's Motion in Limine Number

```
 1    1, which has to do with argument about the Apple license

 2    and the prior report regarding the Apple reasonable

 3    royalty.

 4              MR. STRAUS:  Thank you very much, Your Honor.

 5    Max --

 6              MR. UNIKEL:  I apologize.  I do have one quick

 7    question.

 8              THE COURT:  Yes.

 9              MR. UNIKEL:  There may be discussion of

10    specific numbers with regard to this, and Google's

11    in-house counsel is in the room.  I believe those might be

12    subject to the protective order.  And so --

13              THE COURT:  I think let's just leave numbers

14    out of this.  I think we can argue this portion -- I

15    think -- I think we can probably do this without referring

16    to specific numbers.

17              MR. UNIKEL:  Okay.

18              THE COURT:  Yep.

19              MR. STRAUS:  I think that's right, Your Honor.

20              THE COURT:  Okay.  Great.

21              MR. STRAUS:  Max Straus from Susman Godfrey for

22    Arendi.  This Court should preclude Google's proposed use

23    of Mr. Weinstein's reasonable royalty projection from the

24    Apple case, separate lawsuit.  That projection has no

25    probative value in this case, and it will greatly
```

1    prejudice the jury against Mr. Weinstein or Arendi, and

2    furthermore, it's going to require a time-consuming trial

3    within a trial.

4            So introducing Mr. Weinstein's damages model

5    is, as I said, going to have an overwhelmingly prejudicial

6    effect.  And once the jury hears -- and I will leave

7    numbers out of this -- once the jury hears the headline

8    charge that Mr. Weinstein was off by a very large

9    percentage in their view, the jury is not going to hear

10   anything else, and they're going to be left with the false

11   impression that Mr. Weinstein failed to do what he was

12   never asked to do, which was to project the amount that

13   Arendi settled -- I'm sorry -- that Arendi and Apple would

14   settle for.

15           Now, Mr. Weinstein's reasonable royalty

16   estimates have no bearing on Mr. Weinstein's credibility

17   in this case.  There are a few reasons for that, Your

18   Honor.

19           The first is that neither Mr. Weinstein or

20   Google's expert, Mr. Kidder, relied on Mr. Weinstein's

21   opinions in *Apple* as an input into their models here.

22   Past damages models from other cases simply are not a

23   *Georgia Pacific* factor.

24           Second, Mr. Weinstein's damages model in this

25   case is different from the one that he advanced in Apple,

1    and one of the reasons for that is that the current

2    damages model accounts for the Apple settlement.  In fact,

3    it brought down our reasonable royalty rate by quite a

4    bit -- I think to our client's chagrin.

5            And then, third -- and I think this is perhaps

6    most important, Google's theory rests on an unproven

7    assumption that all of the units at issue in the Apple

8    lawsuit -- in the Apple lawsuit were infringing units.

9            In fact, we came to an agreement with Apple to

10    settle in the midst of a summary judgment hearing.  That

11    resulted in an adverse ruling against us on the meaning of

12    term "document."  And again, without referring to numbers,

13    would have wiped out a very, very substantial portion of

14    our damages in Apple.

15            In order to explain that to the jury, we're

16    going to have to go through and have a mini trial about

17    Apple and about Apple's products.

18            Now, Google advances an alternate theory of

19    relevance in their opposition.  And what they say is that

20    we need the Apple damages projection because it

21    provides -- and I quote -- "reveals both Arendi's and

22    Apple's negotiating positions and understandings and will

23    provide critical context to the jury in evaluating the

24    final Arendi/Apple settlement terms."

25            Now, that background theory of relevance fails

1    for a number of reasons.  The first and probably the most

2    important is that Google has no evidence connecting

3    Mr. Weinstein's damages model in Apple to anything that

4    was discussed, to any negotiations between the parties.

5         To the extent that there were conversations,

6    they are protected by Rule 408, they're just not in this

7    case.  It's purely speculative.

8         Second, the defendants aren't truly looking to

9    provide context.  If they were, we wouldn't just be trying

10   to bring in Mr. Weinstein's damages opinion.  We'd also be

11   bringing in Apple's damages opinion.  We'd also be

12   bringing in evidence about how the products work and what

13   products would have been lost.

14        What Google is looking for is one prejudicial

15   slice of what they call "background context."

16        Third, the parties' negotiations aren't even

17   relevant to a reasonable royalty.  What matters is the

18   agreement the parties actually reached.  And that

19   agreement is the Apple settlement agreement that's in this

20   case.  And the number reached there, which I won't say, is

21   what is going to drive considerations for all parties.

22        Now, at the end of the day, Google is

23   absolutely free to probe the differences between the

24   actual royalty rate that Apple agreed to and

25   Mr. Weinstein's projected rate of what a reasonable

1    royalty would be in this case.  Those numbers, all of that

2    is in Mr. Weinstein's report.

3         **THE COURT:**  But not the projected royalty that

4    you thought that Apple would have to pay, that's what

5    you're saying?  The new one?

6         **MR. STRAUS:**  Correct.

7         **THE COURT:**  Okay.

8         **MR. STRAUS:**  Correct.  The amount that -- so

9    his report in the Apple case, that's not in this case.

10   It's not his current report.  His projection of what he

11   said Apple should pay a couple of years ago, that's not in

12   his Google report.

13        What is in the Google report is what Apple

14   settled for, what his -- what the effective royalty rate

15   of that settlement was, and then the admittedly higher

16   reasonable royalty rate that he says Google would have

17   agreed to, should have agreed to during the hypothetical

18   negotiation.  And those numbers are here.  Those are fair

19   game for cross-examination.  But the contrast between a

20   damages model in Apple and a settlement in Apple, that's

21   purely prejudicial.

22        **THE COURT:**  Can I ask you -- I know you just

23   said that the damages model that he came up with for the

24   Apple report before the settlement is different than the

25   model that he uses now because it takes into account the

1    Apple settlement, which is clever.

2            But would you say that the methodology he used

3    to come up with the number in his expert report for Apple

4    is the same methodology as he uses here?

5            **MR. STRAUS:**  Yes, Your Honor.  And I'm happy to

6    go into the methodology.

7            **THE COURT:**  That's fine.  Thank you very much.

8    Let's hear from the other side.

9            **MR. PETERMAN:**  Thank you, Your Honor.  Chad

10   Peterman from Paul Hastings.

11           If the arguments that counsel just made were

12   correct, then the Apple agreement would not be usable in

13   this case.  They are the ones who induced the Apple

14   agreement.  They are the ones who are relying upon it for

15   the reasonable royalty and showing what a hypothetical

16   negotiation would be.

17           Counsel talked about, you know, what's not in

18   the Google report.  I want to talk about what's in the

19   Google report.

20           Mr. Weinstein specifically says statements

21   regarding the context of the litigation status, talks

22   about there being pending *Daubert* motions, pending summary

23   judgment motions, talking about there being significant

24   risk of adverse outcomes regarding summary judgment.

25           Then he goes on to go support a four times, 4X

1    multiplier that Mr. Weinstein uses, where he says that

2    "Arendi believed there was 50 percent chance of losing at

3    summary judgment and 50 percent chance of losing at trial

4    and 50 percent chance of losing at appeal."

5          These are numbers that we believe are just, you

6    know, inflated numbers.  And the underlying Apple

7    agreement and the difference between -- the very

8    substantial difference between what Mr. Weinstein said in

9    his report on Apple versus what Arendi finally agreed to,

10   I think really blows out of the water any argument that

11   Arendi really had a good-faith basis for saying 50 percent

12   chance of losing at trial, 50 percent chance losing at

13   appeal, 50 percent chance of losing at summary judgment.

14         We believe this is all relevant, directly

15   relevant to credibility that the jury can look at and

16   assign to Mr. Weinstein's arguments.

17         We're not looking for a mini trial within a

18   trial.  We don't even have access to the Apple expert

19   report.  All we got was the final number.

20         That final number is something that we would

21   like to cross-examine Mr. Weinstein with and show that the

22   very, very significant difference between that final

23   number and the number that Arendi and Apple ultimately

24   agreed to completely undermines his credibility.

25         **THE COURT:**  All right.  Thank you very much.

1    So I'm ready to rule on this portion of the dispute.

2              I fully appreciate Arendi's arguments on this,

3    and it would be much better taken if Arendi, itself,

4    wasn't seeking to introduce the Apple settlement as part

5    of its case for damages.

6              So the way I see this is if Arendi wants to

7    introduce the Apple licenses having some relevance to

8    determination of a reasonable royalty and Arendi is going

9    to do that using the same expert that previously authored

10   an opinion on a reasonable royalty that Apple would pay,

11   and that prior opinion uses the same methodology that its

12   expert is using in this case, which I think we just heard,

13   then defendant gets to ask him about that opinion on

14   cross.

15             To the extent that Arendi thinks it's

16   irrelevant or distinguishable or not probative, that's

17   evidence that you can get from your witness.

18             Could it be confusing to the jury?

19             Absolutely it could.

20             But you are the one wanting to introduce that

21   agreement, so it would be a different case -- I think it

22   would be lot closer case if Arendi wasn't, in fact,

23   relying on the Apple settlement as evidence of what a

24   reasonable royalty could be, or as part of its model.

25             So that motion is going to be denied.

1        **THE COURT:**  All right.  Let's move to

2   plaintiff's second motion.  Maybe I will just ask some

3   questions about that.  I'm not really sure what plaintiff

4   is asking for specifically here.

5        **MR. DIEHL:**  Yes, Your Honor.  Kemper Diehl from

6   Susman Godfrey on behalf of Arendi.

7             Yes.  It's specific.  There are seven technical

8   witnesses on Google's witness list.  It's four long-time

9   Google engineers, two long-time Apple engineers and a

10  university professor.  They are going to have credibility

11  with the jury.

12            We are worried that they are going to make

13  opinion statements that should not come in.  There's no

14  dispute they are not qualified as experts.  And under

15  Rule 71, they can't make opinion statements about whether

16  the patents infringed, whether it's valid or invalid on

17  prior art, about what claim terms mean.  We think those

18  things should not come in.  Of course, there should be no

19  dispute on that.

20            We are worried about it because of what we saw

21  in the depositions.  Google took depositions of two of

22  these witnesses, Mr. Pagallo and Mr. Miller, two of the

23  Apple engineers and it asked, point blank hypothetical

24  questions.

25            They asked Mr. Miller:  How long would it take

1    for you to make a program that does a specific

2    functionality?  He said that it would only take 30

3    minutes.

4              Those things are opinions that should not come

5    in.  And we're worried that if they do, we won't be able

6    correct them with a correcting --

7              **THE COURT:**  So some of these have to do with

8    some deposition designations that are going to be read at

9    trial; right?

10             **MR. DIEHL:**  Yes.

11             **THE COURT:**  And so to the extent that there are

12   specific disputes that can't get resolved, we'll talk

13   about the procedure to raise those and get them resolved.

14             Do you want me to rule on the three that are in

15   here now -- or at least the one that was in here now in

16   the body of the brief where the attorney says, "I'm going

17   to ask you a hypothetical question"?

18             I don't have the context.  Were they talking to

19   somebody who knows how that software works because they

20   designed it or had firsthand factual knowledge about how

21   that software works?

22             I mean, they said it was a hypothetical

23   question; might not have been a hypothetical, might have

24   just been a question.

25             **MR. DIEHL:**  Right.  And I think we can defer

1    the specific designations until later.  There is a process

2    for that.

3              But my point is those were a clue to us at what

4    might happen with live testimony.

5              **THE COURT:**  Okay.

6              **MR. DIEHL:**  We haven't heard —— we haven't

7    heard from them.  We don't know what questions Google is

8    going to ask.

9              **THE COURT:**  Okay.

10             **MR. DIEHL:**  So we're worried they might ask

11   similar questions ——

12             **THE COURT:**  Of their live witnesses?

13             **MR. DIEHL:**  Of their live witnesses.  Yes.

14             **THE COURT:**  All right.  All right.  Have a

15   seat.

16             **MR. DIEHL:**  Thank you.

17             **THE COURT:**  Let's hear from Google.

18             **MR. KAMBER:**  Thank you, Your Honor.  Mathias

19   Kamber on behalf of Google.

20             I think you've already hit on the last point,

21   which is we can do a lot of this by way of deposition

22   designations.

23             I think the hypothetical question that's the

24   example in the motion in limine is —— I think that was a

25   turn of phrase.  This was a witness from Apple who was

1      clearly speaking about the technology that she had worked

2      on at Apple.  And I think that's pretty clear from the

3      context of the other questioning at Pages 2 and going over

4      to 3 of that particular motion.

5              I think your other concern really is the

6      broadbrush -- what is the relief being sought here?  It's

7      almost like they're asking:  Well, only submit or only

8      bring in relevant evidence or don't, you know, try to

9      bring in hearsay if there's no hearsay exception.

10             Having a ruling on this in a broadbrush sense I

11     fear is going to lead to -- lead to more issues than it's

12     going to resolve in the first place.  There are --

13         **THE COURT:**  So the opposing counsel expressed a

14     generalized concern that you might be asking lay witnesses

15     questions about infringement or validity.

16             Do you want to put something on the record

17     about that?

18         **MR. KAMBER:**  I would, Your Honor.

19             There's no looming threat of any fact witness

20     presenting expert testimony.  They certainly haven't

21     identified any.  We do have four Google engineers on our

22     witness list.  Two, I think, Apple engineers, and a prior

23     art witness, who is a university professor, as they

24     mentioned.

25             Arendi seems to want to prevent them from

1   testifying because their knowledge is technical and

2   specialized; and, therefore, only an expert can testify

3   about specialized and technical facts.

4           That doesn't make any logical or practical

5   sense here in a patent case where we're going to have

6   people who developed the accused software and the

7   functionality talking about it.

8           None of them is going to be talking about how

9   they don't infringe.  None of them is going to be offering

10  an opinion about that, or invalidity, for that matter.  We

11  have experts who will be presenting that by way of opinion

12  testimony and walking through the claim language.  We're

13  not planning to do that with any single fact witness.  But

14  they will talk about how the system works, and that will

15  hopefully be relevant to the infringement questions that

16  the jury will ultimately have to decide.

17          **THE COURT:**  And just to be clear, the folks

18  that will be talking about how the system works have

19  knowledge of how the system works besides knowledge they

20  acquired for purposes of this litigation?

21          **MR. KAMBER:**  That is correct, Your Honor.  It's

22  not that they studied and then were presented.  These were

23  the engineers who developed the functionality, worked with

24  the functionality, and were ultimately the 30(b)(6)

25  witnesses on the functionality who were deposed in that

1      capacity.

2              **THE COURT:**  All right.  Very good.  Thank you

3      very much.

4              All right.  So plaintiff's Motion in Limine

5      Number 2 is going to be denied without prejudice to

6      reraise any particular issues with deposition designations

7      and the process that we'll discuss later on in the

8      hearing.

9              **MR. UNIKEL:**  Your Honor, may I be heard on one

10     point that relates directly to that about deposition

11     designations?

12             **THE COURT:**  Let's talk about our process and

13     then we will see whatever there is --

14             **MR. UNIKEL:**  Great.

15             **THE COURT:**  -- left from that.

16             **MR. UNIKEL:**  Thank you, Your Honor.

17             **THE COURT:**  Otherwise, I will get outside of my

18     checklist.  We will devolve into chaos here.

19             All right.  So let's talk about plaintiff's

20     Motion in Limine Number 3, which is to exclude argument,

21     testimony, or references inconsistent with the Court's

22     prior orders or the parties' stipulations.

23             So to the extent this is about defendant's

24     motion for clarification of claim construction, I think

25     that's resolved.

 1          Is there anything left about this?

 2          **MR. DIEHL:**  There are a couple things.  So,

 3     yeah, we think they are discrete items that they should

 4     not be bringing into the trial.

 5          One is the Court's ruling on prior art that's

 6     estopped on the basis of the inter partes review petition.

 7          Broadly, Your Honor, this is about precluding

 8     testimony that's inconsistent with the Court's prior

 9     orders and a specific stipulation.  I will just go through

10     those items.

11          One is the Court's order on prior art estoppel.

12     The Court ordered that certain prior art is estopped,

13     selection, recognition agent and Endora.  Those cannot

14     come into the trial, and they should be excluded under

15     this motion.

16          Also, the Court will need to rule on other

17     prior art that should also be estopped based on the

18     inter partes review estoppel before trial, and any --

19     those should also be excluded.

20          Second, any additional arguments about the

21     meaning of claim terms.  If we hear more about what claim

22     terms mean -- we have seen Google throughout this case

23     reraise claim construction issues.  We don't think those

24     should come in testimony at trial.

25          And then the third thing is there's a specific

1    stipulation that Google provided as the representative

2    product stipulation.  That was provided in 2020 to

3    streamline discovery.  We have been relying on that

4    throughout discovery.

5            THE COURT:  Sorry.  What was the last one?

6            MR. DIEHL:  It's a representative product

7    stipulation that Google provided in 2020.

8            And we're concerned that that stipulation

9    provided that a specific pixel device that Google

10   produced -- one to us and Google has one -- is

11   representative of all devices that are running versions of

12   Android 8 and versions of Android 9.

13           We're concerned there may be some argument or

14   insinuation at trial that it doesn't represent all

15   versions of Android 8 and versions of Android 9.  So we

16   want to preclude anything inconsistent with that.

17           Really, there's nothing controversial here.

18   This is just to make sure we don't run into these problems

19   because there are some clear prior court orders and a

20   prior stipulation that should not be transversed.

21           THE COURT:  All right.  Thank you very much.

22           MR. DIEHL:  Thank you.

23           THE COURT:  Counsel?

24           MR. UNIKEL:  Your Honor, it's a bit difficult

25   to respond because it's very abstract.

1          I can tell you on the record Google has no

2     intention of going against any court orders, going against

3     any rulings, or going against any stipulations.

4          In the absence of some specific concern about

5     either a piece of testimony or something in the pretrial

6     order, the materials that we submitted, we don't really

7     know what they're referring to particularly, and so all I

8     can tell you is that we have absolutely no intention of

9     violating any Court orders or prior stipulations.

10         **THE COURT:**  All right.  Thank you very much.

11         Okay.  So here's what I'm going to say about

12    this.  This motion is going to be denied, not because

13    Google is free to do whatever it wants, but because I

14    don't think we need a Court order right now on this.

15         So we heard from counsel about prior art

16    estoppel and other prior art that's estopped.  The way I

17    see this happening is if there's some piece of prior art

18    that appears on their exhibit list for that witness that

19    you think shouldn't be coming in, we will be able to deal

20    with that with the objections to exhibits the day that we

21    deal with it.

22         Counsel?

23         **MR. LAHAD:**  Can I speak to this, Your Honor?

24         **THE COURT:**  Sure.

25         **MR. LAHAD:**  One of the issues we have is we

1    don't know what their invalidity case looks like.  We

2    think -- we're pretty confident, that they're going to --

3    that Google is going to assert prior art references that

4    we think are subject to 35 U.S.C. 315(e), the IPR estoppel

5    provision.

6             It's an important issue for us, Your Honor, and

7    I don't think, respectfully, that we can take it up in the

8    middle of trial.

9             **THE COURT:**  Didn't we have another part of the

10   pretrial order that said they were going to give you their

11   combinations?

12            **MR. LAHAD:**  Yes, Your Honor.  It's paragraphs

13   92 to 94.

14            **THE COURT:**  So what's the problem then?

15            **MR. UNIKEL:**  Your Honor, there was a question

16   about when and how many we're giving.  Part of the

17   difficulty -- and counsel and I had a conversation about

18   this last week -- we were saying until we know how long

19   the trial is going to be, we don't know how many hours

20   there are and, therefore, how much we can present or not

21   present.  And until we know which claims they are actually

22   going to trial with, because there was question about

23   whether they're going to be going to trial with Claims 1

24   and 8, which are the method claims, or just the computer

25   readable medium claims, we can't decide which particular

1    combinations we're going to be presenting.  But as soon as

2    we have clarity on those two issues, we are happy to come

3    up with a reasonable schedule.

4              **THE COURT:**  All right.  Counsel?

5              **MR. LAHAD:**  Google right now, sitting here

6    today, Your Honor, knows exactly what prior art references

7    and combinations it is going to assert at trial.

8              **THE COURT:**  It's a maximum of eight, though.

9    It's not like we're, you know, dealing with -- it's --

10   eight is too many for you to tell me which references are

11   at issue which you think should be estopped?

12             **MR. LAHAD:**  I don't know what the eight

13   references and combinations are, Your Honor.  That's my

14   problem.

15             **THE COURT:**  Oh.  Counsel, do you what eight it

16   is?

17             **MR. UNIKEL:**  I believe I do.  Again, a little

18   bit depends on how much we have time for at trial and a

19   little bit depends on whether or not we have the method

20   claims or just the computer readable medium claims.

21             Because if there are four claims, we're going

22   to have different combinations that need to be entered

23   than if there's just the two claims.

24             As we've discussed, is when we know what claims

25   we're going with, we're ready to disclose, I think, which

1    combinations we're going to go with, assuming we have the

2    time for it.

3                 THE COURT:  But the maximum is eight, though;

4    right?

5                 MR. UNIKEL:  Correct.  Totally.

6                 THE COURT:  So when can you give them the

7    eight?

8                 MR. UNIKEL:  I can probably give them the eight

9    today, though --

10                 MR. LAHAD:  That would be great, Your Honor.

11                 MR. UNIKEL:  -- though I also would want to

12    know what claims we're going to trial on.

13                 THE COURT:  Can you tell him what claims you're

14    going to trial on?

15                 MR. LAHAD:  There's only four.

16                 THE COURT:  Four.

17                 MR. UNIKEL:  Okay.  There was some question

18    before today, before this moment, as to whether or not we

19    were going on all four or going on just two of the four.

20    I suspect that by the time we get to trial, we're going to

21    be going on two of the four instead of four.

22                 THE COURT:  Well, these are not huge numbers.

23                 MR. UNIKEL:  Right.

24                 THE COURT:  So let's -- he said four, it's

25    eight.  If he cuts down less than four and then you know

```
 1    that you're going to cut down, too, maybe you can tell

 2    him.  I just can't imagine that there's going to be that

 3    many references we are discussing whether or not they're

 4    estopped.

 5              MR. LAHAD:  Well, there's going to be at least

 6    one.

 7              THE COURT:  Okay.

 8              MR. LAHAD:  So I don't know what else is out

 9    there.  I don't know if --

10              THE COURT:  That one would have been good to

11    know.

12              MR. UNIKEL:  I am happy to address it.  What is

13    the one?

14              THE COURT:  Let's make sure all of our

15    discussions are directed to the Court and have the Court

16    --

17              MR. UNIKEL:  Oh.  I'm sorry.

18              THE COURT:  -- discussing with those.

19              Let's table this for now.  Okay?  Let's have a

20    meet-and-confer after the pretrial order today, and the

21    parties can write a letter about exactly what prior art

22    references if we need to get this narrowed down even more.

23    I kind of don't think -- I'm not going to say any more

24    than that.

25              Anything else we need to talk about with
```

1    respect to this today?

2            **MR. LAHAD:**  No.  I understand that I get eight

3    references today or eight identifications today; is that

4    correct?

5            **THE COURT:**  Tomorrow can you give him eight?

6            **MR. UNIKEL:**  Tomorrow.  I should be able to

7    confer with the team by tonight.

8            **THE COURT:**  Okay.  All right.  Very good.

9            **MR. LAHAD:**  Thank you, Your Honor.

10            **THE COURT:**  Okay.  So I thought that was going

11    to be easier than it was.

12            So that is the prior art estoppel issue.  If

13    we've got particular pieces of prior art that are part of

14    the eight combinations that you don't think they should be

15    able to raise, we will get those -- we'll get those raised

16    in the letter we get from you, I guess.

17            But if there are ones that sneak up at trial

18    that turn up in somebody's witness folder that you think

19    they shouldn't be able to discuss -- that really shouldn't

20    happen -- but definitely we will deal with that.

21            And then we've got meaning of claim terms.  We

22    discussed that.  If there's a question about whether or

23    not somebody is arguing the meaning of a claim term to the

24    jury, we will take that up and make sure it gets into the

25    jury instructions.

1          As we all know, there is an instruction already
2     that says that the Court is supposed to be the interpreter
3     of the claim terms.
4          And then, finally, there was a representative
5     product stipulation.  I didn't hear that that was going to
6     be renegotiated.  So I just don't think there's any reason
7     for this order at this point.
8          So let's turn to Google's Motion in Limine
9     Number 1.  I'm a little confused about exactly what this
10    is.  It looked like the main problem was this statement
11    about selling user data in this supplemental report.  But
12    then it seemed to kind of switch into something more broad
13    about advertising.
14         **MR. UNIKEL:**  I think it was based on that
15    reference in the Supplemental Reply Report.  There was
16    added there an Electronic Frontier Foundation article, was
17    cited in a footnote to that Supplemental Reply Report.
18         That article from the Electronic Frontier
19    Foundation includes a lot of discussion of user
20    monetization and Google's advertising revenue and other
21    things that have nothing to do with the revenue of the
22    products in the case.
23         So our concern was -- and when we asked
24    Mr. Weinstein about it at his deposition, he agreed that
25    he had no independent evidence from the case about

1    anything that was in this article; he just cited this

2    article.

3              **THE COURT:**  I got it.  So you were worried --

4    is this article on their exhibit list?  You're worried

5    they are going to try to introduce this article?

6              **MR. UNIKEL:**  Mr. Weinstein has already

7    indicated that he plans to talk about this article or, if

8    not this article, then the conclusions he drew from this

9    article which, according to him, are that Google has an

10   interest in selling these products so that it can monetize

11   user data and turn that into advertising revenue.

12             We have the exact revenue and profit numbers

13   from -- in this case for these accused products.  Those

14   were used by Mr. Weinstein in his damages model.  There's

15   zero any type of advertising revenue, user monetization

16   revenue, anything like that that's part of his model.

17   This was thrown into his reply report.  As he says, a

18   response to our extent of use point.

