**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARENDI S.A.R.L., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 13-919-JLH |
| | ) |
| GOOGLE LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**<u>FINAL JURY INSTRUCTIONS</u>**

**TABLE OF CONTENTS**

1.   GENERAL INSTRUCTIONS ................................................................ 1
   1.1   INTRODUCTION .................................................................... 1
   1.2   JURORS' DUTIES ................................................................... 2
   1.3   EVIDENCE DEFINED ............................................................. 3
   1.4   DIRECT AND CIRCUMSTANTIAL EVIDENCE ..................... 4
   1.5   CONSIDERATION OF EVIDENCE ...................................... 5
   1.6   STATEMENTS OF COUNSEL ............................................ 6
   1.7   CREDIBILITY OF WITNESSES ......................................... 7
   1.8   EXPERT WITNESSES ........................................................ 8
   1.9   DEPOSITION TESTIMONY ................................................. 9
   1.10  DEMONSTRATIVE EXHIBITS .......................................... 10
   1.11  USE OF NOTES ............................................................... 11
   1.12  BURDENS OF PROOF ...................................................... 12
2.   THE PARTIES AND THEIR CONTENTIONS ................................ 13
   2.1   THE PARTIES ................................................................... 13
   2.2   SUMMARY OF THE ISSUES ........................................... 14
3.   THE PATENT LAWS ......................................................................... 15
   3.1   THE PATENT LAWS ........................................................ 15
   3.2   CLAIM CONSTRUCTION ................................................. 16
   3.3   INFRINGEMENT—INFRINGEMENT GENERALLY ............. 19
   3.4   INFRINGEMENT—DIRECT INFRINGEMENT ..................... 20
   3.5   WILLFULNESS ................................................................. 21
4.   INVALIDITY ..................................................................................... 23
   4.1   INVALIDITY—GENERALLY ............................................. 23
   4.2   INVALIDITY—PERSON OF ORDINARY SKILL IN THE ART .. 24
   4.3   PRIOR ART ....................................................................... 25
   4.4   INVALIDITY—ANTICIPATION ........................................ 28
   4.5   INVALIDITY—OBVIOUSNESS ........................................ 29
5.   DAMAGES ......................................................................................... 31
   5.1   DAMAGES GENERALLY ................................................. 31
   5.2   REASONABLE ROYALTY—THE "HYPOTHETICAL NEGOTIATION" METHOD
      32

    5.4     DAMAGES—AVAILABILITY OF NON-INFRINGING ALTERNATIVES    36

    5.5     DAMAGES—APPORTIONMENT    37

    5.6 DAMAGES—DATE OF COMMENCEMENT    38

    [Arendi Proposal: 5.7 THE SAMSUNG AGREEMENT]    39

6    DELIBERATION AND VERDICT    44

    6.1     INTRODUCTION    44

    6.2     UNANIMOUS VERDICT    45

    6.3     DUTY TO DELIBERATE    46

    6.4     SOCIAL MEDIA    47

    6.5     COURT HAS NO OPINION    48

1.    **GENERAL INSTRUCTIONS**

### 1.1    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

### 1.2    JURORS' DUTIES

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

### 1.3    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition transcript testimony that has been played by video or read to you, the exhibits that I allowed into evidence, matters I have instructed you to take judicial notice of, and the stipulations to which the lawyers agreed.

Certain models, reproductions, charts, summaries, and graphics have been used to illustrate certain evidence and testimony from witnesses. Unless I have specifically admitted them into evidence, these models, reproductions, charts, summaries, and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.4 DIRECT AND CIRCUMSTANTIAL EVIDENCE

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**1.5      CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**1.6      STATEMENTS OF COUNSEL**

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

**1.7**     **CREDIBILITY OF WITNESSES**

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you. You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

**1.8      EXPERT WITNESSES**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

**1.9     DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you by the playing of video excerpts from a deposition. The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

Deposition testimony is out-of-court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

**1.10    DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of the exhibits (including charts, models, reproductions, PowerPoint presentations, and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**1.11    USE OF NOTES**

You may have taken notes during trial to assist your memory. As I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency I think to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

### 1.12     BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean. Plaintiff Arendi asserts that Defendant Google infringes the '843 patent.

