**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARENDI S.A.R.L., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 13-919-JLH |
| v. | ) |
| | ) **Original Version Filed: June 2, 2023** |
| GOOGLE LLC, | ) |
| | ) **Public Version Filed: June 9, 2023** |
| Defendant. | ) |
| | ) |

**ARENDI S.A.R.L.'S OPENING BRIEF IN SUPPORT OF ITS
RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW
<u>AND MOTION FOR A NEW TRIAL</u>**

Plaintiff Arendi S.A.R.L. respectfully renews its motions for judgment as a matter of law and moves for a new trial. Defendant Google LLC has not advanced substantial evidence to prove the invalidity of Claims 1 and 23 (the "Asserted Claims") of U.S. Patent No. 7,917,843 by clear and convincing evidence. Defendant's expert, Dr. Fox, provided conclusory testimony regarding anticipation by CyberDesk that ignored claim limitations. With respect to obviousness, Google failed to advance a motivation to combine; failed to present relevant evidence of the operation of Microsoft Word '97; failed to explain how the proposed combination would render the claims obvious; and failed meaningfully to address secondary considerations of non-obviousness. Finally, Google presented an invalidity defense that was estopped under 35 U.S.C. § 315(e)(2).

## I.    BACKGROUND

The Court held a jury trial from April 24 to May 2, 2023, on infringement and validity of the Asserted Claims. Google alleged that the Asserted Claims were anticipated by an alleged CyberDesk system and rendered obvious by i) CyberDesk in view of an alleged Apple Data Detectors system ("ADD"); ii) CyberDesk in view of Word '97 ("Word"); and iii) ADD in view of Word. Trial Tr. (4/24) at 19:17-21; *see also* Ex. 1 (4/22 email from Google's counsel) at 1.

On April 27, Google played deposition testimony concerning CyberDesk and ADD. Anind Dey testified concerning CyberDesk, and Google used his testimony to admit references describing CyberDesk: DTX-006-011, DTX-013-020, DTX-028, and DTX-034. Trial Tr. (4/27) at 829:11-18. Google never presented an actual CyberDesk system because none exists. *E.g.*, *id*. at 831:14-18. James Miller then testified concerning ADD. *Id*. at 999:23-1058:18. Google likewise used Mr. Miller to admit references allegedly describing ADD into evidence: DTX-179-180, DTX-182, DTX-186-191, DTX-777, DTX880-183. Although Google claimed to have laptops with ADD installed, Google declined to offer them into evidence or to demonstrate their functionality in court.

1

Trial Tr. (4/27) at 997:3-20. No other fact witnesses testified concerning CyberDesk or ADD. No fact witnesses testified concerning Word, and no exhibits were admitted concerning Word. Google's invalidity expert witness, Edward Fox, testified on May 1, 2023.

Arendi then moved for judgment as a matter of law of no anticipation under section 102 and non-obviousness under section 103. Trial Tr. (5/1) at 1428:18-1429:13. Arendi also raised IPR estoppel as a basis for granting JMOL. *Id.* at 1430:17-1431:22. On May 10, 2023, the Court entered Judgment Following Verdict "in favor of Defendant and against Plaintiff on Defendant's invalidity defenses." D.I. 545 at 1. The Court denied Arendi's Rule 50(a) motions as moot. *Id.*

## II.    ARGUMENT

The Court should grant judgment as a matter of law of no invalidity because insufficient evidence supports a finding of anticipation or obviousness. In the alternative, the Court should grant a new trial because such findings are against the clear weight of the evidence. Google presented a conclusory invalidity case and relied on estopped grounds. JMOL is granted under Rule 50(b) "if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find for the nonmovant." *TQ Delta, LLC v. 2Wire, Inc.*, 486 F. Supp. 3d 803, 806 (D. Del. 2020) (citation omitted). A court may exercise its discretion to grant a new trial under Rule 59(a) "if the jury's verdict is against the clear weight of the evidence, and a new trial [is necessary] to prevent a miscarriage of justice." *Id.* (internal quotation omitted).

### A.    Anticipation

Google failed to prove that CyberDesk disclosed each limitation of the Asserted Claims. "Invalidity must be established by clear and convincing evidence." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1329 (Fed. Cir. 2012). "To anticipate a claim, a prior art

reference must describe 'each and every claim limitation . . . .' *Id.* "Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory." *Schumer v. Lab'y Computer Sys., Inc.*, 308 F.3d 1304, 1315-16 (Fed. Cir. 2002).

Google did not meet these exacting requirements. Dr. Fox's testimony on anticipation spans only six transcript pages, Trial Tr. (5/1) at 1176:3-1182:1, including a page and a half of prefatory remarks, *id.* at 1176:3-1177:12. He does not state his interpretation of each claim limitation; he does not explain how CyberDesk discloses each limitation; and he routinely ignores claim constructions. This conclusory testimony cannot support a finding of anticipation.

