# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARENDI S.A.R.L., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 13-919-JLH |
| v. | ) | |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT GOOGLE'S OPPOSITION TO PLAINTIFF ARENDI S.A.R.L.'S RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL

OF COUNSEL:

Robert W. Unikel
John Cotiguala
PAUL HASTINGS LLP
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
Tel: (312) 449-6000

Robert R. Laurenzi
Chad J. Peterman
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 318-6000

Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Tel: (202) 220-1100

Vincent Y. Ling
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant Google LLC*

Dated:  June 30, 2023
10896916 / 12599.00040

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     LEGAL STANDARD ...................................................................................... 1

III.    INVALIDITY DEFENSES ............................................................................. 2

    A.      There Was More Than Sufficient Basis for the Jury's Anticipation
         Finding. .................................................................................................. 2

    B.      There Was More Than Sufficient Basis for the Jury's Obviousness
         Verdict. ................................................................................................... 8

         1.      The jury properly relied on Dr. Fox's motivation-to-combine
                opinion. ...................................................................................... 8

         2.      Google's combinations teach the claimed invention. .............................. 10

IV.     IPR ESTOPPEL DOES NOT APPLY ........................................................... 14

    A.      Arendi Does Not Acknowledge, Much Less Demonstrate Any Error in, the
         Court's IPR Estoppel Rulings on Multiple Independent Grounds ...................... 15

    B.      Even If the Court Were to Reconsider Its Ruling, Estoppel Does Not
         Apply ...................................................................................................... 16

V.      CONCLUSION ................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Becton Dickinson & Co. v. Tyco Healthcare Grp. LP*,
No. 02-1694 GMS, 2006 WL 890995 (D. Del. Mar. 31, 2006) ...............................................16

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020)..........................................................................................1

*In re Brimonidine Pat. Litig.*,
643 F.3d 1366 (Fed. Cir. 2011)..........................................................................................1

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
2019 WL 8192255 (C.D. Cal. Aug. 9, 2019), *aff'd*, 25 F.4th 976 (Fed. Cir. 2022) ...............................................................................................................................17

*CEATS, Inc. v. Cont'l Airlines, Inc.*,
526 F. App'x 966 (Fed. Cir. 2013) ......................................................................................19

*Chemours Co. v. Daikin Indus., Ltd.*,
2022 WL 2643517 (D. Del. July 8, 2022) .......................................................................15, 16

*Clearlamp, LLC v. LKQ Corp.*,
2016 WL 4734389 (N.D. Ill. Mar. 18, 2016).......................................................................16

*Cordance Corp. v. Amazon.com, Inc.*,
658 F.3d 1330 (Fed. Cir. 2011)..........................................................................................2

*Fleming v. Escort Inc.*,
774 F.3d 1371 (Fed. Cir. 2014)..........................................................................................19

*Idenix Pharms. LLC v. Gilead Scis. Inc.*,
941 F.3d 1149 (Fed. Cir. 2019)..........................................................................................1

*Ironburg Inventions Ltd. v. Valve Corp.*,
64 F.4th 1274 (Fed. Cir. 2023) ..........................................................................................16

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
587 F.3d 1324 (Fed. Cir. 2009)..........................................................................................1

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
882 F.3d 1056 (Fed. Cir. 2018)..........................................................................................10

*Samsung Elecs. Co. v. Infobridge Pte Ltd.*,
   929 F.3d 1363 (Fed. Cir. 2019)...................................................................17

*Samsung Elecs. Co. v. UUSI, LLC*,
   775 F. App'x 692 (Fed. Cir. 2019) ...............................................................9

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*,
   264 F.3d 1344 (Fed. Cir. 2001).....................................................................19

*Schumer v. Lab'y Comp. Sys., Inc.*,
   308 F.3d 1304 (Fed. Cir. 2002).......................................................................1

*Sprint Commc'ns Co. L.P. v. Cox Commc'ns Inc.*,
   302 F. Supp. 3d 597 (D. Del. 2017)..............................................................20

*Williamson v. Consol. Rail Corp.*,
   926 F.2d 1344 (3d Cir. 1991)...........................................................................1

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*,
   522 F.3d 1348 (Fed. Cir. 2008).....................................................................19

*Zup, LLC v. Nash Mfg., Inc.*
   896 F.3d 1365 (Fed. Cir. 2018).....................................................................14

**Statutes**

35 U.S.C. § 102(b) ...............................................................................................18

35 U.S.C. § 311(b) ...............................................................................................15

35 U.S.C. § 315(e)(2)...........................................................................................15

**Other Authorities**

L.R. 7.1.3(a)(4) .....................................................................................................20

L.R. 7.1.5 ..............................................................................................................16

## I.    INTRODUCTION

Defendant Google LLC proved that claims 23 and 30 of U.S. Patent No. 7,917,843 (the "'843 Patent") are anticipated and obvious. During the six-day trial, Google provided clear and convincing evidence to support the jury's invalidity findings, including testimony and documentary evidence from prior artists, expert analysis, and excerpts from the '843 Patent's prosecution history. No new trial is necessary, and the prior art systems are not estopped.

## II.    LEGAL STANDARD

"A grant of JMOL is appropriate 'where a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have had a legally sufficient evidentiary basis to find for the party on that issue.'" *Idenix Pharms. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149, 1153–54 (Fed. Cir. 2019) (applying 3d Cir. law). A court should "grant[] a new trial only where 'a miscarriage of justice would result if the verdict were to stand' or where the verdict 'shocks [the] conscience.'" *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1363 (Fed. Cir. 2020) (applying 3d Cir. law) (second alteration in original).

"There is no invariable requirement that a prior art reference be accompanied by expert testimony." *In re Brimonidine Pat. Litig.*, 643 F.3d 1366, 1376 (Fed. Cir. 2011). A jury's deliberation "may include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference or expert opinion." *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009).[1] Because the parties agreed upon a general verdict form, Arendi must demonstrate there is no substantial evidence to support a finding of obviousness regarding *any* of the combinations presented at trial.

