IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARENDI S.A.R.L., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) C.A. No. 13-919-JLH <br> ) <br> ) **Original Version Filed: July 21, 2023** <br> ) <br> ) **Public Version Filed: July 28, 2023** <br> ) <br> ) |

**ARENDI S.A.R.L.'S REPLY IN SUPPORT OF ITS
RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW
AND MOTION FOR A NEW TRIAL**

Google's brief confirms its failure to prove invalidity. <u>First</u>, Google does not (and cannot) identify element-by-element expert testimony. Instead, it pretends none is required. <u>Second</u>, Google fails to explain how exhibits and fact witnesses could fill the gaps in expert testimony. Its argument ignores claim limitations. Its "*see, e.g.*" approach cites evidence with no apparent connection to its theories and illustrates the need for expert analysis. <u>Finally</u>, Google relies on estopped prior art. Arendi is thus entitled to judgment as a matter of law or a new trial.

I. **GOOGLE LACKS EXPERT TESTIMONY TO SUPPORT INVALIDITY**

Rather than identify expert testimony to establish invalidity, Google provides two out-of-context soundbites to suggest such testimony was not needed. D.I. 576 at 1. Both cases Google quotes undercut its position and confirm the general requirement of expert testimony to support a finding of invalidity. *E.g.*, *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004). Exceptions to that rule are limited to inapposite cases concerning simple technologies. *E.g.*, *Id*. at n.4; *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1347-48 (Fed. Cir. 2013).

First, Google claims "[t]here is no invariable requirement that a prior art reference be accompanied by expert testimony." D.I. 576 at 1 (quoting *In re Brimonidine Patent Litig.*, 643 F.3d 1366, 1376 (Fed. Cir. 2011)). Google ignores the case's next sentence: "But it is well within a trial judge's discretion to require expert testimony supporting technical references that are relied on to establish obviousness." 643 F.3d at 1376. And in *In re Brimonidine*, the district court did just that, granting JMOL of non-obviousness partly due to a lack of expert testimony. *Id*. at 1368, 1376. The Federal Circuit then upheld the district court's "refus[al] to consider" allegedly invalidating references "in light of the absence of testimony explaining their relevance." *Id*. at 1376.

Second, Google quotes *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009), for the point that "a jury's deliberation 'may include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require

1

explication in any reference or expert opinion.'" D.I. 576 at 1. But *Perfect Web* acknowledged that "[i]f the relevant technology were complex, the court might require expert opinions." *Id.* at 1330. And Google omits that the Federal Circuit already rejected Google's reliance on *Perfect Web* when Google *previously* tried to invalidate the Asserted Claims:

> [I]n *Perfect Web*, the only case Appellees identifies [*sic*] in which common sense was invoked to supply a limitation that was admittedly *missing* from the prior art, the limitation in question was unusually simple and the technology particularly straightforward.… By contrast, the missing search at issue here "plays a major role in the subject matter claimed" and "affects much more than step (i)." … **Thus, the facts in *Perfect Web* are distinguishable from the case at bar and ought to be treated as the exception**, rather than the rule.

*Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1362 (Fed. Cir. 2016) (citations omitted).

Just as *Perfect Web* does not warrant using common sense to supply limitations of the Asserted Claims, it does not justify dispensing with expert testimony. *Perfect Web* involved an admittedly simple technology and dispute: "the parties agreed that ordinary skill in the relevant art required only a high school education and limited marketing and computer experience," and they disputed only whether it was obvious to *repeat* prior (and stipulated-to-be-obvious) steps. 587 F.3d at 1330. Unlike *Perfect Web*, the Asserted Claims depend on the complex internal workings of computer systems. Google repeatedly asserted that jurors must "look under the hood" since the claims require "that under the hood these computer systems work in a very particular way," 4/24 Tr. (Opening Arg.) 89:3-18:

> [U]nder the hood is where all the difference lies. Because if all you looked at was what the user sees, you would see that what a user sees using something that Arendi said was in this patent, is identical to what existed with Apple Data Detectors and CyberDesk, and other things. What makes anything different is what's under the hood in this system.

*Id.* at 89:19-25. Looking "under the hood," Google's infringement expert, Dr. Rinard, testified that the structure and locus of source code determines whether limitations are met. 4/27 Tr. (Rinard)

2

915:4-917:4. Arendi's infringement expert, Dr. Smedley, explained complex code for hours. *E.g.*, 4/25 Tr. (Smedley) 295:5-297:4. And both parties presented expert testimony on invalidity.