19             Our expert says the extent of use of these

20   particular products is defined by their revenue, is

21   defined by their profit, and he threw this in at the last

22   moment to talk about other things that have nothing to do

23   with anything in the case.

24             Our concern is that whether he introduces the

25   article itself or whether he just says "based on materials

1    that I have studied, I believe that Google is monetizing

2    user data and is -- makes a lot of money from advertising

3    that relates to these products," that would be very

4    prejudicial to us because our advertising business, which

5    is very different than this business, makes a lot of

6    money.  And that pile of revenue, which has nothing to do

7    with the damages model here, could really confuse the jury

8    into believing they should give a big number because we

9    make a lot of money from another part of the business.

10         **THE COURT:**  Got it.  So there are a couple of

11   things going on here.

12         So one thing that's going on that you're

13   worried about -- just from the motion -- that you don't

14   want them telling the jury that Google is selling people's

15   data.  There's a prejudicial aspect to that.

16         **MR. UNIKEL:**  Correct.

17         **THE COURT:**  The other thing I'm hearing from

18   you is that this particular article has got some really

19   big numbers that the jury shouldn't see.

20         **MR. UNIKEL:**  Correct.

21         **THE COURT:**  Their view was, look, we talked

22   about what a reasonable royalty would be with some other

23   companies that sell their products for a price and that

24   your expert said something to the effect of, or the gist

25   of it was:  Well, we are giving this stuff away for free.

1    And they want to be able to respond:  Yeah, but they make

2    their money in other ways.  You can't look at what they're

3    selling it for.

4         And they can generally make that point, can't

5    they?  You just don't want it with that number and with

6    that reference to selling people's data; is that fair?

7         **MR. UNIKEL:**  Well, first of all, Your Honor,

8    they asked for, received, and cite to no evidence from the

9    case to make that connection.  The only thing they are

10   trying to base that connection on, which came out at the

11   very end of this reply, is their theory that that's the

12   case from third-party articles that weren't even produced

13   as part of the case that are completely hearsay.  We've

14   never even -- we don't even know who the author of the

15   article is.  It doesn't have a name on it.

16        So my concern is if they had to ask for the

17   information in the case and we had had a proper dispute

18   about whether that was appropriate or not for discovery in

19   the case, that would be one thing.

20        There is zero evidence of Google's advertising

21   revenue or monetization of data, of anything, in the

22   discovery in this case.  So to say now, we're going to

23   take our own sort of personal beliefs as an expert about

24   what we think Google is doing or rely on an article that

25   was not produced by anybody in the case and has no

1    verifiable information from Google in it, is going one

2    step too far.

3         If they had wanted to pursue that as a damage

4    theory, they could have done it by taking discovery on it.

5    They didn't.  You can't just add that as a theory during

6    expert discovery and then say, and now we get to prejudice

7    the jury by saying they are using this data.

8         **THE COURT:**  Right.  But just going back to the

9    specific question, are you or are you not, or your expert,

10   making the point that don't compare us to these other

11   defendants who took a license because they charge a lot

12   and we don't?  Is your guy going to say that?

13        **MR. UNIKEL:**  No.  He's not going to say that.

14   But what he is going to say is:  Here is the pile of money

15   that we make from these products, which has been verified

16   by Google's data produced in the case; here is the amount

17   of money that the other parties, according to their 10Ks,

18   et cetera, that were produced in the case, make on the

19   products that were accused in that litigation.  If you're

20   comparing apples to apples -- so if you want to see how

21   much did Apple pay for their pile of revenue that they

22   realized, we can look at that.  And if you want to look at

23   Google, here's the pile of revenue that Google made.  We

24   should look at what is the comparison now to that pile of

25   revenue.

1          He will say that.  But he's not going to make

2   any statements about -- at trial about giving anything

3   away or we want to do this for free or anything of that

4   sort.

5          **THE COURT:**  Okay.  So let me just make sure I

6   have all of my questions answered.

7          So the opening expert report, you know,

8   discusses Google getting advertising revenue in general

9   terms and going through this analysis of the Georgia

10  Pacific factors.

11         You didn't take issue with -- I mean, so your

12  main issue is this statement in the supplemental with this

13  article in the footnote?

14        **MR. UNIKEL:**  In the original report, they were

15  referring to Google as a general company and describing

16  Google as a company.  Advertising revenues played no role

17  whatsoever in the actual numbers that were calculated as

18  far as reasonable royalty against Google and what the end

19  numbers were.  They didn't use advertising revenue as a

20  starting point for applying a reasonable royalty.  They

21  didn't use it as a basis to say these products were

22  particularly valuable.  They simply said, in describing

23  Google as a whole, Google basically has a big advertising

24  business.

25         **THE COURT:**  Right.  But, I mean, that's okay,

1    right, as long as they don't put any numbers on it; right?

2           **MR. UNIKEL:**  I mean, they can describe -- the

3    problem is this.  If they wanted to describe Google's

4    business, which includes lots of things that aren't --

5    then it should be a comprehensive about it, right?  And

6    then tell us about Fitbit and YouTube and all sorts of

7    other things.  But the suggestion that advertising

8    revenue -- and if they try and put a number on it, it's

9    especially egregious -- and user monetization of data,

10   those are things that had nothing to do with the actual

11   numbers he came up with.

12          And the only purpose of introducing those would

13   be to essentially give the jury the impression that there

14   is lots of money at stake in this case and so that they

15   can award a small portion of that, as opposed to focusing

16   on the actual revenue, the actual profitability to the

17   products that they accused.

18          And if there was any evidence that they had

19   actually pursued in the case, there might be a different

20   argument here.  They are not relying on any evidence from

21   Google about any advertising revenue, user monetization,

22   or any revenues other than the revenues attributable to

23   these particular products.

24          **THE COURT:**  All right.  Thank you very much.

25          **MR. UNIKEL:**  Thank you.

1              **MR. DIEHL:**  Yes, Your Honor.

2              This motion should be denied.  It's much

3    broader than opposing counsel just indicated.  I just want

4    to show what the motion says here.  Can you see this?

5    It's trying to exclude three things.

6              Number 1 is Google's advertising revenues or

7    practices.  That is incredibly broad.  And the problem is,

8    you know, first of all, there is no *Daubert* on this.  We

9    disclosed Mr. Weinstein's report in 2020 that Google makes

10   advertising revenue from these products.  Doesn't give

11   it -- it gives it away for free.  It doesn't make no money

12   from them.  It does that to make advertising revenue.

13             So this is critical to the *Georgia Pacific*

14   analysis that Mr. Weinstein presents.  It goes to multiple

15   *Georgia Pacific* factors.

16             And in Paragraphs 84 and 91 of his original

17   report from August 2020, he talks about how Google

18   generates revenues primarily from advertising and that

19   Google's revenue from the accused apps is largely from

20   advertising.

21             That's not going to be a shock to the jury.  I

22   mean, everybody knows that Google makes money from

23   advertising.  That's in their 10K, which is cited in

24   Mr. Weinstein's report.  So there's no ambush here.  And

25   the motion is incredibly broad.

1          And to Your Honor's point about this is also an

2     important rebuttal point to Google's damages expert,

3     Mr. Kidder.  In his report, he tries to distinguish the

4     Microsoft, Samsung, and Apple licenses on the basis that

5     people pay for their products and they generate

6     significant revenues from selling their products.  And he

7     says, look, there are billions of dollars in revenue from

8     Apple and Samsung on the accused products -- and there's a

9     tiny amount of revenue for Google because they give these

10    away for free and they only make a little bit of money.

11         That's completely misleading because Google is

12    not giving these away for free.  You can download it for

13    free, but Google is making money from these.  There's tons

14    of advertising -- not going to put a number on it, but

15    that's just a reality, and it's all over Mr. Weinstein's

16    report.

17         So it would be misleading and prejudicial for

18    the jury --

19         **THE COURT:**  You're not going to put a number on

20    it?

21         **MR. DIEHL:**  We're not going to put a number on

22    it.  It would be misleading and prejudicial for the jury

23    to not have that picture and think, oh, wow, Google is not

24    getting anything from it, they're just giving away Chrome

25    for free.  It needs to know the full picture, that Google

1    does make money.

2            **THE COURT:**  Will you agree not to introduce

3    this article that he cites in his expert report, in the

4    supplemental one?

5            **MR. DIEHL:**  I think we can agree not to put the

6    article in evidence.  I think the article is just an

7    explanation that supports the one sentence in

8    Mr. Weinstein's report that he wants to say, which is that

9    how this works is that Google presents user data to its

10   advertisers.  There's a process called "realtime bidding,"

11   in which advertisers then pay Google to present

12   advertisements to the users.

13           He has a single kind of generalized sentence

14   about that.  He will say that.  But we don't need to use

15   the whole article or go through it.  It's a long

16   explanation of kind of how that realtime bidding process

17   works.

18           **THE COURT:**  He says more than that.  He talks

19   about selling user data.  You will agree -- can you agree

20   he's not going to mention that?

21           **MR. DIEHL:**  Selling user data?

22           **THE COURT:**  Yeah.

23           **MR. DIEHL:**  I think we can get rid of "selling

24   user data," Your Honor.

25           **THE COURT:**  Well, let's see exactly what he

1    says here.  He says, "Google business model depends on the

2    collection and monetization of user data."

3              Nothing like that was said in his opening

4    report.

5              **MR. DIEHL:**  Your Honor, that's really related

6    the advertising revenue.  I mean, what's that describing

7    is how the --

8              **THE COURT:**  It sounds different to me is all

9    I'm saying.  Can you agree not to say that?

10             **MR. DIEHL:**  Your Honor, if that's the one part

11   of this motion -- this motion should be denied because

12   it's much broader than that, right?  We can agree not to

13   say that there's any selling of user data.

14             **THE COURT:**  All right.  Okay.  So to the extent

15   that Google -- I agree with Google that your expert can't

16   say Google's business model depends on the collection and

17   monetization of user data, especially since it came in

18   this final expert report and it has an article that

19   appears for the first time.

20             You've agreed that you're not going to put a

21   number on advertising.  So all we have left is Google's

22   argument that you shouldn't be able to make reference to

23   any financial or associated activities by Google unrelated

24   to the accused products specifically concerning Google's

25   advertising revenues or practices.

1          I do agree that that's too broad.  But it

2     shouldn't go beyond what was stated in the opening expert

3     report.

4          **MR. DIEHL:**  Understood, Your Honor.  Just to

5     make sure I'm clear, Mr. Weinstein can testify to the

6     things that are in his opening report specifically --

7          **THE COURT:**  About advertising.  With your

8     agreement that he's not putting a number on anything.

9          **MR. DIEHL:**  Thank you, Your Honor.

10         **THE COURT:**  Yeah.  Counsel, did you have a

11    question about that ruling?  If we need a clarifying

12    ruling on that -- we're not going to revisit anything I've

13    said, but if there's a question about exactly what that

14    means.

15         **MR. UNIKEL:**  If I may, Your Honor, just when

16    you say -- when they say they're not going to put a number

17    on it, there's a different -- they may very well say

18    there's billions of dollars of advertising revenue.  That

19    doesn't put a specific number on it.

20         **THE COURT:**  That sounds like a number to me.

21         **MR. UNIKEL:**  It sounds like a lot of numbers,

22    right?  I just want to make sure that we're not talking --

23    that when we say we're not putting a number on it, that

24    doesn't mean trying to quantify even in a general,

25    nonspecific sense the pile of money that is there for the

 1    advertising.

 2              **THE COURT:**  Right.  That's my understanding --

 3              **MR. UNIKEL:**  Thank you, Your Honor.

 4              **THE COURT:**  -- of what the agreement was.  All

 5    right.

 6              All right.  Defendant's Motion in Limine

 7    Number 2.  This one I don't need to hear argument on.  I

 8    appreciate the motion, but this is essentially a motion

 9    for summary judgment.  So that's going to be denied.  It's

10    a motion for summary judgment.

11              Let's turn to Motion in Limine Number 3 from

12    Google.  So this is a motion to preclude Arendi from

13    making any commentary or argument regarding the absence of

14    any witness at trial.

15              Let me hear from Arendi on this.  Is there a

16    witness that you wanted to call that they have control of

17    that they wouldn't bring?

18              **MR. LAHAD:**  There's a question as whether or

19    not they have control of Mr. Pinkerton.

20              **THE COURT:**  And so you want to be able -- you

21    want to be able to make an argument that Mr. Pinkerton is

22    not here and where is he?  Is that --

23              **MR. LAHAD:**  Correct.

24              **THE COURT:**  All right.  Why don't you have a

25    seat.  Let's hear from --

1          **MR. STRAUS:**  As well, Your Honor, and as many

2     software engineers from Google who do not appear, but

3     Mr. Pinkerton would be the main concern.

4          **THE COURT:**  Okay.  All right.

5          **MR. UNIKEL:**  Your Honor, Mr. Pinkerton was not

6     deposed by them.  He's on our witness list as somebody who

7     may be available, but he is a third-party witness, and I'm

8     not sure if he's going to be available to be at trial.

9     And, frankly, I'm not sure if we're going to have time to

10    be able to present him at trial depending on what the

11    trial time looks like.

12         The mere fact that we can't present all of our

13    witnesses live seems to be an impossible thing for us,

14    especially given both time limits and the fact that we

15    have -- there's, like, 25 different products and

16    functionality combinations that are at issue here.

17         We need to make sure that we have the witnesses

18    who can deal with the most of them come.  And I can't

19    bring them all, necessarily.  And so they shouldn't be

20    able to cast aspersions or say, well, he would say

21    something negative if he were to be here.

22         **THE COURT:**  Right.  Okay.  That's fine.  All

23    right.  Have a seat.

24         Here's going to be the default.  The default is

25    going to be that neither side can reference the presence

1    or absence of any parties' corporate representative or

2    employee or other witness.

3            If you have a person that you want to tell the

4    jury:  Where are they?  Why aren't they here?  And you

5    want to make an argument about that and you want to

6    suggest to the jury that their testimony would have been

7    bad, you need to raise it with the Court before you make

8    the argument, and we can talk about whether or not the

9    other side had control of that person and whether you

10   could have subpoenaed them.  If they couldn't have

11   subpoenaed them either, I'm not going to let you make that

12   argument.

13           So that's the default rule.  But we've got an

14   escape hatch if somebody wants to raise it at trial.  Yes?

15           **MR. STRAUS:**  Your Honor, with respect to

16   Mr. Pinkerton.

17           **THE COURT:**  Yes.

18           **MR. STRAUS:**  Mr. Pinkerton, we don't even know

19   if he's coming to trial.  He's on their "may call" list,

20   and we did not have an opportunity to depose him and

21   partly because Google only added him to their disclosures

22   on what was then the final day of fact discovery?

23           Fact discovery was then extended for some

24   limited purposes by, I think, about a month and a half.  I

25   don't have the exact calendar in front of me.  But he was

1     disclosed, I think it was October 28 of 2019, when they

2     served updated initial disclosures.

3             So if they are going to bring him, we really

4     need to know, so we can just depose him.

5             **THE COURT:**  Yeah.  Did you object to that, him

6     being on the witness list in the pretrial order?

7             **MR. STRAUS:**  I don't believe that was

8     specifically raised, Your Honor.

9             **THE COURT:**  All right.  Thanks.

10            Can I hear from the other side on this?

11            **MR. UNIKEL:**  As of right now, I don't believe

12    Mr. Pinkerton is going to be at trial because I think the

13    time limits of trial are going to be such that we just

14    can't get all the witnesses that we need here to testify.

15            If for some reason that were to change, I

16    certainly will let you and them know.  At the time that we

17    put the witness list together, there was still a hope and

18    expectation that we might have time to include him, but I

19    don't believe he's coming to trial as of right now.

20            **THE COURT:**  All right.  All right.  Thanks very

21    much.  So defendant's motion is essentially granted for

22    this one, to the extent stated.

23            All right.  So let's go through the

24    miscellaneous items in the pretrial order.  And I'll be

25    asking, based on whatever rulings I made today, that the

1      parties resubmit the pretrial order and incorporate those

2      rulings so that we have a document that actually reflects

3      how the trial is going to proceed.

4              So let's start with Paragraph 1.  By the way,

5      as we go through these, it might just be quicker if you

6      can just stand and talk from where you are to the extent

7      you want to address the Court.

8              We have Paragraph 1.  There was some language

9      about inducement and contributory allegations and that's

10     been ruled on, so I think you all should be able to fix

11     the dispute in Paragraph 1.

12             Then we've got a section on claim construction.

13     I don't exactly know why this is here, but I have a good

14     idea.  We're just going to take that out.  We'll have the

15     claim construction in the jury instructions.

16             **MR. LAHAD:**  I was just going to say, Your

17     Honor, we're amenable to striking Paragraphs 7 and 8.

18             **THE COURT:**  That's good.  Yeah.

19             Okay.  I was going to ask about claims and

20     defenses, but we had a little colloquy about that earlier,

21     so, hopefully, we are on the path to get some of that

22     narrowing done after the hearing today.

23             All right.  Witnesses.  So I just want to talk

24     a little bit about that with you.  Plaintiffs have got

25     16 will call and 3 may call.  I assume those are going to

 1   get narrowed down once you hear -- sorry.  Late in the

 2   day.

 3              Plaintiffs.  Yes.  Those are going to get

 4   narrowed down once we get the trial time.

 5              **MR. LAHAD:**  Yes, Your Honor.

 6              **THE COURT:**  Yeah.  All right.

 7              So Paragraph 31 needs to reflect that the

 8   parties may request leave of the Court if they want to add

 9   a witness not on the list.

10              All right.  So let's talk about the section

11   that has to do with deposition designations.  So I think

12   most of these provisions are already in the parties'

13   proposal, but to be clear, the pretrial order is going to

14   have the maximum universe of deposition designations,

15   counter designations, and objections to the admission of

16   deposition testimony.  None of those are going to be

17   supplemented without approval of all parties or leave of

18   the Court on good cause.

19              Yes, Counsel.

20              **MR. UNIKEL:**  Your Honor, I apologize.

21              This was the issue I was going to raise.

22              Two days ago we got a whole new set of

23   objections to deposition designations that purported to

24   supplement what they had provided in the pretrial order.

25   They obviously did not ask for leave of the Court.  And

1    Paragraph 36 specifically said that everything that is

2    going to be objections or designations was going to be in

3    the pretrial order.

4         **THE COURT:**  Right.  It hasn't been signed yet.

5    Let's hear why we've got late ones.  We've got late

6    objections to deposition designations?

7         **MR. LAHAD:**  They were simply to preserve the

8    IPR estoppel issue, Your Honor.  So we objected to IPR

9    estoppel on our exhibit list.  Admittedly that objection

10   wasn't affirmatively placed in the deposition designations

11   for two witnesses, Mr. Dey and Ms. Pagallo.  We added

12   those deposition objections just to preserve the IPR

13   estoppel order.

14        **THE COURT:**  Well, it sounds like maybe some of

15   this is going to drop out; is that possible?

16        **MR. LAHAD:**  Depending on the prior art

17   references and other rulings, yes, I think that's -- they

18   will --

19        **MR. UNIKEL:**  I do believe that Mr. Dey and

20   Ms. Pagallo will be witnesses, either by deposition or

21   live, at trial.

22        And I will say just the only objection that was

23   added was not IPR estoppel.  They added objections on 402,

24   403, leading and other objections, none of which were in

25   their original objections that became part of the pretrial

1    order.  It was not just IPR estoppel.

2              **THE COURT:**  Okay.  Counsel.

3              **MR. LAHAD:**  If Mr. Dey or Ms. Pagallo are going

4    to be live at trial, it shouldn't matter.

5              **THE COURT:**  Yeah.  So let's just -- to the

6    extent we've got particular ones, put in the pretrial

7    order, as revised, that these are the universe, subject to

8    the objections that some of these were added too late and

9    will be dealt with and ruled on by the Court in the

10   process for ruling on objections, as I'm about to discuss.

11             **MR. UNIKEL:**  Okay.

12             **THE COURT:**  All right.  If that makes sense.

13             **MR. UNIKEL:**  I think so, Your Honor.

14             **MR. LAHAD:**  Yes.

15             **THE COURT:**  All right.  Good.

16             All right.  So I don't have any problem when

17   you all want to exchange your final list of what you want

18   to play at trial with each other.

19             But the time needs to be modified such that

20   there leaves time that if there are disputes that need to

21   get resolved by the Court, the party calling the witness

22   has to get to us no later than 6:00 p.m. on the day before

23   the witness is going to be called -- information so that

24   the Court's going to be able to rule on those objections

25   the next morning.

1          So what I will need to have, and it needs to be

2     given to the Court from the party offering the witness, is

3     a copy of the entire deposition testimony that has clearly

4     highlighted the designations, the counter-designations,

5     and indicates the pending objections.  And then a cover

6     letter identifying the pending objections, as well as a

7     brief indication -- so, for example, one sentence per

8     objection -- of the basis for the objection and the

9     offering party's response to it.

10          And so that needs to get to me by 6:00 p.m. the

11     day before so we can look at it, and we can discuss it

12     with you all the next morning.

13          So failure to comply with that procedure absent

14     agreement by the parties and approval by the Court, is

15     going to result in a waiver of the use of the deposition

16     designations, or a waiver of the objection.  And those can

17     indicate the objections without the objections being too

18     late.  All right.

19          When the witness is called to testify by

20     deposition at the trial, the party calling the witness

21     needs to provide the Court with two copies of the

22     transcript of the designations and counter designations

23     that will be read or played, and there needs to be an

24     additional copy that's provided to the court reporter.

25          The parties are going to be charged for all

1    time that elapses from the time the witness is called

2    until the next witness is called, according to the

3    proportions that are going to be provided by the parties

4    to my courtroom deputy, Ms. Garfinkel.

5            So the parties need to let Ms. Garfinkel know

6    how much time -- how time is going to be allocated for

7    each deposition witness.

8            Paragraph 37.  I'm not sure what the dispute

9    here is, but I guess my view, subject to any argument here

10   from you all, is that Arendi says that it wants to

11   designate everything that defendant's have designated.

12   That's okay with me.

13           Is there a problem with that?

14           **MR. UNIKEL:**  Yeah.  We agree.  That would be

15   fine.  The argument here was if they don't designate

16   something that we've designated, can they then use the

17   parts that they didn't designate in their own case?

18           Our view was:  If you want to designate

19   everything we designate, that's fine, but you can't

20   surprise us with something that you said wasn't going to

21   be designated and then you later decide, oh, I wish we had

22   added that.  Let's add it because it was on their list.

23           **THE COURT:**  Okay.

24           **MR. LAHAD:**  Your Honor, our view is that any

25   deposition testimony that has been designated by either

1    side is fair game for use.  The remainder of the PTO

2    provisions here provide an opportunity to object.

3            So if Google feels that there is an objection

4    because, you know -- for example on hearsay, it's hearsay

5    as to them but not hearsay as to us, whatever, they have

6    an opportunity to object.  Our view is if it's in, it's

7    fair game for both sides to use.

8            **THE COURT:**  Yeah.  So that's what -- we are

9    going to go with Arendi's proposal on that.

10           All right.  And we talked about modifying

11   Paragraph 38, so that you get me the dispute by 6:00 p.m.

12   the day before.  We talked about an extra copy to the

13   court reporter.  That goes in Paragraph 39.

14           Okay.  Forty-five, I'm not quite sure what the

15   issue here is.  So Arendi wants to add the words "or

16   cross-examination."

17           I guess I'm confused.  What we talking about

18   here is a live witness, and you want to play deposition

19   tape when we've got a live witness on the stand?

20           **MR. LAHAD:**  Well, yes.

21           **THE COURT:**  Okay.

22           **MR. LAHAD:**  We should be able to use any

23   deposition clip during cross-examination, not just for

24   purposes of, quote-unquote, impeachment.

25           If there is a witness, such as an expert, that

1    says something on the stand that is inconsistent with

2    Google's sworn 30(b)(6) testimony, I should be able to

3    play that 30(b)(6) testimony while cross-examining the

4    expert.  And it should be available for us whether or not

5    we've designate that testimony -- that deposition

6    testimony.

7            It's cross-examination.  I shouldn't have to

8    share my questions, what exhibits I'm going to use on

9    cross, or what deposition testimony I may use on cross.

10           I don't know if this may come up, Your Honor.

11   It's not uncommon for an expert to take a position that's

12   inconsistent with 30(b)(6) testimony.  But it does happen.

13   And I don't think that I should have to go through the

14   procedures of deposition designation objections and bring

15   it to the Court if I'm going to cross-examine a live

16   witness with some deposition testimony that may or may not

17   be designated.  It is cross.

18           **THE COURT:**  Let me hear from Google on this.

19           **MR. KAMBER:**  Your Honor, this is unusual, and I

20   think it's exactly, as you identified it.

21           Impeachment, when a witness is impeached with

22   their own testimony, we understand why that's not

23   something that has to go through the formal destination

24   procedures.

25           Here, if there's something that Arendi wants to

1    play, a designation that they want to play in their case,

2    they can and should play it.  They can go through the

3    procedures that we've agreed to and that the Court is

4    advising us on.

5           Beyond that, the idea that you would mid-role,

6    during an examination with a witness, stop to play the

7    testimony of another witness, when at that particular

8    moment, no one will be able to look for completeness to

9    deal with the deposition objections, to consider the

10   context and whether it's an appropriate thing, it seems

11   frankly impossible and unworkable.

12          **THE COURT:**  Yes.  All right.  Thank you very

13   much.

14          So we are going to go with defendant's proposal

15   on Paragraph 45.

16          All right.  Let's turn to the section on

17   exhibits.

18          **MR. BELGAM:**  Your Honor, Neal Belgam on behalf

19   of plaintiffs.

20          **THE COURT:**  Yes.

21          **MR. BELGAM:**  Before we get to that, can I just

22   get a clarification on Your Honor's ruling for when

23   witnesses go into the cone of silence.  I've gotten

24   different rulings from different judges on that last week.

25          Chief Judge Connolly said that witnesses go

1    into the cone of silence when they are tendered.  Other

2    judges on this Court have said that once the witness

3    starts testifying and is sworn in, then the witness is in

4    the cone of silence; can't talk to anybody.