Plaintiff Arendi has the burden of proving its infringement claims by a "preponderance of the evidence." That means Plaintiff Arendi has to prove to you, in light of all the evidence, that what it claims is more likely true than not. To say it differently, if you were to put the evidence of Plaintiff Arendi and the evidence of Defendant on opposite sides of a scale, the evidence supporting Plaintiff Arendi's claims would have to make the scales tip slightly on its side in each instance. If the scale should remain equal or tip in favor of Defendant, you must find in favor of Defendant.

In addition to denying Plaintiff Arendi's claims that it infringes, Google asserts that the asserted claims of the '843 Patent are invalid. A party challenging the validity of a patent—in this instance, Defendant Google—has the burden to prove that the asserted claims are invalid by clear and convincing evidence. Clear and convincing evidence means evidence that it is highly probable that a fact is true. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases. That requirement is the highest burden of proof. It does not apply to civil cases and, therefore, you should put it out of your mind.

## 2.    THE PARTIES AND THEIR CONTENTIONS

### 2.1    THE PARTIES

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

As I have previously told you, the plaintiff in this case is Arendi S.A.R.L. We have referred to the plaintiff as Arendi. The defendant in this case is Google LLC. We have referred to it as Google.

Plaintiff Arendi is the owner of U.S. Patent Number 7,917,843. During this case, we have referred to the patent by its last three digits, the '843 Patent, or as the patent-in-suit or the Asserted Patent.

**2.2      SUMMARY OF THE ISSUES**

You must decide the following issues in this case according to the instructions that I give you:

1.      Whether Plaintiff Arendi has proven by a preponderance of the evidence that Google infringes one or more of claims 23 and 30 of the '843 Patent;

2.      Whether Defendant Google has proven by clear and convincing evidence that one or more of the asserted claims of the '843 Patent is invalid.

3.      If you decide that any claim of the '843 Patent has been infringed by Google and is not invalid, you will then need to decide whether Arendi has proven by a preponderance of the evidence that Google's infringement was willful;

4.      If you decide that any claim of the '843 Patent has been infringed by Google and is not invalid, you will also need to decide the amount of money damages Arendi has proven by a preponderance of the evidence are to be awarded to compensate it for Google's infringement.

**3.**     **THE PATENT LAWS**

**3.1**     **THE PATENT LAWS**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, you will have your copy available to you in the jury room.

### 3.2      CLAIM CONSTRUCTION

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of a patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim.

When a thing (such as a product) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. Claim 23 of the '843 Patent is an independent claim.

In contrast, claim 30 of the '843 Patent is a "dependent claim." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its

requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

It is my job as a judge to define the terms of the claims and to instruct you about the meaning. It is your role to apply my definitions to the issues that you are asked to decide.

In this case, I have determined the meaning of the following terms of the asserted claims of the '843 Patent:

| Claim Term | Court's Construction |
|---|---|
| "document" | "a word processing, spreadsheet, or similar file into which text can be entered" |
| "first information" | "text in a document that can be used as input for a search operation in a source external to the document" |
| "computer program" | "a self-contained set of instructions, as opposed to a routine or library, intended to be executed on a computer so as to perform some task" |
| "to determine if the first information is at least one of a plurality of types of information that can be searched for" | "to determine if the first information belongs to one or more of several predefined categories of identifying information (e.g., a name) or contact information (e.g., a phone number, a fax number, or an email address) that can be searched for in an information source external to the document" |
| "that allows a user to enter a user command to initiate an operation" | "that allows a user to enter an input or series of inputs to initiate an operation" |
| "providing an input device configured by the first computer program" | "providing an input device set up by the first computer program for use by the user" |

17

You must accept my definition of these words as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

The beginning portion of a claim, also known as the preamble, often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

For any words in the claim for which I have not provided you with a definition, you should apply their plain and ordinary meaning as understood by one of ordinary skill in the field of technology of the '843 Patent at the time of the invention. The meanings of the words of the patent claims must be the same when deciding both the issues of infringement and validity.

You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

### 3.3       INFRINGEMENT—INFRINGEMENT GENERALLY

I will now instruct you as to the rules you must follow when deciding whether Plaintiff Arendi has proven that Google has infringed the '843 Patent. Infringement is assessed on a claim-by-claim basis [**Google Proposal:** by comparing Google's accused product to the elements of each claim[1]]. [**Arendi:** Google already agreed to this instruction without its newly inserted language, which Arendi did not receive until 8:22pm on Sunday night. This language does not exist in the Federal Circuit model instructions.] Therefore, there may be infringement of one claim but no infringement of another.