Dr. Fox's testimony about the "displaying the document . . ." limitation spans six lines. *Id.* at 1178:9-14. He does not explain, for example, how CyberDesk discloses a "document." *See* D.I. 144 at 3 (construing "document" as "a word processing, spreadsheet, or similar file into which text can be entered"). Dr. Fox notes browsers' ability to "display things," including "programs where you can make edits," Trial Tr. (5/1) at 1178:9-14; however, he does not explain why these "things" constitute "word processing, spreadsheet or similar files," and he does not show that these "things" are editable when displayed and analyzed using CyberDesk. *See* D.I. 400 at 11 (requiring document to "remain editable at least when it is displayed and analyzed."). Indeed, the sole "thing" to which Dr. Fox points is the image of an email browser in DTX-0010.0002 and DTX-0011.0001. Trial Tr. (5/1) at 1178:9-14. No evidence shows that this *browser* facilitated editing.[1] Rather, DTX-

---

[1] When introducing CyberDesk, Dr. Fox points to Dr. Dey's affirmative answer (at Trial Tr. (4/27) 895:6-10) to the question, "[W]hen it could pull text from an e-mail, was it possible that a user could be working in an e-mail when the text was selected for the CyberDesk to work?," as evidence that the "mail reader" "doesn't have to be a mail reader; you can go with editing tools." Trial Tr. (5/1) at 1160:2-18. Dr. Fox wrongly equates "working in an e-mail" with editing. Dr. Fox also

0011.0001 depicts a *received* email, and Dr. Fox describes this CyberDesk service as "a mail *reader*." *Id*. at 1159:11-13; *see also id.* at 1391:12-15 (Dr. Sacerdoti testifying, "It's a mail reader, not a full mail client. It means it's reading your mail. That means what it's reading is not an editable document under the Court's construction; therefore, it's not a document.").

Dr. Fox's 15 lines of testimony on the limitation, "while the document is being displayed…," also fall short. *Id*. 1178:15-1179:4. That element requires, *inter alia*, analyzing "to determine if the first information belongs to one or more of several predefined categories … that can be searched for"—and the categories must be identifying or contact information. D.I. 144 at 3. Dr. Fox's assertion that CyberDesk could "recognize a lot of different kinds of information" cannot establish that CyberDesk meets these requirements. Trial Tr. (5/1) at 1176:3-1182:1. Indeed, the rest of Dr. Fox's analysis discusses only one type of information, a name, which falls short of the limitation's "one or more *of several*" requirement. *E.g.*, *id*. at 1179:23-25.[2]

Google lacks evidence regarding the "retrieving…" limitation. Dr. Fox's two lines of testimony read, "It found that name, that highlighted name. So it retrieved it. So that's also covered. That's Element D." *Id*. at 1179:5-6. "So it retrieved it" is a conclusion—not an explanation.[3]

---

points to Dr. Dey's testimony about inserting "text that was found" into a "working document" as proof that CyberDesk disclosed the required "document." *Id.* at 1160:21-1161:12. But that text was inserted into a separate editor—not the email used in the analyzing step. Trial Tr. (4/27) at 896:2-9.

[2] Dr. Fox's introduction to CyberDesk, which is untethered to specific limitations, cannot fill these gaps. Although he notes that CyberDesk permits "look[ing] up words in dictionaries," Trial Tr. (5/1) at 1162:16-1163:6, "words" are neither "identifying" nor "contact" information. Dr. Fox also states, "So we heard from Dr. Smedley about looking up an address and finding information and going to a map. So I just wanted to remind us that this is what we saw in the CyberDesk system as well." *Id.* at 1162:12-15. Dr. Fox does not tie this feature to a limitation or explain how CyberDesk implemented that feature. If he was referencing DTX-0028.0001, that exhibit reads, "retriev[ing] a map for a given address," and does not disclose *analyzing* to identify an address.

[3] Even if Dr. Fox is equating "finding" and "retrieving" names, his testimony is inadequate. First, he does not state that understanding. Second, that view would collapse two limitations: "retrieving"

4

Dr. Fox offers six lines of perfunctory testimony concerning "providing an input device configured by the first computer program," *id*. at 1179:7-12, construed to mean "providing an input device set up by the first computer program for use by the user." D.I. 144 at 4. Dr. Fox ignores that construction. Instead, he concludes, "So part of this program shows us an input device, the ActOn button bar…. So it's providing an input device." Trial Tr. (5/1) at 1175:7-12. Dr. Fox equates, without explanation, "show[ing] us an input device" with "configur[ing]" an input device.

Dr. Fox devotes 17 lines to whether the ActOn Button allows the user to initiate the claimed operation. *Id*. at 1179:13-1180:4. But he fails, for example, to identify how CyberDesk discloses that the type(s) of second information depend on the type(s) of first information. PX-1 ('843 Patent) at col. 12, ll. 61-63. Such a dependency requires at least two types of first information. Dr. Fox identifies only one: "a name." Trial Tr. (5/1) at 1179:13-1180:4. He also does not testify that the search occurs "in an information source external to the document." PX-1 ('843 Patent) at col. 12, ll. 60-61. For "performing an action using at least part of the second information," *id*. at 63-64, he simply concludes, "And then the last thing is, setting this up to take an action. So F is setting up this button to do all this stuff. So we clearly covered all of that." Trial Tr. (5/1) at 1180:2-4.