---

[1] Arendi incorrectly asserts that expert testimony must meet more "exacting requirements," citing *Schumer v. Lab'y Comp. Sys., Inc.*, 308 F.3d 1304 (Fed. Cir. 2002). Br. at 3. *Schumer* concerned summary judgment of invalidity, which requires presuming disputed facts in favor of the patentee and thus places a particularly high burden on the defendant. *Id.* at 1315-16.

*See Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1338-39 (Fed. Cir. 2011).

## III.   INVALIDITY DEFENSES

### A.   There Was More Than Sufficient Basis for the Jury's Anticipation Finding.

Google presented extensive testimony from Dr. Dey, the creator of the prior art CyberDesk system ("CyberDesk"); numerous documents related to CyberDesk; statements Arendi itself made to the PTO regarding aspects of CyberDesk; testimony from the inventor, Mr. Hedloy, regarding those statements; and expert testimony from Dr. Fox on anticipation.

At a high level and as discussed further below, CyberDesk ran within a web browser (*e.g.*, Netscape), which displayed applets in individual browser sub-windows. The applets included local services (*e.g.*, an e-mail editor) and could use another local application (*e.g.*, Contact Manager) or network services on the web (*e.g.*, Switchboard or AltaVista) to search for additional information, such as contact information, related to a "first information," such as a name or e-mail address. CyberDesk presented the user with "ActOn" Buttons suggesting actions for the first information; for example, a user could click on a button to look up and display a phone number based on a name, or look up and retrieve a map based on a street address.

As the jury heard, during prosecution of the '843 patent, Arendi pointed to an Accelerated Examination Support Document ("AESD") from its prosecution of another patent application from the same family, telling the PTO that "the prior art references analyzed in the [AESD] are of particular interest in relation to the present application [for the '843 patent]." DTX-2.0180-81; *see also* DTX-925 (AESD); 4/24 Trial Tr. (Hedloy) 205:25-207:19. As Dr. Fox explained and Mr. Hedloy conceded, Arendi admitted in the AESD that most of the elements of the asserted claims were disclosed by a printed publication about CyberDesk. DTX-925.0114-15; 4/24 Trial Tr. (Hedloy) 211:8-212:9; 5/1 Trial Tr. (Fox) 1151:12-1152:4, 1153:9-24, 1163:21-1164:13, 1165:8-1166:5, 1170:20-1172:13. But Arendi argued in the AESD that CyberDesk was "separate" from

any document editing programs. DTX-925.0115. Dr. Fox explained that this meant Arendi was arguing that the limitations "providing an input device . . . ," and "in consequence of receipt" of a user command from an input device, causing a search "using a second computer program, in order to find second information"—both of which depend on actions by a "first computer program"— were not present in CyberDesk. 5/1 Trial Tr. (Fox) 1155:19-1158:19, 1165:8-1166:5, 1177:8-1181:1. Arendi seeks to walk back its AESD statements on the basis that they related to a different patent application, but Arendi ignores that the statements are standalone admissions regarding CyberDesk's features, DTX-925.0114-15, and that it expressly relied on them during prosecution of the '843 patent, *see* DTX-2.0180-81; 4/24 Trial Tr. (Hedloy) 205:25-207:19. Thus, the AESD, together with Dr. Fox's and Mr. Hedloy's testimony about it, is sufficient evidence for a reasonable jury to find that CyberDesk satisfied almost every element of the asserted claims.

In any event, Google also presented further evidence on *all* of the disputed limitations to support the jury's finding of anticipation. Substantial evidence supports the jury's finding that CyberDesk "display[ed] the document electronically using the first computer program," under the Court's construction of "document" as "a word processing, spreadsheet, or similar file into which text can be entered." D.I. 143 at 5. For example, the testimony of Drs. Dey and Fox establishes that CyberDesk displayed text-editable files in applets (*e.g.*, e-mail editor applet or letter in a text editor). *See, e.g.*, 4/27 Trial Tr. (Dey) 845:25-847:21, 894:23-895:10, 896:2-897:12; 5/1 Trial Tr. (Fox) 1159:25-1161:12, 1178:9-14, 1270:10-1272:3. Arendi now argues that the testimony should be ignored because a document about CyberDesk (DTX-10) shows an image example of an e-mail in a non-editable mode. But there was no inconsistency between that image and Dr. Dey's testimony. In fact, Dr. Fox explained that Dr. Dey expounded on the document and clarified that the "first computer program" in CyberDesk—either the browser or an applet—could include

"editing tools" displaying editable e-mails or letters. 5/1 Trial Tr. 1159:25-1161:12. Indeed, Dr. Sacerdoti's testimony that CyberDesk did not display an editable file was based solely on the CyberDesk document, and he admitted that his opinion was contradicted by Dr. Dey's testimony. 5/1 Trial Tr. (Sacerdoti) 1391:7-1392:21.[2] The jury was entitled to credit Dr. Dey's testimony and Dr. Fox's analysis instead of Dr. Sacerdoti's.

Substantial evidence also supports the jury's finding that CyberDesk met the limitation "while the document is being displayed, analyzing . . . first information . . . to determine if [it] is at least one of a plurality of types of information that can be searched for in order to find second information related to the first information." For example, the testimony of Drs. Dey and Fox establishes that CyberDesk analyzed text selected by a user or found in a document to determine if it was of a predefined type (*e.g.*, name or e-mail address) that could be used to search for related information in an external source (*e.g.*, Contact Manager or Switchboard). *See, e.g.*, 4/27 Trial Tr. (Dey) 847:2-854:1, 863:20-866:17, 872:11-873:6, 883:20-884:15, 889:24-891:1, 895:11-17; DTX-10; DTX-11; DTX-15; DTX-18; 5/1 Trial Tr. (Fox) 1156:24-1158:19, 1178:15-1179:4. Dr. Dey identified numerous examples of types that can be searched for, including names, e-mail addresses, and phone numbers. *See, e.g.*, 4/27 Trial Tr. 849:18-851:1, 855:18-856:13, 863:20-866:17, 895:6-21; DTX-11.0002; *see also* DTX-28; 4/27 Trial Tr. (Dey) 889:24-892:4; 5/1 Trial Tr. (Fox) 1161:13-1163:20 (list of Network Services for CyberDesk on the Future Computing Environments ("FCE") website). Arendi admitted that CyberDesk identifies at least URLs and names to search for related information. 4/24 Trial Tr. (Hedloy) 210:18-212:9; DTX-925.0114.