Any "claim that the technology is simple is belied by the fact that both sides believed it necessary to introduce extensive expert testimony regarding the content of the prior art." *Alexsam*, 715 F.3d at 1348 (holding expert testimony required). Exhibits relied on in Google's invalidity case also included technical descriptions of software architecture. *E.g.*, DTX-0017.002 (describing parameters passed into method calls and supported APIs comprising CyberDesk); DTX-0190 (code for alleged "write a letter w. e-mail addr" script used to support ADD). And whereas the POSITA in *Perfect Web* had only "a high school education and limited marketing and computer experience," a POSITA here had a B.S. in computer science or engineering and about two years of work experience designing user applications and software. 4/25 Tr. (Smedley) 304:12-16.

The facts of this action not only make it unlike *Perfect Web* but also place it among cases that insisted on detailed expert testimony. In *Koito*, 381 F.3d at 1152 n.4, the "district court erred in concluding that explanatory testimony … was unnecessary because of this Court's decision[] in *Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567 (Fed.Cir.1984)." *Union Carbide* had upheld invalidity of a patent for a "very simple means and method of dispensing plastic bags" despite lacking expert analysis. *Id*. The Federal Circuit limited *Union Carbide* to that context: "[W]e found anticipation because the references and the patent were "easily understandable" and the *patentee,* rather than the alleged infringer, provided explanatory analysis regarding the prior art references." *Id*. But the *Koito* patent was "not an 'easily understandable' patent" and, like the '843 Patent, could not be invalidated without expert testimony. *Id*. Likewise, *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008), affirmed JMOL of no-invalidity where the infringer lacked expert testimony because the "subject matter [was] sufficiently complex

3

to fall beyond the grasp of an ordinary layperson." And in *Carrier Corp. v. Goodman Glob., Inc.*, 64 F. Supp. 3d 602, 616 (D. Del. 2014), this Court required expert opinion to prove anticipation of a patent involving "complex technology, i.e., controlling HVAC systems using algorithms."

Google challenges, in note 2, only one case Arendi cited, *Schumer v. Lab. Comp. Sys., Inc.*, 308 F.3d 1304 (Fed. Cir. 2002)—urging the Court to ignore *Schumer* because it "concerned summary judgment" rather than JMOL. But *Schumer* isn't about whether to credit experts; rather, it confirms detailed expert testimony is generally required to invalidate a patent. Indeed, the Federal Circuit has explicitly applied *Schumer*'s requirement to post-trial motions. *Koito*, 381 F.3d at 1144, 1152; *see also Inline Connection Corp. v. EarthLink, Inc.*, 684 F. Supp. 2d 496, 515 (D. Del. 2010) (granting JMOL of no-anticipation). Google does not even mention the remaining authority Arendi cited that requires detailed expert testimony. *E.g.*, D.I. 560 at 8-9, 12.

As Arendi showed in its opening brief, Dr. Fox's testimony is conclusory, ignores claim limitations, and does not provide sufficient evidence of invalidity. Google's opposition does not rebut these characterizations. Google does not identify testimony by Dr. Fox that it alleges would explain each limitation. Rather, Google sticks to its faulty position that expert testimony is not required and argues that some amalgam of other evidence was enough. It was not.

## II. GOOGLE'S "*SEE, E.G.,*" BRIEF DOES NOT ESTABLISH INVALIDITY.

Even were expert testimony unnecessary, Google's woolly "*see, e.g.,*" string-cites do not plug the holes in its evidence. "It is not the trial judge's burden to search through lengthy technological documents for possible evidence" of invalidity. *Biotec Biologische v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001). Many string-cites do not correspond to Google's assertions, which themselves ignore limitations and advance inconsistent theories of invalidity.

Google's treatment of limitations relating to first and second computer programs illustrates these shortcomings. Google offers a one-sentence retort to Arendi's argument that Dr. Fox ignored

4

the requirement that the first computer program "set up" the input device: Drs. Fox and Dey "explained how services are integrated so that an applet or browser dynamically provided ActOn Buttons depending on the type of first information." D.I. 576 at 6. The relevance of the "*See, e.g.*" citations that follow is left unexplained. Neither Dr. Dey's testimony nor the first two passages from Dr. Fox's testimony states that an applet or browser sets up the input device. At 5/1 Tr. 1179:9-12, Dr. Fox does state, "So it's providing an input device. It's configured by this browser with all this stuff, CyberDesk running in it. So it is configured by the first computer program." But Dr. Fox's "its" are inscrutable, and he identifies no basis for these conclusions.