5              So I don't have a preference for that rule, I

6    just don't want to make a mistake, have my witnesses

7    chatting with counsel when they shouldn't be.

8         **THE COURT:**  Why don't you meet and confer with

9    the other -- well, I hear you don't have a preference.

10             Does Google have a preference?  Do you want to

11   meet and confer about that?

12        **MR. UNIKEL:**  I think we need to meet and confer

13   on it because I don't think I've thought about the issue

14   before.

15        **THE COURT:**  Right.  I haven't thought about it

16   either, but I appreciate you bringing it up, Mr. Belgam.

17        **MR. BELGAM:**  Thank you.

18        **THE COURT:**  You got it.

19             All right.  So let's talk about exhibits.  So

20   there's something like 2,000 exhibits between the parties.

21   I guess I'm not going to make you cut them down, if you

22   don't want to cut them down against each other.  But I

23   don't know what else to say about that.

24             Surely you're not going to present them all at

25   trial.  I'll talk about what exhibits are going to be

1    admitted, but they're going to have to be admitted through

2    a witness.  It will be a challenge to admit 2,000 exhibits

3    through witnesses at trial, but I don't think I need to

4    say any more about that.

5            Let's take a minute to talk about exhibits.  So

6    my view is that the pretrial order contains the maximum

7    universe of exhibits to be used by any party other than

8    solely for impeachment.  I think this is mostly consistent

9    with what you have here.  Exhibits not listed will not be

10   admitted unless good cause is shown.

11           Documents used solely for impeachment that are

12   not on the exhibit list will not be received into evidence

13   and demonstratives will not be received into evidence.

14           As I just mentioned, no exhibit will be

15   admitted unless offered into evidence through a witness,

16   who must at least be shown the exhibit.

17           Exhibits cannot be published, displayed, or

18   otherwise shown to the jury until after they have been

19   admitted into evidence.  And then once they have been

20   admitted, counsel may publish them to the jury without

21   requesting permission to do so.

22           **MR. BELGAM:**  Is that true with respect to

23   nonobjected documents?  In other words, if there are ten

24   exhibits that we're going to use for direct for a witness

25   and they are not objected to, can we publish them or do

1    you need us to formally --

2         **THE COURT:**  I need you to formally admit each

3    exhibit.  You can admit them as a group if there's some

4    reason you want to admit them as a group -- because

5    they're similar in some way -- for example, you need to

6    ask the witness what they are or exhibits, I don't know, 1

7    through 3, copies of your -- you know, whatever it is for

8    the last three years.  That might be okay.  But they all

9    need to be admitted and shown to the witness.

10         **MR. UNIKEL:**  I do have one clarifying.  For

11   opening statements in particular, at least the patent, for

12   example, will not have been admitted as an exhibit just

13   yet.  I assume that we can show the patent, refer to the

14   patent in opening statements.

15         **THE COURT:**  I'll ask you to meet and confer

16   with the other said.  I couldn't see any objection to

17   that.  Yep.

18         **MR. UNIKEL:**  Okay.  Thank you.  I just wanted

19   to know for openings.  Sorry.

20         **THE COURT:**  So the way I would like to do this

21   is on or before noon on Friday, the 21st, the parties need

22   to provide electronic versions of all trial exhibits on

23   the exhibit list to us in a single folder.  We don't care

24   how you do that.  It could be flash drive or a shared link

25   or whatever it is.  It doesn't matter to us.

1           But work with your IT departments and

2     coordinate with Ms. Garfinkel, so we can have them all

3     that day.

4           They should be named with their exhibit number,

5     so JTX-1, PTX-1, DTX-1, and they should all be in a folder

6     together so we have them.

7           To the extent you want to give a witness

8     notebook to a witness that's sitting on the stand, we

9     would request additional copies for myself, my law clerk,

10    and the court reporter.

11          If the parties have a set of documents that the

12    jury -- they want the jury to have in jury binders, you

13    may give them a jury binder.  But if you want to do that,

14    you have to bring eight copies to the Court on the first

15    day of trial.  And if you can't agree on the contents,

16    there aren't going to be jury binders.

17          We are not going to collect binders and notes

18    each day.  They will stay in the jury room.

19          At the end of the trial, we will need a binder

20    of only the admitted exhibits that will go back to the

21    jury room.  We will need that by the end of the jury

22    instructions.  If there are any videos or native files

23    that were admitted into evidence, we will need them loaded

24    on a laptop to go back to the jury room for the jury.

25          We will also need, in addition to that, a

1   separate flash drive for Ms. Garfinkel, so that we can

2   have the files as part of the Court record.

3          So going back to the pretrial order section on

4   exhibits, there's a dispute about authentication in

5   Paragraph 56.  I don't know what that dispute is about.

6   But I'm just going to say if there is a dispute about

7   authentication of a particular document, we'll bring it up

8   before that witness's testimony, and we will get it

9   resolved.  It's probably too hypothetical at this point to

10  have any productive discussion about it today.

11         Paragraph 57, I don't know what this dispute is

12  about at all.  So let's hear from Google on it.

13         **MR. UNIKEL:**  This was -- the preceding

14  paragraph was about documents that were produced that were

15  authored by each other and treating those as authentic or

16  not.  This is about prior art materials and whether or not

17  they could be treated as authentic or not unless there's

18  a, you know, specific dispute that would raise a question

19  about authenticity.

20         Given the trial limits, there's some concern

21  about if we've got to try and, you know, bring in all of

22  the extrinsic evidence that might be necessary to

23  authenticate a document that's being published in this

24  journal on this particular date, et cetera.  It could add

25  to the time of trial.  So this was just to short circuit

1    on prior art, like we are short circuiting on materials

2    produced.

3            **THE COURT:**  And is there a legitimate dispute

4    about whether or not these documents are authentic,

5    Counsel?

6            **MR. LAHAD:**  They have to prove them up, Your

7    Honor, just like any other exhibit.

8            I mean, with respect to issued U.S. patents,

9    I'm willing to treat those as self-authenticating, but

10   they've got to authenticate these documents.

11           **MR. UNIKEL:**  I guess what's good for the goose

12   is good for the gander.  So that I wouldn't necessarily

13   agree that all the materials that are produced in

14   litigation can be authenticated just because we say.  If

15   they want us to prove up everything and take the time to

16   do it, then they're going to have to take up the time to

17   do it on all the exhibits they want to move.

18           **THE COURT:**  All right.  If we've got

19   outstanding objections about authenticity, I guess we will

20   deal with them before trial and that -- we'll charge that

21   against the trial time to deal with the objection as well.

22   So this could really slow things down, but that's what we

23   will do.  All right.

24           **MR. UNIKEL:**  Thank you, Your Honor.

25           **MR. LAHAD:**  Thank you, Your Honor.

 1        **THE COURT:**  All right.  Length of the trial.

 2  The trial is going to be 14 hours for each side; however,

 3  I'm willing to give an extra 30 minutes to each side if

 4  the parties would agree to provide lunches to our jurors.

 5        **MR. UNIKEL:**  Yes, Your Honor.

 6        **MR. LAHAD:**  He's buying, Your Honor.  Yes, Your

 7  Honor.

 8        **THE COURT:**  Yeah.  Okay.  Great.  So what I'm

 9  going to ask you to do is to get in touch with

10  Ms. Garfinkel and work out the logistics with that.

11        There's a step two to this process that I don't

12  understand.  I will say this, that I understand that some

13  firms in town haven't been paying their bills, and the

14  Court has been acting as a debt collector.  So I don't

15  want to get involved with that dispute.  So let's just

16  make sure that gets worked out appropriately.

17        **MR. UNIKEL:**  And may I ask, that's 14 and a

18  half hours per side?

19        **THE COURT:**  That's right.

20        **MR. UNIKEL:**  And am I correct that it would be

21  one hour opening and one hour close?

22        **THE COURT:**  That comes out of your 14 and a

23  half hours.

24        **MR. UNIKEL:**  Correct.

25        **THE COURT:**  Yes.  So you can take as much time

1   as you want for your opening.  You need to reserve an

2   hour -- at least an hour for your close, but besides

3   reserving an hour for your close, you can take as much

4   time as you need for your opening.

5           **MR. UNIKEL:**  And I guess I just want to be

6   clear, I would hate to have a situation -- we've got nine

7   witnesses; they've got four, as an example.  And I really

8   don't want them to have a two-hour opening, and I can only

9   take 45-minute opening because I've got more witnesses

10  than they do.  Same thing on closing.  I've got to present

11  more witnesses than they do.  I would hate for them to do

12  a two-hour closing and then I've got a 45-minute closing.

13          **THE COURT:**  All right.  Do you have two-hour

14  opening planned?

15          **MR. LAHAD:**  I hope not, Your Honor.  I think we

16  can agree to hour-long openings and closings, with a

17  little bit of fudge room.  I don't want to get at 60

18  minutes and get cut off.  I'm not going to go for an hour

19  and a half.

20          **THE COURT:**  All right.

21          **MR. ARD:**  Your Honor, we would prefer to go

22  with what you said.  We certainly have no intention of

23  doing a two-hour opening, but we prefer to have the

24  parties allocate the time as they see fit.

25          **THE COURT:**  Right.  Yeah.  Sounds like we're

1   going to be between one and two hours, which I think is

2   perfectly fair.

3            **MR. UNIKEL:**  Okay.  Thank you, Your Honor.

4            **THE COURT:**  Moving to Paragraph 86.

5            That proposal is fine.  Parties are free to

6   make an oral motion for JMOL or file a paper if you want,

7   but that's not necessary.  And we will have those argued

8   at the break, at the appropriate -- in the break after the

9   appropriate time when they should be made.

10           Eighty-seven talks about closing the courtroom.

11   I am generally disinclined to close the courtroom.

12           So if a party anticipates that they are going

13   to be asking to seal the courtroom at any point that day,

14   they need to keep it to the absolute bare minimum and

15   provide sufficient advanced notice to the other side and

16   to the Court.

17           I'm not guaranteeing that we will seal the

18   courtroom.  There's no concern that we're going to be

19   putting source code up on the screen or anything like

20   that, is there?

21           **MR. UNIKEL:**  There is, Your Honor.

22           **THE COURT:**  Oh.  Okay.  All right.  Well, if

23   we've got a concern about source code up on the screen,

24   that might be something that I'm inclined to seal.  But if

25   we were just discussing generalities about how something

1    works, less inclined to seal.

2          **MR. UNIKEL:**  The other thing that is going to

3    come up is the amount of the settlement agreements that

4    are part of Mr. Weinstein's analysis, as well as, again,

5    the Apple damages demand.

6          You know, I don't know what kind of

7    confidentiality obligations there are or are not.  That's

8    going to come up, I'm sure in opening.  I'm sure it's

9    going to come up in closing.  And then it will come up in

10   the witnesses', the expert witnesses' testimony.

11         I don't know if we can come to some agreement.

12   For example, we would like our corporate representative,

13   our in-house counsel corporate representative and our

14   business person corporate representative to be able to sit

15   through openings and closings, for example.  But if that

16   is an issue that -- I'm not sure how Arendi wants to deal

17   with that.

18         **THE COURT:**  All right.  Well, why don't you

19   work together and meet and confer and see if you can come

20   up with a proposal.  If we've got a dispute that needs to

21   get resolved, we will do it before that relevant portion

22   of the trial happens.

23         **MR. UNIKEL:**  Thank you, Your Honor.

24         **THE COURT:**  All right.  But we're not going to

25   have a situation where it's 10:30 in the morning and

 1    somebody jumps up and says, "I'd like to seal the
 2    courtroom."  We need to know about that in advance and the
 3    time that it takes to pick up the jury, get everybody off,
 4    brought back in.  That's all going to get charged against
 5    the trial time.
 6              Okay.  Paragraph 91 talks about the patent
 7    video.  If the parties want that played, that's fine.  I
 8    just need you all to make arrangements to get it played.
 9              You can work with Ms. Garfinkel if you have
10    questions about the technology.
11              Paragraphs 92 and 93, there's talk about
12    stipulations in the 8G and 8M.  I don't think we have
13    those.  I could be wrong, but I didn't see those in the
14    copy of what we've got.
15              **MR. LAHAD:**  Your Honor, with respect to
16    Paragraph 92, given the Court's tentative ruling on the
17    motion, I think we can strike that.
18              **THE COURT:**  Okay.  Good.  All right.  Should be
19    able to figure that out.  Great.
20              **MR. BELGAM:**  Does Your Honor know if we're
21    going to be in this courtroom for purposes of technology
22    and stuff?
23              **THE COURT:**  Yes.  Absolutely.
24              **MR. UNIKEL:**  Your Honor, as to 93, I think --
25    we're going to be providing our combinations.  I think if

1    there are specific concerns about the combinations, they

2    can raise those specific concerns rather than generalized

3    concern here.

4            **THE COURT:**  All right.  Any problem with that?

5            **MR. LAHAD:**  No, Your Honor.

6            **THE COURT:**  All right.  Fantastic.  We are on a

7    roll now.

8            Ninety-four, that's the same issue; right?

9            **MR. UNIKEL:**  Correct.

10           **THE COURT:**  Okay.  Great.

11           Ninety-five, is there a dispute about this?

12          **MR. UNIKEL:**  There's one concern about this,

13    which is the representative devices have software that is

14    from -- and sometimes ten years ago that operates on

15    operating systems that are ten years ago.  We're going to

16    bring the devices.  They will be ready to power up.  The

17    concern is -- and we've expressed this to them -- be

18    careful when you power them up.  Because if they update

19    automatically, like if they're connected to the cell

20    network, then you might have a device that no longer is

21    representative.

22          **THE COURT:**  All right.

23          **MR. UNIKEL:**  And that's just a concern.  They

24    are not, per se, representative if they update.

25          **THE COURT:**  Okay.  Anybody want to say anything

1    on the record about that?

2            **MR. STRAUS:**  Your Honor, just the concern --

3    and this is something that's come up in a bunch of

4    meet-and-confers, is that these are cell phones.  And you

5    can't even get into some of the apps on the cell phones

6    which were issued in this case unless they are connected

7    to a network.

8            And so the whole point of having a

9    representative products agreement is to have workable

10   devices.  And what I hear opposing counsel saying is that

11   if they are connected to the network, he's going to say

12   they are no longer representative.  That just -- that

13   doesn't work.  It's self-defeating.

14           **THE COURT:**  Well, I'm not an IT person.  I

15   don't know what I can possibly say about this dispute.

16           **MR. UNIKEL:**  And this has been the case

17   throughout the case where we have given them the devices.

18   We've given them -- they have access to the code.  It's

19   not like they are in the dark as to how these things work.

20           Part of the issue is I am not an IT person

21   either, but if there's a way that they can be used without

22   updating them, that's fine.  I'm not sure if there is or

23   isn't, but I just want them to be aware that if they do

24   update and they are using now a current version of

25   software as opposed to the one when the patent was in

 1    force, that would be an issue.

 2              **THE COURT:**  Do we need to have a test run where

 3    we all -- except for me -- where you all get together in a

 4    room and see what happens?  A dress rehearsal?

 5              **MR. LAHAD:**  I was just going to say, Your

 6    Honor, perhaps just make the phones available for

 7    inspection, if necessary, before their use so that we can

 8    address this issue before --

 9              **THE COURT:**  Yeah.  Do you think you can work

10    together on that?

11              **MR. UNIKEL:**  Sure.

12              **THE COURT:**  Okay.  Fantastic.

13              Okay.  Let's talk about jury selection process.

14    So in case any of you aren't familiar with how we do it, I

15    will discuss it briefly and then give you the opportunity

16    to ask questions.

17              So we're going to have an alphabetical list of

18    jurors that we brought in that are going to be provided to

19    you.  You will get a list of the jurors in alphabetical

20    order.  Our computer is going to generate a randomized

21    list of those jurors and assign each of them a number from

22    one to whatever number.  You won't have that randomized

23    list, but they're going to be sitting in the courtroom in

24    seats corresponding to their juror number.

25              Each one of them is going to wear their juror

1   number, and they're going to be provided a sheet that

2   includes the voir dire questions that the Court will

3   determine.  By the way, I looked at those and we will put

4   the edits up as soon as we can get them to you.

5          So each juror will have a pencil and they'll

6   keep track of their "yes" numbers on their own sheet when

7   I read the voir dire questions out loud.

8          After that's done, counsel and I and the court

9   reporter are going to move back to the jury room where

10   we're going to conduct voir dire.  Parties can have -- I

11   don't know.

12          How many people do you want on each side?

13   Three or four is fine with me unless somebody's got a

14   reason why they need more.

15          **MR. UNIKEL:**  I think four should be fine, Your

16   Honor.

17          **THE COURT:**  Fine?

18          **MR. LAHAD:**  Yes, Your Honor.

19          **THE COURT:**  Okay.  Great.  Four for each side.

20   Come in the conference room.

21          Ms. Garfinkel will start in the courtroom with

22   Juror Number 1 and ask them if they've answered "yes" to

23   any of the voir dire questions.  If the answer is yes, she

24   will bring them back to the conference room, where at that

25   point in time, we will let you know their name, so you

 1    will know who is Juror Number 1.  And we will find out

 2    what questions they've answered yes to.  I will ask some

 3    questions about the "yes" answers.  And depending on those

 4    answers, I may give the parties a limited opportunity to

 5    ask follow-up questions about those "yes" answers.

 6              Following that questioning, the juror is going

 7    to leave the room, and I will entertain any applications

 8    to strike for cause or to excuse for undue hardship.

 9              We will sit them back in the jury -- in the

10    courtroom even if we've decided to strike them just

11    because it's embarrassing to have folks sort of do the,

12    you know, the walk out the door and nobody knows why.

13              Anyone who has not answered yes to a voir dire

14    question will also sit where they are seated and will not

15    be brought in, but we'll let you know their name.

16              So we're going to keep doing that process until

17    we've reached a total of 14 prospective jurors who have

18    either answered no, or not questioned or been questioned

19    but have not been struck or excused.  Once we get to 14,

20    we will have those on a list for you all, and we will do

21    the peremptory strikes and you will be on the clock for

22    peremptory strikes.

23              And then we will bring everybody to sidebar,

24    find out if there's any objections to how we did the jury

25    selection process, and we will excuse everybody else in

1    the courtroom.

2              Any questions about that?  Yes.

3         **MR. LAHAD:**  Just a couple of questions, Your

4    Honor, and I apologize if you mentioned this.

5              When will we receive the alphabetical list?

6         **THE COURT:**  The morning of trial.

7         **MR. UNIKEL:**  So the morning -- the jury

8    selection is actually the day before.  It's on Friday.

9         **THE COURT:**  I'm sorry.  The morning of the jury

10   selection.

11             I think -- stand by for one minute.  Monday.

12             So I understand that local counsel has a

13   process that they worked out with our jury selection

14   coordinator to get the overall list three days before you

15   have that.  But the list of who actually showed up, you

16   will get when they show up in the courtroom.

17        **MR. LAHAD:**  Your Honor, on the blind strikes,

18   do they ping-pong or how does the Court conduct strikes?

19        **THE COURT:**  So Ms. Garfinkel will have the list

20   of 14, and she'll start with Plaintiff's side and you put

21   an X next to the juror you want to strike, and we'll just

22   go back and forth.

23        **MR. LAHAD:**  Thank you.

24        **MR. BELGAM:**  One question.  I haven't used the

25   conference room method before.  So when they are being

1    asked the questions, the lawyers will not be in the

2    courtroom for that; we will be back in the conference room

3    with Your Honor?

4            **THE COURT:**  Well, so when I read the voir dire,

5    everybody will be here.  They will be responsible for

6    marking their own yes answers.

7            And then Ms. Garfinkel, I believe her process

8    is just to go up to each one and say:  Hello, Juror Number

9    1.  Did you answer yes to any questions?  Which ones?  And

10   then she will come back with that juror and let us know.

11           **MR. BELGAM:**  Okay.  Great.

12           **MR. UNIKEL:**  Will there be any opportunity for

13   us to even introduce ourselves to the jurors or we're

14   completely silent unless you give us the opportunity?

15           **THE COURT:**  As part of the voir dire, we will

16   have you stand and face the jury when I read out your

17   name.  We won't be engaging in discussion like that back

18   in the jury room.

19           **MR. UNIKEL:**  Thank you.

20           **THE COURT:**  You can say, "Hello."  Okay.  Good.

21   All right.  So as I mentioned, we are reviewing the

22   proposed voir dire.  We're also reviewing preliminary jury

23   instructions, and we will hopefully get you edits next

24   week.

25           I did want to let plaintiff know now that

 1    you're responsible for bringing enough pens or pencils and

 2    copies of the voir dire for the prospective jurors, which

 3    we think will be about 40 people.  You will need those

 4    delivered to the clerk's office by noon on Thursday,

 5    April 20th.

 6             **MR. LAHAD:**  I hate to ask, Your Honor.  Does

 7    the Court have a preference as to pens or pencils?

 8             **THE COURT:**  No.

 9             **MR. LAHAD:**  Okay.

10             **THE COURT:**  I already told you the number of

11    hours each side will have.  That's going to include

12    opening statements, closing arguments, examinations, and

13    arguments about objections.

14             If I have to let the jury recess to decide an

15    objection, that time relocating the jury is going to be

16    assigned to one or both parties.  The Court will likely

17    assign it to the loser of the objection, but we might do

18    it differently if we determine there's another way that's

19    more fair.  But what is clear is that in general, if we

20    are in the courtroom, somebody is getting charged time

21    unless the Court is reading jury instructions.

22             We talked about jury selection is going to take

23    place on April 21st, and we're going to start opening

24    statements and the presentation of evidence on April 24.

25    We will start at 9:00 a.m. each morning, and we'll plan to

1    present evidence until at least 4:30.  We'll do the normal

2    15-minute break in the morning and in the afternoon and a

3    lunch break.

4           If you need access to the courtroom or to

5    familiarize yourself to the technology, the advanced

6    government technology that we have here, that can be

7    coordinated with Ms. Garfinkel.

8           **MR. UNIKEL:**  How long do you anticipate for

9    lunch, Your Honor, each day?

10           **THE COURT:**  An hour.

11           **MR. UNIKEL:**  Okay.  Thank you.

12           **THE COURT:**  And then after trial, I need both

13   sides to review their trial transcript and submit any

14   necessary corrections to the court reporter no later than

15   two weeks after the trial.  And that's just to make sure

16   that we don't a bunch of corrected post-trial briefs.

17           By April 19th, I need the parties to file a

18   letter, the attachment to which should be a list of

19   witness names and a glossary of technological terms for

20   the court reporter.  So that's purely for her benefit so

21   she can get those loaded into her dictionary.

22           Also, during trial, if counsel could e-mail the

23   court reporter directly with any demonstratives or the

24   words from any video clips so that way she can update her

25   dictionary.

1          We talked about lunches.  And then, finally,

2    have the parties discussed settlement anytime recently?

3    Anything to report on that possibility?

4          **MR. UNIKEL:**  We have discussed.  I suppose

5    there's always hope, but it's not looking good.

6          **THE COURT:**  Okay.  All right.  Anything to add?

7          **MR. LAHAD:**  No, Your Honor.

8          **THE COURT:**  All right.  Fine.  Is there

9    anything else we need to address while we're here today?

10         **MR. MOORE:**  Your Honor, I had a quick question.

11   Although in this courtroom, I don't think there's going to

12   be an opportunity to move very far from the podium.

13         Do you have a preference as to people staying

14   at the podium when they are examining witnesses?

15         **THE COURT:**  I don't think there's much room for

16   anything.  I think you take the risk you trip over

17   something.  Right.  I would prefer you stay within, let's

18   just say within arm's reach of the podium.  If you want to

19   stand next to the podium, that's fine with me.  If you

20   need to approach for witness for a binder or an exhibit or

21   something like that, that's fine as well.

22         **MR. MOORE:**  Right.  And that leads to my next

23   question.  Once we have been given permission to approach,

24   are we free to approach again?

25         **THE COURT:**  Yes.

1                 **MR. MOORE:**   Thank you, Your Honor.

2                 **MR. LAHAD:**   Your Honor, does the Court have a

3  preference as to final jury instructions and how we work

4  with the Court on that?

5                 **THE COURT:**   Let us get back with you on that

6  once we've had a chance to get our edits.  Were you

7  thinking about, like, how that copies and things like that

8  or were you talking about just the charge conference?

9                 **MR. LAHAD:**   Correct.  The overall process,

10  charge conference, if there's any back-and-forth we need

11  to have between ourselves and the Court.

12                **THE COURT:**   Let's see where we're at when we

13  get closer.

14                **MR. LAHAD:**   Thank you.

15                **THE COURT:**   Anything else?

16                All right.  Fantastic.  It's great to see

17  everyone.  We look forward to seeing you soon.

18               (The proceedings concluded at 4:51 p.m.)

19

20

21

22

23

24

25

1

2                           CERTIFICATE OF COURT REPORTER

3

4

5

6          I hereby certify that the foregoing is a true and

7     accurate transcript from my stenographic notes in the

8     proceeding.