In order to prove infringement, Arendi must prove that the requirements for infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of infringement have been proved.

---

[1] **Google:** The all-elements rule is a non-controversial legal requirement that would otherwise be missing from the parties' joint proposed final jury instructions.  It is in the FCBA Model Patent Jury Instruction 3.1a; AIPLA Model Patent Jury Instruction 3.2; and N.D. Cal. Model Patent Jury Instruction 3.3.  It was also included in the parties' agreed-upon instruction for "Direct Infringement" but inadvertently dropped during meet-and-confer revisions to move the language to this "Infringement Generally" section.

### 3.4     INFRINGEMENT—DIRECT INFRINGEMENT

A person or business entity that makes, uses, sells, or offers for sale within the United States or imports into the United States an invention claimed in a patent infringes that patent. There may be infringement of one claim but no infringement of another. [**Google proposal:** If a product is missing even one limitation or element of a claim, the product is not covered by that claim.[2]]

If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that depends from that claim. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the accused products meet the additional requirements of any dependent claim to determine whether that dependent claim has also been infringed.

---

[2] 4/28/23 Trial Tr. (Rough) at 1086:8-1091:6 (ruling regarding relevant paragraphs in prior proposed final jury instructions).

### 3.5     WILLFULNESS

Arendi asserts that Google infringed the '843 Patent, and further, that Google infringed willfully. If you find that Google infringed one or more claims of the '843 Patent, then you must also determine whether or not such infringement was willful.

To show that infringement was willful, Arendi must establish that it is more likely than not that Google knew of the '843 Patent at the time of the alleged infringement and that the infringement was deliberate or intentional.

[**Google's Proposal:** Mere knowledge of the patent at that time is not sufficient.[3]]

 [**Arendi's Proposal:** Intentional infringement includes infringement with reckless disregard of Arendi's patent rights.[4]] [**Google's Response:** Google opposes Arendi's proposal.  If the conduct is only reckless, it is not intentional.  The case law requires deliberate or intentional infringement, not recklessness.[5]]

To decide whether Google acted willfully, you should consider all of the facts and assess Google's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited to:

---

[3] *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires deliberate or intentional infringement.").

[4] *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1296 (Fed. Cir. 2023) (affirming judgment of willful infringement where evidence "support[ed] a finding that Valve 'recklessly' disregarded Ironburg's patent rights and, therefore, willfully infringed.").

[5] *See, e.g.*, *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1296 (Fed. Cir. 2023) ("To prevail on its claim for willful infringement, Ironburg was required to prove, by a preponderance of the evidence, that Valve knew of the '525 patent and then engaged in 'deliberate or intentional infringement.'"); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires deliberate or intentional infringement."); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) ("Under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement.").

1. Whether or not Google acted consistently with the standards of behavior for its industry;

2. Whether or not Google intentionally copied a product of Arendi that is covered by the '843 Patent;

3. Whether or not Google reasonably believed it did not infringe or that the patent was invalid;

4. Whether or not Google made a good-faith effort to avoid infringing the '843 Patent by, for example, attempting to design around the '843 Patent; and

5. Whether or not Google tried to cover up its infringement.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement. I will take willfulness into account later.[6]

---

[6] **Arendi**: *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 35, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions.[7] **Google:** These two paragraphs are incomplete regarding inventions that were "known" under pre-AIA 35 U.S.C. § 102(a) and inventions that were in "public use" under pre-AIA 35 U.S.C. § 102(b), and the provision of a single November 10, 1997 date is incorrect in view of the November 10, 1998 effective filing date.  These two paragraphs are also unnecessary and confusing in view of Google's proposed language below from the FCBA model jury instructions.

4. **INVALIDITY**

4.1 **INVALIDITY—GENERALLY**

I will now instruct you on the rules you must follow in deciding whether or not Google has proven that the Asserted Claims are invalid.

Patent invalidity is a defense to patent infringement. The issuance of a patent by the Patent Office provides a presumption that the patent is valid.