Dr. Fox's 11 lines of testimony, *id*. at 1180:5-16, about the "in consequence…" element, ignore more requirements. For example, he says nothing about whether or how the browser (apparently his "first computer program") receives the user command. He also fails clearly to identify any "second computer program." Although he references "going to the second computer program called 'Switchboard,'" Dr. Fox immediately clarifies that he only "*think[s]* it's a separate program." *Id.* at 1180:8-10. He doesn't say why he thinks that, and he fails to point to evidence

---

information and "analyzing… to identify" that information. Third, Dr. Fox must show the claim is practiced with multiple types of first information—not only names.

that Switchboard is "a self-contained set of instructions, as opposed to a routine or library, intended to be executed on a computer so as to perform some task." D.I. 144 at 3 (construing "computer program"). Indeed, such a conclusion is inconsistent with Dr. Fox's prior testimony, which treated CyberDesk's applets as part of the single browser "computer program" in which they run. Trial Tr. (5/1) at 1177:22-24; *see also* DTX-0013.0002 (identifying email browser and Switchboard as applets).

For the "if searching finds any…" element, Dr. Fox offers six lines of inadequate testimony. Trial Tr. (5/1) at 1180:16-21. Dr. Fox identifies a single action: "displaying all that information to us" when Switchboard is used with respect to a name. *Id*. at 1180:21. He makes no reference, for example, to the requirement that the action be "of a type depending at least in part on the type or types of the first information." PX-1 ('843 Patent) at col. 13, ll. 5-6.

Dr. Fox's testimony fails with respect to Claim 30, which requires "providing a prompt for updating *the* information source to include the first information," PX-1 ('843 Patent) at col. 13, ll. 39-40 (emphases added), *i.e.*, the same source searched in Claim 23. The only *possible* search identified by Dr. Fox was for a name in Switchboard. Trial Tr. (5/1) at 1180:5-15. And Google put forward no evidence establishing that the alleged "New Contact" prompt that Dr. Fox identified in DTX-14 updates Switchboard's information source. *Id.* at 1181:6-18.[4] To the contrary, DTX-14 states that the button puts "contact information in the contact manager." DTX-0014.0002; *see also* DTX-0014.0003 (contrasting desktop "contact managers" with network services such as "telephone directories"); DTX-0013.0002 (identifying contact manager and Switchboard as distinct applets). Moreover, the claim requires a prompt for at least two types of first information. *E.g.*, PX-1 ('843 Patent) at 12:50 (requiring "plurality of types of information"). *Cf.* Trial Tr. (4/25)

---

[4] The image about which Dr. Fox testified is illegible. *See* DTX-0014.0002 at Fig. 2.

434:23-435:10 (testimony of Dr. Smedley that Google's products practice this limitation because they provide prompts for "more than one type of first information"). But Dr. Fox identifies a prompt for only one type of alleged first information: names.

None of Dr. Fox's introductory testimony concerning CyberDesk fills these gaps. Trial Tr. (5/1) at 1154:3-1166:5; *see also id*. 1170:20-1172:13, 1174:17-1175:14. First, this introductory testimony was largely untethered to limitations or constructions.[5] Second, Dr. Fox advances an illogical reading of the AEDS for a *different* patent to conclude that Arendi admitted anticipation of certain limitations. *Id.* at 1151:12-1152:4. In fact, when prosecuting the '843 Patent, Arendi simply noted "that the *prior art references*" in the AEDS for Application Serial No. 12/841,302 "are of particular interest." DTX-0002.0344. In that AEDS, Arendi stated the following:

> Cyberdesk is a framework that supports the automatic integration of various software applications . . . . In another example, the user highlights a name in the e-mail message and CyberDesk offers various options that are specific to the name (*e.g.*, look up the name in a contact manager). . . . Among other things, the Dey reference does not disclose contact information handling implemented by a document editing program. Dey does not disclose analyzing selected textual information *by the document editing program*, as required by the claims. CyberDesk itself analyzes text highlighted by the user and CyberDesk is separate from any document editing programs."

DTX-0925.0114-15. Based on these statements, Dr. Fox illogically concludes that Arendi admits that CyberDesk practices all limitations *except* "providing an input device, configured by the first computer program" and "in consequence of receipt...." Trial Tr. (5/1) at 1151:12-1152:4, 1164:14-1166:5, 1170:20-1172:13. First, Arendi was discussing the requirements of a different patent.

---

[5] Toward the conclusion of his introductory remarks, Dr. Fox offers a sweeping conclusion:
> So this is just kind of a reminder, and if we interpret this based on what we heard, that we're teaching all the shortcut elements. And to make this clear, to remind us of those things A through H that I pointed out before, in the bottom right of the screen, you see in red I ticked off A, B, C, D, F and H. So that is the six shortcut elements out of the eight that we are concerned with.

*Id*. at 1158:12-19. That conclusion fails to explain *how* CyberDesk discloses any limitation.

Second, providing *an example* of what, "[a]mong other things," CyberDesk failed to disclose does not admit that CyberDesk does anything else. Third, when prosecuting the '843 Patent, Arendi referred the PTO to "prior art references" in the AEDS—not to Arendi's commentary.