---

[2] The Court should reject Arendi's attorney argument that Dr. Fox wrongly equated Dr. Dey's use of "working in an e-mail" with editing. It was for the jury to weigh the testimony and determine whether Dr. Fox's interpretation was credible. Even Dr. Sacerdoti admitted that Dr. Dey testified the e-mail documents were editable. 5/1 Trial Tr. (Sacerdoti) 1391:8-1392:3. And Dr. Dey clearly used the terms "working in" throughout his testimony to mean editing, and "working document" to mean an editable document such as a "text editor." *See, e.g.*, 4/27 Trial Tr. (Dey) 895:5-897:12.

4

Furthermore, substantial evidence supports the jury's finding that CyberDesk "retriev[ed] the first information." Dr. Dey testified, and exhibits showed, that CyberDesk retrieved the text constituting "first information" and sent or used it for searching and provision of an input device. *See, e.g.*, 4/27 Trial Tr. (Dey) 847:22-848:22, 850:3-851:15, 854:5-13 (pushing information to services); *id.* at 855:14-856:22 (describing Fig. 3 of DTX-10, -11 obtaining selected text for conversion); *see also, e.g.*, 4/24 Trial Tr. (Hedloy) 211:8–212:9 (CyberDesk retrieves highlighted text to provide options for names and URLs); DTX-925.0114; 4/27 Trial Tr. (Dey) 865:23-866:11; 5/1 Trial Tr. (Fox) 1157:6-25, 1158:20-1159:6, 1165:10-1166:5, 1179:5-6.

Substantial evidence supports the jury's finding that CyberDesk met the "providing an input device . . ." element. The testimony of Drs. Dey and Fox establishes that CyberDesk provided input devices (*i.e.*, the ActOn Buttons) that allowed a user to initiate an operation or action (*e.g.*, "Lookup Name using ContactManager"; "Lookup Phone Number For Name using Switchboard"). *See, e.g.*, 4/27 Trial Tr. (Dey) 850:3-852:11, 854:5-25, 856:6-22; 862:4-866:25, 873:7-874:12, 883:13-884:1, 895:18-897:12; DTX-10; DTX-11; 5/1 Trial Tr. (Fox)1156:24-1157:5; *see also, e.g.,* 4/24 Trial Tr. (Hedloy) 211:8–212:9 (admitting CyberDesk presents options to search for information related to names and URLs); DTX-925.0114. Their testimony further establishes that clicking an ActOn Button performed a search using at least part of the first information (*e.g.*, name or e-mail address) in an external information source (*e.g.*, Contact Manager or Switchboard) for second information of a specific type related to the first information; the second information was then displayed in a browser or applet window, suggested or retrieved for the user, saved in a database, or inserted into the document. *See, e.g.*, 4/27 Trial Tr. (Dey)849:18-851:1, 852:12-854:25, 855:18-856:13, 863:20-866:17, 891:3-892:4, 895:6-897:12; DTX-10; DTX-11; DTX-28; 5/1 Trial Tr. (Fox) 1157:22-1158:11, 1161:15-1162:8, 1162:16-1163:6, 1179:7-1180:4.

Arendi argues that substantial evidence does not support the jury's finding that the ActOn Buttons are "configured by" the first computer program, but the testimony of both Drs. Dey and Fox covered this limitation. They explained how services are integrated so that an applet or browser dynamically provided ActOn Buttons depending on the type of first information. *See, e.g.*, 4/27 Trial Tr. (Dey)845:8-849:10, 850:3-851:20, 856:6-19; 5/1 Trial Tr. (Fox)1156:24-1157:21, 1158:20-1159:24, 1179:7-1180:4.[3] Substantial evidence similarly supports the jury's finding that CyberDesk searched "in an information source external to the document" limitation. Drs. Dey and Fox testified that searches occur in databases external to the document such as through Contact Manager or the Switchboard service. *See, e.g.*, 4/27 Trial Tr. (Dey)851:16-854:25, 889:24-892:4; 5/1 Trial Tr. (Fox) 1157:22-1158:11, 1161:15-1162:8, 1162:16-1163:6, 1179:7-1180:4.

Substantial evidence supports the jury's finding that CyberDesk "perform[ed] an action using at least part of the second information." For example, the evidence establishes multiple actions using at least part of the search results, including display, suggestion, or retrieval of the information, insertion of the information into a document, and saving of the information into a database. *See, e.g.*, 4/27 Trial Tr. (Dey) 852:8-854:25, 895:6-21 (displaying contact information found from search), *id.* at 862:4-863:19, 865:17-867:21 (saving contact information), 895:22-897:12 (inserting text or suggesting related information in working document); DTX-11; 5/1 Trial Tr. (Fox) 1157:22-1158:11 (displaying contact information), 1160:19-1163:20 (inserting text, retrieving map), 1179:13-1180:4.

---

[3] Drs. Dey and Fox also testified that the type of second information found (*e.g.*, contact information, suggested reading, map, date history) depends on the type of first information (*e.g.*, name/e-mail, technical text, street address, date (respectively)). *See, e.g.*, 4/27 Trial Tr. (Dey)850:23-851:1, 855:18-856:22, 863:20-866:17, 872:22-874:12, 883:20-884:19, 889:24-892:4, 895:6-897:12; 5/1 Trial Tr. (Fox)1161:13-1163:20; DTX-11.0001 (showing ActOn Buttons with display result dependencies by type, *e.g.*, "Lookup Phone Number For Name using Switchboard"); DTX-11.0002 (ActOn Buttons work for both names and URLs); DTX-28 (listing system services).