Addressing "in consequence of receipt by the first computer program of the user command… causing a search…," Google asserts that "Drs. Dey and Fox testified that clicking an ActOn Button… was a command to the applet (e.g., e-mail window) or browser to cause a search." D.I. 576 at 7. A bare "*See, e.g.*" string-cite to six transcript passages and two full exhibits follows. Although several of the passages discuss use of an ActOn Button, none discuss *receipt* of the user command by the first computer program or a search caused by *that receipt*.

Google's subsequent discussion of first and second computer programs is riddled with inconsistency. According to Google at 7, either the "web browser … or individual applets can be considered the 'first computer program' and either 'Switchboard or Contact Manager can be considered the 'second computer program.'" But if the browser is the first computer program, there is no second computer program because Switchboard and Contact Manager are applets in the browser. *E.g.*, DTX-0013.0002. If an applet (like the email reader) is the first computer program, it doesn't "set up" the input device or receive the user command. DTX-0013.0002 (separate ActOn applet "creates" buttons); DTX-0014.0002-3 ("list of buttons is provided by the IntelliButton").

5

Google's alleged proof (at 8) of claim 30's invalidity also falls short. Here, Google's "*see, e.g.*" method of argument cites one passage from Dr. Fox, three from Dr. Dey, and two trial exhibits. Dr. Fox identifies a "little button that says 'New Contact'" (in Fig. 1 on DTX-0014.002) as the alleged "prompt" for updating the information source. 5/1 Tr. 1181:2-1182:1. That "little button" is not visible in DTX-0014.002.[1] Dr. Dey's testimony, in turn, speaks to the general ability to open and edit contacts; but not to the "prompt" identified by Dr. Fox nor to any other. *See* 4/27 Tr. 853:24-854:4; 873:20-874:12. For exhibits, Google inexplicably cites all of DTX-10. Google cites DTX-11 (again in its entirety) allegedly because it somewhere shows "various updateable contact information fields for Contact Manager." D.I. 576 at 8. But Claim 30 does not call for "an updatable information source." It requires "providing a prompt."

### III. GOOGLE HAS NOT SHOWN HOW ADD DISCLOSES LIMITATIONS.

Mischaracterizing Arendi's brief, Google suggests that Arendi only challenges Dr. Fox's failure to establish ADD's disclosure of the "if searching finds…" limitation. D.I. 576 at 10. Not so. Arendi focused on that limitation because Dr. Fox **did not analyze any others**. D.I. 560 at 12. Google does not identify testimony by Dr. Fox establishing disclosure of other elements.[2]

Google's brief confirms it lacks evidence that ADD discloses the "if searching finds…" limitation. It identifies <u>one</u> type of action ("Write a Letter"). D.I. 576 at 11. Thus, the type of action performed using first information cannot depend on the type(s) of first information. Google's argument at 11-12 that ADD disclosed Claim 30 has at least two gaps. First, Google only discusses an alleged prompt for email addresses—not for a plurality of types of first information, as required.

---

[1] DTX-00015.0001 has a "Save ContactInfo using Contact" button and DTX-0014.002 describes a suggestion to "put the author's contact information in the contact manager." But those disclosures do not meet the limitation: a button is only available for email addresses (not a plurality of types of information) and no evidence shows searching the Contact manager for email addresses.
[2] If Google thinks other limitations can be found within the 33 exhibits that it cites as "documentary evidence" of ADD and CyberDesk, it doesn't say where to look. D.I. 576 at 12.

6

Second, Google lacks evidence that Claris E-Mailer's address book, to which email addresses were allegedly added, is "the information source" searched using "Write a Letter." Google asserts "The MacWord demonstrations show that ADD searched for addresses in ClarisWorks," but those videos state that the search was in "Now Contact." DTX-0777 at 2:11:43-2:12:01; DTX-0882 at 1:23-1:43. And Mr. Miller's testimony that Claris E-mailer was "probably" on the demonstrative laptops, 4/24 Tr. 1034:8-10, is irrelevant: the issue is not whether Claris E-mailer was installed but whether the "Write a Letter" function searched its address book. No evidence shows that it did.[3]