9
                                        /s/ Bonnie R. Archer
10                                      Bonnie R. Archer
                                        Official Court Reporter
11                                       U.S. District Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MR. ARD: [1]  77/21
MR. BELGAM: [7]  69/18
69/21 70/17 71/22 80/20
86/24 87/11
MR. DIEHL: [21]  6/9 7/14
31/5 32/10 32/25 33/6 33/10
33/13 33/16 37/2 38/6 38/22
52/1 53/21 54/5 54/21 54/23
55/5 55/10 56/4 56/9
MR. KAMBER: [4]  33/18
34/18 35/21 68/19
MR. LAHAD: [47]  15/21
16/22 17/9 17/17 17/22 17/25
18/9 18/13 39/23 39/25 40/12
41/5 41/12 42/10 42/15 43/5
43/8 44/2 44/9 57/18 57/23
61/16 62/5 63/7 63/16 64/3
64/14 66/24 67/20 67/22 75/6
75/25 76/6 77/15 80/15 81/5
83/5 84/18 86/3 86/17 86/23
88/6 88/9 90/7 91/2 91/9
91/14
MR. MOORE: [5]  3/20 3/22
90/10 90/22 91/1
MR. PETERMAN: [1]  28/9
MR. STRAUS: [11]  23/4
23/19 23/21 27/6 27/8 28/5
58/1 59/15 59/18 60/7 82/7
MR. TAYLOR: [2]  3/11 3/16
MR. UNIKEL: [82]  6/3 6/14
7/15 7/21 8/12 9/13 9/22 10/4
10/7 11/10 12/20 13/6 14/11
14/16 15/16 22/11 22/13
22/21 23/6 23/9 23/17 36/9
36/14 36/16 38/24 40/15
41/17 42/5 42/8 42/11 42/17
42/23 43/12 43/17 44/6 45/14
46/6 47/16 47/20 48/7 49/13
50/14 51/2 51/25 56/15 56/21
57/3 58/5 60/11 62/20 63/19
64/1 64/13 66/14 70/12
72/10 72/18 74/13 75/11
75/24 76/5 76/17 76/20 76/24
77/5 78/3 78/21 79/2 79/23
80/24 81/9 81/12 81/23 82/16
83/11 84/15 86/7 87/12 87/19
89/8 89/11 90/4
THE COURT: [169]

**'**

'that [1]  20/13
'to [1]  19/10

**-**

-and [2]  2/3 2/13

**/**

/s [1]  92/9

**0**

02 [1]  21/17

**1**

10:30 [1]  79/25
10K [1]  52/23
10Ks [1]  49/17
12-1601-JLH [1]  1/4
13-919-JLH [1]  1/10
14 [6]  76/2 76/17 76/22 85/17

85/19 86/20
143 [1]  19/19
144 [1]  19/1
15 [1]  20/16
15-minute [1]  89/2
16 will [1]  61/25
19th [1]  89/17

**2**

2,000 [2]  70/20 71/2
2019 [4]  5/11 16/3 18/24 60/1
2020 [4]  38/2 38/7 52/9 52/17
2021 [1]  5/13
2022 [1]  19/2
2023 [1]  1/16
20th [1]  88/5
21st [2]  72/21 88/23
23 [1]  8/16
24 [1]  88/24
25 [1]  58/15
28 [1]  60/1

**3**

30 [7]  8/16 32/2 35/24 68/2
68/3 68/12 76/3
31 [1]  62/7
315 [1]  40/4
35 [1]  40/4
36 [1]  63/1
37 [1]  66/8
38 [1]  67/11
39 [1]  67/13
393 [1]  19/3
3:00 [2]  1/16 3/3

**4**

40 [1]  88/3
402 [1]  63/23
403 [1]  63/24
408 [1]  26/6
45 [1]  69/15
45-minute [2]  77/9 77/12
4:30 [1]  89/1
4:51 [1]  91/18
4X [1]  28/25

**5**

50 [1]  29/13
50 percent [5]  29/2 29/3 29/4
29/11 29/12
56 [1]  74/5
57 [1]  74/11

**6**

60 [1]  77/17
6:00 p.m [3]  64/22 65/10
67/11

**7**

71 [1]  31/15

**8**

84 [1]  52/16
844 [1]  11/9
86 [1]  78/4
8G [1]  80/12
8M [1]  80/12

**9**

91 [2]  52/16 80/6

92 [3]  40/13 80/11 80/16
93 [2]  80/1 80/24
94 [1]  40/13
9:00 [1]  88/25

**A**

a.m [1]  88/25
able [23]  6/5 9/25 12/19 12/20
14/24 32/5 39/19 44/6 44/15
44/19 48/1 55/22 57/20 57/21
58/10 58/20 61/10 64/24
67/22 68/2 69/8 79/14 80/19
about [130]
absence [3]  39/4 57/13 59/1
absent [1]  65/13
absolute [1]  78/14
absolutely [4]  26/23 30/19
39/8 80/23
abstract [2]  9/23 38/25
access [3]  29/18 82/18 89/4
according [4]  10/13 46/9
49/17 66/2
account [1]  27/25
accounts [1]  25/2
accurate [1]  92/7
accused [16]  5/1 5/21 6/7
19/20 20/9 20/19 20/21 21/2
21/23 35/6 46/13 49/19 51/17
52/19 53/8 55/24
acquired [1]  35/20
acting [1]  76/14
activities [1]  55/23
actual [10]  9/15 9/16 13/16
16/13 17/19 26/24 50/7
51/10 51/16 51/16
actually [8]  11/12 18/4 26/18
40/21 51/19 61/2 86/8 86/15
add [9]  16/16 18/19 18/20
49/5 62/8 66/22 67/15 74/24
90/6
added [10]  11/18 14/12 14/16
45/16 59/21 63/11 63/23
63/23 64/8 66/22
addition [2]  15/7 73/25
additional [4]  20/21 37/20
65/24 73/9
address [5]  19/17 43/12 61/7
83/8 90/9
addresses [1]  11/25
admission [1]  62/15
admit [4]  71/2 72/2 72/3 72/4
admitted [10]  71/1 71/1 71/10
71/15 71/19 71/20 72/9 72/12
73/20 73/23
admittedly [2]  27/15 63/9
advance [1]  80/2
advanced [3]  24/25 78/15
89/5
advances [1]  25/11 28/24
adverse [2]  25/11 28/24
advertisements [1]  54/12
advertisers [2]  54/10 54/11
advertising [26]  45/13 45/20
46/11 46/15 47/2 47/4 48/20
50/8 50/16 50/19 50/23 51/7
51/21 52/6 52/10 52/12 52/18
52/20 52/23 53/14 55/6 55/21
55/25 56/7 56/18 57/1
advising [1]  69/4
affirmative [1]  6/12

affirmatively [1]  63/10
after [9]  16/21 27/18 43/20
61/22 71/18 78/8 84/8 89/12
89/15
afternoon [6]  3/11 3/15 3/19
3/20 15/21 89/2
again [4]  25/12 41/17 79/4
90/24
against [9]  24/1 25/11 39/2
39/2 39/3 50/18 70/22 75/21
80/4
agent [1]  37/13
ago [6]  16/9 16/18 27/11
62/22 81/14 81/15
agree [19]  4/24 6/20 16/23
17/2 21/12 21/17 54/2 54/5
54/19 54/19 55/9 55/12 55/15
56/1 66/14 73/15 75/13 76/4
77/16
agreed [8]  26/24 27/17 27/17
29/9 29/24 45/24 55/20 69/3
agreement [15]  5/10 6/15
25/9 26/18 26/19 26/19 28/12
28/14 29/7 30/21 56/8 57/4
65/14 79/11 82/9
agreements [1]  79/3
agrees [1]  19/23
ahead [1]  18/16
all [104]
allegations [1]  61/9
allocate [1]  77/24
allocated [1]  66/6
allowable [1]  20/14
almost [1]  34/7
alphabetical [3]  83/17 83/19
86/5
already [7]  15/12 21/19 33/20
45/1 46/6 62/12 88/10
also [16]  3/17 3/24 3/25 9/1
21/8 26/10 26/11 37/16 37/17
37/19 42/11 53/1 73/25 85/14
87/22 89/22
altered [1]  14/2
alternate [1]  25/18
Although [1]  90/11
always [1]  90/5
am [5]  8/7 43/12 76/20 78/11
82/20
amalgamation [1]  18/5
ambush [1]  52/24
amenable [1]  61/17
amount [5]  24/12 27/8 49/16
53/9 79/3
analysis [4]  19/21 50/9 52/14
79/4
analyze [1]  19/25
analyzed [1]  9/14
analyzing [13]  9/5 10/9 10/17
10/18 10/19 11/3 11/15 12/23
14/6 14/19 15/10 15/14 20/21
ANDERSON [2]  2/12 3/22
ANDREA [1]  2/16 3/24
Android [4]  38/12 38/12 38/15
38/15
Android 8 [1]  38/15
Android 9 [1]  38/12
another [4]  40/9 47/9 69/7
88/18
answer [2]  84/23 87/9
answered [5]  6/0 84/22 85/2

**A**

answered... [2] 85/13 85/18
answers [4] 85/3 85/4 85/5 87/6
anticipate [1] 89/8
anticipates [1] 78/12
any [54] 12/21 19/21 22/6 22/15 26/4 29/10 34/19 34/21 35/4 35/13 36/6 37/18 37/20 39/2 39/3 39/3 39/9 43/23 45/6 46/15 50/2 51/1 51/18 51/20 51/21 51/22 55/13 55/23 57/13 57/14 59/1 64/16 66/9 66/24 67/22 71/4 71/7 72/16 73/22 74/10 75/7 78/13 81/4 83/14 84/23 85/7 85/24 86/2 87/9 87/12 89/13 89/23 89/24 91/10
anybody [4] 13/22 48/25 70/4 81/25
Anyone [1] 85/13
anything [24] 6/1 16/17 18/11 24/10 26/3 37/1 38/16 43/25 46/1 46/16 46/23 48/21 50/2 50/3 53/24 56/8 56/12 78/19 81/25 90/3 90/6 90/9 90/16 91/15
anytime [1] 90/2
apologize [3] 23/6 62/20 86/4
apparatus [3] 18/4 18/4 18/6
appeal [2] 29/4 29/13
appear [1] 58/2
appearances [3] 1/24 2/10 3/9
appeared [1] 9/15
appears [3] 9/16 39/18 55/19
Apple [45] 23/1 23/2 23/24 24/13 24/21 24/25 25/2 25/7 25/8 25/9 25/14 25/17 25/20 25/24 26/3 26/19 26/24 27/4 27/9 27/11 27/13 27/20 27/20 27/24 28/1 28/3 28/22 28/13 29/6 29/9 29/18 29/23 30/4 30/7 30/10 30/23 31/9 31/23 33/25 34/2 34/22 49/21 53/4 53/8 79/5
Apple's [3] 25/17 25/22 26/11
apples [1] 49/20 49/20
applications [1] 85/7
applying [2] 12/1 50/20
appreciate [3] 30/2 57/8 70/16
approach [3] 90/20 90/23 90/24
appropriate [4] 48/18 69/10 78/8 78/9
appropriately [2] 5/3 76/16
approval [2] 62/17 65/14
apps [5] 5/1 5/16 5/21 52/19 82/5
April [5] 1/16 88/5 88/23 88/24 89/17
April 19th [1] 89/17
April 20th [1] 88/5
April 21st [1] 88/23
April 24 [1] 88/24
Archer [2] 92/9 92/10
architecture [2] 12/15 12/22 17/7
ARD [2] 2/6 3/14
are [126]

aren't [7] 17/4 26/8 26/16 51/4 59/4 73/16 83/14
ARENDI [34] 1/3 1/9 3/12 4/24 5/9 5/20 15/22 19/7 19/23 20/19 21/12 21/17 23/22 24/1 24/13 24/13 25/24 29/2 29/9 29/11 29/23 30/3 30/6 30/8 30/15 30/22 31/6 34/25 57/12 57/15 66/10 67/15 68/25 79/16
Arendi's [4] 20/24 25/21 30/2 67/9
Arendi/Apple [1] 25/24
argue [12] 12/17 12/19 12/21 17/4 17/11 17/13 17/15 17/17 21/22 21/25 22/14 23/14
argued [2] 20/17 78/7
argues [1] 20/19
arguing [3] 18/8 22/20 44/23
argument [18] 4/16 13/7 13/7 18/14 23/1 29/10 36/20 38/13 51/20 55/22 57/7 57/13 57/21 59/5 59/8 59/12 66/9 66/15
arguments [9] 16/1 16/17 22/10 28/11 29/16 30/2 37/20 88/12 88/13
arm's [1] 90/18
around [1] 3/7
arrangements [1] 80/8
art [17] 31/17 34/23 37/5 37/11 37/12 37/17 39/15 39/16 39/17 40/3 41/6 43/21 44/12 44/13 63/16 74/16 75/1
article [19] 45/16 45/18 46/1 46/2 46/4 46/5 46/7 46/8 46/9 46/25 47/18 48/15 48/24 50/13 54/3 54/6 54/6 54/15 55/18
articles [1] 48/12
as [104]
aside [1] 16/23
ask [20] 11/6 22/11 27/22 30/13 31/2 32/17 33/8 33/10 48/16 61/19 62/25 72/6 72/15 76/9 76/17 83/16 84/22 85/2 85/5 88/6
asked [6] 24/12 31/23 31/25 45/23 48/8 87/1
asking [6] 13/19 31/4 34/7 34/14 60/25 78/13
aspect [1] 47/15
aspersions [1] 58/20
assert [2] 40/3 41/7
asserted [1] 20/25
assign [3] 29/16 83/21 88/17
assigned [2] 8/2 88/16
associated [1] 55/23
assume [5] 6/6 7/23 17/2 61/25 72/13
assuming [1] 42/1
assumption [2] 14/18 25/7
attachment [1] 89/18
attorney [1] 32/16
attributable [1] 51/22
August [2] 18/24 52/17
August 2020 [1] 52/17
authentic [3] 74/15 74/17 75/4
authenticate [2] 74/23 75/10
authenticated [1] 75/14
authenticating [1] 75/9

authentication [2] 74/4 74/7
authenticity [2] 74/9 75/19
author [1] 48/14
authored [2] 30/9 74/15
automatically [1] 81/19
available [4] 58/7 58/8 68/4 83/6
award [1] 51/15
aware [1] 82/23
away [6] 47/25 50/3 52/11 53/10 53/12 53/24

**B**

back [16] 3/18 18/24 49/8 73/20 73/24 74/3 80/4 84/9 84/24 85/9 86/22 87/2 87/10 87/17 91/5 91/10
background [2] 25/25 26/15
bad [1] 59/7
bare [1] 78/14
base [1] 48/10
based [6] 16/6 22/17 37/17 45/14 46/25 60/25
basically [1] 50/23
basis [7] 5/11 7/8 29/11 37/6 50/21 53/4 65/8
be [232]
bearing [1] 24/16
became [1] 63/25
because [48] 6/10 6/11 9/10 9/14 10/18 11/17 12/25 13/1 13/3 13/8 14/3 14/20 15/1 15/3 16/25 17/4 17/6 17/18 19/20 21/23 22/18 25/20 27/25 31/20 32/19 35/1 38/19 38/25 39/12 39/13 40/22 41/21 47/4 47/8 49/11 53/9 53/11 55/11 59/21 60/12 66/22 67/4 70/13 72/4 75/14 77/9 81/18 85/11
becomes [1] 11/21
been [24] 4/7 5/2 5/8 6/20 21/19 26/13 32/23 32/24 38/3 43/10 49/15 59/6 61/10 63/4 66/25 71/18 71/19 72/12 76/13 76/14 82/16 85/18 85/19 90/23
before [26] 1/21 5/6 5/8 5/12 5/15 7/5 16/10 27/24 37/18 42/18 42/18 59/7 64/22 65/11 67/12 69/21 70/14 72/21 74/8 75/20 79/21 83/7 83/8 86/8 86/14 86/25
beginning [1] 3/2
begs [1] 6/3
behalf [4] 3/23 31/6 33/19 69/18
being [14] 9/13 9/18 10/9 11/14 14/4 14/18 20/1 28/22 28/23 34/6 60/6 65/17 74/23 86/25
BELGAM [4] 2/1 3/18 69/18 70/16
beliefs [1] 48/23
believe [11] 13/22 23/11 29/5 29/14 41/17 47/1 60/7 60/11 60/19 63/19 87/7
believed [1] 29/2
believing [1] 47/8
belongs [5] 10/15 19/14 20/2

benefit [1] 89/20
besides [2] 55/19 77/2
best [1] 4/8
better [2] 4/13 30/3
between [10] 18/3 26/4 26/23 27/19 29/7 29/8 29/22 70/20 78/1 91/11
beyond [2] 56/2 69/5
bidding [2] 54/10 54/16
big [3] 47/8 47/19 50/23
bigger [1] 10/4
billions [2] 53/7 56/18
bills [1] 76/13
binder [3] 73/13 73/19 90/20
binders [3] 73/12 73/16 73/17
bit [7] 25/4 38/24 41/18 41/19 53/10 61/24 77/17
blank [1] 31/23
blind [1] 86/17
blows [1] 29/10
body [1] 32/16
Bonnie [2] 92/9 92/10
both [7] 6/10 10/22 25/21 58/14 67/7 88/16 89/12
bottom [1] 16/11
break [4] 78/8 78/8 89/2 89/3
brief [2] 32/16 65/7
briefing [2] 5/25 15/23
briefly [2] 7/23 83/15
briefs [1] 89/16
bring [14] 6/18 26/10 34/8 34/9 57/17 58/19 60/3 68/14 73/14 74/7 74/21 81/16 84/24 85/23
bringing [5] 26/11 26/12 37/4 70/16 88/1
broad [4] 45/12 52/7 52/25 56/1
broadbrush [2] 34/6 34/10
broader [2] 52/3 55/12
Broadly [1] 37/7
brought [5] 4/23 25/3 80/4 83/18 85/15
building [2] 3/7 3/7
built [4] 8/10 12/15 12/17 17/6
bunch [2] 82/3 89/16
business [8] 47/4 47/5 47/9 50/24 51/4 55/1 55/16 79/14
buying [1] 76/6

**C**

C.A [2] 1/4 1/10
calculated [1] 50/17
calculation [1] 5/14
calculations [1] 5/21
calendar [1] 59/25
call [5] 26/15 57/16 59/19 61/25 61/25
called [5] 54/10 64/23 65/19 66/1 66/2
calling [2] 64/21 65/20
came [6] 11/17 25/9 27/23 48/10 51/11 55/17
can [116]
can't [18] 13/2 17/12 17/17 31/15 32/12 40/25 43/2 48/2 48/4 49/5 55/15 58/12 58/18 60/14 66/19 70/4 73/15 82/5
cannot [2] 37/13 71/17
capacity [1] 36/1

**C**

care [1]  72/23
careful [1]  81/18
case [43]  4/6 4/12 5/23 8/1
12/13 23/24 23/25 24/17
24/25 26/7 26/20 27/1 27/9
27/9 28/13 30/5 30/12 30/21
30/22 35/5 37/22 40/1 45/22
45/25 46/13 46/23 48/9 48/12
48/13 48/17 48/19 48/22
48/25 49/16 49/18 51/14
51/19 66/17 69/1 82/6 82/16
82/17 83/14
cases [1]  24/22
cast [1]  58/20
categories [28]  8/25 11/3 11/9
11/19 11/21 11/22 12/2 12/18
12/18 13/4 13/5 14/13 14/16
14/20 14/22 15/7 15/11 16/4
17/5 17/7 17/12 17/14 17/16
19/15 20/2 20/4 20/5 20/14
category [4]  8/11 11/7 21/7
21/9
cause [3]  62/18 71/10 85/8
cell [3]  81/19 82/4 82/5
certain [1]  37/12
certainly [3]  34/20 60/16
77/22
CERTIFICATE [1]  92/2
certify [1]  92/6
cetera [1]  49/18 74/24
CHAD [3]  2/15 3/23 28/9
chagrin [1]  25/4
challenge [1]  71/2
chance [7]  29/2 29/3 29/4
29/12 29/12 29/13 91/6
change [1]  60/15
chaos [1]  36/18
charge [7]  22/5 22/9 24/8
49/11 75/20 91/8 91/10
charged [3]  65/25 80/4 88/20
chatting [1]  70/7
checklist [1]  36/18
Chief [1]  69/25
choose [1]  15/1
choosing [1]  11/23
Chrome [1]  53/24
circuit [1]  74/25
circuiting [1]  75/1
cite [1]  48/8
cited [3]  45/17 46/1 52/23
cites [1]  54/3
claim [46]  7/18 8/9 8/19 8/19
8/21 9/19 9/24 10/8 10/18
11/13 13/10 13/11 13/16
14/13 16/2 16/11 16/13 16/25
17/2 17/10 17/25 18/6 18/6
18/24 19/1 19/9 19/10 19/13
19/20 20/18 20/20 20/25
21/18 22/4 22/8 31/17 35/12
36/24 37/21 37/21 37/23
44/21 44/23 45/3 61/12 61/15
Claim 1 [3]  9/24 10/8 19/1
claimed [8]  8/4 17/21 17/23
18/25 20/10 21/2 21/8 22/2
claims [25]  8/14 8/15 8/16
8/16 8/17 9/8 9/9 10/8 12/7
16/15 18/3 18/4 18/5 40/21
40/23 40/24 40/25 41/20

clarification [5]  7/17 13/20
18/21 36/24 69/22
clarify [1]  18/19
clarifying [2]  56/11 72/10
clarity [1]  41/2
clear [12]  6/11 6/16 11/13
19/5 21/21 34/2 35/17 38/19
56/5 62/13 77/6 88/19
clearly [4]  4/12 8/2 34/1 65/3
clerk [1]  73/3
clerk's [1]  88/4
clever [1]  28/4
client's [1]  25/4
clip [1]  67/23
clips [1]  89/24
clock [1]  85/21
close [4]  76/21 77/2 77/3
78/11
closer [2]  30/22 91/13
closing [6]  77/10 77/12 77/12
78/10 79/9 88/12
closings [2]  77/16 79/15
clue [1]  33/3
cocounsel [1]  3/13
code [3]  78/19 78/23 82/18
colleague [1]  3/17
collect [1]  73/17
collection [2]  55/2 55/16
collector [1]  76/14
colloquy [1]  61/20
combinations [10]  40/11 41/1
41/7 41/13 41/22 42/1 44/14
58/16 80/25 81/1
come [18]  28/3 31/13 31/18
32/4 37/14 37/24 41/2 58/18
68/10 79/3 79/8 79/9 79/9
79/11 79/19 82/3 84/20 87/10
comes [2]  8/12 76/22
coming [4]  21/14 39/19 59/19
60/19
commenced [1]  3/2
commentary [1]  57/13
companies [1]  47/23
company [2]  50/15 50/16
compare [1]  49/10
comparing [1]  49/20
comparison [1]  49/24
competing [1]  7/2
completely [4]  29/24 48/13
53/11 87/14
completeness [1]  69/8
comply [1]  65/13
comprehensive [1]  51/5
computer [7]  8/15 8/17 9/8
10/9 40/24 41/20 83/20
concern [16]  14/3 34/5 34/14
39/4 45/23 46/24 48/16 58/3
74/20 78/18 78/23 81/3 81/12
81/17 81/23 82/2
concerned [2]  38/8 38/13
concerning [1]  55/24
concerns [3]  13/15 81/1 81/2
concessions [1]  22/19
concluded [1]  91/18
conclusions [1]  46/8
conduct [2]  84/10 86/18
cone [3]  69/23 70/1 70/4
confer [1]  43/20 44/7 70/8

conference [10]  4/9 4/8 22/5
22/9 84/20 84/24 86/25 87/2
91/8 91/10
confers [1]  82/4
confident [1]  40/2
confidentiality [1]  79/7
confuse [2]  22/18 47/7
confused [2]  45/9 67/17
confusing [5]  11/11 13/23
14/2 15/6 30/18
confusion [2]  11/17 16/5
connected [3]  81/19 82/6
82/11
connecting [1]  26/2
connection [3]  20/23 48/9
48/10
Connolly [1]  69/25
consider [1]  69/9
considerations [1]  26/21
consistent [1]  71/8
construction [40]  7/18 8/24
9/1 9/15 9/16 10/22 11/10
11/12 11/18 11/18 11/20 12/3
13/12 13/17 13/20 13/23 14/1
14/12 14/17 15/8 16/2 16/4
16/7 16/16 17/11 18/1 18/20
18/24 19/9 19/24 20/7 20/13
20/18 20/20 21/19 22/9 36/24
37/23 61/12 61/15
construe [1]  22/6
construed [1]  19/13
consuming [1]  24/2
contact [5]  15/2 15/4 15/5
19/16 20/3
contains [2]  13/13 71/6
contends [1]  5/9
contents [1]  73/15
context [7]  55/23 26/9 26/15
28/21 32/18 34/3 69/10
CONTINUED [1]  2/10
contract [2]  6/10 6/22
contracts [1]  7/11
contrast [1]  27/19
contributory [1]  61/9
control [3]  57/16 57/19 59/9
controls [1]  16/12
controversial [1]  38/17
conversation [1]  40/17
conversations [1]  26/5
coordinate [1]  73/2
coordinated [1]  89/7
coordinator [1]  86/14
copies [6]  65/21 72/7 73/9
73/14 88/2 91/7
copy [5]  10/2 65/3 65/24
67/12 80/14
corporate [4]  59/1 79/12
79/13 79/14
correct [18]  6/6 12/20 17/17
17/22 27/6 27/8 28/12 32/6
35/21 42/5 44/4 47/16 47/20
57/23 76/20 76/24 81/9 91/9
corrected [1]  89/16
correcting [1]  32/6
corrections [1]  89/14
corresponding [1]  83/24
CORROON [1]  2/12
could [13]  4/14 30/18 30/19
30/24 47/7 49/4 59/10 72/3

couldn't [5]  5/7 12/15 13/9
59/10 72/16
counsel [25]  2/8 2/17 18/2
23/11 28/11 28/17 34/13
38/23 39/15 39/22 40/17 41/4
41/15 52/3 56/10 62/19 64/2
70/7 71/20 75/5 79/13 82/10
84/8 86/12 89/22
counter [4]  20/11 62/15 65/4
65/22
counter-designations [1]  65/4
couple [4]  27/11 37/2 47/10
86/3
course [3]  5/4 7/8 31/18
court [61]  1/17 4/7 5/6 6/17
6/24 7/3 8/1 14/12 16/10
18/13 18/14 19/12 19/23
20/24 21/22 22/15 23/22
37/12 37/16 38/19 39/2 39/9
39/14 43/15 43/15 45/2 59/7
61/7 62/8 62/18 62/25 64/9
64/21 65/2 65/14 65/21 65/24
67/13 68/15 69/3 70/2 73/10
73/14 74/2 76/14 78/16 84/2
84/8 86/18 88/7 88/16 88/21
89/14 89/20 89/23 91/2 91/4
91/11 92/2 92/10 92/11
Court's [19]  4/21 14/12 15/7
17/10 18/1 18/20 19/9 19/24
20/7 20/12 20/17 20/19 20/23
36/21 37/5 37/8 37/11 64/24
80/16
courtroom [18]  3/2 3/7 66/4
78/10 78/11 78/13 78/18 80/2
80/21 83/23 84/21 85/10 86/1
86/16 87/2 88/20 89/4 90/11
cover [1]  65/5
covers [1]  6/7
credibility [4]  24/16 29/15
29/24 31/10
criteria [7]  8/21 9/2 10/14
10/25 11/15 11/23 12/1
critical [2]  25/23 52/13
cross [11]  27/19 29/21 30/14
67/16 67/23 68/3 68/7 68/9
68/9 68/15 68/17
cross-examination [4]  27/19
67/16 67/23 68/7
cross-examine [2]  29/21
68/15
cross-examining [1]  68/3
current [4]  13/22 25/1 27/10
82/24
cut [4]  43/1 70/21 70/22 77/18
cuts [1]  42/25