A party challenging the validity of a patent—in this instance, Google—has the burden to prove that the asserted claims are invalid by clear and convincing evidence. Clear and convincing evidence means evidence that it is highly probable that a fact is true. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

In this case, you have the ultimate responsibility for deciding whether the claims of the patent are valid or invalid. In making your determination, you must consider the claims individually, as you did when you considered whether each claim was infringed or not. If clear and convincing evidence demonstrates that a claim of the '843 Patent fails to meet any requirement of the patent laws, then that claim is invalid.

The fact that any particular reference was or was not considered by the Patent Office does not change Google's burden of proof.

I will now instruct you on the invalidity issues you should consider.

### 4.2    INVALIDITY—PERSON OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the time of invention. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field;

(3) prior art solutions to those problems;

(4) rapidity with which innovations are made; and

(5) the sophistication of the technology.

### 4.3    PRIOR ART

[**Arendi:** Google and Arendi agreed to the entirety of this instruction in open Court on Friday, April 28. *See* Trial Tr. 1102:20-22 (Mr. Unikel: "So I think we can accept Arendi's proposal on prior art in 4.3. The Court: Okay. Great."). Thereafter, Google made no edits to this instruction, because it had been agreed, when the parties continued negotiating other jury instructions in order to file revised instructions by the Court's deadline on Saturday, April 29. On Sunday at 4:33pm, Google raised new proposals for this instruction for the first time. Arendi is preparing for three witness examinations tomorrow and closing arguments. There is no basis for Google to continue revising instructions that have already been agreed and accepted before the Court.]

[**Google:** In reviewing the parties' proposed final jury instructions, Google identified various legal and factual misstatements regarding prior art and is proposing corrections to avoid error.]

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether the Asserted Claims of the '843 Patent are anticipated or obvious.

Prior art may include items that were publicly known or that have been used or offered for sale that disclose the claimed invention or elements of the claimed invention.

In order to qualify as prior art, the item must pre-date the earliest priority date of asserted claims of the '843 patent. Here, that date is November 10, 1997.

[**Google's proposal to replace and correct the prior three sentences (starting with "Prior art may include . . ."):** Google opposes inclusion of these two paragraphs as incomplete, incorrect, and unnecessary.  It is also inconsistent with the correct prior art standards in Google's

proposed language below.[7] [**Arendi:** Google already agreed to the language of this instruction in Court and its new proposed language is untimely and unnecessary.]

You must determine whether the items that Google argues are prior art are, in fact, prior art. There are different types of prior art, and I will instruct you on the relevant types that you need to consider. In this case, you must consider only the prior art "systems" Google asserts are invalidating, rather than prior art "publications" or patents.  Google is permitted to try to meet its clear-and-convincing burden of proving invalidity only by relying on prior art systems that were not fully disclosed in those publications and patents.[8] [**Google's proposal to replace and correct the preceding two sentences (starting with "In this case, . . ."):** First, Google contends that the CyberDesk system, the Apple Data Detectors system, and the Word 97 system are each prior art because they were known to or used by others in the United States before November 10, 1998. An invention is known when the information about it was reasonably accessible to the public by that date.  Second, Google contends that the CyberDesk system, the Apple Data Detectors system, and the Word 97 system are each prior art because they were publicly used, sold, or offered for sale in the United States more than one year before November 10, 1998 (that is, by November 10, 1997).

---

[7] **Google:** These two paragraphs are incomplete regarding inventions that were "known" under pre-AIA 35 U.S.C. § 102(a) and inventions that were in "public use" under pre-AIA 35 U.S.C. § 102(b), and the provision of a single November 10, 1997 date is incorrect in view of the November 10, 1998 effective filing date.  These two paragraphs are also unnecessary and confusing in view of Google's proposed language below from the FCBA model jury instructions.

[8] **Google:** Arendi's language is confusing and also incorrect.  The Court has recognized that Google can rely on printed publications to show the features of prior art systems, unless a single printed publication is the "only evidence of a prior art public use."  *See* 4/24/23 Trial Tr. at 11:7–12:13, 13:6–25 (allowing Google to "combin[e] evidence," including printed publications, to show a prior art system); D.I. 391 at 18 (summary judgment order holding that Google is not barred from relying on printed publications related to prior art systems, "provided that the[] publications are not presented as individual prior art references").  Arendi also proposes referring to the clear-and-convincing burden, which is otherwise addressed in this instruction.  *See* n.10.