Google's failure to advance evidence that CyberDesk discloses each limitation of the Asserted Claims—including non-conclusory expert testimony—is fatal to its anticipation defense. For example, in *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1329-31, (Fed. Cir. 2012), the Federal Circuit affirmed JMOL of non-anticipation over multiple pieces of prior art due to an expert's failure to explain with "sufficient technical detail" how the prior art systems "actually work" and to identify how specific limitations are disclosed. Likewise, in *Koito Manufacturing Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004), the Federal Circuit denied JMOL with respect to non-anticipation where an expert provided "[g]eneral and conclusory testimony" that failed to "demonstrate to the jury how that reference met the limitations of the claims" of the patent-in-suit. And in *Inline Connection Corp. v. EarthLink, Inc.*, 684 F. Supp. 2d 496, 515, 521 (D. Del. 2010), this Court granted JMOL of non-anticipation because the defendant's expert did not "explain in detail how each claim element is disclosed" in the prior art (quoting *Koito Mfg. Co.*, 381 F.3d at 1152). Here, too, Google has not proven that CyberDesk discloses each limitation of the Asserted Claims.

## B. Obviousness

Google also failed to prove the Asserted Claims are invalid under 35 U.S.C. § 103. "Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness." *InTouch Techs.*, 751 F.3d at 1347 (Fed. Cir. 2014). "An obviousness determination generally requires a finding that 'all claimed

limitations are disclosed in the prior art,' and 'that a person of ordinary skill in the art would have been motivated to combine or modify the teachings in the prior art . . . .'" *Univ. of Strathclyde v. Clear-Vu Lighting LLC*, 17 F.4th 155, 160 (Fed. Cir. 2021) (citations omitted). Google needed to establish obviousness by clear and convincing evidence. *EcoServices, LLC v. Certified Aviation Servs., LLC*, 830 F. App'x 634, 648 (Fed. Cir. 2020).

1.    **The record lacks adequate motivation to combine CyberDesk, ADD or Word.**

"A party seeking to invalidate a patent on obviousness grounds must 'demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention . . . .'" *InTouch Techs., Inc.*, 751 F.3d at 1347 (citation omitted). "Identifying a motivation to combine the prior art is important because "inventions in most, if not all, instances rely on building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1357 (Fed. Cir. 2019) (quoting *KSR Int'l Co.* 550 U.S. at 418–19 (2007)). Expert testimony is generally required to establish a motivation to combine. *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1347-48 (Fed. Cir. 2013).

Dr. Fox did not establish a motivation to combine CyberDesk with Word. In six lines of testimony, Dr. Fox asserts that a POSITA would have had such a motivation because "Simple Notepad" was a desktop service supported by CyberDesk, and "Simple Notepad is a word processing document. So if one thinks of word processing documents, one would think of Microsoft Word." Trial Tr. (5/1) at 1182:18-22. That's it. He offers no evidence that Simple Notepad was a "word processing document," and he never explains how its incidental use of a word processing document would place CyberDesk in the same field as Word. *See, e.g.*, DTX-0010.0001 (describing CyberDesk as a "project that addresses automatic service integration").

9

More importantly, Dr. Fox fails to justify his sweeping premise that a POSITA would be motivated to combine *any* teaching of Word with *any* prior art connected to word processing in *any* fashion.

Dr. Fox's apparent view that CyberDesk and Word relate to the same or a similar field does not provide a motivation to combine. Under similar circumstances, *InTOUCH Technologies, Inc.* held that the district court erred by denying JMOL as to validity. 751 F.3d at 1353. In that case, the invalidity expert proposed combining multiple references that concerned "doing things over the Internet." *Id*. at 1351. The Federal Circuit rejected that testimony as "vague" and for "not articulat[ing] reasons" for the combination. *Id*. Again, in *Securus Technologies, Inc. v. Global Tel*Link Corp.*, 701 F. App'x 971, 977 (Fed. Cir. 2017), the Federal Circuit held that the "broad characterization of Susen and Gainsboro as both falling within the same alleged field of 'telecommunications monitoring and control'" could not establish an adequate motivation; and the Court noted that "[s]uch short-cut logic would lead to the conclusion that any and all combinations of elements known in this broad field would automatically be obvious."[6] As in *inTOUCH* and *Securus*, Dr. Fox proposes combining prior art simply because it bore a relation to word processing.

Identical assertions unlay Dr. Fox's view that a POSITA would combine ADD with Word:

> [I]f we look in the picture there, we see that this is clearly a word processing document. In the top in parentheses it also says WP for word processing. So [A]pple Data Detectors tells us to think about word processors and clearly that would lead us to something like Microsoft Word.

---

[6] *See also, e.g.*, *Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*, 838 F. App'x 555, 557 (Fed. Cir. 2021) (affirming finding of no motivation to combine based on allegation "references came from the same field of study and address the same problem" or "boilerplate legal conclusions untethered to any claim language"); *Microsoft Corp. v. Enfish, LLC*, 662 F. App'x 981, 990 (Fed. Cir. 2016) (affirming finding of no motivation to combine notwithstanding expert declaration that indexing systems in prior art "address[ed] the same technical issues and disclose[d] closely related subject matters" and "both dea[lt] with solving the problem of locating key words in a database.").

Trial Tr. (5/1) at 1183:6-12; *see also* DTX-189.0004. Dr. Fox fails to establish a motivation for this combination for the same reasons as his prior one.