Substantial evidence supports the jury's finding that CyberDesk met the "in consequence . . ." element. As discussed with respect to the prior element, Drs. Dey and Fox testified that clicking an ActOn Button (*e.g.*, "Lookup Name using ContactManager") was a command to the applet (e.g., e-mail window) or browser to cause a search using at least part of the first information (*e.g.*, name or e-mail) in an information source external to the document (*e.g.*, Contact Manager or Switchboard) for second information related to the first information (*e.g.*, address or phone number). *See, e.g.*, 4/27 Trial Tr. (Dey) 852:12-854:25; DTX-10; DTX-11; 5/1 Trial Tr. (Fox) 1156:24-1157:5, 1157:22-1158:11, 1161:15-1162:8, 1162:16-1163:6, 1180:5-15. The list of network services on the FCE website further identified other types of second information related to the search term searched in a second computer program, such as retrieving a map for a given address from MapQuest or retrieving information about historical events for a date from Day in History. DTX-28; 4/27 Trial Tr. (Dey) 891:3-892:3; 5/1 Trial Tr. (Fox) 1161:15-1163:20.

Substantial evidence similarly supports the jury's finding that CyberDesk met the "first computer program" and "second computer program" limitations of this element. For example, testimony from Drs. Dey and Fox establishes that the web browser (*e.g.*, Netscape, including windows for service applets) or individual applets can be considered the "first computer program." *See, e.g.*, 4/27 Trial Tr. (Dey) 847:2-854:3, 863:20-866:17, 872:11-873:6, 883:20-884:15, 889:24-891:1, 895:11-17; DTX-10; DTX-11; DTX-15; DTX-18; 5/1 Trial Tr. (Fox) 1177:21-1178:8, 1181:4-6; DTX-11. Their testimony further establishes that Switchboard or Contact Manager can be considered the "second computer program." 4/27 Trial Tr. (Dey) 847:2-854:3, 863:20-866:17, 872:11-873:6, 883:20-884:15, 889:24-891:1, 895:11-17; DTX-10; DTX-11; DTX-15; DTX-18; DTX-20.0003; 5/1 Trial Tr. (Fox) 1157:22-1158:11, 1165:5-1166:5, 1180:5-15.[4]

---

[4] In its motion, Arendi both ignores the evidence regarding Contact Manager and quotes testimony out of context to argue that Dr. Fox "only '*think[s]* [Switchboard is] a separate program.'" Br. at

Substantial evidence supports the jury's finding that CyberDesk met the "if searching finds any . . ." element. As discussed, the testimony of Drs. Dey and Fox establishes that the second information found in the search was displayed, retrieved, suggested, saved, or inserted ("the action") in a browser or applet window. *See, e.g.*, 4/27 Trial Tr. (Dey) 852:12-854:25, 895:6-21, 895:22-897:12; DTX-10; DTX-11; 5/1 Trial Tr. (Fox) 1157:22-1158:11, 1180:16-21. This testimony further establishes that the type of action depended on the type of first information. *See, e.g., id.; see also, e.g.,* 4/27 Trial Tr. (Dey) 891:3-892:4; 5/1 Trial Tr. (Fox) 1161:15-1163:12; DTX-11 (showing ActOn Buttons with display result dependencies by type, *e.g.*, "Lookup Phone Number For Name using Switchboard"); DTX-28 (services with display result dependencies by type, *e.g.*, "retrieve a map for a given address using City Net"); 4/24 Trial Tr. (Hedloy) 211:8-212:9 (webpage associated with the selected URL displayed); DTX-925.0114 (same).

Finally, substantial evidence supports the jury's finding that CyberDesk met claim 30. Drs. Dey and Fox established that CyberDesk prompted a user to update the information source (*e.g.*, Contact Manager) with the first information (*e.g.*, name or e-mail address), along with other associated information (*e.g.*, mailing address or phone number). *See, e.g.*, 4/27 Trial Tr. (Dey) 853:24-854:4, 873:20-874:12; DTX-10; DTX-11 (showing various updateable contact information fields for Contact Manager); 5/1 Trial Tr. (Fox) 1181:2-1182:1 ("[T]here's a little button that says 'New Contact,'" that "is a prompt," and "a user could add a new contact").

## B.   There Was More Than Sufficient Basis for the Jury's Obviousness Verdict.

### 1.   The jury properly relied on Dr. Fox's motivation-to-combine opinion.

Substantial evidence supports the jury's finding of a motivation to combine the prior art systems Google presented at trial. Dr. Fox testified to "explicit instructions in the documentation

---

5. But the evidence clearly identified Switchboard and Contact Manager as "second computer programs" running separately from the "first computer program."

that were available that would guide us" to be motivated to combine CyberDesk, Apple Data Detectors ("ADD"), and Microsoft Word 97 ("Word"). 5/1 Trial Tr. (Fox) 1182:8-13. A list of system services on the FCE website showed that CyberDesk could be used with "simple notepad," a word processor. *Id.* at 1182:14-19; DTX-8.002. Dr. Fox said that would have caused one of ordinary skill to think of Word. 5/1 Trial Tr. 1182:14-22. He similarly testified about a screen from ADD that "clearly" reflects a word processing document, noting "[i]n the top in parentheses it also says WP for word processing." *Id.* at 1183:5-12; DTX-189.0004. Further, Dr. Fox identified multiple articles about CyberDesk that explicitly referenced ADD. 5/1 Trial Tr. (Fox) 1182:23-1183:4; DTX-18.00005; DTX-20.0005. And Dr. Dey testified that he met the creator of ADD, Mr. Miller, at a Georgia Tech "Demo Day" at which Dr. Dey demonstrated the CyberDesk system. 4/27 Trial Tr. (Dey) 878:15-879:4. Mr. Miller, in turn, testified that ClarisWorks was a "word processing program" that ADD could work with (4/27 Trial Tr. (Miller) 1027: 4-7), and one of the MacWorld videos established that ADD could work with "any type of document you have." *Id.* at 1041:5-12. Dr. Fox also testified that incorporating the functionality from a system such as CyberDesk or ADD into Word would have been "easy . . . back in the day" because it was taking available "shortcut functionality … [and] mov[ing] it into other programming packages." 5/1 Trial Tr. 1189:16-1190:11. As Mr. Hedloy admitted, Microsoft provided a programming language for developers to save time creating features or applications for Word. 4/24 Trial Tr. 187:15-188:22. Thus, Google's evidence was not limited to vague assertions that the prior art systems were in the same field of art. *See* Br. at 10-11.