## IV. GOOGLE INTRODUCED NO EVIDENCE OF WHAT WORD '97 DID.

Google identifies no evidence that Word '97 taught any limitation. Arguing to the contrary, Google first points to Dr. Fox's bare conclusion that "Word used Approach 1." D.I. 576 at 13. This is meaningless. Second, Google notes Mr. Hedløy's testimony that he built his invention in Word using Visual Basic for Applications ("VBA"). *Id*. at 13-14. That accomplishment is beside the point. Of course, Mr. Hedløy's invention practiced his invention. The issue isn't whether Mr. Hedløy used VBA, but rather whether features inherent in Word would have suggested that a POSITA leverage VBA to place the so-called "shortcut tools" within the first computer program. Finally, Google notes Mr. Hedløy's testimony that a POSITA would understand "how to create OneButton functionality" in Word. *Id*. at 188:4-13. But Mr. Hedløy was testifying that a POSITA had the skill to implement his invention ***once the invention was disclosed***. Mr. Hedløy never said a POSITA would find it obvious to combine the so-called "shortcut tools" with other limitations.

---

[3] Google admits at 12 to arguing obviousness based on ADD in view of CyberDesk. That violation of Google's representations merits a new trial. *See* D.I. 560 at 14. On April 21, Google stated it would pursue five or six combinations. 4/21 Tr. at 114:24-116:17. On April 22, Google disclosed them. D.I. 560-1 at 1. Google asserts that Arendi should have understood that by disclosing "CyberDesk + Apple Data Detectors" Google stated an intent to pursue not only CyberDesk in view of ADD, but also ADD in view of CyberDesk. That's nonsense—and would have resulted in disclosure of 10 combinations, rather than the 5 or 6 to which Google committed on April 21.

## V.     ARENDI DID NOT ADMIT LIMITATIONS' PRIOR DISCLOSURE.

At pages 2-3 and 13, Google reprises Dr. Fox's faulty assertion that Arendi admitted via the AESD for a different patent application that CyberDesk and ADD disclosed elements of the Asserted Claims. Rather than analyze what Arendi said in that AESD, Google quotes Dr. Fox's statements about what Arendi supposedly "meant." *E.g.*, D.I. 576 at 2-3. Google's approach fails to answer Arendi's challenge that the AESD offered no support for Dr. Fox's opinion. *See* D.I. 560 at 7-8, 15. Google inaccurately states that "Mr. Hedl[ø]y conceded" its view. D.I. 576 at 2 (citing 4/24 Tr. 205:25-207:19). But Mr. Hedløy made no such concession. *See id.* Contrary to Google's assertion, Arendi also did not "expressly rel[y]" on *analysis* within the AESD when prosecuting the '843 Patent, but instead stated that the "*references* analyzed in the [AESD were] of particular interest." DTX-2.0180-81 (emphasis added). Nothing in that AESD for a different patent application—or in Arendi's references to it or in DTX-2.0180-81 or in Mr. Hedløy's trial testimony—admitted that CyberDesk or ADD disclosed most elements of the asserted claims.

## VI.    GOOGLE IMPROPERLY PRESENTED ESTOPPED ART AT TRIAL.

Arendi seeks JMOL, or a new trial, based on evidence presented ***at trial***—not, as Google contends, reconsideration of pre-trial rulings. Pre-trial rulings allowing Google to present CyberDesk were made over Arendi's opposition and are preserved for appeal, *e.g.*, 4/24 Tr. 4:19-14:11, as are the Court's summary judgment rulings. But trial also confirmed that Google's sole evidence of CyberDesk consisted of printed publications it could have raised during IPR. "Simply swap[ping] out publications that were available through a diligent search with the same prior art, only in a slightly different format" is impermissible. *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 453–54, n.7 (D. Del. 2020). That is exactly what Google did here.

*First*, the Court's pre-trial adoption of the "the approach and analysis laid out by Judge Noreika in her opinion in *Chemours vs. Daikin*" was misguided, as that case did not deal with the

8

circumstances here. 4/24 Tr. 12:5-7. *Chemours* held the Defendant could present certain existing ***physical*** products as invalidating references at trial, "regardless of whether those products are 'cumulative'" of "paper art." *Chemours v. Daikin*, No. CV 17-1612 (MN), 2022 WL 2643517, at *1 (D. Del. July 8, 2022). But here Google did not present a physical CyberDesk product: It ***only*** presented ***printed publications***, and deposition testimony to narrate the publications. Judge Noreika's withholding of estoppel in *Chemours*—where there ***was*** a physical, commercialized prior art product separate from the "paper art" patents—relied on the fact that "Daikin could not have raised the prior-art products during the IPR proceedings." *Id.* That is not true here: Google could have raised at IPR the same CyberDesk publications that it showed the jury.[4]