**D**

damage [1]  49/3
damages [20]  4/19 5/14 5/21
6/1 24/4 24/22 24/24 25/2
25/14 25/20 26/3 26/10 26/11
27/20 27/23 30/5 46/14 47/7
53/2 79/5
DANIEL [2]  2/2 3/12
dark [1]  82/19
data [17]  15/5 45/11 46/11
47/2 47/15 48/6 48/21 49/7
49/16 51/9 54/9 54/19 54/21

**D**

data... [4] 54/24 55/2 55/13 55/17
database [2] 15/2 15/4
date [1] 74/24
Daubert [6] 19/3 19/24 20/24 21/16 28/22 52/8
DAVID [2] 2/12 3/22
day [13] 26/22 39/20 59/22 62/2 64/22 65/11 67/12 73/3 73/15 73/18 78/13 86/8 89/9
days [2] 62/22 86/14
deadline [4] 5/4 5/8 5/13 5/16
deal [9] 7/9 39/19 39/21 44/20 58/18 69/9 75/20 75/21 79/16
dealing [2] 8/14 41/9
dealt [3] 10/21 14/4 64/9
debt [1] 76/14
decide [8] 6/17 7/1 7/4 11/22 35/16 40/25 66/21 88/14
decided [1] 85/10
default [8] 58/24 58/24 58/24 59/13
defeating [1] 82/13
defendant [3] 1/8 1/13 30/13
defendant's [6] 7/17 36/23 57/6 60/21 66/11 69/14
defendants [4] 2/17 18/19 26/8 49/11
defense [1] 6/12
defenses [1] 61/20
defer [1] 32/25
defined [2] 46/20 46/21
definitely [1] 44/20
DELAWARE [2] 1/2 1/19
delivered [1] 88/4
demand [1] 79/5
demonstrate [1] 12/11
demonstratives [2] 71/13 89/23
denied [8] 4/22 15/23 30/25 36/5 39/12 52/2 55/11 57/9
deny [1] 21/20
departments [1] 73/1
depending [3] 58/10 63/16 85/3
depends [4] 41/18 41/19 55/1 55/16
depose [2] 59/20 60/4
deposed [2] 35/25 58/6
deposition [25] 32/8 33/21 36/6 36/10 45/24 62/11 62/14 62/16 62/23 63/6 63/10 63/12 63/20 65/3 65/15 65/20 66/7 66/25 67/18 67/23 68/5 68/9 68/14 68/16 69/9
depositions [2] 31/21 31/21
deputy [1] 66/4
describe [2] 51/2 51/3
describing [3] 50/15 50/22 55/6
designate [6] 66/11 66/15 66/17 66/18 66/19 68/5
designated [5] 66/11 66/16 66/21 66/25 68/17
designation [2] 68/14 69/1
designations [17] 32/8 33/1 33/22 36/6 36/11 62/11 62/14 62/15 62/23 63/2 63/6 63/10 65/4 65/4 65/16 65/22 65/22
designed [1] 32/20
destination [1] 88/23
determination [32] 8/3 8/7 8/20 9/11 9/17 10/13 10/20 10/23 11/1 11/13 12/5 12/6 12/14 12/21 13/1 13/24 14/9 14/22 15/10 15/12 16/14 17/1 17/19 18/21 20/8 20/15 21/1 21/5 21/8 21/24 22/2 30/8
determine [10] 10/10 12/8 13/14 19/10 19/13 19/21 19/25 20/22 84/3 88/18
determined [3] 13/18 14/19 15/1
determining [1] 14/6
developed [2] 35/6 35/23
device [2] 38/9 81/20
devices [11] 5/1 5/16 5/21 6/1 6/7 19/20 38/11 81/13 81/16 82/10 82/17
devolve [1] 36/18
Dey [3] 63/11 63/19 64/3
dictionary [2] 89/21 89/25
did [13] 5/17 9/7 14/21 18/8 18/9 49/21 56/10 59/20 60/5 62/25 85/24 87/9 87/25
didn't [13] 5/9 5/17 6/18 16/16 18/7 40/9 45/5 49/5 50/11 50/19 50/21 66/17 80/13
DIEHL [3] 2/5 3/14 31/5
difference [4] 18/3 29/7 29/8 29/22
differences [1] 26/23
different [15] 3/8 5/17 13/7 14/11 24/25 27/24 30/21 41/22 47/5 51/19 55/8 56/17 58/15 69/24 69/24
differently [1] 88/18
difficult [1] 38/24
difficulty [4] 8/12 8/18 13/12 40/17
dire [9] 84/2 84/7 84/10 84/23 85/13 87/4 87/15 87/22 88/2
direct [1] 71/24
directed [1] 43/15
directly [3] 29/14 36/10 89/23
disagree [1] 4/22
disclose [1] 41/25
disclosed [2] 52/9 60/1
disclosures [2] 59/21 60/2
discovery [6] 38/3 38/4 48/18 48/22 49/4 49/6 59/22 59/23
discrete [1] 37/3
discuss [8] 5/22 7/19 7/22 36/7 44/19 64/10 65/11 83/15
discussed [5] 26/4 41/24 44/22 90/2 90/4
discusses [1] 50/8
discussing [3] 43/3 43/18 78/25
discussion [4] 23/9 45/19 74/10 87/17
discussions [1] 43/15
disinclined [1] 78/11
displayed [5] 9/19 10/9 11/14 20/1 71/17
dispositive [1] 5/15
dispute [22] 4/22 5/9 6/22 21/19 22/3 30/1 31/14 31/19 48/17 61/11 66/18 67/11 74/4
74/5 74/6 74/1 74/18 75/3 76/15 77/20 87/1 88/23
disputes [3] 4/11 32/12 64/20
distinct [1] 20/15
distinction [1] 18/7
distinguish [1] 53/3
distinguishable [1] 30/16
DISTRICT [3] 1/1 1/2 92/11
do [66] 4/13 5/23 5/25 6/13 8/8 8/9 9/6 11/7 12/13 13/18 15/10 19/20 21/24 23/1 23/6 23/15 24/11 24/12 30/9 32/5 32/7 32/14 33/21 34/16 34/21 35/13 39/13 41/15 41/17 45/21 46/22 47/6 50/3 51/10 56/1 58/2 62/11 63/19 70/10 71/21 71/25 72/10 72/20 72/24 73/1 73/16 75/16 75/17 75/23 76/9 77/10 77/11 77/11 77/19 79/21 82/23 83/2 83/9 83/14 84/12 85/11 85/20 86/18 88/17 89/1 89/8 90/13
Docket [2] 19/1 19/3
document [12] 9/3 9/18 10/9 10/10 11/14 19/18 20/1 20/6 25/12 61/2 74/7 74/23
documents [6] 71/11 71/23 73/11 74/14 75/4 75/10
does [20] 8/6 10/20 11/10 13/24 14/13 20/7 20/15 20/18 20/20 20/25 21/9 32/1 52/12 54/1 68/12 70/10 80/20 86/18 88/6 91/2
doesn't [15] 6/19 8/3 11/8 15/5 17/1 21/17 35/4 38/14 48/15 52/10 52/11 56/19 56/24 72/25 82/13
doing [5] 14/6 15/9 48/24 77/23 85/16
dollars [2] 53/7 56/18
don't [85] 4/16 6/9 7/1 7/23 9/6 12/4 12/21 12/25 12/25 12/25 13/1 13/3 15/3 17/4 17/5 17/6 17/11 17/12 17/15 17/18 21/23 22/14 22/20 29/18 32/18 33/7 34/8 35/9 37/23 38/18 39/6 39/14 40/1 40/7 40/19 41/12 43/8 43/9 43/23 44/14 45/6 47/13 48/5 48/14 49/10 49/12 51/1 54/14 57/7 57/24 59/18 59/25 60/7 60/11 60/19 61/13 64/16 66/15 68/10 68/13 70/5 70/6 70/8 70/9 70/13 70/22 70/23 71/3 72/6 72/23 74/5 74/1 76/11 76/14 77/8 77/17 79/16 79/11 79/18 80/12 82/15 84/11 89/10 90/11 90/15
done [4] 16/2 49/4 61/22 84/8
door [1] 85/12
down [9] 25/3 42/25 43/1 43/22 62/1 62/4 70/21 70/22 75/22
download [1] 53/12
Dr [1] 19/19
Dr. [1] 19/8
Dr. Shamos's [1] 19/8
dress [1] 83/4
drew [1] 46/8
drive [3] 72/24 74/1
74/5 74/6 74/17 74/18 75/3
76/15 77/20 87/1 88/23
drop [1] 63/15.
DTX [1] 73/5
DTX-1 [1] 73/5
during [7] 10/17 11/3 27/17 49/5 67/23 69/6 89/22

**E**

e-mail [3] 11/25 19/17 89/22
e.g [2] 19/15 19/16
each [18] 7/12 64/18 66/7 70/22 72/2 73/18 74/15 76/2 76/3 83/21 83/25 84/5 84/12 84/19 87/8 88/11 88/25 89/9
earlier [1] 61/20
easier [1] 44/11
edits [3] 84/4 87/23 91/6
effect [2] 24/6 47/24
effective [1] 27/14
effectively [1] 20/12
egregious [1] 51/9
eight [15] 16/9 21/14 41/8 41/10 41/12 41/15 42/3 42/7 42/8 42/25 44/2 44/3 44/5 44/14 73/14
Eighty [1] 78/10
Eighty-seven [1] 78/10
either [8] 18/9 39/5 59/11 63/20 66/25 70/16 82/21 85/18
elapses [1] 66/1
electronic [3] 45/16 45/18 72/22
element [11] 9/8 9/24 9/25 10/8 10/14 13/10 13/11 14/8 14/10 18/24 18/25
eligible [1] 20/4
ELLIS [1] 2/12
else [8] 18/11 24/10 43/8 43/25 70/23 85/25 90/9 91/15
embarrassing [1] 85/11
employee [1] 59/2
end [5] 26/22 48/11 50/18 73/19 73/21
Endora [1] 37/13
engaging [1] 87/17
engineers [7] 31/9 31/9 31/23 34/21 34/22 35/23 58/2
enough [1] 88/1
entered [1] 41/22
entertain [1] 85/7
entire [1] 65/3
escape [1] 19/3
especially [4] 21/14 51/9 55/17 58/14
ESQ [12] 2/1 2/2 2/5 2/5 2/6 2/6 2/7 2/12 2/15 2/15 2/16 2/16
essentially [7] 4/25 6/2 18/10 21/13 51/13 57/8 60/21
establishes [1] 5/13
estimates [1] 24/16
estopped [6] 37/6 37/12 37/17 39/16 41/11 43/4
estoppel [10] 37/11 37/18 39/16 40/4 44/12 63/8 63/9 63/13 63/23 64/1
et [2] 49/18 74/24
evaluating [1] 25/23
even [12] 15/16 26/16 29/18 43/22 48/12 48/14 48/14

**E**

even... [5]  56/24 59/14 82/5
85/10 87/13
ever [2]  12/4 13/25
everybody [8]  3/9 3/19 4/3
52/22 80/3 85/23 85/25 87/5
everyone [2]  3/15 91/17
everything [4]  63/1 66/11
66/19 75/15
evidence [20]  12/12 26/2
26/12 30/17 30/23 34/8 45/25
48/8 48/20 51/18 51/20 54/6
71/12 71/13 71/15 71/19
73/23 74/22 88/24 89/1
exact [2]  46/12 59/25
exactly [8]  4/11 41/6 43/21
45/9 54/25 56/13 61/13 68/20
examination [5]  27/19 67/16
67/23 68/7 69/6
examinations [1]  88/12
examine [2]  29/21 68/15
examining [2]  68/3 90/14
example [9]  15/3 33/24 65/7
67/4 72/5 72/12 77/7 79/12
79/15
except [1]  83/3
exception [1]  34/9
exchange [1]  64/17
exclude [3]  19/7 36/20 52/5
excluded [2]  37/14 37/19
excuse [2]  85/8 85/25
excused [1]  85/19
exhibit [12]  39/18 46/4 63/9
71/12 71/14 71/16 72/3 72/12
72/23 73/4 75/7 90/20
exhibits [17]  39/20 68/8 69/17
70/19 70/20 70/25 71/2 71/5
71/7 71/9 71/17 71/24 72/6
72/22 73/20 74/4 75/17
exist [1]  14/13
existing [2]  13/12 13/20
expanded [1]  8/24
expectation [1]  60/18
expected [2]  5/19 5/20
expert [24]  4/18 19/8 24/20
28/3 29/18 30/9 30/12 34/20
35/2 46/19 47/24 48/23 49/6
49/9 50/7 53/2 54/3 55/15
55/18 56/2 67/25 68/4 68/11
79/10
experts [2]  31/14 35/11
explain [1]  25/15
explained [1]  20/23
explanation [2]  54/7 54/16
expressed [2]  34/13 81/17
expressly [1]  12/7
extended [1]  59/23
extent [16]  5/24 7/6 7/7 21/11
21/20 26/5 30/15 32/11 36/23
46/18 46/19 55/14 60/22 61/6
64/6 73/7
external [1]  31/19 18/20/6
extra [2]  67/12 76/3
extrinsic [1]  74/22

**F**

f/k/a [1]  1/6
face [2]  6/16 87/16
fact [15]  6/15 6/18 12/10 13/4
17/5 21/10 25/2 25/9 30/22
34/19 35/15 49/12 54/19
59/22 59/23
factor [1]  24/23
factors [2]  50/10 52/15
facts [1]  35/3
factual [1]  32/20
failed [1]  24/11
fails [1]  25/25
failure [1]  65/13
fair [7]  17/9 27/18 48/6 67/1
67/7 78/2 88/19
faith [1]  29/11
false [1]  24/10
familiar [1]  83/14
familiarize [1]  89/5
Fantastic [4]  4/3 81/6 83/12
91/16
far [3]  49/2 50/18 90/12
fax [1]  19/16
fear [1]  34/11
feels [2]  6/23 67/3
few [1]  24/17
figure [2]  5/17 80/19
file [2]  78/6 89/17
filed [2]  4/6 5/8
files [2]  73/22 74/2
filing [1]  5/4
final [8]  25/24 29/19 29/20
29/22 55/18 59/22 64/17 91/3
finally [3]  29/9 45/4 90/1
financial [1]  55/23
find [2]  85/1 85/24
finds [1]  20/24
fine [15]  7/11 7/14 28/7 58/22
66/15 66/19 78/5 80/7 82/22
84/13 84/15 84/17 90/8 90/19
90/21
firms [1]  76/13
first [19]  4/14 8/19 10/10
10/11 12/8 19/11 19/13 19/21
20/1 20/8 20/22 21/1 24/19
26/1 34/12 48/7 52/8 55/19
73/14
firsthand [1]  32/20
fit [1]  77/24
Fitbit [1]  51/6
five [2]  67/14 81/11
fix [1]  61/10
flash [2]  72/24 74/1
focused [2]  10/17 15/9
focusing [1]  51/15
folder [3]  44/18 72/23 73/5
folks [1]  35/17 85/11
follow [1]  85/5
follow-up [1]  85/5
following [2]  19/4 85/6
footnote [2]  45/17 50/13
for' [1]  20/14
force [1]  83/1
foregoing [1]  92/6
forfeited [2]  6/19 6/21
form [1]  5/25
formal [1]  68/23
formally [2]  72/1 72/2
forth [2]  86/22 91/10
Forty [1]  67/14
Forty-five [1]  67/14
forward [1]  91/17
Foundation [2]  45/16 45/19
four [12]  28/25 31/8 34/21
41/24 42/15 42/16 42/19
42/19 42/21 42/21 42/24
42/25 77/7 81/8 84/13 84/15
84/19
frankly [3]  13/11 58/9 69/11
free [13]  12/16 17/3 26/23
39/13 47/25 50/3 52/11 53/10
53/12 53/13 53/25 78/5 90/24
Friday [2]  72/21 86/8
front [1]  59/25
Frontier [2]  45/16 45/18
fudge [1]  77/17
full [1]  53/25
fully [1]  30/2
functionality [6]  32/2 35/7
35/23 35/24 35/25 58/16
further [1]  22/18
furthermore [1]  24/2

**G**

game [4]  17/9 27/19 67/1 67/7
gander [1]  75/12
Garfinkel [10]  66/4 66/5 73/2
74/1 76/10 80/9 84/21 86/19
87/7 89/7
general [4]  50/8 50/15 56/24
88/19
generalities [1]  78/25
generalized [3]  34/14 54/13
81/2
generally [2]  48/4 78/11
generate [2]  53/5 83/20
generates [1]  52/18
Georgia [4]  24/23 50/9 52/13
52/15
get [51]  3/5 4/9 6/1 12/25
16/20 18/17 22/6 30/17 32/12
32/13 36/17 42/20 43/22 44/2
44/15 44/15 44/16 49/6 54/23
60/14 61/21 62/1 62/3 62/4
64/21 64/22 65/10 67/11
69/21 69/22 74/8 76/9 76/15
77/17 77/18 79/21 80/3 80/4
80/8 82/5 83/3 83/19 84/4
85/19 86/14 86/16 87/23
89/21 91/5 91/6 91/13
gets [3]  30/13 44/24 76/16
getting [3]  50/8 53/24 88/20
gist [1]  47/24
give [14]  40/10 42/6 42/8 44/5
47/8 51/13 52/10 53/9 73/7
73/13 76/3 83/15 85/4 87/14
given [9]  6/4 14/12 58/14 65/2
74/20 80/16 82/17 82/18
90/23
gives [1]  52/11
giving [5]  40/16 47/25 50/2
53/12 53/24
glossary [1]  89/19
go [27]  4/10 6/25 18/16 22/17
22/20 25/16 28/6 28/25 37/9
42/1 54/15 56/2 60/23 61/5
67/9 68/13 68/23 69/2 69/14
69/23 69/25 73/20 73/24
77/18 77/21 86/22 87/8
GODFREY [5]  2/4 3/13 3/17
23/21 31/6
goes [3]  28/25 52/14 67/13
going [156]
gone [1]  10/25
good [25]  3/9 3/11 3/15 3/19
3/20 4/3 7/16 15/21 29/11
36/2 43/10 44/8 61/13 61/18
62/18 64/15 71/10 75/11
75/12 80/18 87/20 90/5
good-faith [1]  29/11
GOOGLE [76]  1/12 3/23 4/2
4/22 4/24 5/9 5/10 5/16 5/20
5/24 6/11 7/19 9/5 16/9 16/18
20/17 21/25 25/18 26/2 26/14
26/22 27/12 27/13 27/16
28/18 28/19 31/9 31/21 33/7
33/17 33/19 34/21 37/22 38/1
38/7 38/9 38/10 39/1 39/13
40/3 41/5 46/9 47/1 47/14
48/24 49/1 49/23 49/23 50/8
50/15 50/16 50/18 50/23
50/23 51/21 52/9 52/17 52/22
53/9 53/11 53/13 53/23 53/25
54/9 54/11 55/1 55/15 55/15
55/23 57/12 58/2 59/21 67/3
68/18 70/10 74/12
Google's [23]  4/17 4/21 15/25
16/17 21/11 21/21 23/10
23/22 24/20 25/6 31/8 45/8
45/20 48/20 49/16 51/3 52/6
52/19 53/2 55/16 55/21 55/24
68/2
goose [1]  75/11
got [30]  4/9 10/12 18/14 29/19
44/13 44/21 46/3 47/10 47/18
59/13 61/12 61/24 62/22 63/5
63/5 64/6 67/19 70/18 74/21
75/10 75/18 77/6 77/7 77/9
77/10 77/12 78/23 79/20
80/14 84/13
gotten [1]  69/23
government [1]  89/6
grant [2]  19/23 20/24
granted [1]  60/21
granting [1]  6/4
great [11]  3/19 9/21 23/20
36/14 42/10 76/8 80/19 81/10
84/19 87/11 91/16
greatly [1]  23/25
grounds [2]  15/24 15/25
group [2]  72/3 72/4
guaranteeing [1]  78/17
guess [11]  5/22 6/3 6/21 7/25
44/16 66/9 67/17 70/21 75/11
75/19 77/5
guy [1]  49/12

**H**

had [19]  5/10 9/4 29/11 32/20
34/1 40/17 45/25 48/16 48/17
48/17 49/3 51/10 51/18 59/9
61/20 62/24 66/21 90/10 91/6
half [4]  59/24 76/16 76/23
77/19
HALL [1]  1/21
happen [3]  33/4 44/20 68/12
happening [3]  11/3 11/4 39/17
happens [2]  79/22 83/4
happy [4]  18/15 28/5 41/2
43/12
hard [1]  9/22
hardship [1]  85/8
has [38]  5/8 8/9 8/11 8/20

## H

has... [34]  10/3 10/13 10/23
11/14 12/14 12/24 15/6 18/13
18/21 19/12 21/25 23/1 23/24
26/2 38/10 39/1 46/6 46/9
47/6 47/18 48/25 49/15 50/23
54/13 55/18 62/11 64/22 65/3
66/25 68/23 76/14 82/16
85/13 86/12
hasn't [2]  6/20 63/4
HASTINGS [3]  2/14 3/25
28/10
hatch [1]  59/14
hate [3]  77/6 77/11 88/6
have [162]
haven't [7]  6/12 33/6 33/6
34/20 70/15 76/13 86/24
having [3]  30/7 34/10 82/8
he [48]  5/17 8/5 16/16 16/17
18/2 19/4 19/5 24/11 24/25
27/10 27/16 27/23 27/25 28/2
28/4 28/25 29/1 32/2 42/24
42/25 45/24 45/25 46/1 46/7
46/8 46/17 46/21 46/24 46/25
49/14 50/1 51/11 52/17 53/3
53/6 54/3 54/8 54/13 54/14
54/18 54/18 54/25 55/1 57/22
58/7 58/20 58/21 59/25
he's [11]  49/13 50/1 54/20
56/8 58/6 58/8 59/19 59/19
60/19 76/6 82/11
headline [1]  24/7
hear [20]  4/16 6/8 7/19 15/20
22/25 24/9 28/8 33/17 37/21
45/5 57/7 57/15 57/25 60/10
62/1 63/5 68/18 70/9 74/12
82/10
heard [6]  22/19 30/12 33/6
33/7 36/9 39/15
hearing [4]  25/10 36/8 47/17
61/22
hears [2]  24/6 24/7
hearsay [6]  34/9 34/9 48/13
67/4 67/4 67/5
Hello [2]  87/8 87/20
helpful [1]  10/5
her [4]  87/7 89/20 89/21
89/24
here [44]  3/6 3/18 4/5 4/8
8/14 8/18 9/25 24/21 27/18
28/4 31/4 32/15 32/15 34/6
35/5 36/18 38/17 41/5 47/7
47/11 49/14 49/16 51/20 52/4
52/24 55/1 57/22 58/16 58/21
59/4 60/14 61/13 66/9 66/9
66/15 67/2 67/15 67/18 68/25
71/9 81/3 87/5 89/6 90/9
here's [5]  9/24 18/18 39/11
49/23 58/24
hereby [1]  92/6
Hi [1]  3/21
higher [1]  27/15
highlighted [2]  10/3 65/4
him [12]  30/13 42/13 43/2
44/5 46/9 58/10 59/20 59/21
60/3 60/4 60/5 60/18
his [26]  5/14 5/17 9/1 10/19
16/4 16/8 16/16 19/2 19/19
27/9 27/10 27/10 27/12 27/14

28/3 29/9 29/24 45/24 46/14
46/16 49/16 52/15 53/3 54/3
55/3 56/6
history [1]  4/8
hit [1]  33/20
honestly [1]  14/4
Honor [89]  3/11 3/20 6/3 6/9
7/15 7/22 9/20 10/1 11/11
13/6 13/11 14/3 15/21 16/2
16/19 17/10 22/11 22/22 23/4
23/19 24/18 28/5 28/9 31/5
33/18 34/18 35/21 36/9 36/16
37/7 38/24 39/23 40/6 40/12
40/15 41/6 41/13 42/10 44/9
48/7 52/1 54/24 55/5 55/10
56/4 56/9 56/15 57/3 58/1
58/5 59/15 60/8 61/17 62/5
62/20 63/8 64/13 66/24 68/10
68/19 69/18 75/7 75/24 75/25
76/5 76/6 76/7 77/15 77/21
78/3 78/21 79/23 80/15 80/20
80/24 81/5 82/2 83/6 84/16
84/18 86/4 86/17 87/3 88/6
89/9 90/7 90/10 91/1 91/2
Honor's [2]  53/1 69/22
HONORABLE [1]  1/21
hope [3]  60/17 77/15 90/5
hopefully [3]  35/15 61/21
87/23
hour [12]  76/21 76/21 77/2
77/2 77/3 77/8 77/12 77/13
77/16 77/18 77/23 89/10
hour-long [1]  77/16
hours [6]  40/19 76/2 76/18
76/23 78/1 88/11
house [2]  23/11 79/13
how [34]  4/9 13/18 26/12
31/25 32/19 32/20 35/8 35/14
35/18 35/19 40/16 40/18
40/19 40/20 41/18 49/20
52/17 54/9 54/16 55/7 61/3
66/6 66/6 72/24 78/25 79/16
82/19 83/14 84/12 85/24
86/18 89/8 91/3 91/7
however [1]  76/2
huge [1]  42/22
hypothetical [8]  27/17 28/15
31/23 32/17 32/22 32/23
33/23 74/9