An invention was publicly used when it was either accessible to the public or commercially exploited.  An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, *i.e.*, it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.[9] **[Arendi:** Google already agreed to the language in this instruction. Its new proposed language is not only untimely, but unduly compound and confusing.]

Google contends that the asserted art is prior art because it was made available to the public before the earliest priority date of the '843 Patent.

Google must prove by clear and convincing evidence that each piece of asserted art is prior art. This includes proving by clear and convincing evidence that any "system" prior art was publicly known to or used by others in the United States before November 10, 1997.**[10]**

**[Google's proposal:** Google must prove by clear and convincing evidence that each prior art system it relies on is prior art.[11]**] [Arendi:** Google already agreed to the language in this instruction.]

---

[9] **Google:** The language "different types of prior art" refers to § 102(a) and § 102(b) prior art. *See* FCBA Model Patent Jury Instruction B4.3 (p. 44), https://fedcirbar.org/Portals/0/File%20Manager/Resources/Publications/Model%20Patent%20Jury%20Instructions/May%202020%20FCBA%20Model%20Patent%20Jury%20Instructions.pdf?ver=2020-05-27-143325-243.

[10] **Google:** Arendi's language does not comport with pre-AIA §102(a) and § 102(b), and refers to the single November 10, 1997 date that is incorrect.  It also proposes referring to the clear-and-convincing burden multiple times, which is unnecessary, redundant, and therefore prejudicial. Per the model instructions, stating the burden of proof once is sufficient.

[11] **Google:** FCBA Model Patent Jury Instruction B4.3 (p. 45), https://fedcirbar.org/Portals/0/File%20Manager/Resources/Publications/Model%20Patent%20Jury%20Instructions/May%202020%20FCBA%20Model%20Patent%20Jury%20Instructions.pdf?ver=2020-05-27-143325-243.

### 4.4     INVALIDITY—ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new." If an invention is not new, it is said to be "anticipated." Google contends that the asserted claims of the '843 Patent are invalid because the claimed inventions are anticipated. Google must convince you of this by clear and convincing evidence.

Specifically, Google contends that the alleged CyberDesk System anticipates the Asserted Claims of the '843 Patent.

Anticipation must be determined on a claim-by-claim basis. Google must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied— but must be disclosed in sufficient detail that a person having ordinary skill in the art of the invention, looking at that one reference, could make and use the claimed invention.

### 4.5    INVALIDITY—OBVIOUSNESS

Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the invention.

Google may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art in the field of the invention at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the mere existence of each element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in the way that the claimed invention does, taking into account such factors as: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements

29

in the claimed invention; and (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention was obvious, such as:

a. Whether the claimed invention satisfied a long-felt need;

b. Whether others in the field praised the claimed invention; and

c. Whether others sought or obtained rights to the patent from the patent holder.

In determining whether the claimed invention was obvious, you must consider each claim separately.

5.      **DAMAGES**

5.1      **DAMAGES GENERALLY**

If you find that Google has infringed a claim of the '843 Patent, and the claim is not invalid, you must consider what amount of damages to award Arendi for its infringement. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

Arendi has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Arendi establishes that it more likely than not has suffered. While Arendi is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

Arendi accuses the following twelve Google apps of infringement: Chrome, Sheets, Contacts, Docs, Calendar, Keep, Messages/Messaging, Inbox, Tasks, Hangouts, Slides, and Gmail.  Arendi accuses the following Google devices of infringement: Pixel 2, Pixel 2 XL, Pixel 3, and Pixel 3 XL smartphones.

The damages you award must be adequate to compensate Arendi for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Arendi in approximately the same financial position that it would have been in had the infringement not occurred.

## 5.2    REASONABLE ROYALTY—THE "HYPOTHETICAL NEGOTIATION" METHOD

Plaintiff Arendi alleges that it is owed a reasonable royalty as compensation for Google's infringement. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires you to determine the value added only by the patented features, because the royalty you award should be only for the incremental value added by the patented features.

One way to calculate a reasonable royalty is through the hypothetical negotiation approach. Under this approach, the reasonable royalty is the amount of royalty payment that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

### 5.3    REASONABLE ROYALTY—RELEVANT FACTORS TO THE HYPOTHETICAL NEGOTIATION METHOD

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent(s):

1.      The royalties received by Arendi for the licensing of the '843 patent, to the extent those royalties prove or tend to prove an established royalty.