For the combination of ADD and CyberDesk, Dr. Fox provides one motivation to combine: some of the CyberDesk publications include a citation to the ADD home page in their references. Trial Tr. (5/1) at 1182:23-1183:4, 1183:15-18. Once again, Dr. Fox does not cabin his sweeping premise that, if a reference describing one system contains a citation to a reference describing another system, a POSITA would be motivated to combine them in any way. He says nothing at all about why a POSITA would be motivated to combine the "Write a Letter" feature of ADD with CyberDesk, which is the specific teaching he asserts a POSITA would borrow. *See infra* at 12-13.

Dr. Fox also failed to rebut evidence that the prior art teaches away from his proposed combinations. *See Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1069 (Fed. Cir. 2018). Dr. Sacerdoti explained how CyberDesk and ADD were "going in opposite directions" and had "different motivations." Trial Tr. (5/1) at 1399:21-1401:7. Per Dr. Sacerdoti, ADD "was designed to be something that was going to be actually added to the commercial operating system" and therefore "was trying to narrow the kinds of options they gave to users" and "was looking for the smallest increment" of change. *Id*. at 1400:1-16, 1401:2-5. In contrast, CyberDesk "was a research project" attempting to "blow[] out the menu" and focused on "finding other ways to determine [] context." *Id*. 1400:17-24. Dr. Sacerdoti, quoting from DTX-010.0001, similarly explained how the CyberDesk disclosures teach away from a combination with Word by expressly describing the "tightly integrated suite of tools" in "commercial personal productivity products" like Word as "unsatisfactory." *Id*. at 1402:4-1404:11. CyberDesk provided the alternative of a "service integration framework that removes most of the programming burden . . . [,] provides greater flexibly to the user *and* automatically suggests how two services can be integrated." DTX-

11

010.0001. Finally, Dr. Sacerdoti explained that Microsoft Word's "closed system around the Office suite of products" was "aiming in the opposite direction[]" of ADD, which  was "trying to allow all programs to participate in this integration process dynamically in run time" without requiring developers to change individual applications' code. Trial Tr. (5/1) at 1404:25-1405:21; *see also id*. at 1405:22-1408:25 (making similar points with reference to DTX-975). The evidence adduced at trial thus weighs strongly against finding any motivations to combine.

2.     **Google's combinations do not teach the claimed invention.**

Even with a motivation to combine Google's prior art, those combinations would not make the Asserted Claims obvious. "An obviousness determination generally requires a finding that 'all claimed limitations are disclosed in the prior art.'" *Univ. of Strathclyde v. Clear-Vu Lighting LLC*, 17 F.4th 155, 160 (Fed. Cir. 2021) (citation omitted); *see also id*. at 162 (reversing finding of obviousness where "no reasonable fact finder could have found that the combination" discloses every limitation); *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1365 (Fed. Cir. 2014). "[C]onclusory expert testimony is inadequate to support an obviousness determination on substantial evidence review." *TQ Delta, LLC*, 942 F.3d at 1359.

a.     **CyberDesk in view of ADD**

A reasonable juror could not find that CyberDesk in view of ADD rendered the Asserted Claims obvious. Dr. Fox testified only that ADD's "Write a Letter" functionality would supply the "if searching finds" limitation missing from CyberDesk. Trial Tr. (5/1) at 1183:21-1184:10.[7] His proposal thus would not supply other limitations missing from CyberDesk as identified above. *See*

---

[7] When discussing CyberDesk in view of ADD, Dr. Fox also states, "we're seeing editable documents in our examples." *Id*. at 1184:21-22. Dr. Fox did not identify those examples; he did state that ADD would make applying CyberDesk to editable document obvious; and he did not testify about editability during the displaying and analyzing steps. But, even with such testimony, the combination would still fail to teach the multiple claim limitations missing from CyberDesk.

*Inline Connection Corp.,* 684 F. Supp. 2d at 523 ("Because … the cited testimony concerning the Bellcore RFI was insufficient to demonstrate an element-by-element disclosure of the asserted claims, Waring's additional testimony concerning the Valenti Article concerning claim elements purportedly missing from the Bellcore RFI cannot sustain the jury verdict on obviousness…. Consequently, the court grants Inline's motion for JMOL on the issue of obviousness."). !

Dr. Fox's testimony cannot establish even that ADD teaches "if searching finds…," *inter alia*, because he does not show that "Write a Letter" teaches an action "of a type depending at least in part on the type or types of the first information." PX-1 ('843 Patent) at col. 13, ll. 5-6. The identified "Write a Letter" feature does not vary with the type of first information: Dr. Fox testifies that it starts with an email address (one type of information) and then "put[s] all this stuff into" a letter (one type of action). Trial Tr. (5/1) at 1168:20-1169:17; 1184:5-10.

The record also cannot support finding Claim 30 to be obvious. Dr. Fox first testified about the "new contact" button in CyberDesk that he referenced for anticipation. *Id.* at 1185:20-25. That testimony fails to establish invalidity for the reasons discussed above at 6. Dr. Fox then turns to an "Add e-mail address to e-mail address book" button in ADD. *Id.* at 1186:1-1187:21.[8] Dr. Fox's testimony indicates that the prompt can add an email address to the Claris e-mailer address book, *id.* at 1187:2-8; however, no evidence shows that this address book is "the information source" used with the "Write a Letter" functionality on which Dr. Fox otherwise relies. Claim 30 doesn't teach adding a contact to a database generally; rather, it teaches a prompt for adding first information to the same database in which an automated search for that first information occurs.