Contrary to Arendi's arguments, Dr. Sacerdoti's testimony that the references "taught away" from combination does not negate the evidence discussed above. His testimony that CyberDesk and ADD were going in "opposite directions" was conclusory and cannot defeat

obviousness because an artisan may still be motivated to combine references directed to different problems. *See Samsung Elecs. Co. v. UUSI, LLC*, 775 F. App'x 692, 695 (Fed. Cir. 2019) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007)). Arendi also points to Dr. Sacerdoti's testimony that the CyberDesk disclosures "teach away" from a combination with Word. Br. at 11. But the article he relied on aligns with Dr. Fox's testimony that there were two approaches for shortcut tools: (1) putting the tool inside one application, and (2) allowing the tool to be shared by many applications. DTX-10. Even if the article expressed a preference for the CyberDesk approach, "[a] reference does not teach away 'if it merely expresses a general preference for an alternative invention but "does not criticize, discredit, or otherwise discourage" investigation into the invention.'" *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1069 (Fed. Cir. 2018). In any event, the jury was free to credit competing testimony on motivation to combine.

### 2.   Google's combinations teach the claimed invention.

#### a)   Claims 23 and 30 are obvious over CyberDesk in view of ADD.

Substantial evidence supports the jury's finding that CyberDesk in view of ADD rendered the Asserted Claims obvious. Dr. Fox provided detailed expert opinions alongside documentary evidence and fact testimony explaining how CyberDesk and ADD together satisfied the limitations of the Asserted Claims, rendering them obvious. *See, e.g.*, 5/1 Trial Tr. (Fox) 1153:9-1176:1 (discussing CyberDesk and ADD), 1176:2-1181:1 (anticipation by CyberDesk), 1183:13-1184:22 (combination as to claim 23), 1185:15-1187:21 (combination as to claim 30); 4/27 Trial Tr. (Dey) 831:17-832:2  832:25-867:21,  869:6-899:6,  901:9-903:15;  4/27  Trial  Tr.  (Miller)  1005:15-1058:16; *see also* DTX-4, 6-11, 13-20, 28, 34, 179, 180, 182, 186-191, 777, 880-883, 925.

With respect to claim 23, Arendi's only argument regarding the combination of CyberDesk and ADD is that Dr. Fox could not establish that ADD teaches "if searching finds . . ." because he did not show that "Write a Letter" teaches an action "of a type depending at least in part on the

type or types of the first information." Br. at 13. Dr. Fox, however, referenced the MacWorld demonstrations, and testified about how ADD analyzed a Wall Street Journal article and picked out "named entities," gave the user choices based on those entities, found a person's email address and phone number, and wrote a letter using the mailing address found in a contact book by searching for the email address. 5/1 Trial Tr. (Fox) 1167:13-1169:22. The described "Write a Letter" functionality showed using first information (email address) to search for second information (mailing address) and performing an action to insert the contact information into the letter. *Id.* The "Write a Letter" action is dependent on the first information, *i.e.*, contact information that could be used to find a mailing address. *See also* DTX-189, 777, 880-883.

With respect to claim 30, Dr. Fox pointed to evidence of this limitation in both CyberDesk and ADD. In CyberDesk, he noted Dr. Dey's testimony that a user could add a new contact, and pointed to the "new contact" button as the prompt. 5/1 Trial Tr. (Fox) 1185:15-25; *see also* p. 8, *supra*. He also testified about pictures taken during his inspection of Mr. Miller's Powerbooks running ADD, where he highlighted "testOne@apple.com" in a document editing program, saw a pop-up menu with the option of adding the email address to an address book, was shown a window that prompted him to identify the user name associated with the email address, and then received a message that the email address was added to the address book. 5/1 Trial Tr. (Fox) 1186:1-1187:12, 1187:13-21.[5] Arendi's argument that there is no evidence the Claris e-mailer address book is the "information source" in the "Write a Letter" functionality (Br. at 13) is also unavailing. The MacWorld demonstrations show that ADD searched for address information in ClarisWorks, and Mr. Miller testified that Claris e-mailer was installed on the PowerBooks Dr. Fox inspected.

---

[5] Arendi incorrectly argues that the jury was entirely reliant on Dr. Fox's testimony about the PowerBooks. Br. at 13 n.9. Mr. Miller also testified about the PowerBooks and the programs actually loaded on them. 4/27 Trial Tr. 1032:11-1034:14.

4/27 Trial Tr. (Miller) 1019:8-15, 1032:14-1033:7, 1034:1-16.

    **b)**  ***Claims 23 and 30 are obvious over ADD in view of CyberDesk.***

    Substantial evidence supports the jury's finding that the Asserted Claims were obvious in light of ADD in view of CyberDesk. Dr. Fox provided detailed expert opinions alongside documentary evidence and fact testimony explaining how ADD and CyberDesk together satisfied the limitations of the Asserted Claims, rendering them obvious. 5/1 Trial Tr. 1153:9-1176:1 (discussing CyberDesk and ADD), 1176:2-1181:(anticipation by CyberDesk), 1184:23-1185:14 (how ADD in view of CyberDesk rendered claim 23 obvious); DTX-4, 6-11, 13-20, 28, 34, 127, 179, 180, 182, 186-191, 777, 880-883, 925. Arendi argues that Google did not preserve this combination (Br. at 14), pointing to Google's indication that it would present "CyberDesk + Apple data detectors" at trial. *See* Br. Ex. 1; 4/24 Trial Tr. 19:17-20. That representation did not preclude Google from presenting obviousness based on those systems going both ways, *i.e.*, CyberDesk in view of ADD, and ADD in view of CyberDesk. Indeed, Arendi did not object when Dr. Fox presented both formulations at trial.[6] Arendi's only other attack is that Dr. Fox's testimony was conclusory. Br. at 14 (quoting selectively). That ignores his detailed testimony about each system. 5/1 Trial Tr. 1153:9-1176:1 (CyberDesk and ADD), 1176:2-1181:1 (anticipation by CyberDesk).