*Second*, not only was the Court's adoption of *Chemours* misguided, but it also contravened the law of this case. At summary judgment, the Court (Stark, J.) ruled that the purported CyberDesk "system" ***would*** be estopped under 35 U.S.C. § 315(e)(2) if it were "'materially identical' to the references that could have been raised during the '843 patent IPR." Dkt. 399 at 14. This holding—the majority view—was law of the case. *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61 (3d Cir. 2023) ("The law of the case doctrine 'prevents reconsideration of legal issues already decided in earlier stages of a case.'"). There was no basis for this Court to overturn Judge Stark's summary judgment ruling by looking to Judge Noreika's analysis in a different case.

During the trial, Google did exactly what Judge Stark held would trigger IPR estoppel—it presented CyberDesk without any evidence of a CyberDesk "system" apart from the publications.[5]

---

[4] Google cites *Chemours*, 2022 WL 2643517, for its claim that § 315(e)(2) only estops products if a ***single*** publication evidences that product. But that case nowhere adopts Google's supposed rule.
[5] Google wrongly claims Arendi "forfeited any argument that cumulativeness must be decided on the trial evidence." D.I. 576 16. Not so. Google cites the Court's statement that a pre-trial "evidentiary hearing is not required for the Court to rule on the issue of estoppel." *Id.* (citing 4/24 Tr. 10:15-19). Arendi's agreement with the proposition does not forfeit this motion.

9

Google did not bring a working "CyberDesk system" to trial. It just played deposition testimony of one of the authors of the CyberDesk publications marching through the publications one by one.

The 15 exhibits Google admitted through that testimony are printed publications it could have raised in its IPR. Webpages (like DTX-8 and DTX-28) qualify as printed publications subject to IPR estoppel. *Avanos Med. Sales, LLC v. Medtronic Sofamor Danek USA, Inc.*, 2021 WL 8693677, at *1 (W.D. Tenn. Oct. 8, 2021). Google's argument that certain exhibits (DTX-14 and DTX-20) were "not accepted for publication" is a non-sequitur, as they were publicly available academic papers **cited on the face of the '843 Patent**. *See* PX-001 at 4 (citing both). The slides Google introduced (DTX-11 and DTX-15) were publicly available on the same website as the other CyberDesk publications cited by the '843 Patent. *See* DTX-11 and DTX-15 (bearing web address in footer). And Google's 15 publications are the ***only*** evidence Google presented about CyberDesk that was germane to its invalidity theory. Google characterizes Dr. Dey's testimony as "mak[ing] CyberDesk a far more understandable and compelling reference," D.I. 576 at 18-19, but using a narrator to make a publication "more compelling" does not transform it into non-estopped art. Google identifies only one aspect of Cyberdesk that it contends is exclusively substantiated by Dr. Dey's testimony: "that CyberDesk could input text or suggest additional reading in a working document." D.I. 576 at 18. But the testimony Google cites is irrelevant to invalidity. *See* D.I. 560 at 18-19. Google thus did exactly what this Court (Stark, J.) and numerous others have rejected: it took an invalidity mulligan by disguising estopped publications as a "system."[6]

### VII. CONCLUSION

Arendi respectfully requests that the Court grant its motions for JMOL or for a new trial.

---

[6] Likewise for Word, Google presented almost no evidence at all—let alone any evidence that differentiated the Word "system" from the printed publications cited by the '843 Patent. *See supra.*

10

Dated: July 21, 2023

<table>
<tr><td>

*Of Counsel:*

SUSMAN GODFREY LLP
Seth Ard (*pro hac vice*)
Max Straus (*pro hac vice*)
Beatrice Franklin (*pro hac vice*)
SUSMAN GODFREY, L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: (212) 336-8330
sard@susmangodfrey.com
mstraus@susmangodfrey.com
bfranklin@susmangodfrey.com

John Lahad (*pro hac vice*)
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
jlahad@susmangodfrey.com

Kalpana Srinivasan (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
ksrinivasan@susmangodfrey.com

Kemper Diehl (*pro hac vice*)
401 Union Street, Suite 3000
Seattle, WA 98101-3000
kdiehl@susmangodfrey.com

</td><td>

SMITH, KATZENSTEIN & JENKINS LLP

*/s/ Neal C. Belgam*
Neal C. Belgam (No. 2721)
Daniel Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Attorneys for Plaintiff Arendi S.A.R.L.*

</td></tr>
</table>