## I

I'd [1]  80/1
I'll [3]  60/24 70/25 72/15
I'm [42]  3/23 4/15 5/19 7/21
14/25 16/24 18/15 24/13 28/5
30/1 31/3 32/16 39/11 43/17
43/23 45/9 47/17 55/9 56/5
58/7 58/9 59/11 64/10 66/8
67/14 67/17 68/8 68/15 70/21
74/6 75/9 76/3 76/8 77/18
78/17 78/24 79/7 79/8 79/16
82/14 82/22 86/9
I've [9]  10/2 15/1 18/14 56/12
69/23 70/13 77/9 77/10 77/12
idea [3]  9/21 61/14 69/5
identifications [1]  44/3
identified [2]  34/21 68/20
identifying [3]  19/15 20/3 65/6
imagine [1]  43/2
impeached [1]  68/21

impeachment [4]  67/24 68/21
69/1 69/3
important [2]  25/6 26/2 40/6
53/2
impossible [2]  58/13 69/11
impression [2]  24/11 51/13
inappropriate [1]  21/14
INC [1]  1/7
inclination [1]  6/21
inclined [2]  78/24 79/1
include [4]  13/25 15/3 60/18
88/11
included [2]  5/16 16/3
includes [2]  9/1 45/19 51/4
84/2
inconsistent [6]  19/9 36/21
37/8 38/16 68/1 68/12
incorporate [1]  61/1
incredibly [2]  52/7 52/25
independent [1]  45/25
indicate [1]  65/17
indicated [2]  46/7 52/3
indicates [1]  65/5
indication [1]  65/7
induced [1]  28/13
inducement [1]  61/9
inflated [1]  29/6
information [38]  8/22 8/25 9/1
9/2 9/17 10/10 10/11 10/12
10/15 10/24 11/5 12/5 12/8
12/9 13/25 14/7 14/18 16/15
17/20 19/11 19/12 19/14
19/15 19/16 19/18 19/22 20/1
20/3 20/3 20/5 20/6 20/8
20/22 21/1 21/6 48/17 49/1
64/23
infringe [8]  9/7 12/25 13/3
17/4 17/12 17/18 21/23 35/9
infringed [1]  31/16
infringement [3]  4/25 34/15
35/15
infringing [3]  19/25 20/9 25/8
initial [1]  60/2
input [1]  24/21
insinuation [1]  38/14
inspection [1]  83/7
instead [1]  42/21
instruction [3]  7/3 7/12 45/1
instructions [7]  6/25 44/25
61/15 73/22 87/23 88/21 91/3
intention [3]  39/2 39/8 77/22
inter [2]  37/6 37/18
inter partes [2]  37/6 37/18
interest [1]  46/10
interpretation [2]  6/22 20/11
interpreter [1]  45/2
interpreting [1]  7/11
introduce [6]  30/4 30/7 30/20
46/5 54/2 87/13
introduces [1]  46/24
introducing [2]  24/4 51/12
invalid [1]  31/16
invalidity [2]  35/10 40/1
involved [1]  76/15
IPR [6]  40/4 63/8 63/8 63/12
63/23 64/1
irrelevant [1]  30/16
is [273]
isn't [5]  7/5 12/16 16/25 17/19
82/23

issue [25]  5/2 5/24 6/17 6/21
7/20 9/22 11/13 12/17 12/23
13/18 14/2 15/16 16/15 16/16
17/25 17/25 24/2 26/7 27/10
30/15 31/7 31/8 31/16 34/6
34/11 35/21 38/6 38/24 38/25
40/6 40/12 41/8 41/9 41/9
42/24 51/8 52/2 52/5 53/15
54/15 55/12 57/9 67/4 67/6
67/6 68/7 68/11 68/20 69/10
74/9 79/8 79/25 82/13 82/18
85/11 86/8 90/5 91/16
issued [4]  8/24 16/8 75/8 82/6
issues [5]  34/11 36/6 37/23
39/25 41/2
it [157]
it's [58]  4/7 6/13 6/15 6/17
7/20 9/22 11/13 12/17 12/23
13/18 14/2 15/16 16/15 16/16
17/25 17/25 24/2 26/7 27/10
30/15 31/7 31/8 31/16 34/6
34/11 35/21 38/6 38/24 38/25
40/6 40/12 41/8 41/9 41/9
42/24 51/8 52/2 52/5 53/15
54/15 55/12 57/9 67/4 67/6
67/6 68/7 68/11 68/20 69/10
74/9 79/8 79/25 82/13 82/18
85/11 86/8 90/5 91/16
items [3]  37/3 37/10 60/24
its [10]  5/10 5/11 5/11 6/16
19/23 21/13 30/5 30/11 30/24
54/9
itself [5]  8/21 11/12 15/8 30/3
46/25

## J

JENKINS [2]  1/25 3/12
JENNIFER [1]  1/21
JLH [2]  1/4 1/10
JMOL [1]  78/6
JOHN [3]  2/5 3/13 15/21
joined [2]  3/23 3/25
journal [1]  74/24
JTX [1]  73/5
JTX-1 [1]  73/5
Judge [22]  1/21 8/2 8/13 8/24
9/15 9/16 10/18 11/18 12/24
13/13 14/17 16/3 16/8 16/12
17/18 18/23 20/16 21/4 21/12
21/15 21/25 69/25
judges [2]  9/10 70/10
judgment [18]  5/4 5/12 6/18
9/4 9/6 9/7 10/17 14/5 16/8
19/3 21/15 25/10 28/23 28/24
29/3 29/13 57/9 57/10
July [1]  5/11
July 2019 [1]  5/11
jumps [1]  80/1
juror [9]  83/24 83/25 84/5
84/22 85/1 85/6 86/21 87/8
87/10
jurors [7]  76/4 83/18 83/19
83/21 85/17 87/13 88/2
jury [62]  6/5 6/10 6/25 7/3
7/10 7/12 13/17 13/22 22/4
22/5 22/9 24/1 24/6 24/7 24/9
25/15 25/23 29/15 30/18
31/11 35/16 44/24 44/25 47/7
47/14 47/19 49/7 51/13 52/1
53/18 53/22 59/4 59/6 61/15
71/18 71/20 73/12 73/12
73/12 73/13 73/16 73/18
73/21 73/24 73/24 73/24 80/3
83/13 84/9 85/9 85/24 86/7
86/9 86/13 87/16 87/18 87/22
88/14 88/15 88/21 88/22 91/3

just [84] 5/17 7/24 8/13 9/19
11/12 12/7 16/20 18/23 19/4
21/21 22/11 22/14 22/17
23/13 26/6 26/9 27/22 28/11
29/5 30/12 31/2 32/24 35/17
37/9 38/18 40/24 41/20 41/23
42/19 43/2 45/6 46/1 46/25
47/13 48/5 49/5 49/8 50/5
52/3 52/3 53/15 53/24 54/6
56/4 56/15 56/22 60/4 60/13
61/5 61/6 61/14 61/16 61/23
63/12 63/22 64/1 64/5 67/23
69/21 70/6 71/14 72/12 72/18
74/6 74/25 75/7 75/14 76/15
77/5 78/25 80/8 81/23 82/2
82/12 82/23 83/5 83/6 85/10
86/3 86/21 87/8 89/15 90/18
91/8

K

KALPANA [2] 2/7 3/16
KAMBER [2] 2/16 33/19
KATZENSTEIN [3] 1/25 3/12
3/18
keep [4] 12/13 78/14 84/6
85/16
KEMPER [3] 2/5 3/14 31/5
Kidder [2] 24/20 53/3
kind [5] 43/23 45/12 54/13
54/16 79/6
kinds [1] 11/4
King [1] 1/19
know [55] 4/8 4/12 13/18
18/14 27/22 28/17 29/6 33/7
34/8 39/7 40/1 40/18 40/19
40/21 41/9 41/12 41/24 42/12
42/25 43/8 43/9 43/11 45/1
48/14 50/7 52/8 53/25 59/18
60/4 60/16 61/13 66/5 67/4
68/10 70/23 72/6 72/7 72/19
74/5 74/11 74/18 74/21 79/6
79/6 79/11 80/2 80/20 82/15
84/11 84/25 85/1 85/12 85/15
87/10 87/25
knowledge [5] 12/12 32/20
35/1 35/19 35/19
knows [4] 32/19 41/6 52/22
85/12

L

LAHAD [3] 2/5 3/13 15/22
language [14] 8/13 8/21 11/13
13/14 13/16 13/16 14/14 16/4
16/11 16/13 17/10 22/4 35/12
61/8
laptop [1] 73/24
large [1] 24/8
largely [1] 52/19
last [6] 33/20 38/5 40/18
46/21 69/24 72/8
late [6] 6/13 62/1 63/5 63/5
64/8 65/18
later [7] 5/23 7/9 33/1 36/7
64/22 66/21 89/14
law [2] 7/4 73/9
lawsuit [3] 23/24 25/8 25/8
lawyers [1] 87/1
lay [1] 34/14

lead [2] 34/11 34/11
leading [1] 68/24
leads [1] 90/22
least [9] 10/11 12/8 19/11
32/15 43/5 71/16 72/11 77/2
89/1
leave [7] 20/12 23/13 24/6
62/8 62/17 62/25 85/7
leaves [2] 13/21 64/20
left [5] 13/17 24/10 36/15 37/1
55/21
legitimate [1] 75/3
Length [1] 76/1
less [3] 12/12 42/25 79/1
let [17] 4/14 11/6 15/19 16/20
22/5 50/5 57/15 59/11 60/16
66/5 68/18 84/25 85/15 87/10
87/25 88/14 91/5
let's [35] 3/5 3/9 4/17 6/8 7/18
22/23 22/25 23/13 28/8 31/1
33/17 36/12 36/19 42/24
43/14 43/19 43/19 45/8 54/25
57/11 57/25 60/23 61/4 62/10
63/5 64/5 66/22 69/16 70/19
71/5 74/12 76/15 83/13 90/17
91/12
letter [4] 43/21 44/16 65/6
89/18
license [5] 5/11 6/7 6/11 23/1
49/11
licensed [2] 5/1 7/5
licenses [2] 30/7 53/4
like [29] 6/2 8/21 18/5 29/21
34/7 40/1 41/9 45/10 46/16
55/3 56/20 56/21 58/11 58/15
63/14 70/20 72/20 75/1 75/7
77/25 78/19 79/12 80/1 81/19
82/19 87/17 90/21 91/7 91/7
likely [1] 88/16
limine [8] 22/24 22/25 33/24
36/4 36/20 45/8 57/6 57/11
limitation [1] 16/25
limited [2] 59/24 85/4
limits [3] 58/14 60/13 74/20
line [1] 16/11
Ling [1] 4/1
link [1] 72/24
list [24] 31/8 34/22 39/18 46/4
58/6 59/19 60/6 60/17 62/9
63/9 64/17 66/22 71/12 72/23
83/17 83/19 83/21 83/23
85/20 86/5 86/14 86/15 86/19
89/18
listed [1] 71/9
litigated [1] 16/6
litigation [4] 28/21 35/20
49/19 75/14
little [8] 10/4 41/17 41/19 45/9
53/10 61/20 61/24 77/17
live [9] 33/4 33/12 33/13
58/13 63/21 64/4 67/18 67/19
68/15
LLC [2] 1/6 1/12
LLP [2] 1/25 2/4
loaded [2] 73/23 89/21
local [1] 86/12
lodged [1] 15/24
logical [1] 35/4
logistics [1] 76/10
long [9] 5/5 31/8 31/9 31/25

40/18 51/1 54/15 77/16 89/8
long-time [2] 31/8 91/9
longer [2] 81/20 82/12
look [12] 9/22 11/12 29/15
47/21 48/2 49/22 49/22 49/24
53/7 65/11 69/8 91/17
looked [3] 18/4 45/10 84/3
looking [5] 11/5 26/8 26/14
29/17 90/5
looks [3] 18/5 40/1 58/11
looming [1] 34/19
loser [1] 88/7
losing [6] 29/2 29/3 29/4
29/12 29/12 29/13
lost [2] 26/13
lot [10] 4/8 18/17 30/22 33/21
45/19 47/2 47/5 47/9 49/11
56/21
lots [2] 51/4 51/14
loud [1] 84/7
lunch [2] 89/3 89/9
lunches [2] 76/4 90/1

M

made [18] 8/20 9/17 10/4
10/20 11/2 11/11 11/14 12/23
15/6 15/12 16/14 20/9 20/15
21/1 28/11 49/23 60/25 78/9
Magistrate [1] 1/21
mail [3] 11/25 19/17 89/22
main [3] 45/10 50/12 58/3
make [43] 12/21 13/1 13/1
13/7 14/21 15/10 15/13 21/24
22/14 31/12 31/15 32/1 35/4
38/18 43/14 44/24 47/9 48/1
48/4 48/9 49/15 49/18 50/1
50/5 52/11 52/12 53/10 54/1
55/22 56/5 56/22 57/21 58/17
59/5 59/7 59/11 70/6 70/21
76/16 78/6 80/8 83/6 89/15
makes [5] 47/2 47/5 52/9
52/22 64/12
making [3] 49/10 53/13 57/13
many [6] 40/16 40/19 41/10
43/3 58/1 84/12
March [2] 5/13 19/2
March 2021 [1] 5/13
March 2022 [1] 19/2
Marisa [1] 4/1
marking [1] 87/6
materials [5] 39/6 46/25 74/16
75/1 75/13
Mathias [1] 33/18
matter [8] 7/4 12/10 13/4 17/5
21/10 35/10 64/4 72/25
matters [1] 26/17
MATTHIAS [1] 2/16
MAX [2] 2/6 3/14 23/5 23/21
maximum [4] 41/8 42/3 62/14
71/6
may [22] 4/10 9/19 21/22
21/25 22/11 23/9 36/9 38/13
56/15 56/17 58/7 59/19 61/25
62/8 68/9 68/10 68/16 68/16
71/20 73/13 76/17 85/4
maybe [5] 5/22 6/24 31/2 43/1
63/14
me [22] 3/13 4/14 7/14 7/23
8/21 11/6 15/20 16/20 32/14
50/5 55/8 56/20 57/15

59/25 65/10 66/12 67/11
66/18 85/3 84/13 90/19
mean [17] 6/19 8/8 8/8 8/9
11/7 12/16 18/25 31/17 32/22
37/22 50/11 50/25 54/1 55/22
55/6 56/24 75/8
meaning [5] 15/17 25/11
37/21 44/21 44/23
means [3] 12/7 22/4 56/14
medium [8] 8/16 8/17 9/9
40/25 41/20
meet [7] 43/20 70/8 70/11
70/12 72/15 79/19 82/4
mention [1] 54/20
mentioned [5] 18/2 34/24
71/14 86/4 87/21
mere [2] 6/18 58/12
met [2] 16/25 19/20
method [19] 8/4 8/9 8/15 8/16
9/8 9/12 10/7 11/8 17/2 17/21
17/24 18/3 18/6 19/1 21/8
22/2 40/24 41/19 86/25
methodology [4] 28/2 28/4
28/6 30/11
Micro [1] 21/17
Microsoft [1] 53/4
mid [1] 69/5
mid-role [1] 69/5
middle [1] 40/8
midst [1] 25/10
might [19] 11/24 12/2 14/24
14/25 15/2 23/11 32/23 32/23
33/4 33/10 34/14 51/19 60/18
61/5 72/8 74/22 78/24 81/20
88/17
Miller [2] 31/22 31/25
mini [2] 25/16 29/17
minimum [1] 78/14
minute [5] 71/5 77/9 77/12
86/11 89/2
minutes [3] 32/3 76/3 77/18
miscellaneous [1] 60/24
misleading [3] 53/11 53/17
53/22
mistake [1] 70/6
MOBILITY [2] 1/6 1/6
model [13] 24/4 24/24 25/2
26/3 27/20 27/23 27/25 30/24
46/14 46/16 47/7 55/1 55/16
models [2] 24/21 24/22
modified [1] 64/19
modifies [1] 20/14
modifying [1] 67/10
moment [5] 9/19 14/6 42/18
46/22 69/8
Monday [1] 86/11
monetization [7] 45/20 46/15
48/21 51/9 51/21 55/2 55/17
monetize [1] 46/10
monetizing [1] 47/1
money [13] 47/2 47/6 47/9
48/2 49/14 49/17 51/14 52/11
52/22 53/10 53/13 54/1 56/25
month [1] 59/24
months [3] 5/15 16/9 21/14
MOORE [2] 2/12 3/22
moot [13] 19/14 20/2 34/11
37/21 43/22 43/23 45/12
54/18 71/4 77/9 77/11 84/14
85/7 88/10 89/21 91/21

**M**

morning [8]  64/25 65/12 79/25
86/6 86/7 86/9 88/25 89/2
most [4]  25/6 26/1 58/18
62/12
mostly [1]  71/8
motion [47]  4/17 4/21 4/23 5/3
5/7 5/12 6/4 7/17 8/6 13/16
15/23 16/5 18/8 19/24 20/24
21/11 21/13 21/13 21/15
21/20 21/22 22/25 30/25 31/2
33/24 34/4 36/4 36/20 36/24
37/15 39/12 45/8 47/13 52/2
52/4 52/25 55/11 55/11 57/6
57/8 57/8 57/10 57/11 57/12
60/21 78/6 80/17
motions [6]  4/15 5/5 5/15
22/24 28/22 28/23
MOTOROLA [2]  1/6 1/6
move [4]  31/1 75/17 84/9
90/12
Moving [1]  78/4
Mr [2]  4/18 24/20
Mr. [46]  5/14 5/20 23/23 24/1
24/4 24/8 24/11 24/15 24/16
24/19 24/20 24/24 26/3 26/10
26/25 27/2 28/20 29/1 29/8
29/16 29/21 31/22 31/22
31/25 45/24 46/6 46/14 52/9
52/14 52/24 53/3 53/15 54/8
56/5 57/19 57/21 58/3 58/5
59/16 59/18 60/12 63/11
63/19 64/3 70/16 79/4
Mr. Belgam [1]  70/16
Mr. Dey [3]  63/11 63/19 64/3
Mr. Kidder [1]  53/3
Mr. Miller [2]  31/22 31/25
Mr. Pagallo [1]  31/22
Mr. Pinkerton [7]  57/19 57/21
58/3 58/5 59/16 59/18 60/12
Mr. Weinstein [15]  5/14 5/20
24/1 24/8 24/11 24/19 28/20
29/1 29/8 29/21 45/24 46/6
46/14 52/14 56/5
Mr. Weinstein's [16]  23/23
24/4 24/15 24/16 24/20 24/24
26/3 26/10 26/25 27/2 29/16
52/9 52/24 53/15 54/8 79/4
Ms [4]  63/11 66/4 74/1 84/21
Ms. [9]  63/20 64/3 66/5 73/2
76/10 80/9 86/19 87/7 89/7
Ms. Garfinkel [7]  66/5 73/2
76/10 80/9 86/19 87/7 89/7
Ms. Pagallo [2]  63/20 64/3
much [21]  15/19 18/14 23/4
28/7 29/25 30/3 36/3 38/21
39/10 40/20 41/18 49/21
51/24 52/25 55/12 60/21 66/6
69/13 76/25 77/3 90/15
multiple [1]  52/14
multiplier [1]  29/1
Munger [1]  4/1
must [5]  9/17 19/25 20/5 20/8
71/16
my [23]  3/7 3/17 4/7 5/2 6/21
8/1 8/1 15/4 18/18 33/3 36/17
41/13 48/16 50/6 57/2 66/4
66/9 68/8 70/6 71/6 73/9
90/22 92/7

myself [2]  10/2 73/9

**N**

name [5]  19/15 48/15 84/25
85/15 87/17
named [1]  73/4
names [2]  11/24 89/19
narrowed [3]  43/22 62/1 62/4
narrowing [1]  61/22
native [1]  73/22
NEAL [3]  2/1 3/18 69/18
necessarily [2]  58/19 75/12
necessary [4]  74/22 78/7 83/7
89/14
need [47]  4/16 5/23 5/25
10/20 13/10 15/25 25/20
37/16 39/14 41/22 43/22
43/25 54/14 56/11 57/7 58/17
59/7 60/4 60/14 64/20 65/1
66/5 70/12 71/3 72/1 72/2
72/5 72/9 72/21 73/19 73/21
73/23 73/25 77/1 77/4 78/14
80/2 80/8 83/2 84/14 88/3
89/4 89/12 89/17 90/9 90/20
91/10
needs [10]  6/24 7/2 53/25
62/7 64/19 65/1 65/10 65/21
65/23 79/20
negative [1]  58/21
negotiating [1]  25/22
negotiation [2]  27/18 28/16
negotiations [2]  26/4 26/16
neither [2]  24/19 58/25
network [3]  81/20 82/7 82/11
never [4]  12/23 15/16 24/12
48/14
new [2]  27/5 62/22
next [8]  14/21 64/25 65/12
66/2 86/21 87/23 90/19 90/22
nine [1]  77/6
Ninety [2]  81/8 81/11
Ninety-five [1]  81/11
Ninety-four [1]  81/8
no [42]  1/4 1/10 5/7 6/11 7/25
9/13 15/17 16/4 16/5 16/20
21/7 22/1 23/24 24/16 26/2
31/13 31/18 34/9 34/19 39/1
39/8 44/2 45/25 48/8 48/25
49/13 50/16 52/8 52/11 52/24
64/22 69/8 71/14 77/22 78/18
81/5 81/20 82/25 85/18 88/8
89/14 90/7
nobody [1]  85/12
none [4]  35/8 35/9 62/16
63/24
nonobjected [1]  71/23
nonspecific [1]  56/25
noon [2]  72/21 88/4
normal [1]  89/1
not [152]
notebook [1]  73/8
notes [2]  73/17 92/7
nothing [9]  12/7 16/9 16/12
38/17 45/21 46/22 47/6 51/10
55/3
notice [1]  78/15
notion [1]  11/19
now [24]  6/5 10/16 10/22
10/25 14/20 14/20 24/15
25/18 25/25 26/22 27/25

32/15 32/15 39/14 41/5 43/19
48/22 49/2 49/3 60/1 60/19
81/7 82/24 87/25
number [39]  1/9 1/19 19/16
19/16 22/25 26/1 26/20 28/3
29/19 29/20 29/23 29/23 36/5
36/20 45/9 47/8 48/5 51/8
52/6 53/14 53/19 53/21 55/21
56/8 56/16 56/19 56/20 56/23
57/7 57/11 73/4 83/21 83/22
83/24 84/1 84/22 85/1 87/8
88/10
Number 1 [4]  45/9 52/6 84/22
85/1
Number 143 [1]  19/1
Number 2 [2]  36/5 57/7
Number 3 [2]  36/20 57/11
numbers [20]  11/25 15/1
23/10 23/13 23/16 24/7 25/12
27/1 27/18 29/5 29/6 42/22
46/12 47/19 50/17 50/19 51/1
51/11 56/21 84/6

**O**

object [3]  60/5 67/2 67/6
objected [2]  63/8 71/25
objection [11]  7/8 63/9 63/22
65/8 65/8 65/16 67/3 72/16
75/21 88/15 88/17
objections [21]  39/20 62/15
62/23 63/2 63/6 63/12 63/23
63/24 63/25 64/8 64/10 64/24
65/5 65/6 65/17 65/17 68/14
69/9 75/19 85/24 88/13
obligations [1]  79/7
obviously [1]  62/25
October [1]  60/1
October 28 [1]  60/1
off [3]  24/8 77/18 80/3
offered [2]  5/14 71/15
offering [3]  35/9 65/2 65/9
office [1]  88/4
Official [1]  92/10
oh [6]  7/21 41/15 43/17 53/23
66/21 78/22
okay [43]  7/20 7/21 18/11
23/17 23/20 27/7 33/5 33/9
39/11 42/17 43/7 43/19 44/8
44/10 50/5 50/25 55/14 58/4
58/22 61/19 64/2 64/11 66/12
66/23 67/14 67/21 72/8 72/18
76/8 78/3 78/22 80/6 80/18
81/10 81/25 83/12 83/13
84/19 87/11 87/20 88/9 89/11
90/6
old [1]  22/10
once [9]  24/6 24/7 62/1 62/4
70/2 71/9 85/19 90/23 91/6
one [53]  4/15 5/22 6/16 6/23
7/19 9/19 10/7 10/11 12/8
13/15 19/11 19/14 20/2 22/10
23/6 24/25 25/1 26/14 27/5
30/20 32/15 36/9 37/5 37/11
38/5 38/10 38/10 39/25 43/6
43/10 43/13 47/12 48/19 49/1
54/4 54/7 55/10 57/7 60/22
65/7 69/8 72/10 76/21 76/21
78/1 81/12 82/25 83/22 83/25
86/11 86/24 87/8 88/16
ones [2]  28/13 28/14 44/17