2.      The rates paid by Google to license other patents comparable to the '843 Patent.

3.      The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.      Arendi's established policy and marketing program (if any) to maintain its right to exclude others from using the patented inventions by not licensing others to use the inventions, or by granting licenses under special conditions designed to preserve that exclusivity.

5.      The commercial relationship between Arendi and Google (if any), such as whether or not they are competitors in the same territory in the same line of business.

6.      The effect of selling the patented product in promoting other sales of Google products, the existing value of the inventions to Arendi as a generator of sales of its non-patented items; and the extent of such derivative or collateral sales.

7.      The duration of the '843 Patent and the term of the license.

8.      The established profitability of the accused products; their commercial success; and their popularity.

9.      The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

10.     The nature of the patented inventions; the character of the commercial embodiments of it as owned and produced by or for the licensor; and the benefits to those who have used the inventions.

11.     The extent to which the [**Google:** alleged] [**Arendi:** Google already agreed to this instruction without the "alleged" qualifier, which does not appear in the Federal Circuit Model instructions. Google untimely disclosed this additional modification after the parties had exhaustively negotiated changes to the proposed instructions and submitted them to the Court pursuant to its Saturday deadline] infringer (Google) has made use of the inventions; and any evidence that shows the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

13.     The portion of the profit that arises from the patented inventions themselves as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor (such as Arendi) and a licensee (such as Google) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article or process embodying the patented invention—would have been willing to pay as a royalty and yet be able

to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.      Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

**5.4 DAMAGES—AVAILABILITY OF NON-INFRINGING ALTERNATIVES**

In determining a reasonable royalty, you may also consider whether or not Google had acceptable non-infringing alternatives to the patented technology that were available to it, the cost of such alternatives, and whether that would have affected the reasonable royalty the parties would have agreed upon. A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or a comparable result that does not infringe the patent. You may also consider the utility and advantages of the patented technology over any non-infringing alternatives that could be used for achieving similar results.

### 5.5 DAMAGES—APPORTIONMENT

[**Arendi's Proposal:** For any damages you award, the amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Google's size or market position.] [**Google's Proposal:** For any damages you award, the amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product or other market factors.] A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.[12] [**Google's Proposed Addition:** Arendi bears the burden to establish the amounts attributable to the patented feature and not to other technologies, features, or aspects of the accused products.[13]] [**Arendi:** Arendi is reviewing these Google proposals, which were added immediately before filing and Arendi has not had an opportunity to review.]

---

[12] **Arendi:** *See* Federal Circuit Bar Association, Model Patent Jury Instructions at 74, available at https://fedcirbar.org/integralsource/model-patent-jury-instructions; *Board of Regents, The University of Texas System et al v. Boston Scientific Corporation*, C.A. No. 1:18-cv-00392-GBW, D.I. 329 at 15 (Feb. 1, 2023).

[13] **Google**: *See Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 646–47 (1915); *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337–38 (Fed. Cir. 2009).

**5.6 DAMAGES—DATE OF COMMENCEMENT**

[**Google's Proposal**:

In determining an amount of damages, if any, you must determine when the damages began.  Damages commence on the earliest possible date of first infringement by Google of the '843 Patent.  Arendi contends this date is August 21, 2017.  Google contends this date is December 5, 2017.**]**


[**Arendi's Proposal:** Arendi opposes any instruction on the date of commencement. This proposed instruction from Google is legally improper and seeks to contravene the representative products agreement, which Arendi specifically raised as a concern in its motion *in limine* on March 13, 2023. *See* D.I. 460-1 at Ex. 8P (MIL No. 3).**].**

**[Arendi Proposal: 5.7 THE SAMSUNG AGREEMENT]**

**[Google Proposal: 5.7 LICENSE OR RELEASE DEFENSE—THE SAMSUNG AGREEMENT]**

**[Google Proposal**:[14]

As you have heard during trial, Samsung and Arendi entered into a Settlement and Patent License Agreement, referred to as the "Samsung Agreement" or the "Agreement."  Google asserts that the Samsung Agreement covers installation of the accused Google applications on Samsung devices.  Arendi asserts that it does not.  If Google is correct, then Google cannot be liable for any Accused Apps on Samsung Devices, and Arendi may not recover damages for those Accused Apps.