---

[8] Dr. Fox's discussion concerns the alleged operation of two PowerBook computers that Google intentionally chose *not* to offer into evidence—and did not even demonstrate at trial. *See* Trial Tr. (4/27) at 997:3-997:23. Thus the jury was entirely reliant on Dr. Fox's testimony.

Moreover, as for CyberDesk's "new contact" button, Dr. Fox has failed to identify prompts in ADD that work with respect to more than one type of first information. *See supra* at 6-7.

Dr. Fox testified in passing that ADD in view of CyberDesk would also invalidate the claims. Trial Tr. (5/1) at 1184:23-1185:14. That obviousness combination was not preserved by Google. Trial Tr. (4/24) at 19:17-21; *see also* Ex. 1 (Email from Counsel for Google, dated Apr. 23, 2023) at 1 (disclosing these obviousness grounds as those "Google will present at trial"). In any event, the record cannot establish obviousness by ADD in view of CyberDesk. Dr. Fox offers bare conclusions without any explanation of what teachings would be combined and for what reasons. Trial Tr. (5/1) at 1185:12-14 ("So combining these two, put the checklist together, we have all of the limitations"); *see also infra* at 14-16 (discussion Google's failure to establish ADD discloses additional claim limitations).

> b.    **ADD in view of Word & CyberDesk in view of Word**

A reasonable juror could not find, by clear and convincing evidence, that CyberDesk or ADD in view of Word invalidates the Asserted Claims. Dr. Fox offers the same assertions concerning both combinations. *Id.* at 1188:11-12. He starts with the unsupported premise that ADD and CyberDesk disclose all claim elements other than "providing an input device, configured by the first computer program" and "in consequence of receipt…." *Id.* at 1188:14-17 (referring to these as limitations E and G). Dr. Fox then asserts that these limitations are supplied by Word, apparently because it teaches including spellchecking in a word processor. *Id.* at 1188:24-1189:13, 1189:21-1190:11. Dr. Fox testified that if you take the "shortcut functionality" (the term used by Dr. Fox to refer to all other limitations of Claim 23) of CyberDesk or ADD and "put this into the Microsoft Word system, that combination would teach all the elements." *Id.* at 1189:24-1190:11.

The record lacks sufficient evidence concerning the feature of Word on which Google relies. Dr. Fox provided the following testimony:

14

> And back in the day when I used Microsoft Word '97, and I wanted to make sure that I didn't spell things wrong, because that's not very good as a professor, I could use the spellcheck capabilities that was built into this. . . . It was much more convenient in Word '97 to have it built into the word processor. . . . [I]t's easy to put stuff into Word back in the day.

*Id.* at 1188:24-1189:24. That's it. Google did not offer Word into evidence or introduce exhibits documenting Word's operation. The jury was told that "back in the day," Dr. Fox thought it was "convenient" to "use the spellcheck capabilities that was built into this," and it was "easy to put stuff into Word." That testimony cannot prove that Word taught any limitation.

The record also lacks clear and convincing evidence for Dr. Fox's premise that ADD and CyberDesk teach the remaining limitations. As discussed above, Dr. Fox ignores multiple requirements when mapping CyberDesk on Claims 23 and 30. *Supra* at 2-7. His analysis of ADD is even less complete. Dr. Fox first provided a general introduction to ADD in which he did not identify how ADD disclosed particular limitations, offering a bare conclusion instead: "So again we see the six shortcut elements are ticked off: A, B, C, D, F, and H. So we've seen multiple times that these things are taught." *Id.* at 1169:20-22. Like he did for CyberDesk, Dr. Fox then asserted that Arendi admitted that ADD discloses these limitations based on its AEDS in support of the Application Serial No. 12/841,302. *Id.* at 1169:23-1171:13, 1172:14-1173:11. But in neither of the passages that Dr. Fox cited did Arendi make such an admission. *Id.* at 1170:8-14, 1172:18-1173:3; *see also* DTX-0925.0111-12. For example, the cited passages from the AEDS say nothing about analyzing for multiple types of contact and identifying information, searching, performing an action using second information, or the prompt of Claim 30. *Id.* When discussing obviousness combinations, Dr. Fox inaccurately testified that the "Write a Letter" of ADD functionality teaches the "if searching finds…" limitation. *See supra* at 13. And, while he "point[ed] out" that ADD discloses editable documents, he did not tie this to the Court's construction of "document" or to

any particular claim limitation. Trial Tr. (5/1) at 1179:21-22; *see surpa* 12 n.7. Finally, Dr. discussion of how ADD discloses claim 30 fails for the reasons discussed above at 13-14.

### 3. The secondary considerations do not support invalidity.

Google offered inadequate testimony concerning secondary considerations of non-obviousness. "The district court must consider evidence showing objective indicia of nonobviousness," which "may often be the most probative and cogent evidence of nonobviousness" because they "help inoculate . . . against hindsight." *InTouch Techs., Inc.*, 751 F.3d at 1347 (citations omitted). First, Dr. Fox offers no explanation for his disregard of licenses taken by Samsung, Apple, and Microsoft: "I considered that. In my perspective, they don't have utility." *Id.* at 1194:25-1195:1; *see also* 1194:13-18 (instructing jury to disregard testimony that settlement "doesn't have a secondary consideration."). In contrast, Dr. Sacerdoti explained that the licenses suggest that the patents were innovative *Id.* at 1409:10-22. Second, Dr. Fox's consideration of other factors was entirely circular, resting on the premise that evidence of non-obviousness should be discounted because "other people had the invention first." *Id.* at 1195:9-17.