    **c)**  ***Claims 23 and 30 are obvious over CyberDesk in view of Word, and ADD in view of Word.***

    There was substantial evidence for the jury to find that the Asserted Claims were obvious in light of CyberDesk in view of Word, and ADD in view of Word. Arendi's primary argument regarding these combinations is that Google did not offer Word or exhibits relating to Word into evidence, and that Dr. Fox's testimony did not show that Word taught any limitation. Br. at 14-

---

[6] Google disclosed Dr. Fox's demonstratives on April 26, 2023, four days before he testified, and Arendi never objected to Dr. Fox presenting ADD in view of CyberDesk. (Ex. A, B.)

15.[7] This ignores Dr. Fox's detailed testimony about how Arendi obtained the patent, particularly how it distinguished the prior art and the two approaches to shortcut tools in the 1990s. As background, Dr. Fox explained how Arendi admitted in the AESD that publications about CyberDesk and ADD disclosed each of the "shortcut elements," 5/1 Trial Tr. (Fox) 1163:21-1166:5 (discussing CyberDesk), 1169:23-1170:19 (discussing ADD), 1170:20-1171:5 (discussing disclosure of shortcut elements); DTX-4, 6-11, 13-20, 28, 34, 179, 180, 182, 186-191, 777, 880-883, 925, but distinguished its alleged invention by explaining that in the prior art systems, the input device was *separate* from the document editing program (*i.e.*, the first computer program). 5/1 Trial Tr. (Fox) 1171:6-1173:11; DTX-925.0115. Dr. Fox then explained that, by the 1990s, there were two approaches to building computer systems. *See* § III.B.1, *supra*. 5/1 Trial Tr. 1173:12-1174:16. Dr. Fox opined that Word used Approach 1. *Id.* at 1174:2-4. He further explained that, in the AESD, Arendi contended that its alleged invention took Approach 1, whereas the CyberDesk and ADD systems took Approach 2. *Id.* at 1174:19-1176:1; DTX-925.0115.

It is with this background in mind that Dr. Fox explained that it would have been obvious to combine CyberDesk or ADD with the teaching in Word of putting the shortcut tools into the application, *i.e.*, Approach 1, thereby meeting the full scope of the limitations of "providing an input device, configured by the first computer program" and "in consequence of receipt by the first computer program of the user command." 5/1 Trial Tr. (Fox) 1188:7-1190:20. By Arendi's own admission in the AESD, CyberDesk and ADD met these limitations, except for the "first computer program" aspect because the tools were *separate* from the document editing program. *Id.* at 1171:6-1173:11; DTX-925.0115. Arendi cannot credibly argue that this "missing" feature was not taught by Word, a well-known program. Indeed, the jury heard Mr. Hedloy testify that he built his

---

[7] Arendi does not dispute that Word is prior art. In any event, Dr. Fox testified that the alpha version was available in 1996, and it became available early in 1997. 5/1 Trial Tr. 1188:3-6.

alleged invention as a tool *inside* Word, and that Microsoft provided Visual Basic for Applications to allow developers to create features for applications that could live *inside* Word. *See* PX 1, Figs. 3-5 (screenshots of Word); 4/24 Trial Tr. (Hedloy) 187:8-188:2. He further testified that a person of skill in the art would have understood how to create OneButton functionality *in* Word in 1998. *Id.* at 188:3-12. Thus, there was substantial evidence for the jury to find that Word taught this feature, and it would have been obvious to combine the feature of putting tools *inside* the application with the shortcut tools taught by CyberDesk and ADD. Arendi's remaining points regarding these combinations are that CyberDesk and/or ADD did not satisfy certain limitations, which are addressed above. *See* §§ III.A, III.B.2.a, III.B.2.b, *supra*.

### d)   *Secondary indicia do not mandate non-obviousness.*

Weak showings of secondary considerations cannot overcome strong showings of obviousness. *Zup, LLC v. Nash Mfg., Inc.* 896 F.3d 1365, 1373, 1375 (Fed. Cir. 2018). Dr. Sacerdoti addressed only the consideration relating to licensing. *See* 5/1 Trial Tr. (Sacerdoti) 1409:6-12. His testimony was merely that, if other firms paid for a license for the '843 patent, that suggests the invention is not obvious. *Id.* But he offered no evidence that firms paid a license because they placed any value on the '843 patent. Rather, there was evidence that the firms paid for other licensed patents and settlement of costly litigation. *See, e.g.*, 4/24 Trial Tr. (Hedloy) 228:7-243:20. Dr. Fox also rebutted Dr. Sacerdoti, explaining that Arendi's licenses did not have utility as compared to other secondary considerations that Dr. Fox considered. 5/1 Trial Tr. (Fox) 1194:20-1196:12. Arendi further argues that Dr. Fox's consideration of other factors was circular but does not explain how. There was substantial evidence for the jury to find that Arendi's meager presentation of secondary considerations did not overcome Google's strong showing that the Asserted Claims were obvious.

## IV.   IPR ESTOPPEL DOES NOT APPLY

A.      **Arendi Does Not Acknowledge, Much Less Demonstrate Any Error in, the Court's IPR Estoppel Rulings on Multiple Independent Grounds.**

Just before trial, Arendi asked that Google be estopped under 35 U.S.C. § 315(e)(2) from relying on the CyberDesk system as prior art. *See* 4/6 Hr'g Tr. 37:16-19; D.I. 456. After additional briefing (D.I. 456, 457, 463, 464), the Court rejected Arendi's arguments for several reasons.

First, the Court held that Arendi's arguments were forfeited because Arendi failed to raise them in a timely manner that complied with the Court's orders. 4/24 Trial Tr. 7:14-8:14, 9:17-10:7. Arendi does not acknowledge that ruling, much less suggest that it was an abuse of discretion.

Second, the Court confirmed Judge Stark's summary judgment ruling that regardless of whether CyberDesk *alone* was estopped, Google would not be estopped from presenting obviousness grounds combining CyberDesk with non-estopped prior art (*e.g.*, ADD, which was not challenged as estopped). *Id.* at 10:8-14. Once again, Arendi does not challenge that ruling.