63/5 64/6 87/9
opening [40]
11/10 11/11 11/15 14/5 32/2
34/7 34/7 35/2 42/15 48/9
51/12 53/10 59/21 63/22
73/20 77/8
open [1]  13/21
opening [10]  50/7 55/3 56/2
56/6 72/11 72/14 76/21 77/1
77/4 77/8 77/9 77/14 77/23
79/8 88/12 88/23
openings [3]  72/19 77/16
79/15
operates [1]  81/14
operating [1]  81/15
opines [1]  19/2
opinion [9]  26/10 26/11 30/10
30/11 30/13 31/13 31/15
35/10 35/11
opinions [3]  19/2 24/21 32/4
opportunity [8]  59/20 67/2
67/6 83/15 85/4 87/12 87/14
90/12
oppose [1]  22/20
opposed [2]  51/15 82/25
opposing [4]  18/2 34/13 52/3
82/10
opposition [1]  25/19
oral [1]  78/6
order [22]  21/22 22/15 23/12
25/15 37/11 39/6 39/14 40/10
43/20 45/7 60/6 60/24 61/1
62/13 62/24 63/3 63/13 64/1
64/7 71/6 74/3 83/20
ordered [1]  37/12
orders [5]  36/22 37/9 38/19
39/2 39/9
original [3]  50/14 52/16 63/25
other [43]  4/16 6/8 6/16 6/23
7/13 14/24 15/20 20/13 21/4
22/3 22/4 22/19 24/22 28/8
34/3 34/5 37/16 39/16 45/20
46/22 47/17 47/22 48/2 49/10
49/17 51/7 51/22 59/2 59/9
60/10 63/17 63/24 64/18 70/1
70/9 70/22 71/7 71/23 72/16
74/15 75/7 78/15 79/2
otherwise [3]  10/24 36/17
71/18
our [37]  4/8 6/14 11/1 12/17
12/17 12/23 13/2 13/4 13/15
14/3 15/23 25/3 25/4 25/14
34/21 36/12 43/14 45/23
46/18 46/19 46/24 47/4 48/23
58/6 58/12 63/9 66/18 66/24
67/6 76/4 79/12 79/13 79/13
80/25 83/20 86/13 91/9
ourselves [2]  87/13 91/11
out [20]  20/12 20/17 23/14
24/7 25/13 29/10 43/8 48/10
61/14 63/15 76/10 76/16
76/22 80/19 84/7 85/1 85/12
85/24 86/13 87/16
outcomes [1]  28/24
outline [1]  13/2
outside [1]  36/17
outstanding [2]  4/15 75/19
over [3]  34/3 53/15 90/16
overall [2]  86/14 91/9
overwhelmingly [1]  24/5

O

own [5] 48/23 66/17 68/22
84/6 87/6

P

p.m [6] 1/16 3/3 64/22 65/10
67/11 91/18
Pacific [4] 24/23 50/10 52/13
52/15
Pagallo [4] 31/22 63/11 63/20
64/3
page [2] 19/5 20/16
Page 15 [1] 20/16
Pages [1] 34/3
paper [2] 3/6 78/6
papers [3] 5/10 7/20 7/24
paragraph [15] 61/4 61/8
61/11 62/7 63/1 66/8 67/11
67/13 69/15 74/5 74/11 74/14
78/4 80/6 80/16
Paragraph 1 [1] 61/8
Paragraph 36 [1] 63/1
paragraphs [4] 40/12 52/16
61/17 80/11
Paragraphs 7 [1] 61/17
part [32] 6/6 6/14 8/4 8/8 8/12
8/18 9/11 10/3 10/21 11/15
12/6 13/2 13/12 13/20 17/1
17/21 19/5 21/6 30/4 30/24
40/9 40/16 44/13 46/16 47/9
48/13 55/10 63/25 74/2 79/4
82/20 87/15
partes [2] 37/6 37/18
partial [1] 5/3
particular [12] 34/4 36/6 40/25
44/13 46/20 47/18 51/23 64/6
69/7 72/11 74/7 74/24
particularly [2] 39/7 50/22
parties [24] 26/4 26/18 26/21
43/21 49/17 61/1 62/8 62/17
65/14 65/25 66/3 66/5 70/20
72/21 73/11 76/4 77/24 78/5
80/7 84/10 85/4 88/16 89/17
90/2
parties' [5] 4/20 26/16 36/22
59/1 62/12
partly [1] 59/21
parts [1] 66/17
party [7] 48/12 58/7 64/21
65/2 65/20 71/7 78/12
party's [1] 65/9
passed [1] 5/5
Past [1] 24/22
patent [6] 35/5 72/11 72/13
72/14 80/6 82/25
patents [2] 31/16 75/8
path [1] 61/21
PAUL [3] 2/14 3/25 28/10
pay [6] 27/4 27/11 30/10
49/21 53/5 54/11
paying [1] 76/13
pencil [1] 84/5
pencils [2] 88/1 88/7
pending [4] 28/22 28/22 65/5
65/6
pens [1] 88/1 88/7
people [5] 35/6 53/5 84/12
88/3 90/13
people's [2] 47/14 48/6

per [3] 65/7 76/18 81/24
percent [8] 69/2 29/3 29/4
29/11 29/12 29/13
percentage [1] 24/9
peremptory [2] 85/21 85/22
perfectly [1] 78/2
perform [4] 13/8 13/9 19/21
20/21
performance [5] 8/4 8/8 9/11
13/2 17/23
performing [2] 20/10 21/2
perhaps [2] 25/5 83/6
period [2] 12/9 12/23
permission [2] 71/21 90/23
person [5] 59/3 59/9 79/14
82/14 82/20
personal [1] 48/23
persuaded [1] 5/19
PETERMAN [3] 2/15 3/24
28/10
petition [1] 37/6
phone [4] 3/16 3/24 11/25
19/16
phones [3] 82/4 82/5 83/6
phrase [2] 20/13 33/25
pick [5] 11/24 11/25 11/25
12/1 80/3
picture [2] 53/23 53/25
piece [2] 39/5 39/17
pieces [1] 44/13
pile [6] 47/6 49/14 49/21
49/23 49/24 56/25
ping [1] 86/18
ping-pong [1] 86/18
Pinkerton [7] 57/19 57/21
58/3 58/5 59/16 59/18 60/12
pixel [1] 38/9
place [3] 11/24 34/12 88/23
placed [1] 63/10
places [1] 3/8
plaintiff [6] 1/4 1/10 2/8 15/22
31/3 87/25
plaintiff's [5] 22/25 31/2 36/4
36/19 86/20
plaintiffs [1] 61/24 62/3 69/19
plan [1] 88/25
planned [1] 77/14
planning [1] 35/13
plans [1] 46/7
play [7] 64/18 67/18 68/3 69/1
69/1 69/2 69/6
played [4] 50/16 65/23 80/7
80/8
pleadings [3] 6/13 6/15 7/7
please [3] 3/5 3/10 4/4
plurality [3] 10/11 12/9 19/11
plus [1] 16/6
podium [4] 90/12 90/14 90/18
90/19
point [26] 8/7 9/4 9/14 10/24
12/22 15/6 15/11 16/18 18/22
22/6 22/16 31/23 33/3 33/20
36/10 45/7 46/18 48/4 49/10
50/20 53/1 53/2 74/9 78/13
82/8 84/25
points [1] 20/17
pong [1] 86/18
portion [5] 23/14 25/13 30/1
51/15 79/21
portions [3] 4/18 19/7 19/10

position [1] 68/11
positions [1] 25/22
possession [1] 5/11
possibility [1] 90/3
possible [1] 63/15
possibly [1] 82/15
post [2] 5/24 89/16
post-trial [1] 5/24 89/16
POTTER [2] 2/12 3/22
power [2] 81/16 81/18
practical [1] 35/4
practices [2] 52/7 55/25
preceding [1] 74/13
preclude [3] 23/22 38/16
57/12
precluding [1] 37/7
predates [1] 4/6
predefine [2] 12/1 14/22
predefined [22] 8/11 8/25
11/19 12/18 13/4 14/13 14/16
14/20 15/7 15/11 16/3 17/5
17/7 17/11 17/14 17/15 19/14
20/2 20/4 20/12 20/14 21/6
predefining [4] 11/2 11/7 11/8
11/21
predefinition [1] 15/17
predetermination [1] 12/22
prefer [3] 77/21 77/23 90/17
preference [6] 70/5 70/9
70/10 88/7 90/13 91/3
prejudice [3] 24/1 36/5 49/6
prejudicial [7] 24/5 26/14
27/21 47/4 47/15 53/17 53/22
preliminary [1] 87/22
presence [1] 58/25
present [9] 6/5 40/20 40/21
54/11 58/10 58/12 70/24
77/10 89/1
presentation [1] 88/24
presented [3] 6/10 10/16
35/22
presenting [3] 34/20 35/11
41/1
presents [2] 52/14 54/9
preserve [2] 63/7 63/12
preserved [1] 7/8
presumably [1] 11/22
pretrial [16] 1/17 4/5 4/25 39/5
40/10 43/20 60/6 60/24 61/1
62/13 62/24 63/3 63/25 64/6
71/6 74/3
pretty [2] 34/2 40/2
prevent [1] 34/25
previously [1] 30/9
price [1] 47/23
primarily [1] 52/18
prior [24] 23/2 30/11 31/17
34/22 36/22 37/5 37/8 37/11
37/12 37/17 38/19 38/20 39/9
39/15 39/16 39/17 40/3 41/6
43/21 44/12 44/13 63/16
74/16 75/1
probably [4] 23/15 26/1 42/8
74/9
probative [2] 23/25 30/16
probe [1] 26/23
problem [8] 40/14 41/14 45/10
51/3 52/7 64/16 66/13 81/4
problems [1] 38/18
procedural [2] 15/24 15/25

procedurally [1] 21/14
procedure [2] 52/13 69/13
procedures [3] 68/14 68/24
69/3
proceed [1] 61/3
proceeding [1] 92/8
proceedings [2] 3/2 91/18
process [16] 10/9 20/10 21/3
33/1 36/7 36/12 54/10 54/16
64/10 76/11 83/13 85/16
85/25 86/13 87/7 91/9
produced [8] 38/10 48/12
48/25 49/16 49/18 74/14 75/2
75/13
product [5] 7/4 19/25 38/2
38/6 45/5
productive [1] 74/10
products [27] 9/6 12/23 20/9
20/21 21/2 21/23 25/17 26/12
26/13 45/22 46/10 46/13
46/20 47/3 47/23 49/15 49/19
50/21 51/17 51/23 52/10 53/5
53/6 53/8 55/24 58/15 82/9
professor [2] 31/10 34/23
profit [2] 46/12 46/21
profitability [1] 51/16
program [1] 32/1
project [1] 24/12
projected [2] 26/25 27/3
projection [4] 23/23 23/24
25/20 27/10
proper [1] 48/17
properly [2] 4/23 7/7
proportions [1] 66/3
proposal [5] 62/13 67/9 69/14
78/5 79/20
proposals [1] 7/2
proposed [3] 6/2 23/22 87/22
proposition [1] 21/18
prospective [2] 85/17 88/2
protected [1] 26/6
protective [1] 23/12
prove [2] 75/6 75/15
provide [8] 8/19 25/23 26/9
65/21 67/2 72/22 76/4 78/15
provided [10] 18/23 38/1 38/2
38/7 38/9 62/24 65/24 66/3
83/18 84/1
provides [1] 25/21
providing [1] 80/25
provision [1] 40/5
provisions [2] 62/12 67/2
PTO [1] 67/1
PTX [1] 73/5
PTX-1 [1] 73/5
publish [2] 71/20 71/25
published [2] 71/17 74/23
purely [3] 26/7 27/21 89/20
purported [1] 62/23
purportedly [1] 19/8
purpose [2] 18/10 51/12
purposes [4] 35/20 59/24
67/24 80/21
pursue [1] 49/3
pursued [1] 51/19
put [17] 8/22 9/19 19/4 34/16
51/7 51/8 53/14 53/19 53/21
54/5 55/20 56/16 56/19 60/17
64/6 84/3 86/20
putting [2] 16/23 56/8 56/23

**P**

putting... [1] 78/19

**Q**

qualified [1] 31/14
quantify [1] 56/24
question [27] 5/22 6/4 8/1
11/21 13/18 13/21 14/5 14/17
14/21 23/7 32/17 32/23 32/24
33/23 40/15 40/22 42/17
44/22 49/9 56/11 56/13 57/18
74/18 85/14 86/24 90/10
90/23
questioned [2] 85/18 85/18
questioning [2] 34/3 85/6
questions [23] 4/10 4/17
18/13 31/3 31/24 33/7 33/11
34/15 35/15 50/6 68/8 80/10
83/16 84/2 84/7 84/23 85/2
85/3 85/5 86/2 86/3 87/1 87/9
quick [2] 23/6 90/10
quicker [1] 61/5
quite [2] 25/3 67/14
quote [2] 21/21 67/24
quote-unquote [1] 67/24
quoted [1] 8/13

**R**

raise [9] 5/24 7/13 32/13
44/15 59/7 59/14 62/21 74/18
81/2
raised [8] 5/3 6/12 6/14 7/6
7/7 9/4 44/15 60/8
randomized [2] 83/20 83/22
rate [5] 25/3 26/24 26/25
27/14 27/16
rather [2] 22/18 81/2
reach [1] 90/18
reached [3] 26/18 26/20 85/17
read [5] 32/8 65/23 84/7 87/4
87/16
readable [5] 8/15 8/17 9/8
40/25 41/20
reading [1] 88/21
ready [6] 4/15 7/19 7/21 30/1
41/25 81/16
reality [1] 53/15
realized [1] 49/22
really [14] 8/7 29/10 29/11
31/3 34/5 38/17 39/6 44/19
47/7 47/18 55/5 60/3 75/22
77/7
realtime [2] 54/10 54/16
reargue [1] 21/18
reargument [1] 21/13
reason [7] 5/7 7/10 13/15 45/6
60/15 72/4 84/14
reasonable [15] 23/2 23/23
24/15 25/3 26/17 26/25 27/16
28/15 30/8 30/10 30/24 41/3
47/22 50/8 50/20
reasons [4] 20/23 24/17 25/1
26/1
rebuttal [1] 53/2
receive [1] 86/5
received [3] 48/8 71/12 71/13
recently [1] 90/2
recess [1] 88/14
recognition [1] 37/13

recognized [1] 16/12
reconsideration [1] 76/5
record [9] 5/6 5/13 18/23 19/5
21/21 34/16 39/1 74/2 82/1
recover [1] 7/24
refer [1] 72/13
reference [4] 45/15 48/6
55/22 58/25
references [9] 36/21 40/3 41/6
41/10 41/13 43/3 43/22 44/3
63/17
referring [4] 23/15 25/12 39/7
50/15
reflect [1] 62/7
reflects [1] 61/2
regard [1] 23/10
regarding [5] 4/19 23/2 28/21
28/24 57/13
rehearsal [1] 83/4
rejected [1] 16/17
relate [1] 19/10
related [1] 55/5
relates [2] 36/10 47/3
relevance [3] 25/19 25/25
30/7
relevant [5] 25/19 29/14 29/15
34/8 35/15 79/21
relied [1] 24/20
relief [1] 34/6
relocating [1] 88/15
rely [2] 7/20 48/24
relying [4] 28/14 30/23 38/3
51/20
remainder [1] 67/1
renegotiated [1] 45/6
reply [5] 5/15 45/15 45/17
46/17 48/11
report [35] 4/19 5/15 5/18
19/8 19/19 23/2 27/2 27/9
27/10 27/12 27/13 27/24 28/3
28/18 28/19 29/9 29/19 45/11
45/15 45/17 46/17 50/7 50/14
52/9 52/17 52/24 53/3 53/16
54/3 54/8 55/4 55/18 56/3
56/6 90/3
reporter [9] 65/24 67/13 73/10
84/9 89/14 89/20 89/23 92/2
92/10
represent [1] 38/14
representative [13] 38/1 38/6
38/11 45/4 59/1 79/12 79/13
79/14 81/13 81/21 81/24 82/9
82/12
request [2] 62/8 73/9
requested [1] 21/22
requesting [1] 71/21
require [5] 20/7 20/18 20/20
20/25 24/2
requirement [4] 13/8 18/20
21/7 22/1
requires [4] 14/9 16/13 21/5
21/8
reraise [3] 22/8 36/6 37/23
reserve [1] 77/1
reserving [1] 77/3
resolve [2] 6/24 34/12
resolved [7] 22/6 32/12 32/13
36/25 64/21 74/9 79/21
respect [5] 44/1 59/15 71/22
75/8 80/15

respectfully [1] 40/7
response [2] 46/18 65/9
responsible [2] 87/5 88/1
rests [1] 25/6
resubmit [1] 61/1
result [1] 65/15
resulted [1] 25/11
reveals [1] 25/21
revenue [24] 45/20 45/21
46/11 46/12 46/15 46/16
46/20 47/6 48/21 49/21 49/23
49/25 50/8 50/19 51/8 51/16
51/21 52/10 52/12 52/19 53/7
53/9 55/6 56/18
revenues [7] 50/16 51/22
51/22 52/6 52/18 53/6 55/25
review [3] 37/6 37/18 89/13
reviewed [1] 4/20
reviewing [2] 87/21 87/22
revised [1] 64/7
revisit [4] 16/24 17/3 22/10
56/12
rid [1] 54/23
right [86] 4/5 7/16 9/12 9/25
11/9 12/19 12/24 14/15 15/15
15/19 18/16 22/23 23/19
29/25 31/1 32/9 32/25 33/14
33/14 36/2 36/4 36/19 38/21
39/10 39/14 41/4 41/5 42/4
42/23 44/8 49/8 50/25 51/1
51/1 51/5 51/24 55/12 55/14
56/22 57/2 57/5 57/6 57/24
58/4 58/22 58/23 60/9 60/11
60/19 60/20 60/20 60/23
61/23 62/6 62/10 63/4 64/12
64/15 64/16 65/18 67/10
69/12 69/16 70/15 70/19
75/18 75/23 76/1 76/19 77/13
77/20 77/25 78/22 79/18
79/24 80/18 81/4 81/6 81/8
81/22 87/21 90/6 90/8 90/17
90/22 91/16
risk [2] 28/24 90/16
Rob [1] 3/23
ROBERT [2] 2/15
ROBERTS [2] 2/16 3/24
role [2] 50/16 69/5
roll [1] 81/7
room [14] 23/11 73/18 73/21
73/24 77/17 83/4 84/9 84/20
84/24 85/7 86/25 87/2 87/18
90/15
rotate [1] 3/7
royalty [17] 23/3 23/23 24/15
25/3 26/17 26/24 27/1 27/3
27/14 27/16 28/15 30/8 30/10
30/24 47/22 50/18 50/20
rule [9] 4/15 26/6 30/1 31/15
32/14 37/16 59/13 64/24 70/5
Rule 71 [1] 31/15
ruled [8] 8/2 21/25 61/10 64/9
ruling [17] 4/21 4/25 10/19
13/24 15/8 16/8 19/2 21/5
21/12 25/11 34/10 37/5 56/11
56/12 64/10 69/22 80/16
rulings [6] 10/22 39/3 60/25
61/2 63/17 69/24
run [2] 38/18 83/2
running [1] 38/11

**S**

S.A.R.L [2] 1/3 1/9
said [27] 8/5 8/25 11/4 12/24
16/9 17/18 19/4 22/13 22/17
24/5 27/11 27/23 29/8 32/2
32/22 40/10 42/24 47/24
50/22 55/3 56/13 63/1 66/20
69/25 70/2 72/16 77/22
same [6] 14/10 28/4 30/9
30/11 77/10 81/8
Samsung [7] 5/1 5/10 5/16
5/21 6/1 53/4 53/8
saw [1] 31/20
say [49] 10/19 11/24 12/25
13/2 13/3 14/25 15/3 16/23
16/25 18/12 18/25 21/5 25/19
26/20 28/2 39/11 43/23 48/22
49/6 49/12 49/13 49/14 50/1
50/21 54/8 54/14 55/9 55/13
55/16 56/16 56/16 56/17
56/23 58/20 58/20 61/16
63/22 70/23 71/4 74/6 75/14
76/12 81/25 82/11 82/15 83/5
87/8 87/20 90/18
saying [8] 12/14 14/10 27/5
29/11 40/18 49/7 55/9 82/10
says [19] 8/6 8/10 19/6 27/16
28/20 29/1 32/16 45/2 46/17
46/19 46/25 52/4 53/7 54/18
55/1 55/1 66/10 68/1 80/1
schedule [1] 41/3
screen [2] 78/19 78/23
se [1] 81/24
seal [5] 78/13 78/17 78/24
79/1 80/1
search [21] 13/9 13/9 14/24
15/2
searchability [9] 8/3 9/11 17/1
18/22 20/8 20/22 20/25 21/24
22/1
searchable [4] 8/11 14/19
21/9 21/9
searched [30] 8/23 9/2 9/18
10/12 10/15 10/24 11/16
11/19 11/23 12/2 12/6 12/18
13/5 13/14 13/19 14/1 14/7
14/9 14/23 15/4 16/15 17/8
17/15 17/16 17/20 19/12
19/17 19/22 20/5 20/14
seat [6] 3/5 4/4 18/17 33/15
57/25 58/23
seated [1] 85/14
seats [1] 83/24
second [6] 9/25 10/8 24/24
26/8 31/2 37/20
section [4] 61/12 62/10 69/16
74/3
see [19] 3/9 4/3 9/24 9/25
18/7 30/6 36/13 39/17 47/19
49/20 52/14 52/25 72/16 77/24
79/19 80/13 83/4 91/12 91/16
seeing [1] 91/17
seeking [2] 9/7 30/4
seeks [2] 4/25 19/7
seemed [1] 45/12
seems [3] 34/25 58/13 69/10
seen [1] 37/22
selection [1] 37/13 83/13
85/25 86/8 86/10 86/13 88/22

S

self [2]  75/9 82/13
self-authenticating [1]  75/9
self-defeating [1]  82/13
sell [1]  47/23
selling [10]  45/11 46/10 47/14
48/3 48/6 53/6 54/19 54/21
54/23 55/13
sense [5]  15/13 34/10 35/5
56/25 64/12
sentence [3]  54/7 54/13 65/7
separate [4]  13/8 13/10 23/24
74/1
served [1]  60/2
set [2]  62/22 73/11
SETH [2]  2/6 3/14
settle [2]  24/14 25/10
settled [3]  21/19 24/13 27/14
settlement [11]  25/2 25/24
26/19 27/15 27/20 27/24 28/1
30/4 30/23 79/3 90/2
seven [2]  31/7 78/10
several [3]  15/24 19/14 20/2
Shamos [1]  19/19
Shamos's [1]  19/8
share [1]  68/8
shared [1]  72/24
she [5]  34/1 84/23 87/10
89/21 89/24
she'll [1]  86/20
sheet [2]  84/1 84/6
shock [1]  52/21
short [2]  74/25 75/1
should [39]  5/2 6/10 6/25 7/11
11/5 15/23 23/22 27/11 27/17
31/13 31/18 31/18 32/4 37/3
37/14 37/17 37/19 37/24
38/20 41/11 44/6 44/14 47/8
49/24 51/5 52/2 55/11 61/10
67/22 68/2 68/4 68/13 69/2
73/4 73/5 78/9 80/18 84/15
89/18
shouldn't [10]  39/19 44/19
44/19 47/19 55/22 56/2 58/19
64/4 68/7 70/7
show [4]  29/21 52/4 72/13
86/16
showed [1]  86/15
showing [1]  28/15
shown [4]  71/10 71/16 71/18
72/9
sicking [1]  11/20
side [16]  6/8 15/20 22/19 28/8
58/25 59/9 60/10 67/1 76/2
76/3 76/18 78/15 84/12 84/19
86/20 88/11
sidebar [1]  85/23
sides [2]  67/7 89/13
signed [1]  63/4
significant [3]  28/23 29/22
53/6
silence [3]  69/23 70/1 70/4
silent [1]  87/14
similar [4]  18/10 18/10 33/11
72/5
similarly [1]  20/16
simply [3]  24/22 50/22 63/7
since [2]  5/11 55/17
single [3]  35/13 54/13 72/23

sit [3]  79/14 85/9 85/14
sitting [4]  4/10 41/19 73/8
83/23
situated [1]  3/6
situation [2]  77/6 79/25
slice [1]  26/15
slow [1]  75/22
small [1]  51/15
SMITH [3]  1/25 3/12 3/18
sneak [1]  44/17
so [150]
software [11]  8/10 12/11
12/16 12/17 17/6 32/19 32/21
35/6 58/2 81/13 82/25
solely [2]  71/8 71/11
some [37]  4/10 4/11 4/16 5/23
7/18 8/7 10/24 14/2 18/22
22/3 22/3 22/19 30/7 31/2
32/7 32/8 38/13 38/19 39/4
39/17 42/17 47/18 47/22
59/23 60/15 61/8 61/21 63/14
64/8 68/16 72/3 72/5 74/20
76/12 79/11 82/5 85/2
somebody [6]  32/19 44/23
58/6 59/14 80/1 88/20
somebody's [2]  44/18 84/13
somehow [1]  6/19
something [21]  6/24 7/5 8/10
22/13 29/20 34/16 39/5 45/12
47/24 58/21 66/16 66/20 68/1
68/23 68/25 70/20 78/24
78/25 82/3 90/17 90/21
sometimes [1]  81/14
soon [3]  41/1 84/4 91/17
sorry [8]  16/18 20/19 24/13
38/5 43/17 62/1 72/19 86/9
sort [6]  5/23 12/16 18/5 48/23
50/4 85/11
sorts [1]  51/6
sought [1]  34/6
sounds [5]  55/8 56/20 56/21
63/14 77/25
source [5]  9/2 19/18 20/6
78/19 78/23
speak [1]  39/23
speaking [1]  34/1
special [1]  5/25
specialized [2]  35/2 35/3
specific [15]  23/10 23/16 31/7
32/1 32/12 33/1 37/9 37/25
38/9 39/4 49/9 56/19 74/18
81/1 81/2
specifically [6]  28/20 31/4
55/24 56/6 60/8 63/1
specify [1]  20/15
speculative [1]  26/7
speed [1]  4/9
SRINIVASAN [2]  2/7 3/17
stake [1]  51/14
stand [8]  21/18 61/6 67/19
68/1 73/8 86/11 87/16 90/19
standpoint [1]  15/17
Stark [15]  8/2 8/13 8/24 10/18
11/18 12/24 13/13 14/17 16/3
16/8 16/12 17/18 18/23 20/16
21/25
Stark's [5]  9/15 9/16 21/4
21/12 21/15
start [7]  4/17 12/11 61/4 84/21
86/20 88/23 88/25