For purposes of this trial, if you reach the issue of damages, you should determine whether the Samsung Agreement covers the Accused Apps on Samsung Devices.

To make this determination, you must interpret the Agreement to decide what Arendi and Samsung intended.  The best evidence of what Arendi and Samsung intended is the words they used in the Agreement.[15]  You must read the Agreement as a whole, and every part of the Agreement should be interpreted with reference to the whole.[16]  The words in the Agreement should be given their plain and ordinary meaning.[17]

---

[14] **Google:** Though Google does not believe that this issue should be submitted to the jury, and should instead be resolved by the Court, Google proposes this instruction in the event the Court elects to submit the issue to the jury for resolution.  *See* D.I. 469 (Google Letter).

[15] **Google:** *Tomhannock, LLC v. Roustabout Resources, LLC*, 128 N.E.3d 674 (N.Y. 2019).

[16] **Google:** *Bombay Realty Corp. v. Magna Carta, Inc.*, 790 N.E.2d 1163, 1165 (N.Y. 2003).

[17] **Google:** *White v. Continental Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007).

The Samsung Agreement is unambiguous if it has only one reasonable meaning.[18]  On the other hand, the Agreement is ambiguous if its language was written so imperfectly that it has more than one reasonable interpretation.[19]  The mere fact that Google and Arendi disagree on its interpretation does not render the Agreement ambiguous.[20] The Samsung Agreement contains a merger clause, saying that the contract sets forth the entire agreement and understanding between Arendi and Samsung and that it supersedes all prior discussions between them.[21]

If the Agreement is unambiguous, it must be enforced according to the plain meaning of its terms.[22]

If the Agreement is ambiguous and you find that the merger clause does not apply,[23] you may consider extrinsic evidence, although the words of the Agreement are still the best evidence of the parties' intent.[24]  Extrinsic evidence is evidence outside the contract regarding Arendi's and Samsung's intent, such as testimony presented at trial.  Extrinsic evidence cannot be used to create ambiguity when the agreement's terms have plain and ordinary meanings. Where there is doubt or ambiguity regarding the meaning of a contract, the contract must be interpreted most strongly against the party who prepared it and favorably to a party who had no voice in the selection of its language.

---

[18]  **Google:** *Selective Insurance Co. Am. v. County of Rensselaer*, 47 N.E.3d 458, 461 (N.Y. 2016).

[19]  **Google:** *Brad H. v. City of N.Y.*, 951 N.E.2d 743, 186–87 (N.Y. 2011).

[20]  **Google:** *Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 668 N.E.2d 404, 406 (N.Y. 1996).

[21]  **Google:** PX0077 § 8.3

[22]  **Google:** *Quadrant Structured Products Co. v. Vertin*, 16 N.E.3d 1165, 1172 (N.Y. 2014).

[23]  **Google:** *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433–34 (N.Y. 2013)

[24]  **Google:** *Tomhannock*, 128 N.E.3d at 674.

If you determine that the Samsung Agreement covers Accused Apps installed on Samsung devices, then you may not award any damages for Accused Apps installed on Samsung devices.]

[**Arendi Proposal**:

The Settlement and Patent License Agreement between Arendi and Samsung does not reduce Arendi's damages as to Google for the '843 Patent.[25]] [26]

[**Arendi Alternative Proposal**:

---

[25] **Arendi:** The contract unambiguously favors Arendi's interpretation, and Google has waived this defense. *See* Dkt. 427 at pp. 3-5. Alternatively, if the contract is ambiguous, judgment should be entered against Google because it bears the burden of proof on this affirmative defense, and it has not entered any extrinsic evidence to support its position. *Weiner v. Anesthesia Assocs. of W. Suffolk, P.C.*, 203 A.D.2d 455, 456, 610 N.Y.S.2d 608, 609 (1994) (the party opposing judgment as a matter of law "must also set forth the extrinsic evidence, in evidentiary form, upon which it relies" and where "plaintiff has failed to tender any extrinsic evidence to support his position," judgment as a matter of law is appropriate against the party bearing the burden of proof).