### C. The jury wrongly considered estopped prior art.

The Court should also grant JMOL that the Asserted Claims are not invalid, or a new trial, because the jury improperly considered estopped invalidity grounds. Google's presentation of the so-called "CyberDesk System," both alone and in combination with Word, was cumulative of grounds Google reasonably could have raised in IPR. Those grounds were estopped by 35 U.S.C. §315(e)(2). *Cal. Inst. of Tech. v. Broadcom Ltd.*, 991 (Fed. Cir. 2022) ("Caltech"). "[S]imply swap[ping] out publications that were available through a diligent search with the same prior art, only in a slightly different format" is not permitted. *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 453–54, n.7 (D. Del. 2020). Google did not present actual CyberDesk or Word systems at trial. Google's case as to CyberDesk relied only on estopped publications. It attempted

16

to transform those publications into a "system" by playing portions of Dr. Dey's deposition testimony, but this testimony did not include any germane evidence absent from the publications. Google's case as to Word comprised only passing reference to well-documented functionality.

When partially denying summary judgment, the Court identified as a "fact issue" whether Dr. Dey's trial testimony about CyberDesk would provide "non-cumulative disclosures germane to [] Google's invalidity theories." D.I. 391 at 15. At trial, however, Google presented *excerpts* of Dr. Dey's *deposition* about the CyberDesk *printed publications*. Trial Tr. (4/27) at 830:2-903:15. Via Dr. Dey, Google also offered into evidence DTX-0004, DTX-0006 to DTX-0011, DTX-0013 to DTX-0020, DTX-0028, and DTX-0034. *Id.* at 829:12-13. Fifteen of these exhibits describe CyberDesk[9] and are printed publications available to Google during IPR. Most are cited in the '843 Patent. *See* PX-001 (citing publications in DTX-0010, DTX-0011, DTX-0013 to DTX-0016, and DTX-0018 to DTX-0020). The others—DTX-0006, DTX-0007, DTX-0008, DTX-0028, and DTX-0034—are from the "Future Computer Environments" website, which is cited and linked in the publications identified in the '843 Patent. *See, e.g.*, DTX-0014; D.I. 315 at 9-13.[10]

As the Court found at summary judgment, these CyberDesk publications "could have been raised during the IPR of the '843 patent." D.I. 391 at 14; *see also* Trial Tr. (4/24) at 5:13-16 ("There

---

[9] Exhibit DTX-0004 is Google's deposition subpoena to Anind Dey; DTX-0009 is Dr. Dey's CV.
[10] Dr. Fox testified, "five publications before the critical date" describe CyberDesk. Trial Tr. (5/1) at 1154:15-20. They all appear in the '843 Patent. *See* PX-001 (citing (1) Dey, et al., "CyberDesk: The Use of Perception in Context-Aware Computing," PUI '97 (1997); (2) Dey, "Context-Aware Computing: The CyberDesk Project," Future Computing Environments, AAAI '98 Spring Symposium (1998); (3) Dey, et al., "CyberDesk: A Framework for Providing Self Integrating Context-Aware Services," Knowledge-Based Systems, Vol. 11, No. 1 (1998); (4) Wood, et al., "CyberDesk: Automated Integration of Desktop and Network Services," GVU Technical Report, GIT-GVU-97-11 (1997); (5) Dey, et al, "CyberDesk: A Framework for Providing Self Integrating Ubiquitous Software Services," GVU Technical Report, GIT-GVU-97-10 (1997)).

appears to have been no dispute that Google could have presented in the IPR certain patents and printed publications that describe aspects of the CyberDesk system").

The deposition testimony played at trial did not transform those publications into a CyberDesk "system" that circumvents IRP estoppel. Dr. Dey simply walked through the printed publications. Trial Tr. (4/27) at 930:2-903:18. Google identified **only two** statements by Dr. Dey that it contends go beyond the publications—both relating to CyberDesk's alleged ability to analyze editable documents. Neither is new. First, Dr. Fox pointed to Dr. Dey's response of "Absolutely" to the question, "[W]as it possible that a user could be working in an e-mail when the text was selected for the CyberDesk to work?" *Id.* at 895:6-10. Dr. Fox contended this **one-word answer** "teaches us that the first computer program could be a first computer program according to the Court's construction. It doesn't have to be a mail reader; you can go with editing tools as he said. I wouldn't have known if I just looked at the publication." Trial Tr. (5/1) at 1160:2-18. This purported "teach[ing]" fails to explain anything relevant to the claims. Dr. Fox fails even to tie Dr. Dey's testimony to any limitation. The Court's construction of "computer program" does not concern editing. And, while the Court's construction of "document" requires editability, Dr. Fox provides no evidence that "working in an e-mail" includes editing an email. Dr. Dey's one-word response did not create a CyberDesk "system" distinct from the publications.