Third, the Court correctly held that as a matter of statutory construction, estoppel does not apply to an invalidity ground based on a prior art system, whether or not the system might be cumulative of a combination of printed publications. The only grounds that "could have [been] raised" in IPR, 35 U.S.C. § 315(e)(2), are those described in § 311(b), *i.e.*, "ground[s] . . . raised . . . *only* on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b) (emphasis added); 4/24 Trial Tr. 12:5-13; *see Chemours Co. v. Daikin Indus., Ltd.*, No. 17-1612 (MN), 2022 WL 2643517 (D. Del. July 8, 2022). Thus, the Court held, estoppel would apply only if Google proposed to substitute a system for a *single* printed publication that could have been raised during IPR. 4/24 Trial Tr. 13:6-25. The Court also held in the alternative that, based on the evidentiary record before it, Arendi had failed to carry its burden of showing that Google could have raised CyberDesk through a combination of printed publications during IPR. *Id.* at 10:15-12:4, 12:14-13:5. Again, Arendi does not argue that the Court's rulings were incorrect.

15

Under that unchallenged legal framework, Arendi would have a basis to re-raise estoppel after trial only if Google's evidence of system art turned out to be a ***single*** printed publication, as the Court made clear before trial. 4/24 Trial Tr. 13:6-14:11; *see also* 5/1 Trial Tr. 1431:3-8 (reiterating that point, and stating "[t]hat's not my recollection of the evidence that came in"). Arendi has not pointed to any single printed publication that can be entirely swapped with each system it contends is estopped, so estoppel does not apply.

**B.      Even If the Court Were to Reconsider Its Ruling, Estoppel Does Not Apply.**

Ignoring the Court's forfeiture and merits rulings, Arendi argues that system art should be estopped if it is cumulative of a combination of printed publications. This Court already rejected that approach by adopting *Chemours*. Arendi thus "rehashes arguments that the court has already considered and rejected," in effect making an improper and untimely motion for reconsideration. *Becton Dickinson & Co. v. Tyco Healthcare Grp. LP*, No. 02-1694 GMS, 2006 WL 890995, at *9 & n.6 (D. Del. Mar. 31, 2006); *see* L.R. 7.1.5 (reargument deadline).

Even if the Court were to reconsider its approach and evaluate cumulativeness, it is Arendi's burden to prove that estoppel applies. *See Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1299 (Fed. Cir. 2023). Arendi falls short. As the Court noted, Arendi has forfeited any argument that cumulativeness must be decided on the trial evidence. *See* 4/24 Trial Tr. 10:15-19; D.I. 463. On the pretrial record, the Court already found that Google could not have raised invalidity based on CyberDesk in IPR, 4/24 Trial Tr. at 11:14-22, and Arendi never sought a pretrial estoppel ruling on Word. In all events, for the sake of completeness, the Court should again hold that even if cumulativeness were the standard, Arendi's estoppel arguments should be rejected on the post-trial record. Arendi has not shown that Google was "simply swapping labels for what is otherwise a patent or printed publication invalidity ground in order to 'cloak' its prior art ground and 'skirt' estoppel." *Cal. Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW (AGRx), 2019

WL 8192255, at *7 (C.D. Cal. Aug. 9, 2019), *aff'd*, 25 F.4th 976 (Fed. Cir. 2022).

CyberDesk: Contrary to Arendi's assertion, Br. at 17, Judge Stark's summary judgment decision did not find that all of the trial exhibits about CyberDesk could have been raised during IPR as printed publications. D.I. 391 at 14. In fact, Arendi failed to show that many of the fifteen trial exhibits—which included various webpages (*e.g.*, DTX-8, DTX-28), materials not accepted for publication (*e.g.*, DTX-14, DTX-20, 4/27 Trial Tr. (Dey) 859:8-17, 887:13-15), and full versions of slides (*e.g.*, DTX-11, DTX-15), none of which are merely copies of published papers— were printed publications. To be a printed publication, the reference must be "public[ly] accessib[le]," and these materials were not necessarily publicly available. *Samsung Elecs. Co. v. Infobridge Pte Ltd.*, 929 F.3d 1363, 1368-69 (Fed. Cir. 2019) (collecting cases) ("indexed or cataloged" references, including university website, not necessarily "publicly accessible"). In any case, these materials contain additional relevant information beyond that contained in clearly printed publications—for example, DTX-8 and DTX-28 show the extent to which CyberDesk had been and could have been used with other applications or services, *see* 4/27 Trial Tr. (Dey) 889:16-894:11; DTX-14 and DTX-20 describe details of a second "instantiation" of the system that added functionality for "chaining" so that other services could take found information and convert it to other information, *see id.* at 860:20-22, 862:4-863:19, 887:13-23; and DTX-11 and DTX-15 provide functionality details that, as Dr. Dey explained, publication text and smaller versions of the images do not fully explain, *see id.* at 845:8-854:25, 860:23-874:10.

Regardless, even if the exhibits were all printed publications, Google presented material aspects of CyberDesk not available through those references. Arendi concedes that Dr. Dey's testimony as to CyberDesk's ability to insert or suggest information in editable-text files "go[es] beyond" the references' disclosures. Br. at 18. As Dr. Fox testified, that evidence is relevant to at

least the claim limitations concerning action in or on a "document." It is also relevant to rebut Arendi's argument that CyberDesk could perform only a "single action" (displaying) using second information, Br. at 6; for instance, the system could also insert or suggest relevant information. While the exhibits do not conclusively show that CyberDesk could input text or suggest additional reading in a working document, Dr. Dey's testimony removes any doubt. 4/27 Trial Tr. (Dey) 894:23-895:10, 896:2-897:12; 5/1 Trial Tr. (Fox) 1160:2-1161:12, 1270:10-1272:4. Arendi's own argument that CyberDesk did not work with files in which text can be entered confirms that this testimony is material. Br. at 3-4; 5/1 Trial Tr. (Sacerdoti) 1391:7-19, 1429:1-4.