starting [1]  50/20
starts [1]  70/3
stated [2]  56/2 60/22
statement [2]  45/10 50/12
statements [8]  28/20 31/13
31/15 50/2 72/11 72/14 88/12
88/24
STATES [2]  1/1 1/21
status [1]  28/21
stay [2]  73/18 90/17
staying [1]  90/13
stenographic [1]  92/7
step [12]  11/8 11/15 17/2
18/25 20/10 20/21 21/2 21/5
21/7 22/2 49/2 76/11
still [8]  3/6 9/16 10/23 13/3
13/6 13/13 17/3 60/17
stipulation [7]  37/9 38/1 38/2
38/7 38/8 38/20 45/5
stipulations [1]  36/22 39/3
39/9 80/12
stop [1]  69/6
STRAUS [3]  2/6 3/14 23/21
streamline [1]  38/3
Street [1]  1/19
strike [6]  4/18 4/23 80/17 85/8
85/10 86/21
strikes [1]  85/21 85/22 86/17
86/18
striking [1]  61/17
struck [1]  85/19
studied [2]  35/22 47/1
stuff [2]  47/25 80/22
subject [4]  23/12 40/4 64/7
66/9
submissions [1]  4/20
submit [2]  34/7 89/13
submitted [1]  39/6
subpoenaed [2]  59/10 59/11
substantial [2]  25/13 29/8
substantive [1]  15/25
such [4]  12/21 60/13 64/19
67/25
sufficient [1]  78/15
suggest [1]  59/6
suggestion [1]  51/7
summary [18]  5/3 5/12 6/18
9/4 9/6 9/7 10/16 14/5 16/8
19/3 21/15 25/10 28/22 28/24
29/3 29/13 57/9 57/10
supplement [1]  62/24
supplemental [7]  4/18 5/18
45/11 45/15 45/17 50/12 54/4
supplemented [1]  62/17
support [2]  15/5 28/25
supports [1]  54/7
suppose [1]  90/4
supposed [1]  45/2
sure [23]  8/7 10/6 22/14 31/3
38/18 39/24 43/14 44/24 50/5
56/5 56/22 58/8 58/9 58/17
66/8 67/14 76/16 79/8 79/8
79/16 82/22 83/11 89/15
Surely [1]  70/24
surprise [1]  66/20
SUSMAN [5]  2/4 3/13 3/17
23/21 31/6
suspect [1]  42/20
switch [1]  45/12
sworn [2]  86/2 70/3

system [3]  35/14 35/18 35/19
systems [2]  81/15

T

table [1]  43/19
take [17]  22/4 31/25 32/2 40/7
44/24 48/23 50/11 61/14
68/11 71/5 75/15 75/16 76/25
77/3 77/9 88/22 90/16
taken [1]  30/3
takes [2]  27/25 80/3
taking [2]  21/11 49/4
talk [21]  4/14 7/12 22/23
28/18 32/13 35/14 36/12
36/19 43/25 46/7 46/22 59/8
61/6 61/23 62/10 70/4 70/19
70/25 71/5 80/11 83/13
talked [6]  28/17 47/21 67/10
67/12 68/22 90/1
talking [9]  4/12 28/23 32/18
35/7 35/8 35/18 56/22 67/17
91/8
talks [6]  10/18 28/21 52/17
54/18 78/10 80/6
tape [1]  67/19
TAYLOR [2]  2/2 3/12
team [1]  44/7
technical [3]  31/7 35/1 35/3
technological [1]  89/19
technology [5]  34/1 80/10
80/21 89/5 89/6
telephone [1]  14/25 15/1
tell [7]  39/1 39/8 41/10 42/13
43/1 51/6 59/3
telling [1]  47/14
ten [3]  71/23 81/14 81/15
tendered [1]  70/1
tentative [1]  80/16
term [8]  19/10 19/13 19/20
20/11 20/18 20/20 25/12
44/23
terms [12]  4/9 8/19 18/7 22/6
25/24 31/17 37/21 37/22
44/21 45/3 50/9 89/19
test [1]  83/22
testify [4]  35/2 56/5 60/14
65/19
testifying [2]  35/1 70/3
testimony [22]  33/4 34/20
35/12 36/21 37/8 37/24 39/5
59/6 62/16 65/3 66/25 68/2
68/3 68/5 68/6 68/9 68/12
68/16 68/22 69/7 74/8 79/10
than [20]  4/13 12/13 22/18
27/24 34/11 41/23 42/25
43/24 44/11 47/5 51/22 52/3
54/18 55/12 64/22 71/7 77/10
77/11 81/2 89/14
Thank [30]  7/15 22/21 23/4
28/7 28/9 29/25 33/16 33/18
36/2 36/16 38/21 38/22 39/10
44/9 51/24 51/25 56/9 57/3
69/12 70/17 72/18 75/24
75/25 78/3 79/23 86/23 87/9
89/11 91/1 91/14
Thanks [3]  15/19 60/9 60/20
that [594]
that's [80]  5/2 5/6 5/12 6/24
5/7 7/11 7/14 7/16 8/14 9/21

## T

that's... [70] 10/5 12/6 13/7 13/21 16/3 17/6 17/9 17/10 17/10 19/3 21/19 23/19 26/19 27/4 27/9 27/11 27/20 28/7 30/16 33/23 34/2 36/25 37/5 37/8 39/16 41/13 46/16 47/12 48/11 50/25 52/21 52/23 53/11 53/15 55/5 55/10 56/1 57/2 57/9 58/22 59/13 61/9 61/18 63/17 65/24 66/12 66/19 67/8 68/11 68/22 73/8 74/23 75/22 76/17 76/19 78/7 79/7 80/4 80/7 81/8 81/23 82/3 82/22 84/8 88/11 88/18 89/15 89/20 90/19 90/21

their [41] 6/12 24/9 24/21 25/19 33/12 33/13 35/1 39/18 40/1 40/10 46/4 46/20 46/21 47/21 47/23 48/2 48/11 49/17 49/21 52/23 53/5 53/6 59/6 59/19 59/21 63/25 66/17 66/22 68/22 69/1 73/4 76/13 83/7 83/24 83/25 84/6 84/6 84/25 85/15 87/6 89/13

them [47] 4/15 12/1 32/6 32/13 33/7 34/25 35/8 35/9 42/6 42/8 47/14 52/12 58/6 58/18 58/19 59/9 59/11 60/16 67/5 70/21 70/22 70/24 71/20 71/25 72/3 72/4 73/2 73/6 73/13 73/23 75/6 75/20 77/8 77/11 81/17 81/18 82/17 82/18 82/22 82/23 83/21 83/25 84/4 84/22 84/24 85/9 85/10

themselves [1] 8/19

then [52] 6/16 7/11 11/4 11/20 12/2 12/6 14/1 14/17 14/21 15/8 15/12 15/17 16/5 17/18 19/2 20/16 25/5 27/15 28/12 28/25 30/13 35/22 36/13 37/25 40/14 42/25 44/21 45/4 45/12 46/8 49/6 51/5 51/6 54/11 59/22 59/23 61/12 65/5 66/16 66/21 70/3 71/19 75/16 77/12 79/9 81/20 83/15 85/23 87/7 87/10 89/12 90/1

theory [6] 25/6 25/18 25/25 48/11 49/4 49/5

there [79] 5/7 6/22 7/2 8/2 8/6 8/9 9/10 10/13 10/23 12/13 12/14 15/11 16/4 16/5 16/12 16/25 17/19 18/21 22/1 22/9 22/13 23/9 24/17 26/5 26/20 28/22 28/23 29/2 31/7 31/18 32/11 33/1 34/12 36/13 37/1 37/2 38/13 38/19 40/15 40/20 40/22 41/21 42/17 43/9 44/17 45/1 45/4 45/15 45/16 47/10 48/20 51/13 51/18 51/19 52/8 53/7 56/25 57/15 60/17 61/8 64/20 64/20 65/23 66/13 67/3 67/25 71/23 73/16 73/22 74/6 75/3 78/20 78/21 79/7 81/1 81/11 82/22 87/12 90/8

there's [49] 4/8 6/11 7/10 13/8 14/21 18/3 21/7 22/3 31/13 34/9 34/19 37/25 38/17 39/17 41/23 42/15 43/2 43/5 44/22 45/6 46/14 47/15 52/24 53/8 53/13 54/10 55/13 56/13 56/17 56/18 57/18 58/15 68/25 70/20 72/3 74/4 74/17 74/20 76/11 78/18 80/11 81/12 82/21 85/24 88/18 90/5 90/11 90/15 91/10

therefore [1] 35/2 40/20

these [27] 14/20 29/5 31/22 32/7 35/22 38/18 42/22 46/10 46/13 46/19 47/3 49/10 49/15 50/21 51/23 52/10 53/9 53/12 53/13 61/5 62/12 64/7 64/8 75/4 75/10 82/4 82/19

they [141]

they'll [1] 84/5

they're [18] 3/25 18/9 24/10 26/6 34/7 39/7 40/2 40/23 43/3 48/2 53/24 56/16 71/1 72/5 75/16 81/19 83/23 84/1

they've [4] 75/10 77/7 84/22 85/2

thing [9] 37/25 47/12 47/17 48/9 48/19 58/13 69/10 77/10 79/2

things [16] 15/7 22/18 31/18 32/4 37/2 45/21 46/22 47/11 51/4 51/7 51/10 52/5 56/6 75/22 82/19 91/7

think [76] 5/7 6/9 7/10 8/5 10/21 13/6 14/1 15/24 17/9 18/9 22/16 22/18 23/13 23/14 23/15 23/15 23/19 25/4 25/5 29/10 30/12 30/21 31/17 32/25 33/20 33/23 33/24 34/2 34/5 34/22 36/24 37/3 37/23 34/14 39/19 40/2 40/4 40/7 41/11 41/25 43/23 44/14 44/18 45/6 45/14 48/24 53/23 54/5 54/6 54/23 59/24 60/1 60/12 61/10 62/11 63/17 64/13 68/13 68/20 70/12 70/13 71/3 71/8 77/15 78/1 80/12 80/17 80/24 80/25 83/9 84/15 86/11 88/3 90/11 90/15 90/16

thinking [2] 18/18 91/7

thinks [1] 30/15

third [5] 25/5 26/16 37/25 48/12 58/7

third-party [2] 48/12 58/7

this [153]

those [43] 5/4 15/2 15/4 15/24 23/11 27/1 27/18 27/18 31/17 32/4 32/13 33/3 37/10 37/13 37/19 37/23 41/2 43/18 44/15 44/15 46/13 51/10 51/12 61/1 61/25 62/3 62/16 63/12 64/24 65/16 74/15 75/9 78/7 80/13 80/13 81/2 83/21 84/3 85/3 85/5 85/20 88/3 89/21

though [5] 11/6 41/8 42/3 42/9 42/11

thought [5] 14/4 27/4 44/10 70/13 70/15

thoughts [1] 7/18

threat [1] 34/19

three [7] 5/15 16/6 32/14 52/5 72/8 84/13 86/14

threw [1] 46/21

through [17] 7/18 17/25 16/16 35/12 37/9 50/9 54/15 60/23 61/5 68/13 68/23 69/2 71/1 71/3 71/15 72/7 79/15

throughout [3] 37/22 38/4 82/17

thrown [1] 46/17

Thursday [2] 1/16 88/4

thus [1] 13/23

time [47] 4/7 8/7 9/5 10/19 11/2 11/7 14/7 14/11 14/19 15/11 15/13 18/22 22/7 22/16 24/2 31/8 31/9 41/18 42/2 42/20 55/19 58/9 58/11 58/14 60/13 60/16 60/18 62/4 64/19 64/20 66/1 66/1 66/6 66/6 74/25 75/15 75/16 75/21 76/25 77/4 77/24 78/9 80/3 80/5 84/25 88/15 88/20

time-consuming [1] 24/2

times [21] 28/25

tiny [1] 53/9

today [14] 4/6 4/10 4/11 41/6 42/9 42/13 43/20 44/1 44/3 44/3 60/25 61/22 74/10 90/9

together [6] 7/1 60/17 73/6 79/19 83/3 83/10

told [1] 88/10

Tolles [1] 4/1

Tomorrow [2] 44/5 44/6

tonight [1] 44/7

tons [1] 53/3

too [9] 6/13 7/20 41/10 43/1 49/2 56/1 64/8 65/17 74/9

took [2] 31/21 49/11

total [2] 5/14 85/17

Totally [1] 42/5

touch [1] 76/9

town [1] 76/13

track [1] 84/6

transcript [4] 22/17 65/22 89/13 92/7

transversed [1] 38/20

treat [1] 75/9

treated [1] 74/17

treating [1] 74/1

trial [65] 5/24 6/6 6/19 7/5 7/6 13/22 21/23 24/2 24/3 25/16 29/3 29/12 29/17 29/18 32/9 37/4 37/14 37/18 37/24 38/14 40/8 40/19 40/22 40/23 41/7 41/18 42/12 42/14 42/20 44/17 50/2 57/14 58/8 58/10 58/11 59/14 59/19 61/3 62/4 63/21 64/4 64/18 65/20 70/25 71/3 72/22 73/15 73/19 74/20 74/25 75/20 75/21 76/1 76/2 79/22 80/5 86/6 89/12 89/15 89/16 89/22

tried [1] 4/8

tries [1] 53/3

trip [1] 90/16

true [3] 6/15 71/22 92/6

truly [1] 26/8

try [4] 34/8 46/5 51/8 74/21

trying [2] 26/9 48/10 52/5 56/24

turn [6] 33/25 44/18 45/8 46/11 57/11 69/16 31/21 31/22 34/22 41/2 41/23 42/19 42/21 62/22 63/11 65/21 76/11 77/8 77/12 77/13 77/23 78/1 89/15

two-hour [4] 77/8 77/12 77/13 77/23

type [3] 10/15 12/5 46/15

types [4] 8/14 8/25 10/11 12/9

## U

U.S [2] 75/8 92/11

U.S.C [1] 40/4

ultimately [3] 29/23 35/16 35/24

unanswered [1] 13/21

unclear [1] 10/22

uncommon [1] 68/11

under [4] 14/18 19/24 31/14 37/14

underlying [1] 29/6

undermine [1] 15/25

undermines [1] 29/24

understand [8] 7/25 18/19 22/21 44/2 68/22 76/12 76/12 86/12

understanding [2] 11/1 57/2

understandings [1] 25/22

understood [4] 10/19 15/9 21/4 56/4

undue [1] 85/8

UNIKEL [2] 2/15 3/23

UNITED [2] 1/1 1/21

units [2] 25/7 25/8

universe [3] 62/14 64/7 71/7

university [1] 31/10 34/23

unless [8] 18/13 71/10 71/15 74/17 82/6 84/13 87/14 88/21

unproven [1] 25/6

unquote [1] 67/24

unrelated [1] 55/23

until [9] 16/9 16/10 33/1 40/18 40/21 66/2 71/18 85/16 89/1

unusual [1] 68/19

unworkable [1] 69/11

up [35] 4/9 8/22 11/7 22/4 27/23 28/3 40/7 41/3 44/17 44/18 44/24 51/11 68/10 70/16 74/7 75/6 75/15 75/16 78/19 78/23 79/3 79/8 79/9 79/9 79/20 80/1 80/3 81/16 81/18 82/3 84/4 85/6 86/16 87/8

update [4] 81/18 81/24 82/24 89/24

updated [1] 60/2

updating [1] 82/22

upon [1] 28/14

URLs [1] 15/3

us [21] 25/11 33/3 38/10 40/6 47/4 49/10 51/6 58/13 64/22 66/20 67/5 68/4 69/4 72/1 72/23 72/25 75/15 87/10 87/13 87/14 91/5

usable [1] 28/12

use [15] 23/22 46/18 46/19 50/19 50/21 54/14 65/15 66/16 67/1 67/7 67/22 68/8 86/9 71/24 83/7

**U**

used [6]  28/2 46/14 71/7
71/11 82/21 86/24
user [14]  45/11 45/19 46/11
46/15 47/2 51/9 51/21 54/9
54/19 54/21 54/24 55/2 55/13
55/17
users [1]  54/12
uses [4]  27/25 28/4 29/1
30/11
using [4]  30/9 30/12 49/7
82/24

**V**

valid [1]  31/16
validity [1]  34/15
valuable [1]  50/22
value [1]  23/25
verdict [1]  5/25
verifiable [1]  49/1
verified [1]  49/15
version [1]  82/24
versions [5]  38/11 38/12
38/15 38/15 72/22
versus [1]  29/9
very [26]  7/16 8/2 15/19 23/4
24/8 25/13 25/13 28/7 29/7
29/22 29/22 29/25 36/2 36/3
38/21 38/25 39/9 45/18 47/3
47/5 48/11 51/24 56/17 60/20
69/12 90/12
video [2]  80/7 89/24
videos [1]  73/22
view [10]  5/2 8/1 14/8 24/9
47/21 66/9 66/18 66/24 67/6
71/6
Vinny [1]  4/1
violate [1]  22/15
violating [1]  39/9
voir [9]  84/2 84/7 84/10 84/23
85/13 87/4 87/15 87/22 88/2

**W**

waiver [2]  65/15 65/16
walk [1]  85/12
walking [1]  35/12
want [56]  7/20 7/23 12/19
12/20 15/3 18/19 22/14 28/18
32/14 34/16 34/25 38/16
42/11 47/14 48/1 48/5 49/20
49/22 50/3 52/3 56/22 57/20
57/21 59/3 59/5 59/5 61/7
61/23 62/8 64/17 64/17 66/18
67/18 69/1 70/6 70/10 70/22
72/4 73/7 73/12 73/13 75/15
75/17 76/15 77/1 77/5 77/8
77/17 78/6 80/7 81/25 82/23
84/12 86/21 87/25 90/18
wanted [6]  18/11 22/14 49/3
51/3 57/16 72/18
wanting [1]  30/20
wants [10]  5/24 18/14 30/6
39/13 54/8 59/14 66/10 67/15
68/25 79/16
was [75]  4/6 4/22 7/7 8/1 9/13
9/14 10/21 11/1 14/3 14/4
14/5 14/16 16/2 16/4 16/5
24/8 24/11 24/12 26/4 27/15
29/2 29/19 32/15 32/22 33/24

33/25 33/25 38/2 38/5 40/15
40/23 41/11 41/14 41/17 45/4
45/5 45/10 45/14 45/15 45/16
45/23 46/1 46/17 47/21 47/25
48/18 48/25 51/18 55/3 56/2
57/4 58/5 59/22 59/23 59/25
60/1 60/7 60/17 61/8 61/16
61/19 62/21 62/21 63/2 63/22
63/23 64/1 66/15 66/18 66/22
74/13 74/14 74/25 82/25 83/5
wasn't [5]  9/10 30/4 30/22
63/10 66/20
water [1]  29/10
way [13]  6/16 14/2 30/6 33/21
35/11 39/16 61/4 72/5 72/20
82/21 84/3 88/18 89/24
ways [1]  48/2
we [246]
We'd [2]  26/10 26/11
we'll [12]  22/4 22/20 32/12
36/7 44/15 61/14 74/7 75/20
85/15 86/21 88/25 89/1
we're [51]  4/5 4/12 6/5 8/14
11/20 13/13 17/3 19/5 22/5
22/10 25/15 29/17 32/5 33/10
35/5 35/12 38/8 38/13 40/2
40/16 41/1 41/9 41/21 41/25
41/25 42/1 42/12 42/20 48/22
53/21 56/12 56/22 56/23 58/9
61/14 61/17 71/24 77/25
78/18 79/24 80/20 80/25 81/8
81/15 83/17 84/10 85/16
87/13 87/22 88/23 90/9 91/12
we've [24]  41/24 44/13 44/21
48/13 59/13 61/12 63/5 63/5
64/6 66/19 67/19 68/5 69/3
74/21 75/18 77/6 78/23 79/20
80/14 81/17 82/18 85/10
85/17 91/6
wear [1]  83/25
week [3]  40/18 69/24 87/24
weeks [1]  89/15
Weinstein [15]  5/14 5/20 24/1
24/8 24/11 24/19 28/20 29/1
29/8 29/21 45/24 46/6 46/14
52/14 56/5
Weinstein's [17]  4/18 23/23
24/4 24/15 24/16 24/20 24/24
26/3 26/10 26/25 27/2 29/16
52/9 52/24 53/15 54/8 79/4
weird [1]  18/5
well [28]  6/3 6/9 6/20 8/12
12/24 13/18 14/21 22/20 34/7
42/22 43/5 47/25 48/7 54/25
56/17 58/1 58/20 63/14 65/6
67/20 70/9 75/21 78/22 79/4
79/18 82/14 87/4 90/21
were [37]  9/6 10/17 13/19
16/10 25/8 26/5 26/9 28/11
32/18 33/3 35/22 35/22 35/24
35/25 40/10 40/18 42/19 46/3
46/14 49/18 49/19 50/14
50/17 50/19 50/21 58/21
60/15 63/7 63/24 64/8 73/23
74/14 74/14 78/25 82/6 91/6
91/8
weren't [1]  48/12
what [98]
what's [6]  7/24 28/17 28/18
40/14 55/6 75/11

whatever [7]  36/13 39/13
67/25 67/5 72/7 82/25 83/22
whatsoever [1]  50/17
when [38]  4/6 5/1 8/1 9/13
10/16 11/4 11/21 14/5 15/9
16/3 18/25 40/16 41/24 42/6
45/23 56/15 56/16 56/23 60/1
64/16 65/19 67/19 68/21 69/7
69/22 70/1 70/7 78/9 81/18
82/25 84/6 86/5 86/16 86/25
87/4 87/16 90/14 91/12
where [17]  4/9 5/25 15/12
29/1 32/16 55/7 57/22 59/4
61/6 79/25 82/17 83/2 83/3
84/9 84/24 85/14 91/12
whether [28]  6/7 7/4 9/17
10/14 13/25 16/14 16/24
17/19 19/21 20/1 21/6 31/15
31/16 40/23 41/19 42/18 43/3
44/22 46/24 46/25 48/18
57/18 59/8 59/9 68/4 69/10
74/16 75/4
which [33]  5/10 5/22 8/14
15/8 23/1 24/12 26/20 28/1
30/12 33/21 36/20 40/21
40/24 40/25 41/10 41/11
41/25 46/9 47/4 47/6 48/10
49/15 51/4 52/23 54/8 54/11
63/24 78/1 81/13 82/6 87/9
88/2 89/18
while [10]  4/7 9/18 10/8 11/14
19/25 20/4 20/9 21/2 68/3
90/9
who [19]  28/13 28/14 32/19
33/25 34/23 35/6 35/11 35/23
35/25 48/14 49/11 58/2 58/9
58/18 71/16 85/1 85/13 85/17
86/15
whole [4]  50/23 54/15 62/22
82/8
why [10]  7/1 57/24 59/4 61/13
63/5 68/22 70/8 79/18 84/14
85/12
will [93]
Williams [1]  4/1
willing [2]  75/9 76/3
Wilmington [1]  1/19
wiped [1]  25/13
wish [1]  66/21
withdraw [1]  5/20
within [4]  24/3 29/17 90/17
90/18
without [8]  6/1 23/15 25/12
36/5 62/17 65/17 71/20 82/21
witness [43]  30/17 31/8 33/25
34/19 34/22 34/23 35/13
39/18 44/18 57/14 57/16 58/6
58/7 59/2 60/6 60/17 62/9
64/21 64/23 65/2 65/19 65/20
66/1 66/2 66/7 67/18 67/19
67/25 68/16 68/21 69/6 69/7
70/2 70/3 71/2 71/15 71/24
72/6 72/9 73/7 73/8 89/19
90/20
witness's [1]  74/8
witnesses [20]  31/8 31/22
33/12 33/13 34/14 35/25
58/13 58/17 60/14 61/23
63/11 63/20 69/23 69/25 70/6
71/7 77/9 77/11 90/14

witnesses' [2]  79/10 79/10
won't [4] 26/20 32/3 83/22
87/17
word [1]  20/12
words [6]  14/24 20/13 21/4
67/15 71/23 89/24
work [11]  7/1 12/2 26/12 73/1
76/10 79/19 80/9 82/13 82/19
83/9 91/3
workable [1]  82/9
worked [4]  34/1 35/23 76/16
86/13
working [1]  13/13
works [8]  32/19 32/21 35/14
35/18 35/19 54/9 54/17 79/1
worried [7]  31/12 31/20 32/5
33/10 46/3 46/4 47/13
would [51]  5/20 6/16 11/2
11/4 12/7 14/1 15/13 15/17
20/11 24/13 25/13 26/13 27/1
27/4 27/16 28/2 28/12 28/16
29/20 30/3 30/10 30/21 30/22
31/25 32/2 34/18 42/10 42/11
43/10 47/3 47/22 48/19 51/12
53/17 53/22 58/3 58/20 59/6
66/14 69/5 72/20 73/9 74/18
76/4 76/20 77/6 77/11 77/21
79/12 83/1 90/17
wouldn't [5]  13/10 15/13 26/9
57/17 75/12
wow [1]  53/23
write [1]  43/21
wrong [1]  80/13

**Y**

yeah [18]  7/25 9/21 10/2
16/20 16/22 37/3 48/1 54/22
56/10 60/5 61/18 62/6 64/5
66/14 67/8 76/8 77/25 83/9
year [2]  16/9 16/18
years [6]  5/12 16/6 27/11 72/8
81/14 81/15
Yep [3]  10/3 23/18 72/17
yes [37]  13/7 14/11 22/12
23/8 28/5 31/5 31/7 32/10
33/13 40/12 52/1 59/14 59/17
62/3 62/5 62/19 63/17 64/14
67/20 69/12 69/20 76/5 76/6
76/25 80/23 84/6 84/18 84/22
84/23 85/2 85/3 85/5 85/13
86/2 87/6 87/9 90/25
yet [2]  63/4 72/13
you [248]
you'd [1]  8/21
you're [18]  11/2 11/21 15/9
27/5 42/13 43/1 46/4 47/12
49/19 53/19 55/20 70/24 88/1
you've [5]  15/12 33/20 55/20
your [112]
yourself [1]  89/5
YouTube [1]  51/6

**Z**

zero [2]  46/15 48/20