[26] **Google:** Arendi improperly asks the Court to find waiver of Google's license or release defense, or for judgment in its favor on the issue, through a proposed jury instruction footnote. Arendi did not send its new footnote until immediately before filing the 4/29/23 Joint Proposed Final Jury Instructions, and Google opposes it. Regarding Arendi's merits argument, Google refers the Court to its prior briefing at D.I. 420, 431, and 469.

The Court has already held that Google did ***not*** waive its license or release defense. *See* 4/6/23 Pretrial Conference Tr. at 6:14–21 ("THE COURT: Well, I agree that [the affirmative defense] hasn't been forfeited as an issue."). Indeed, Google raised the defense in its Answer and Amended Answer. *See* D.I. 99 (1/11/19 Answer to First Amended Complaint) at 8–9. Furthermore, Arendi's request for judgment in its favor regarding the Samsung Agreement in the event the contract is ambiguous is procedurally improper and legally incorrect. As Google's proposed jury instruction reflects, if an agreement is ambiguous, the words of the agreement are still the best evidence of the parties' intent. *See Tomhannock, LLC v. Roustabout Resources, LLC*, 128 N.E.3d 674 (N.Y. 2019). Furthermore, if there is an ambiguity for the jury to decide, the jury would be free to evaluate whether any purported extrinsic evidence is relevant or credible.

It is up to you to decide whether or not Arendi's license agreement with Samsung reduces Arendi's damages as to Google for the '843 patent.

The ultimate question for you to decide is what Arendi and Samsung intended to agree upon.[27] In making your determination, you should consider the entire contract, in light of the relation between Samsung and Arendi and the circumstances under which their contract was made.[28] You should also consider any other evidence presented at trial, including any statements made under oath by the original parties to the contract regarding their intent.[29]

In evaluating the words in the contract, you should not consider particular words in isolation, but rather should consider the contract as a whole in light of the overall intention of the parties,[30] including any words in the agreement regarding which disputes they intended to

---

[27] *Kass v. Kass*, 91 N.Y.2d 554, 566–67 (1998).

[28] *Kass v. Kass*, 91 N.Y.2d 554, 566–67 (1998) (courts "should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed").

[29] N.Y. Pattern Jury Instr.--Civil 4:1, available on Westlaw (commentary) ("Where an agreement is ambiguous and extrinsic evidence is introduced to aid in construction, both sworn affidavits by both original parties to the contract and those parties' conduct after the contract was formed are significant evidence of the parties' intent.") (collecting cases).

[30] *Kass v. Kass*, 91 N.Y.2d 554, 566–67 (1998) ("Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby.").

resolve.[31] The agreement between Samsung and Arendi should not be interpreted to benefit a third

party, like Google, in the absence of clear contractual language evincing such an intent.[32]

Google bears the burden of proving, by a preponderance of the evidence, that Arendi's

license agreement with Samsung reduces Arendi's damages as to Google for the '843 patent.]

---

[31] N.Y. Pattern Jury Instr.--Civil 4:1 (commentary), available on Westlaw ("If from the recitals
therein it appears that the release is to be limited to only particular claims, demands, or
obligations, then the release will be operative as to those matters only." (collecting cases); *Bugel
v. WPS Niagara Properties, Inc*., 19 A.D.3d 1081, 1083, 797 N.Y.S.2d 232, 234 (2005) ("It is
unreasonable to conclude that the parties, as a condition of the release, intended that plaintiff
release all [his] existing unrelated claims against conceivably hundreds of named and unnamed
corporations, ... employees, ... etc." Rather, viewing the letter agreement as a whole and in light
of its stated purpose, we conclude that the parties intended that plaintiff release only his
employment-related claims against his employer and related entities and individuals.").
[32] N.Y. Pattern Jury Instr.--Civil 4:1 (commentary) ("Courts are generally reluctant to construe
an intent to benefit a third party in the absence of clear contractual language evincing such an
intent.") (collecting cases).

## 6   DELIBERATION AND VERDICT

### 6.1 INTRODUCTION

Now let me finish up by explaining some things about your deliberation in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

**6.2 UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict. Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

45

**6.3 DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that, your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

**6.4 SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, WeChat, WhatsApp, SnapChat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

Of course, you may examine the various devices entered into evidence in this case—just as you may examine other evidence from this case. But you should not use those devices to perform Internet research about this case or to communicate with anyone outside the jury room.

### 6.5     COURT HAS NO OPINION

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

48