Second, Dr. Fox pointed to Dr. Dey's testimony that CyberDesk permitted users to insert "text that was found" into a "working document" as evidence that CyberDesk analyzed editable documents. *Id.* at 1160:21-1161:12. But Dr. Dey did **not** testify that CyberDesk allowed a user to insert found information back into an email that was being displayed during the analyzing step of Claim 23. *See id.* To the contrary, Dr. Dey made clear that CyberDesk inserted found information **into a separate text editor**. Trial Tr. (4/27) 896:2-9. Dr. Fox's examples of how Dr. Dey's

testimony purportedly expanded on the printed CyberDesk publications both fail. Neither bit of testimony conveyed anything relevant to CyberDesk that Google could not have raised during IPR.

Google thus disguised the *same* CyberDesk reference as a "system" to improperly present it to the jury. Such an end-run around IPR estoppel is prohibited. *See, e.g.*, *Clearlamp, LLC v. LKQ Corp.*, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016) (rejecting effort to "cloak its reliance upon UVHC3000 as a product, so as to avoid § 315(e)(2) estoppel" as "disingenuous"); *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1032 (E.D. Wis. 2017).

Even if Dr. Dey had identified relevant aspects of CyberDesk, his testimony would be uncorroborated and incapable of invalidating the Asserted Claims. "[C]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent." *CEATS, Inc. v. Cont'l Airlines, Inc.*, 526 F. App'x 966, 969 (Fed. Cir. 2013) (citation omitted). Any non-cumulative testimony necessarily went beyond the CyberDesk references and lacked corroborating support.

To the extent Google presented any evidence of Word's functionality, that evidence was also cumulative of printed publications and, therefore, subject to IPR estoppel—including in combination with CyberDesk.[11] As discussed above, Dr. Fox made only limited reference to "spellcheck capabilities that was built into" Word and the ability to "put stuff into Word." *Supra* at 15. Multiple publications cited on the face of the '843 Patent document those features. For example, "Getting Results with Microsoft Office 97," documents both features. D.I. 312-4 at 83 ("Checking Spelling and Grammar[:] Word can act as the reader over your shoulder, checking as you type for spelling mistakes…." 312-4 at 83.); 312-8 at 79 ("Microsoft Visual Basic for

---

[11] At summary judgment, the Court found a factual dispute as to whether Word was "cumulative" of certain user guides and manuals. D.I. 399 at 17. The Court relied on screenshots of Word taken by Dr. Fox. *Id.* at 16-17. But Dr. Fox did not present those screenshots at trial, and Google did not admit Word into evidence. Thus, the sole basis for deferring IPR estoppel evaporated at trial. Arendi incorporates its briefing at D.I. 315 at 6-19 and D.I. 377 at 3-4, 9.

Applications is a powerful built-in programming language that . . . enables a developer to create customized, multiple application solutions to automate complex tasks."); *id.* at 84 (same). The '843 Patent cites that publication on its face, PX-1 at 3, and it could have been raised at IPR, D.I. 399 12 n.13. Google cannot raise Word in combination with other estopped art. D.I. 399 at 13; *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 454 (D. Del. 2020).

Arendi's inability to reference IPR at trial compounded the prejudice of permitting Google to present estopped invalidity grounds to the jury. *See, e.g.*, Trial Tr. (4/24) at 37:24-39:10, Trial Tr. (4/25) at 275:14-276:21; Trial Tr. (5/1) at 1200:15-17. Those rulings allowed Google to create a false impression that it was presenting novel grounds of invalidity that could not have been raised before. *E.g.*, Trial Tr. (5/1) at 1155:10-18; Trial Tr. (5/2) at 1600:5-21, 1623:19-25; *see also* Trial Tr. (4/24) at 91:9-14. Those assertions were not only untrue, but they also created the sense that Arendi had somehow snuck these grounds past the PTO, and only the jury could set things right.

Because CyberDesk—both alone and in combination with Word—is subject to IPR estoppel, Google's presentation of it to the jury was prejudicial and improper. CyberDesk was the **only** prior art reference that Google asserted anticipated the '843 Patent, and the jury necessarily relied on it to conclude the '843 Patent was invalid for anticipation. D.I. 531 at 2. Because the jury improperly rendered its verdict based on estopped prior art, it cannot stand. Meanwhile, the combination of CyberDesk and Word was at the core of Google's obviousness case. The Court must grant judgment as a matter of law of no invalidity, or a new trial.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant Arendi's motions for judgment as a matter of law or, in the alternative, for a new trial.

Dated: June 2, 2023

*Of Counsel:*

SUSMAN GODFREY LLP
Seth Ard (*pro hac vice*)
Max Straus (*pro hac vice*)
Beatrice Franklin (*pro hac vice*)
SUSMAN GODFREY, L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: (212) 336-8330
sard@susmangodfrey.com
mstraus@susmangodfrey.com
bfranklin@susmangodfrey.com

John Lahad (*pro hac vice*)
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
jlahad@susmangodfrey.com

Kalpana Srinivasan (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
ksrinivasan@susmangodfrey.com

Kemper Diehl (*pro hac vice*)
401 Union Street, Suite 3000
Seattle, WA 98101-3000
kdiehl@susmangodfrey.com

SMITH, KATZENSTEIN & JENKINS LLP

*/s/ Neal C. Belgam*
Neal C. Belgam (No. 2721)
Daniel Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Attorneys for Plaintiff Arendi S.A.R.L.*