Dr. Dey also testified as to several other aspects of CyberDesk that may not be apparent from the exhibits and that Arendi disputes, *see* Br. at 4-6—such as the range of content CyberDesk could work with, retrieval of first information, whether and how the first computer program receives a user command, and the types of actions initiated by a user click—and explained in greater detail how CyberDesk functioned, including its algorithms. *See, e.g.*, 4/27 Trial Tr. (Dey) 846:14-849:10, 849:18-851:15, 852:8-11, 853:6-854:21, 855:14-856:22, 858:3-10, 862:4-867:13, 871:10-874:7, 874:13-25, 876:3-23, 878:7-14, 889:24-890:18, 891:3-892:4, 894:23-897:12, 902:13-903:3. That testimony not only bolstered the relevant disclosures, but it was also critical to establishing that CyberDesk, including the second instantiation, counted as 35 U.S.C. § 102(b) prior art because it pre-dated the critical date of one year before the '843 patent's priority date. Google could not accomplish that through any § 102(b) publications, as the second instantiation is only described in detail in references that were not ultimately published in journals before the critical date. *See, e.g.*, *id.* at 857:6-858:2, 858:22-859:17. This is a material distinction because the second instantiation's ability to "chain[] information" provides further disclosure of claim limitations regarding the use of "first information" to find and further use "second information,"

and Arendi could have attempted to swear behind § 102(a) art. Dr. Dey also testified how other applications were modified to work with CyberDesk and how CyberDesk source code was available to others to build on—evidence of motivation to combine and expectation of success. *See, e.g.*, DTX-8; DTX-28; 4/27 Trial Tr. (Dey) 889:16-892:20, 894:8-11. The additional capabilities and context that Google presented make CyberDesk a far more understandable and compelling reference than any printed publications could.

Arendi also rehashes its arguments that Dr. Dey's testimony cannot provide non-cumulative evidence because it is supposedly uncorroborated. *See* D.I. 281 at 11, 13 & n.10; D.I. 456 at 1-3. The Court has twice rejected this argument. D.I. 391 at 2, 14-15; 4/24 Trial Tr. 12:14-13:5. Dr. Dey's testimony and the evidence of his "dozens" or "hundreds" of demonstrations conclusively establishes that CyberDesk existed as a system. 4/27 Trial Tr. 843:15-24, 880:6-13, 901:9-20, 903:11-15. Arendi's corroboration argument also fails because Google was not relying on Dr. Dey's testimony alone to invalidate the '843 patent. *See CEATS, Inc. v. Cont'l Airlines, Inc.*, 526 F. App'x 966, 969 (Fed. Cir. 2013). Google relied on multiple pieces of evidence to show how CyberDesk functioned. *See* D.I. 391 at 20 (collecting cases); *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1358 (Fed. Cir. 2008) (product sheet, fact testimony). Even if corroboration were required, the "flexible" standard was met here. *See Fleming v. Escort Inc.*, 774 F.3d 1371, 1377 (Fed. Cir. 2014); *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1351 (Fed. Cir. 2001).

<u>Word</u>: If the Court confirms that CyberDesk was not estopped, then there is no need to address estoppel as to Word, as Google only presented the latter as part of obviousness grounds; none of those grounds were estopped since they included at least one other non-estopped reference—*i.e.*, CyberDesk or ADD (no estoppel challenge). *See* D.I. 391 at 10; 4/24 Trial Tr.

10:8-14. Nonetheless, for completeness, the Court should hold that Arendi has waived any estoppel argument for Word. The Court instructed Arendi to include in its pretrial estoppel brief *all* prior art that it claimed was estopped. 4/6 Hr'g Tr. 44:12-16. Yet even after Google disclosed its intent to rely on Word, Arendi raised *only* CyberDesk, *see* D.I. 456 at 1, which Google pointed out and Arendi did not dispute. *See* D.I. 457 at 2 n.2. At trial, therefore, Google reasonably relied on the absence of any dispute regarding non-estoppel for Word.[8]

Even if Arendi had not waived its arguments as to Word, it fails to point to any trial evidence satisfying its burden on estoppel. Arendi relies on the summary judgment record, *see* Br. at 19-20, which Judge Stark already considered in denying estoppel, D.I. 391 at 14, 16-17.[9] Arendi provides no legitimate basis for belated reconsideration of Judge Stark's ruling. In all events, revisiting the summary judgment record would not help Arendi: the Court's pretrial decision on that same record held that CyberDesk is not estopped, 4/24 Trial Tr. 4:19-14:18, meaning that none of Google's obviousness grounds are estopped.[10]

## V.    CONCLUSION

For the reasons stated above, the Court should deny Arendi's renewed motions for judgment as a matter of law and a new trial.

---

[8] There should also be no dispute that Word was an actual system, as Mr. Hedloy recognized. *See* 4/24 Trial Tr. at 187:15-188:22.

[9] Google moves to strike Arendi's incorporation by reference of summary judgment briefing, Br. at 19 n.12, as improper under L.R. 7.1.3(a)(4) and D.I. 549 (Order). It would nearly double Arendi's brief and prejudices Google by not providing adequate notice of post-trial arguments. *See Sprint Commc'ns Co. L.P. v. Cox Commc'ns Inc.*, 302 F. Supp. 3d 597, 626 (D. Del. 2017).

[10] Arendi tangentially argues that Google created a "false impression" that its invalidity grounds had not been presented to the PTO because the Court barred evidence of the IPR. Br. at 20. But Arendi does not contend that that evidentiary ruling was an abuse of discretion. The point of the Court's estoppel ruling was that the grounds could *not* have been presented to the PTO in IPR. In all events, the jury repeatedly heard that the PTO considered prior art describing certain aspects of system art. *See*, *e.g.*, 4/24 Trial Tr. 77:5-16 (opening); 5/1 Trial Tr. (Fox) 1255:24-1257:6; 5/2 Trial Tr. 1545:15-1550:6 (closing).

OF COUNSEL:

Robert W. Unikel
John Cotiguala
PAUL HASTINGS LLP
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
Tel: (312) 449-6000

Robert R. Laurenzi
Chad J. Peterman
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 318-6000

Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Tel: (202) 220-1100

Vincent Y. Ling
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100

Dated: June 30, 2023
10896916 / 12599.00040

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Defendant Google LLC*